John A. McGuinn, Esq. (State Bar No. 036047)
Noah D. Lebowitz, Esq. (State Bar No. 194982)
McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA  94133
Telephone:  (415) 421-9292
Facsimile:  (415) 403-0202

Attorneys for Plaintiff
KIRAN PANDE

## UNITED STATES DISTRICT COURT FOR THE

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE,<br><br>               Plaintiff,<br><br>v.<br><br>CHEVRONTEXACO CORPORATION,<br>a Delaware corporation,<br>CHEVRON TEXACO OVERSEAS<br>PETROLEUM PACIFIC COMPANY,<br>a Delaware corporation,<br><br>            Defendant.<br>_____ | **Case No.  C-04-5107 CW**<br><br>**FIRST AMENDED COMPLAINT**<br><br><br>**JURY TRIAL DEMANDED** |

## PARTIES

1.     Plaintiff Kiran Pande ("Pande" or "Plaintiff") is a resident of the State of California.  She was born in India in 1962 and immigrated to the United States in 1964. Pande became a U.S. citizen in or about 1971.

2.     Defendant ChevronTexaco Corporation ("ChevronTexaco" or "Defendants") is a Delaware corporation with its principal place of business in San Ramon, California. ChevronTexaco is the successor corporation to what was formerly known as Chevron Corporation.

3.     Defendant ChevronTexaco Overseas Petroleum Pacific Company ("CTOP" or "Defendants") is a Delaware Corporation with its principal place of business in San Ramon, California.

4.     At all times all herein alleged, each defendant was an agent, employee or representative of the other defendants and ratified the conduct of the other defendants.

## JURISDICTION & VENUE

5.     Jurisdiction is based upon federal question, 28 U.S.C. § 1331.  Under 28 U.S.C. §1367(a), the Court also has supplemental jurisdiction over the state law claims asserted in this action

6.     Pursuant to 28 U.S.C. §§ 1391(a) and (b), venue is proper in the Northern District of California.  The Defendants are headquartered in San Ramon, California, which is within this district.  Pande resides within this judicial district.

## INTRA DISTRICT ASSIGNMENT

7.     This action should be assigned to the San Francisco or Oakland Division of the Court because events and omissions alleged herein which give rise to the claims for relief occurred in Contra Costa County.

## FACTS COMMON TO ALL CAUSES OF ACTION

8.     Pande is a petroleum engineer who has worked for major oil companies for the better part of 22 years.  She has a Bachelor of Science degree in Chemical Engineering from the University of California-Berkeley in 1983, a Masters Degree in

Petroleum Engineering from Stanford University in 1985, and a Doctorate in Petroleum Engineering from Stanford in 1989. In addition to her employment with Chevron Texaco, Pande has an appointment as a Consulting Professor at Stanford University, teaching classes in petroleum engineering. Pande has also published papers and presented papers at industry conferences in the U.S. and Europe and is considered an expert in the field.

9.      In late 1988, Pande was hired by Chevron Corporation as a research engineer in the Chevron Oil Field Research Company ("COFRC"), based in La Habra, California. COFRC became part of Exploration Production Technology Company ("EPTC") in 1992 following the reorganization of Chevron's technology companies. While in COFRC and EPTC, Pande consistently earned high praise from her supervisors for her job knowledge, problem solving ability, teamwork, creativity, and initiative. Pande's supervisors regularly described Pande as "an outstanding employee" and as doing "an excellent job." In or about October 1992, Pande was promoted to Grade Level 23 as a Senior Research Engineer. Pande's supervisors recommended a transfer from the technology company to a ChevronTexaco operating company to provide her with business and operations exposure and experience. Pande's supervisors also recommended providing her with opportunities to gain supervisory experience.

10.     In January 1995, Pande was transferred from EPTC in La Habra to Chevron Overseas Petroleum, Inc. ("COPI") in San Ramon, California. At the time of her transfer, EPTC management told her that any time she wanted to come back to EPTC there would be a place for her. Throughout the next several years, Pande worked on a broad range of projects for COPI, including an overseas assignment in

Europe which also entailed working in Africa.  In May 1997, during her international assignment, Pande was requested to make a presentation to Kenneth Derr, the Chairman of the Board and Chief Executive Officer, and his management committee on behalf of COPI.  Her presentation was very well received by the CEO and the others on the committee.  Pande received high praise for effectively communicating the links between technology, business processes, company culture, and profitability using as an example the multi-billion dollar joint venture international project on which she was working.  In or about April 1997, Pande was promoted to Grade Level 24 with the title Advisor, Petroleum Engineering.  In 1998, Pande started the evening MBA program at U.C. Berkeley and completed the program in December 2000.  Pande's supervisors recommended that she be given an opportunity to gain commercial and business experience in the Commercial, Planning, or Corporate Finance groups.

11.     In or about September 2000, Pande was transferred to COPI's Planning Group.  In this position, Pande directly reported to Rex Mitchell ("Mitchell"). Unfortunately, Pande's ascension in the company was abruptly interrupted while working in the Planning Group of CTOP.  Specifically, in 2001, she began to suffer harassment and discrimination based on her gender and race/national origin at the hands of Mitchell.

12.     In October 2001, shortly after the mega-corporate merger which created ChevronTexaco, Pande was selected for a new position of Portfolio Analyst in the Planning Group.  Mitchell told Pande that he considered this position to be a higher level than the Planning Analyst positions in the group and promised to promote Pande to Grade 25 in April 2002.

13.    In or about March 2002, Pande complained to Mitchell's supervisor, James Johnson ("Johnson"), about Mitchell's conduct.  Pande told Johnson about a situation in the Fall of 2001 when Mitchell referred to a group of people of Indian origin as "towel heads."  Johnson did nothing to investigate Pande's complaints.  Instead, he told Pande that she had three choices: (1) leave the company, (2) leave the group, or (3) stay for 12 to 18 months and get along with Mitchell.  Johnson then scheduled a meeting with Mitchell and Pande to give Pande an opportunity to state which of the three options she was choosing.

14.    Previously, ChevronTexaco disseminated information to its employees that the company maintained a written policy which asserted that the company strongly forbade workplace harassment and discrimination and that all complaints alleging such conduct would be taken seriously.  To that end, ChevronTexaco had in place a designated person, a so-called Ombuds, as a purportedly neutral party to hear all such complaints.  In the Spring of 2002, the Ombuds responsible for Pande's group was Gary Yamashita ("Yamashita").

15.    After the meeting with Johnson and Mitchell, Pande decided to file a formal complaint with Yamashita.  Pande alleged discrimination and harassment and refusal by Johnson to investigate an earlier complaint of discrimination and harassment.

16.    In or about April 2002, Pande received her annual performance review from Mitchell.  During her annual performance review meeting with Mitchell, Pande told him that she felt his behavior towards her was inappropriate and constituted harassment.  Mitchell attempted to minimize his behavior, attributing it to stress. Mitchell also failed to promote Pande to Grade 25 as he had promised in 2001.

17.     Mitchell did not inform Pande of her salary action as required by company policy.  Pande deduced her salary action from her paycheck.  Pande and the only other female in the group, Victoria Thompson ("Thompson"), were ranked lower than the Chevron legacy company men in the group and received lower raises and merit increases than the men in the group.  Thompson joined Pande and filed her own complaint with Yamashita alleging harassment and discrimination by Mitchell.  Yamashita suggested a joint meeting with Yamashita, Johnson, Pande, and Thompson to discuss the complaints.

18.     Prior to that meeting, at Yamashita's request, Pande and Thompson submitted a list of "bullet points" which they wished Yamashita to address during the investigation.

19.     On or about April 24, 2002, Yamashita held what was supposed to be an investigatory meeting.  Yamashita first met alone with Johnson.  Then, together, they met with Pande and Thompson.  During that meeting, both Pande's and Thompson's complaints were given no credence by Johnson.  In fact, the meeting turned into an attack on Pande's performance, whereby Johnson levied false accusations about Pande's performance, all while Thompson was still present.  Pande specifically expressed her concern about Mitchell's use of racial and ethnic slurs to refer to people of her ethnic background.

20.     Shortly after the meeting with Yamashita, Pande began to feel retaliation from Mitchell, including, *inter alia*, being deliberately excluded from work-related meetings.  Pande again complained to Johnson to no avail.

///

///

21.    Throughout the next several months, Mitchell continued to isolate Pande from the work group and impede her ability to perform and advance within the company.

22.    In September 2002, Pande learned that Mitchell had been saying negative things about her abilities to managers and employees in other departments.  As a result of these negative comments being circulated, Pande was taken out of consideration for at least one position.

23.    From March through December 2002, Pande attempted to find another job within the company.  However, on December 9, 2002 Pande was forced to take a less desirable job as Simulation Engineer, one which is considered a step down on the career path at ChevronTexaco for petroleum engineers like Pande.  In fact, management had not been able to fill this position for several months because management had not been able to find an experienced engineer willing to take this position.

24.    In April 2003, Pande was told by her new supervisor, Jack Dunn ("Dunn"), that she was not receiving a merit pay increase.  Never before in her entire career at Chevron and ChevronTexaco had Pande not received a merit pay increase.  Dunn told Pande that she did not receive a merit increase because of Mitchell's evaluation of Pande's performance.

25.    In the Spring of 2003, ChevronTexaco announced that Pande's business unit was being transferred from San Ramon to Houston, Texas.  Most employees were offered the opportunity to relocate to Houston with their current position.  Failure to agree to the relocation offer would indicate a non-acceptance and the employee would have the option of looking for another job internally.  A so-called Sponsor would help

coordinate the development of the next assignment.  Furthermore, prior to handing out the offers to relocate, Dunn had assured Pande and others in the group that his first priority would be to help employees that declined the relocation to find jobs within ChevronTexaco.

26.     Pande indicated non-acceptance of the relocation offer.  Some other employees within Pande's business unit also declined to relocate.

27.     Throughout the Fall of 2003, Pande attempted to find another job within ChevronTexaco.  She applied for several openings and actively networked within the company for a transfer.  Pande was fully qualified for each of the jobs to which she applied.  Pande did not get any of the jobs to which she applied.

28.     In comparison, each of the men in Pande's business unit who declined the move to Houston were successful in finding a new job or were allowed to continue working in their current job in San Ramon without relocating to Houston.  In what Pande believes to be a violation of company policy and U.S. immigration policies, at least two of the men who were selected over Pande for EPTC jobs located in San Ramon were not United States citizens.  In addition, one of those men had accepted to relocate to Houston.  The company had indicated that upon acceptance of the relocation to Houston, the business unit would expect the employee to remain in their current position for at least 18 months.

29.     Pande's business unit was scheduled to formally commence work in Houston on January 5, 2004.  In or about October 2003, Dunn offered Pande continued work in San Ramon on a project which would last through at least most of 2004.  Pande agreed to work on the project.

30.     On or about October 2003, Pande determined (in consult with her physician) that she needed to take a medical leave to have required surgery.  Pande researched company policy (the so-called Disability Management Program) and, on or about October 29, 2003, filed all the appropriate paperwork to take a medical leave. Part of that policy requires that all employees who are or will be absent from work for more than five days due to medical condition must file for short term disability through ChevronTexaco's disability policy carrier, UnumProvident.  The Disability Management Program also requires employees to fill out overly broad medical release forms. Despite having sufficient information to certify Pande for an extended medical leave, ChevronTexaco only certified Pande's leave for a period of 30 days, thereafter requiring Pande to re-certify her eligibility for leave.

31.     On or about October 30, 2003, Pande informed Dunn that she was applying to take a medical leave.  Dunn reacted by asking what was medically wrong with her.  Pande considers her medical information very private and did not feel comfortable talking to Dunn about her specific condition, so she did not tell him.  Dunn, however, persisted in his questioning asking about her condition and her symptoms. Dunn also questioned Pande about her request for coverage under FMLA during her medical leave.

32.     Dunn was incensed about Pande's request for medical leave.  On or about November 4, 2003, on an international conference call attended by approximately 10 of Pande's coworkers and a Senior Manager in Angola, Dunn went on a tirade.  He directly confronted Pande about her medical leave and berated her for an extended period of time about the fact that she was taking the leave.  Other employees on the call – most of whom had no previous knowledge about Pande's medical leave –

attempted to intervene, but Dunn cut them off demanding to know how Pande was going to get all her work done. Pande felt that Dunn's outrageous conduct was designed to pressure her into forgoing her medical leave which was set to begin on November 10.

33.    Pande is a very confident and proud person. However, this conduct by Dunn was extreme and sent Pande into tears. Pande's coworkers were so outraged by Dunn's conduct that at least one coworker made an internal complaint against Dunn for his conduct on the conference call. This coworker's complaint was in keeping with ChevronTexaco training on harassment prevention and reporting which taught employees that it was their responsibility to report harassment and inappropriate behavior especially if they witnessed it being inflicted on a coworker. Pande was never contacted by anyone at ChevronTexaco regarding Dunn's comments, thus, she believes that there was no investigation into Dunn's improper comments and harassing conduct during the November 4 conference call. Furthermore, Pande herself reported Dunn's harassing conduct to Taryn Shastad, General Manager of Human Resources, in a letter dated December 8, 2003.

34.    Pande commenced her medical leave on November 10, 2003. On or about November 17, 2003 Dunn called Pande at home to tell her that she was being terminated effective December 31, 2003. Dunn read Pande part of a forthcoming termination letter that he said had already been sent via registered mail, which proclaimed that Pande had voluntarily resigned in June. Dunn also told Pande that he had consulted with an "employment lawyer" to affirm that it was "kosher" to terminate Pande while she was on FMLA leave. Dunn told Pande that her FMLA Status did not protect her because the company considered her to have voluntarily resigned in June,

prior to her request for leave.  This was the first time that anyone had informed Pande

that the company considered her to have voluntarily resigned at all, let alone five

months prior.

35.     On December 8, 2003, Pande filed her Complaint of Discrimination with

the California Department of Fair Employment and Housing and subsequently received

her "Right-to-Sue" letter.  Pande files this Complaint within one year of receiving that

Right-to-Sue letter.

**FIRST CAUSE OF ACTION**
**Violation of the Family Medical Leave Act**
**(29 U.S.C. § 2615 *et seq.*)**

36.     Plaintiff incorporates by reference paragraphs 1 through 34 as though fully

set forth herein.

37.     At all times relevant to this complaint, 29 U.S.C. § 2615 *et seq.*, otherwise

known as the Family Medical Leave Act ("FMLA") and its implementing regulations were

in full force and effect.

38.     At all times relevant to this complaint, ChevronTexaco was a covered

employer under the FMLA.

39.     At the time Pande requested her medical leave, she was an eligible

employee and provided sufficient medical certification to qualify for leave under the

FMLA.

40.     As described above, the Defendants violated the FMLA by failing to grant

Pande the full extent of her eligible family leave, terminating her during her FMLA leave,

and by enforcing policies which act to force Pande to waive her FMLA rights to

confidentiality in her medical records.

41.     The Defendants' policy of requiring periodic re-certification of eligibility for leave during the pendency of that leave is a violation of the FMLA.

42.     The Defendants' policy of requiring employees who have been or will be absent from work for more than five days due to medical condition to apply for short term disability coverage violates the FMLA's privacy protections.  Also, Dunn's conduct during his October 30 meeting with Pande and the November 4 conference call also violated the FMLA's privacy protections.

43.     Pande's exercising of her rights under the FMLA was a motivating factor in the Defendants' decision to terminate her employment.  Further, by terminating Pande's employment, the Defendants failed to grant Pande her full term of FMLA leave.

44.     The Defendants' actions also constitute unlawful interference with FMLA rights.

45.     As a direct and proximate result of the Defendants' wrongful conduct, Pande has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

46.     Pande is also entitled to an award of liquidated damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

### SECOND CAUSE OF ACTION
**Violation of the California Family Rights Act**
**(California Government Code § 12945.1 *et seq.*)**

47.     Plaintiff incorporates by reference paragraphs 1 through 46 as though fully set forth herein.

48.     At all times relevant to this complaint, California Government Code § 12945.1 *et seq.*, otherwise known as the California Family Rights Act ("CFRA") and its implementing regulations were in full force and effect.  Under the CFRA, it is unlawful

for a covered employer to fail to grant an eligible employee the full amount of leave as certified by that employee's physician.  Under CFRA it is unlawful for a covered employer to discriminate against an eligible employee for taking a leave for a serious health condition.

49.    At all times relevant to this complaint, the Defendants were a covered employer under the CFRA.

50.    At the time Pande requested her medical leave, she was an eligible employee and provided sufficient medical certification to qualify for leave under the CFRA.

51.    The Defendants' policy of requiring periodic re-certification of eligibility for leave during the pendency of that leave is a violation of the CFRA.

52.    The Defendants' policy of requiring employees who have been or will be absent from work for more than five days due to medical condition to apply for short term disability coverage violates the CFRA's privacy protections.  Also, Dunn's conduct during his October 30 meeting with Pande the November 4 conference call also violated the CFRA's privacy protections.

53.    Pande's exercising of her rights under the CFRA was a motivating factor in the Defendants' decision to terminate her employment.  Further, by terminating Pande's employment, the Defendants failed to grant Pande her full term of CFRA leave.

54.    As a direct and proximate result of the Defendants' wrongful conduct, Pande has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

55.    In doing the things alleged herein, the Defendants' conduct was despicable, and the Defendants acted toward Pande with malice, oppression, fraud,

and with willful and conscious disregard of Pande's rights, entitling her to an award of punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

### THIRD CAUSE OF ACTION
### Gender Discrimination
### (California Government Code § 12900 *et seq.*)

56.     Plaintiff incorporates by reference paragraphs 1 through 55 as though fully set forth herein.

57.     At all times relevant to this complaint, California Government Code §§ 12900 *et seq.*, also known as the Fair Employment and Housing Act ("FEHA") and its implementing regulations were in full force and effect.  Under the FEHA, it is unlawful for an employer to terminate or otherwise discriminate against a person in compensation or in the terms, conditions or privileges of employment, on account of that person's gender.  It is also unlawful for an employer to fail to take all appropriate steps to investigate complaints of harassment and discrimination, prevent harassment and discrimination, and impose remedial measures when claims are substantiated.

58.     As described above, Pande's gender was a motivating factor in, *inter alia*, the Defendants' adverse decisions related to Pande's compensation, job assignment, and termination.

59.     The Defendants also repeatedly failed to appropriately investigate Pande's complaints of harassment and discrimination and failed to take any action to prevent such conduct from occurring in the future or take appropriate remedial action for offenses.

///

///

60.    As a direct and proximate result of the Defendants' wrongful conduct, Pande has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

61.    In doing the things alleged herein, the Defendants' conduct was despicable, and the Defendants acted toward Pande with malice, oppression, fraud, and with willful and conscious disregard of Pande's rights, entitling her to an award of punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

## FOURTH CAUSE OF ACTION
### Race/National Origin Discrimination
### (California Government Code § 12900 *et seq.*)

62.    Plaintiff incorporates by reference paragraphs 1 through 61 as though fully set forth herein.

63.    At all times relevant to this complaint, FEHA and its implementing regulations were in full force and effect.  Under the FEHA, it is unlawful for an employer to terminate or otherwise discriminate against a person in compensation or in the terms, conditions or privileges of employment, on account of that person's race or national origin.  It is also unlawful for an employer to fail to take all appropriate steps to investigate complaints of harassment and discrimination, prevent harassment and discrimination, and impose remedial measures when claims are substantiated.

64.    As described above, Pande's race or national origin was a motivating factor in, *inter alia*, the Defendants' adverse decisions related to Pande's compensation, job assignment, and termination.

65.    The Defendants also repeatedly failed to appropriately investigate Pande's complaints of harassment and discrimination and failed to take any action to

prevent such conduct from occurring in the future or take appropriate remedial action for offenses.

66.     As a direct and proximate result of the Defendants' wrongful conduct, Pande has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

67.     In doing the things alleged herein, the Defendants' conduct was despicable, and the Defendants acted toward Pande with malice, oppression, fraud, and with willful and conscious disregard of Pande's rights, entitling her to an award of punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

### FIFTH CAUSE OF ACTION
**Retaliation**
**(California Government Code § 12900 *et seq.*)**

68.     Plaintiff incorporates by reference paragraphs 1 through 67 as though fully set forth herein.

69.     At all times relevant to this complaint, the FEHA and its implementing regulations were in full force and effect.  Under the FEHA, it is unlawful for an employer to terminate or otherwise discriminate against a person in compensation or in the terms, conditions or privileges of employment, on account of that person's reporting, or opposing gender discrimination or harassment.

70.     As described above, Pande complained about gender and race discrimination and harassment by Mitchell.  Pande's complaints were a motivating factor in, *inter alia*, the Defendant's adverse decisions related to Pande's compensation, job assignment, and termination.

71.     As a direct and proximate result of the Defendants' wrongful conduct, Pande has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

72.     In doing the things alleged herein, the Defendants' conduct was despicable, and the Defendants acted toward Pande with malice, oppression, fraud, and with willful and conscious disregard of Pande's rights, entitling her to an award of punitive damages.

WHEREFORE, Plaintiff prays for relief as set forth below.

**SIXTH CAUSE OF ACTION**
**Wrongful Termination in Violation of Public Policy**

73.     Plaintiff incorporates by reference paragraphs 1 through 72 as though fully set forth herein.

74.     It is the public policy of the State of California to prohibit employers from taking adverse employment actions against employees in a discriminatory manner or in retaliation for voicing complaints about discrimination or in retaliation for exercising their statutory rights.  This public policy is embodied in, *inter alia*, the California Government Code, the California Constitution, and the California Code of Regulations.

75.     As set forth more fully above, Pande's gender, request for medical leave, and complaints of discrimination and harassment were a motivating factor in, *inter alia*, the Defendant's adverse decisions related to Pande's compensation, job assignment, and termination.

76.     As a direct and proximate result of the Defendants' wrongful conduct, Pande has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

77.     In doing the things alleged herein, the Defendants' conduct was despicable, and the Defendants acted toward Pande with malice, oppression, fraud, and with willful and conscious disregard of Pande's rights, entitling her to an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment as set forth below.

### SEVENTH CAUSE OF ACTION
**Violation of Right to Privacy**
**(California Constitution Article I, Section 1)**

78.     Plaintiff incorporates by reference paragraphs 1 through 78 as though fully set forth herein.

79.     Article I, Section 1 of the California Constitution grants all California citizens the right to privacy.  Included in that protection is the right to privacy in personal medical information.

80.     The Defendants' Disability Management Program policy requiring employees who have been or will miss more than five days of work due to medical condition to apply for short term disability violates its employee's right to privacy in their medical records because a prerequisite for applying for that short term disability is the execution of  a full waiver of the employees right to privacy in their medical records. Accordingly, ChevronTexaco's policy compels the employee to waive their right to privacy as a condition of maintaining employment.

81.     When Pande informed the Defendants of her need to take a medical leave, the company instituted the policy described above and Pande was forced to waive her right to privacy in her medical records as a condition of maintaining her employment with the company.

82.     As a direct and proximate result of the Defendants' wrongful conduct, Pande has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

83.     In doing the things alleged herein, the Defendants' conduct was despicable, and the Defendants acted toward Pande with malice, oppression, fraud, and with willful and conscious disregard of Pande's rights, entitling her to an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment as set forth below

### EIGHTH CAUSE OF ACTION
**Violation of California Confidentiality of Medical Information Act**
**(California Civil Code § 56 *et seq.*)**

84.     Plaintiff incorporates by reference paragraphs 1 through 84 as though fully set forth herein.

85.     California Civil Code § 56 *et seq.* grants all California citizens the right to confidentiality of their medical records.

86.     The Defendants' Disability Management Program violates its employee's right to confidentiality in their medical records because a prerequisite for applying for that short term disability is the execution of  a full waiver of the employees right to privacy in their medical records.  Accordingly, the Defendants' policy compels the employee to waive their right to privacy as a condition of maintaining employment.

87.     When Pande informed the Defendants of her need to take a medical leave, the company instituted the policy described above and Pande was forced to waive her right to privacy in her medical records as a condition of maintaining her employment with the company.

88.    As a direct and proximate result of the Defendants' wrongful conduct, Pande has suffered damages including, but not limited to, a loss of income and benefits, and has further suffered emotional distress and other general damages.

89.    In doing the things alleged herein, the Defendants' conduct was despicable, and the Defendants acted toward Pande with malice, oppression, fraud, and with willful and conscious disregard of Pande's rights, entitling her to an award of punitive damages.

WHEREFORE, Plaintiff prays for judgment as set forth below.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for judgment as follows:

1.    For general damages according to proof;

2.    For special damages according to proof;

3.    For punitive damages;

4.    For liquidated damages pursuant to 29 U.S.C. § 2617(a)(iii);

5.    For costs of suit, including reasonable expert witness costs;

6.    For a declaration that the medical information release requirements of the Disability Management Program are unlawful;

7.    For a permanent injunction prohibiting the Defendant from implementing the medical information release requirements of the Disability Management Program in the future;

8.    For reasonable attorneys fees pursuant to California Government Code §12965(b), and 29 U.S.C. § 2617(a)(3), and California Code of Civil Procedure § 1021.5;

9.     For interest at the maximum legal rate an all sums awarded; and

10.    For such other relief as the Court deems just and proper.


Date:  April 26, 2005              McGUINN, HILLSMAN & PALEFSKY
                                   Attorneys for Plaintiff Kiran Pande



                                   By:      /s/ Noah D. Lebowitz
                                         NOAH D. LEBOWITZ


### DEMAND FOR JURY TRIAL


Plaintiff hereby demands a trial by jury on all causes of action.


Date:  April 26, 2005              McGUINN, HILLSMAN & PALEFSKY
                                   Attorneys for Plaintiff Kiran Pande



                                   By:      /s/ Noah D. Lebowitz
                                         NOAH D. LEBOWITZ

## PROOF OF SERVICE

CASE NAME:    *Pande v. Chevron Texaco*
CASE NO.:     C-04-5107-CW
COURT:       United States District Court, Northern District of California
                   Oakland Division

I am employed in the City and County of San Francisco, California; I am over the age of eighteen years and not a party to the within action; my business address is 535 Pacific Avenue, San Francisco, California 94133. On the date last written below, I served the following documents**:    FIRST AMENDED COMPLAINT**

on the parties, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below for service as designated below:

(A)    <u>By First Class Mail</u> - I caused each such envelope, with first-class postage thereon fully prepaid, to be deposited in a recognized place of deposit of the U. S. mail in San Francisco, California, for collection and mailing to the office of the addressee on the date shown herein following ordinary business practices.

(B)    <u>By Personal Service</u> - I caused each such envelope to be personally delivered to the office of the addressee by a member of the staff of this law firm on the date last written below.

(C)    <u>By Federal Express</u> - I caused each such envelope to be delivered to the Federal Express Corporation at San Francisco, California, with whom we have a direct billing account, to be delivered to the office of the addressee on the next business day.

(D)    <u>By Facsimile</u> - I caused a copy of this document to be faxed to the parties noted at the fax numbers stated below. Attached hereto is a verification of reception.

| Type of Service | Addressee | Party |
|---|---|---|
| A | Michelle Ballard Miller, Esq.<br>Miller Law Group<br>60 East Sir Francis Drake Blvd., Suite 302<br>Larkspur, CA 94939 | Defendants |

     I declare under penalty of perjury that the foregoing is true and correct. Executed this 26th day of April 2005, at San Francisco, California.


                              /s/ Roslyn Begun
                              Roslyn Begun