Michele Ballard Miller (SBN 104198)
Kerry McInerney Freeman (SBN 184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON CORPORATION (f/k/a CHEVRONTEXACO CORPORATION), a Delaware corporation, and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a CHEVRONTEXACO OVERSEAS PETROLEUM COMPANY), a division of Chevron U.S.A. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE,<br><br>            Plaintiff,<br><br>v.<br><br>CHEVRON CORPORATION (f/k/a CHEVRONTEXACO CORPORATION), a Delaware corporation, and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a CHEVRONTEXACO OVERSEAS PETROLEUM COMPANY), a division of Chevron U.S.A. Inc.,<br><br>            Defendants. | Case No. 04-5107 CW<br><br>**DECLARATION OF BRIAN SMITH IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>Date:     January 5, 2007<br>Time:    10:00 a.m.<br>Courtroom:  2<br><br>Complaint filed:  December 2, 2004<br><br>Trial Date:  April 16, 2007<br><br>Honorable Claudia Wilken |

I, BRIAN SMITH, declare:

1.     I began working with Chevron and various Chevron-related entities in 1981. Throughout much of 2002 and 2003, I worked in the Sponsors Group for Chevron

1
**DECLARATION OF BRIAN SMITH IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**
**Case No. 04-5107 CW**

Overseas Petroleum ("COP").[1]  Specifically, I was the Sponsor to the Petroleum Engineering Personnel Development Committee ("PE PDC").  I held this position until approximately October 2003.  As the Petroleum Engineering Sponsor, I had responsibility for managing the international expatriate workforce for COP, including both individuals working overseas and also individuals working for various entities in the United States.  Specifically, I assisted COP employees with the process of moving from one position to another and I worked with various organizations and business units to help them fill positions that needed to be filled.  I have personal knowledge of the matters set forth herein, except those stated on information and belief.  If called as a witness, I could competently testify thereto.

2.   During the fall and winter of 2002, I served as the Petroleum Engineering Sponsor.  I recall that Ms. Kiran Pande was in the HQ Petroleum Engineering Group at the time and that she was posting for positions in and around the time of the October 2002 PE PDC.  My recollection concerning Ms. Pande was that she was not interested in moving from the San Ramon, California area except for very specific jobs – none of which she was the best candidate for.  Because of the type of work that Ms. Pande did, this inflexibility limited her ability to find other positions.

3.   During the October 2002 PE PDC, however, Ms. Pande was selected for a position working in the South African Strategic Business Unit ("SASBU"), Block 14.  The job owner for that position was Mr. Jack Dunn.  Although I do not recall all of the discussion that occurred pertaining to filling that SASBU position, I do recall significant discussion concerning the fact that Ms. Pande's qualifications and expertise were well suited for the SASBU job.  Additionally, Mr. Dunn was very keen to have Ms. Pande in the

---

[1] "COP" has had various names over the years including ChevronTexaco Overseas Petroleum, and now, Chevron International Exploration and Production Company.  For ease of reference, however, I will refer to this entity as "COP" throughout my declaration.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

group given her credentials and job experience. Jack Dunn spoke to me on several occasions and expressed that he had spoken to Ms. Pande and was encouraging her to accept the SASBU position.

4. There was no discussion at the October 2002 PE PDC about any conflicts or problems of any sort between Ms. Pande and her supervisor at the time, Rex Mitchell. I did not mention or raise any such issues during that PDC.

5. In or about mid-2003, I was involved in the process of relocating SASBU and all the SASBU employees from San Ramon, California to Houston, Texas. Ms. Pande, along with nearly all other SASBU employees was offered her same position in Houston and was encouraged to make the move. SASBU employees were informed at the time that if they refused the relocation offer, they would not be guaranteed another position within Chevron. In other words, failure to relocate could result in termination of the employee's employment. Ms. Pande refused the relocation offer.

6. As a result of her refusal to relocate to Houston, Ms. Pande posted for several positions in late 2003. I was present during the October 2003 PE PDC. During that PDC process, I recall that Ms. Pande was considered for several positions but she was not selected for any. It is my recollection that the primary impediment to her finding another position was that she was inflexible in terms of location and did not want to move away from San Ramon, California. To the extent Ms. Pande was considered for positions during the October 2003 PE PDC, she was not the best candidate for the positions, and was accordingly, not selected for any positions. Neither her gender, nor her race /national origin, played any part in the job selection decision.

7. There was no discussion at the October 2003 PE PDC about any conflicts or problems of any sort between Ms. Pande and any of her prior supervisors. I did not mention or raise any such issues during that PDC. Indeed, as stated previously, my recollection is that Ms. Pande was discussed favorably, but that her unwillingness to relocate prevented us from finding her a position. Accordingly, Ms. Pande was not placed in a position during that PDC process.

8. Shortly after the PDC process, Paul Vita took over as the Sponsor for Petroleum Engineering. I met with him on at least one occasion to discuss Petroleum Engineering employees, and in particular to review those employees who were up for positions and were not assigned to positions during the October 2003 PE PDC. Accordingly, I did discuss Ms. Pande with Mr. Vita. At no time did I ever mention to Mr. Vita that Ms. Pande had any conflicts with her prior supervisors. Additionally, I never mentioned that Ms. Pande had made any complaints about any of her former supervisors. In fact, I was not aware at the time that Ms. Pande had made any such complaints or allegations.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 29 day of November, 2006 in Houston, Texas.

_____
Brian Smith