# EXHIBIT E

STATE OF CALIFORNIA - State and Consumer Services Agency                                          ARNOLD SCHWARZENEGGER, Governor

**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612-2512
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov




CONFIDENTIAL

RECEIVED
JAN 22 2004
TLS

January 21, 2004

Taryn Shawstad
General Manager, Human Resources
CHEVRON TEXACO CORPORATION
P.O. Box 6001
San Ramon, CA 94583-2324

RE:   E-200304-M-0962-00-prsc
      <u>PANDE/CHEVRON TEXACO CORPORATION</u>

Dear Taryn Shawstad:

### NOTICE OF FILING OF <u>AMENDED CLOSED</u> DISCRIMINATION COMPLAINT

Enclosed is a copy of an amended complaint that has been filed with the Department of Fair Employment and Housing in accordance with California Government Code sections 12960 and/or 12980. This constitutes service of the amended complaint pursuant to Government Code sections 12962 and/or 12986. The original Notice of Filing of Discrimination Complaint was served with the same case number.

You are not expected to respond to the Department regarding this amendment, as the investigation is not being reopened.

Sincerely,

Judith Miller
District Administrator

Enclosures
Certified Mail:  RETURN RECEIPT REQUESTED

DFEH-200-50 (01/00)

EXHIBIT ___E___

CHEVRON/PANDE03865

# EMPLOYMENT

**COMPLAINT OF DISCRIMINATION UNDER THE PROVISIONS OF THE CALIFORNIA FAIR EMPLOYMENT AND HOUSING ACT**

DFEH # E200304V0969-00-pse

DFEH USE ONLY

## CALIFORNIA DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

YOUR NAME (indicate Mr. or Ms.): Ms. KIRAN KUMARI PANDE
TELEPHONE NUMBER (INCLUDE AREA CODE): (925) 469-0003

ADDRESS: 7195 LAMAR LOOP

CITY/STATE/ZIP: CASTRO VALLEY, CALIFORNIA 94552
COUNTY: ALAMEDA
COUNTY CODE:

NAMED IS THE EMPLOYER, PERSON, LABOR ORGANIZATION, EMPLOYMENT AGENCY, APPRENTICESHIP COMMITTEE, OR STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME

NAME: CHEVRONTEXACO CORPORATION
TELEPHONE NUMBER (Include Area Code): (925) 842-3232

ADDRESS: 6001 BOLLINGER CANYON ROAD
DFEH USE ONLY

CITY/STATE/ZIP: SAN RAMON, CALIFORNIA 94583-2324
COUNTY: CONTRA COSTA
COUNTY CODE:

NO. OF EMPLOYEES/MEMBERS (if known): 53,000
DATE MOST RECENT OR CONTINUING DISCRIMINATION TOOK PLACE (month, day, and year): 11/18/2003
RESPONDENT CODE:

THE PARTICULARS ARE:

On ~~04/01/03, 11/04/03,~~ 11/18/03 / about 9/1/2001 - 11/18/03

- xx fired
- ___ laid off
- ___ demoted
- xx harassed
- ___ genetic characteristics testing
- ___ forced to quit
- ___ denied employment
- xx denied promotion
- xx denied transfer
- ___ denied accommodation
- ___ impermissible non-job-related inquiry
- xx other (specify) Forced to leave group, Retaliated against for reporting harassment and discrimination, Retaliated against for requesting medical disability leave
- ___ denied family or medical leave
- ___ denied pregnancy leave
- xx denied equal pay
- ___ denied right to wear pants
- ___ denied pregnancy accommodation

by Mr. REX MITCHELL (Manager), Mr. JAMES JOHNSON (Manager), Mr. JOHN F. DUNN (Manager)
Name of Person / Job Title (supervisor/manager/personnel director/etc.)

CONFIDENTIAL

because of my:
- xx sex
- ___ age
- ___ religion
- xx race/color
- xx national origin/ancestry
- xx marital status
- ___ sexual orientation
- ___ association
- xx physical disability
- ___ mental disability
- ___ cancer
- ___ genetic characteristic
- ___ other (specify)

(Circle one) filing: (protesting), participating in investigation (retaliation for)

the reason given by Ms. TARYN SHAWSTAD, GENERAL MANAGER, HUMAN RESOURCES, CHEVRONTEXACO OVERSEAS PETROLEUM INC.
Name of Person and Job Title

Was because of [please state what you believe to be reason(s)]

On-going retaliation for reporting harassment and discrimination based on race, gender, and national origin. Harassment and retaliation for requesting medical leave protected under FMLA and CFRA. Harassment and discrimination based on marital status.

See Attachment 1: Amendment to DFEH Complaint of Kiran Pande

I wish to pursue this matter in court. I hereby request that the Department of Fair Employment and Housing provide a right-to-sue notice. I understand that if I want a federal notice of right-to-sue, I must visit the U.S. Equal Employment Opportunity Commission (EEOC) to file a complaint within 30 days of receipt of the DFEH "Notice of Case Closure," or within 300 days of the alleged discriminatory act, whichever is earlier.

I have not been coerced into making this request, nor do I make it based on fear of retaliation if I do not do so. I understand it is the Department of Fair Employment and Housing's policy to not process or reopen a complaint once the complaint has been closed on the basis of "Complainant Elected Court Action."

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct of my own knowledge except as to matters stated on my information and belief, and as to those matters I believe it to be true.

Dated December 8, 2003

At Oakland, California
City

COMPLAINANT'S SIGNATURE

RECEIVED DEC 8 2003 Department of Fair Employment and Housing

RECEIVED JAN 7 2004 Department of Fair Employment and Housing

DATE FILED: 12/08/03
AMENDED: 01/07/04

DFEH-300-03 (07/01)
DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING

STATE OF CALIFORNIA

CHEVRON/PANDE03866

AMENDMENT TO DFEH COMPLAINT OF KIRAN PANDE
DFEH COMPLAINT NUMBERS:
    E-200304-M-0962-00-prsc
    E-200304-M-0963-00-prsc
    E-200304-M-0964-00-prsc
    E-200304-M-0964-01-prsc
    E-200304-M-0964-02-prsc
    E-200304-M-0964-03-prsc

September 27, 2001 (Houston, TX) Promised promotion in April 1, 2002
Rex Mitchell (Manager of COPI Planning Group) promises to promote me in April 2002 from grade level 24 to grade level 25.

October 31, 2001 (San Ramon, CA) Harassing conduct towards K. Pande
Rex Mitchell is verbally abusive and accusatory to me when he presents me my job offer with the newly merged company. He claims that everyone in our group has complained to him about me. Upon confronting him, Rex backed off of his claims and indicated that he didn't feel like I had showed him sufficient gratitude for being offered the premier position in his group. He says that he got twisted off with me and he was glad that we had cleared the air. He said that I was the top performer in the group and that he had loaded me up more than anyone else in the group. He said that he considered me the highest potential employee of all the members of his group.

The job offer is for the position of "Portfolio Analyst". This was a newly created position during the merger that combined the roles and responsibilities of three high level employees (Brian Putt, Kevin Regan, and Bob Dorrough). Brian Putt and Kevin Regan transferred to new positions in other groups and Bob Dorrough was offered a severance package. Brian Putt was a grade level 26, Kevin Regan was a grade level 26, and Bob Dorrough was a grade level 24. I was offered this job as a grade level 24 but Rex again promised to promote me in April 2002.

January 24, 2002 (San Ramon, CA) Harassing conduct towards K. Pande
Rex Mitchell is verbally abusive and unjustifiably denigrates my work.

February 26, 2002 (San Ramon, CA) Harassing conduct towards K. Pande
Rex Mitchell trivializes my work on portfolio modeling in 2001 and unjustifiably denigrates my contribution to the group. Rex appears to be back-tracking on his promise to promote me on April 1, 2002.

February 27, 2002 (San Ramon, CA) Harassing conduct towards K. Pande
Rex Mitchell is verbally abusive and denigrates me and unjustifiably accuses me of not doing work that he has assigned. Kevin Connelly (member of planning group) witnessed this conversation since it occurred outside his office. Iris Owens (administrative assistant) talked to me afterwards and told me that her view was that Rex was harassing me and encouraged me to report Rex's abusive behavior to James (Jay) Johnson (Rex's

Amendment to DFEH Complaint of Kiran Pande                                              1

CHEVRON/PANDE03867

new manager). Iris indicated that she herself had reported Rex's behavior towards herself to Jay Johnson. I made an appointment to meet with Jay Johnson for March 4, 2002.

**March 4, 2002 (San Ramon, CA) Retaliation for reporting harassment**
I report Rex's abusive behavior to Jay Johnson. Jay tells me I have three choices: "I can leave the company; I can leave the group; or I can stay for 12-18 months and get along with Rex." He then says that he met with Rex on Friday, March 1st to ask why I had made an appointment to see Jay. He says that Rex says I am a poor performer and there are significant performance issues.

**March 14, 2002 (San Ramon, CA) Retaliation for reporting harassment**
Meet with Jay Johnson and Rex Mitchell to discuss performance issues and what option I am going to elect. Jay reiterates his objective for the meeting- he wants a decision on: (1) whether I want to stay in the group and commit for 12-18 months; (2) leave the group; (3) leave the company. Jay indicates that he doesn't think the third option is desirable for the company or for me. I indicate that it is important for me to understand what Rex had brought up about performance issues since this is the first time I had heard that Rex had an issue with my performance. Jay asked Rex to discuss with me. Rex presents a verbal barrage and produces a stack of six e-mails dated January 10, January 11, January 22, January 29, February 6, February 12, 2002 and paints a picture that I have completely ignored and refused to do the work listed in these e-mails and this work was of a very critical and important nature. I try to respond to specific e-mails as he brings them up and Jay tells me that I cannot speak until Rex is finished with his discussion. Rex's representation was very unfair and purposely biased to try and support his previous statements about performance issues. When I returned from vacation on January 22nd, I went through my e-mail and found the deadline for those requests had already passed (January 10th and January 11th e-mail had information requests for the week that I was on vacation). I stated that I couldn't understand why Rex would send me these requests when I had discussed my vacation plans with him and he was well aware that I would not be available that week. Jay dismissed this explanation and stated that there were lots of other examples. I stated that I had tried to talk to Rex about some of the other requests but Rex was never available to discuss them with me. Jay then indicated that there seemed to be overwhelming evidence that I wasn't doing work that was assigned. Jay indicated that it was my responsibility to communicate with Rex on work assignments. I informed Jay that I didn't agree with Rex's assessment of my performance. I asked Rex if his characterization of my performance was based on feedback from customers and business partners or his own view. Rex responded it was his own view and acknowledged that he hadn't talked to any of my customers. Rex also said that he had not lied in anything he had described on my performance. I told Jay that based on this discussion and the three choices that Jay was providing me, that I chose the option of leaving the group since Rex was clearly not being truthful. Jay informed Rex and me that the forward plan was to document my 2001 PMP and open a 2002 PMP session with specific performance agreements. Rex indicated that he would be on vacation the next week and Jay said to do it when he returned from vacation. Jay indicated that he wanted the performance rating to reflect the full year (not just the 4th quarter).

April 1, 2002 – Met with Rex Mitchell from 9 – 11:40 a.m. to discuss PMP.
Rex admitted that he didn't understand the price forecasting responsibilities and time commitment required. Rex said that my PMP documented an impressive list of activities throughout the year and he did not dispute any of the assignments and that he had a vivid memory of each assignment. I informed him that I considered his actions and behavior harassment. He looked visibly shaken and did not respond. He said that somehow he had gotten twisted off with me. He indicated that he wanted more time to review the document and make his comments. Although, Rex already knew my performance rating and my salary action at this time (because salary action goes into effect on April 1st, 2002) he did not share either piece of feedback with me. In fact, I was never told my salary action for 2002 even after repeatedly telling Jay Johnson that I had never been told my salary action and had to figure it out from my paycheck. It is company policy for the supervisor to inform the employee of the salary action (the structure component and the merit component) prior to the April 15th paycheck being received by the employee directly.

April 17, 2002 Discrimination based on race and gender of performance appraisal and salary action
Rex Mitchell returns the PMP form to me with his comments and ranking me as "Achieves". He had ranked all the men in the group "exceptional". Vicki Thompson had transferred into the group in October 2001. Vicki and I were the only females and both of us were given ranking of "Achieves" and lower raises than the men in the group. We were both given smaller merit increases than men in the group. I was denied the promotion that had been promised to me.



April 19th 2002 Failure to follow company process on PMP document
I drop off a hard copy of the document with my comments and a note asking Rex to sign, send to Jay for signature, and then send a copy to me. Rex never replied.

April 24, 2002 Meeting with Jay Johnson with CTOP Ombuds (Gary Yamashita) and Vicki Thompson (Reporting of discrimination and harassment based on race and gender, concerns about retaliation and refusal to investigate complaint)
Gary met with Jay alone for 30 minutes and then Vicki and I joined them for about 1.5 hours. After the meeting, Gary tells Vicki and me that he is surprised that Jay did not open an investigation because he is required to do so legally when legally protected rights are brought up. We brought up "hostile work environment", biased performance evaluations and raises, harassment and discrimination based on race and gender, and retaliation. Jay dismissed all these concerns. Vicki also complained of hostile behavior from Rex and fear that she was being retaliated against for being associated with me. Jay dismissed her concerns and indicated that he had already decided to move her to a different group. I requested to be reassigned to that same group and keep my same work responsibilities. Jay refused. I complained that Rex was giving me administrative tasks to do that are secretarial work and not commensurate with my position level. Jay responds that Rex is doing this because he doesn't feel like he can give me critical work to do because I am unreliable as demonstrated by the e-mails he had provided in our

Amendment to DFEH Complaint of Kiran Pande                    3

meeting on March 14th. I again request a copy of those e-mails and dispute Rex's characterization of my work and response to critical issues.

May 9, 2002 Refusal to acknowledge retaliation in progress and investigate complaint
Complained to Jay of retaliation and being excluded from key meetings by Rex. Jay defends Rex and tells me that I was invited to the meeting in question. When I show him a copy of the meeting notice where it is clear that my name is not listed as being invited, he is silent and does not comment.

Around Mid-May 2002 Support of Rex's continued retaliation and harassing conduct and refusal to investigate complaint
I discussed Rex's continued retaliation with Jay. Jay stated that he needed Rex right now to complete the strategic plan because Rex knew how to get the work done and Jay was new in his position. He told me that he wanted to wait until we were done with the strategic update to discuss further.

May 29, 2002 Support of Rex's continued retaliation and harassing conduct and continued refusal to investigate complaint
In a conversation with Jay he says he is aware of the remark that Rex made about the "taxi drivers" but has not yet confronted Rex with this. He says he really needs Rex right now and he doesn't want to upset his productivity. Jay warns me that I should not use the term "harassment" because he does not think that what I have described should be considered harassment in the legal sense of the word. He says that harassment is a strong word with legal consequences and I should not be using it. I reply, "racist" is also a strong word and Rex's behavior may be construed as such. Jay says that Rex was under a lot of stress and that stress played a big role in his behavior.



June 3, 2002 Example of retaliation for reporting harassment and discrimination
Rex sends form on career development plans for high potential employees to Kemal Anbarci and Matt Palmer. I do not receive a form and I believe that Rex removed me from the high potential employee list as retaliation for reporting his harassing conduct. Rex had previously told me that I was a high potential employee.

Mid-June 2002 Continued refusal to investigate complaint.
Jay indicates that he wants me to make the PMP document acceptable to everyone and move forward. He suggests seeing EAP counselor to help me move on and that EAP is not just for drunks.

June 21, 2002 Continued refusal to investigate
Received by physical mail from Jay, a hard copy of the e-mails that Rex had presented on March 14th as examples of me not following through on critical tasks. I had requested this document numerous times starting on March 14th.

June – December 2002 Retaliation for reporting harassment and discrimination
Rex isolates me from the rest of the group by not inviting me to meetings and not giving me projects that normally would have been associated with my position.

Amendment to DFEH Complaint of Kiran Pande          4

June 24, 2002
I inform Rex that I am planning on taking a house-hunting trip as per the transfer policy provisions and want to schedule time for house-hunting July 22-26, 2002. On June 25, 2002 Rex informs me that he is denying my request for a house-hunting trip.

June 26, 2002
Rex informs me that the decision to deny me a house-hunting trip was based on discussion with Larry Sims of CTOP HR and Jay Johnson.

July 11, 2002
I elevated the house-hunting trip issue to Taryn Shawstad GM of CTOP HR. She replied on July 16th that she has advised Rex that I am entitled to a house-hunting trip and that Rex was going to follow up with me. On July 25, 2002 I sent another e-mail to Taryn Shawstad and indicated that Rex still had not followed up with me. On August 8, 2002 Taryn left me a voice-mail indicating that she had left Rex another message and asked him to follow up with me. August 13th Rex sends e-mail indicating that he had just been told by Taryn on August 13th that I should be eligible for a house-hunting trip.

August 28, 2002
Send e-mail request to Rex to attend a course on Negotiations at Stanford executive education and indicate I need a response before September 6, 2002 as that is the deadline to apply for the course. Rex never replies prior to the application deadline.

September 20, 2002 Evidence of retaliation for reporting harassment and discrimination
Receive e-mail from Vicki Thompson indicating that Rex is indeed bad-mouthing me. She received an e-mail from Tim Magner, Managing Director of Congo in Southern Africa Business Unit (SABU), indicating that Rex was making very damaging comments about me to Fernando Gaggino when he learned of SABU's interest in offering me a position in their group. Tim described Rex's comments as "Career Killers".

September 24, 2002 Additional reporting of harassment, discrimination, and retaliation
I send e-mail to Ali Moshiri (Managing Director, Latin America Business Unit, CTOP) requesting he speak up for me and forwarding Tim Magner's e-mail. I tell Ali that I have discussed Rex's racist comments and hostile attitude towards women and minorities with Jay Johnson to no avail.

September 25, 2002
E-mail from Rex indicating the strengths and weaknesses he would emphasize for a position that he was recommending. There is no mention of team-work or "pouting" in this note.

September 25, 2002
I send another e-mail to Rex requesting approval to attend the Stanford Negotiations program since I have gone ahead and applied and have been accepted into the program. He finally replies with his approval.

Amendment to DFEH Complaint of Kiran Pande                                          5

CHEVRON/PANDE03871

October 4, 2002
Informed by Kelly Hartshorn that I was selected for the Block 14 simulation engineer job in John (Jack) Dunn's group.

October 14, 2002 Retaliation for reporting harassment and discrimination.
I talked to Jay Johnson and indicated concern that Kelly Hartshorn had informed me that I was in a "must move" situation and that this had never been communicated to me previously. Jay indicated that this was the case because I didn't get along with Rex and he was my supervisor and Jay was concerned about the work environment for the rest of the team.

October 14, 2002 Retaliation for reporting harassment and discrimination – being forced to move to less desirable job.
I met with Jay and Rex. I was told by Jay that if Jay gave me the offer right then and I didn't sign it everything would be over and I would be out on the street.

October 16, 2002
Kelly Hartshorn informs Jack Dunn that I will accept the Block 14 job if I am not selected for the Corporate Planning job.



October 28, 2002
Receive e-mail from Mary Parke informing me that she will be taking my job.

November 26, 2002
Phone interview as one of 4 short list candidates for Corporate Planning position.

December 3, 2002
Receive news that I was not selected for Corporate planning position and Kelly Hartshorn proceeds to offer me position in John Dunn's group to start on December 9, 2002. Rex had talked to Des King the hiring manager a day or two after my phone interview.

December 4, 2002 Continued refusal to acknowledge and address retaliation claims.
I talk to Jay and tell him that I felt I had no choice but to leave the group because of Rex's ongoing retaliation and bring up a couple of specific examples. I bring up retaliation by Rex in terms of e-mail from Tim Magner. Rex's refusal to follow-through on HR's recommendation on house-hunting trip. Rex leaving me out of meetings and taking away critical work assignments. Jay defends Rex on each one and makes excuses for Rex's behavior. Jay specifically says that he had in writing from Larry Sims the advice not to give a house-hunting trip. Jay said that he knew that I wouldn't believe him but that Rex had done his best to try and find me a good job.

December 9, 2002 Transferred to John Dunn's group (Forced to leave planning group for a less desirable job)

Amendment to DFEH Complaint of Kiran Pande     6

CHEVRON/PANDE03872

February 2003 Example of Discriminatory treatment relative to me
The person who had been in the planning group the longest, Matt Palmer, was "taken care of" and given a management level position in the global gas business even though he had no prior gas experience. Matt had indicated that he had mobility restrictions for the next five years and they created a position for him in San Ramon to accommodate his career development and mobility restrictions.

April 1, 2003 Discrimination based on race and gender and retaliation for complaint. Denial of merit component in salary treatment.
I receive pay raise from John Dunn. He informs me that I am just getting structure and no merit increase. I told Jack that this is the first time in my career that I have only received a structure increase with no merit component and I believe it is retaliation by Rex Mitchell for my reporting harassment. Jack indicates that my pay raise was handled in a very unusual manner. Jack had requested input on my performance from Rex and Rex refused to respond to Jack's e-mails and voice-mails. Jack finally asked Kelly Hartshorn to intercede and try and get input on my performance so he could rank me and give me a raise. Jack indicated that Kelly had only been able to get a salary recommendation from Rex and that it seemed that my salary treatment had been handled in an unusual manner.

January – October 2003 Discrimination based on marital status
Jack Dunn repeatedly makes references to my marital status (single) in the context of ability to work long hours and overtime, need for information on the move to Houston saying that since I am single it shouldn't affect me, and stating that if he was single like me then he would have also turned down the move to Houston.

June 11, 2003 San Ramon Harassing conduct by Jack Dunn and discriminatory treatment relative to Caucasian male (Michael Clark) on finding an appropriate job after refusing to move to Houston
Jack Dunn harassing conduct starts to escalate: "Who made you the spokesman for the group (referring to 4/22/03 e-mail)? What gave you the right to suggest changing the timing on the RAM review? I don't want you to poison the group. Tayo has a bright future with the company, I don't want you to taint him. Mike is a good hand and one of the boys, we are going to take care of him. Randy is happy because he is getting 4 weeks per year severance pay and he is a loner anyways. Everyone in the group likes you and looks up to you. You are a thought leader. I am not accusing you, I am warning you". "It is completely up to me whether you get a job and the duration of your assignment. I am in sole control of your employment situation. Mark Krolow is going to follow my recommendations."

June 23, 2003 Milan, Italy, Sexual harassment by Jack Dunn in view of previous threats on his control over my employment after turning down move to Houston
Around 7:30 p.m. Jack, Dale, and I are riding up in elevator together. Jack and I get out of the elevator together (our rooms are on the same floor). This is the first time I realized that Jack was on my floor. My room is at the end of the hallway and Jack's room is mid-way down the hall. As we are walking past Jack's room, Jack stops and says why don't

you come in here for a minute." I respond that I am quite exhausted from the day full of meetings and I am just going to my room to rest." Jack insists that I step inside his room to talk a bit. I reluctantly follow him into his room. I stay at the end of the entrance hallway just before the bedroom. Jack proceeds to sit down on his bed. I have my arms crossed and I step back a step. Jack starts asking me what I thought of the meeting that day. At the same time, he is taking off his coat, unbuttoning his shirt, and proceeds to lie back (lying back against the headboard) on his bed. I am feeling extremely uncomfortable. I remark that I better head back to my room. He replies that I can have a seat and points to the bed. I respond that I am really tired and am heading to my room. He again suggests that I have a seat and points to a spot next to him on his bed. I repeat that I am exhausted and that I am going to go back to my room. I turn to go. He then jumps up and says that he is going to take a shower anyway.

July – October, 2003 Continuing harassing conduct
Numerous occasions where Jack unjustifiably attacks me and my contributions to the project. Several incidents were witnessed by project team members.

September 2003 Evidence of intent to block job selection
Jack asks me what I am going to do when I don't have a job after all the job selection processes are complete. I reply that I firmly believe that I will be selected for a job because of my qualifications and experience and that I would find it hard to believe that CT would not select me for a job given my track record, experience, and qualifications.



October 29, 2003 Inappropriate questioning as to the nature of my illness and need for medical leave
Jack asks me about cancer and chemotherapy upon my disclosing my need for a medical leave.

November 4, 2003 Verbal attacks and harassing conduct in retaliation for request for medical leave
Jack Dunn is extremely verbally abusive towards me in retaliation for my requesting a medical leave during a group project meeting. Several people witness this behavior.

November 4, 2003 Discrimination based on race and gender
I ask Michael (Mike) Clark if he has found a job yet. Mike replies no but that he has been told by Jack and Jack's manager (Mark Krolow) that they are going to take care of him and for him not to worry. There are a number of witnesses on this subject since it was well known that Mike was being "taken care of".

November 4 – 5, 2003 Reporting of Jack's Harassing conduct towards me on 11/4/03 to Jack Dunn and to CTOP management in Luanda, Angola
Multiple project team members present at the November 4th meeting report Jack's harassing conduct towards me to Jack and to CTOP management in Luanda, Angola.

CHEVRON/PANDE03874

<u>November 17, 2003 Retaliation for Jack's harassing conduct being independently reported to CTOP management and my request for medical leave</u>
Jack calls me at home while I am on medical leave to tell me that now there is no longer any useful work for me and that he has worked with HR and an employment lawyer to get around FMLA. He states that he knows I would have liked to hold on to my benefits, but it looks like they are going to end at the end of the year. He apologizes for his behavior on 11/4/03.

<u>November 18, 2003 Unlawful termination</u>
Letter dated November 18, 2002 issued by Taryn Shawstad (General Manager, CTOP Human Resources) claiming that I have "resigned from the company" and "voluntary termination" and issuing a termination date of December 31, 2003.

CONFIDENTIAL

Amendment to DFEH Complaint of Kiran Pande                                    9

CHEVRON/PANDE03875

STATE OF CALIFORNIA - State and Consumer Services Agency                                    GRAY DAVIS, Governor
**DEPARTMENT OF FAIR EMPLOYMENT & HOUSING**
1515 Clay Street, Suite 701, Oakland, CA 94612-2512
(510) 622-2941  TTY (800) 700-2320  Fax (510) 622-2951
www.dfeh.ca.gov





# PRIVACY NOTIFICATION

The Information Practices Act of 1977 requires this Department to provide the following information to persons who are asked by the Department of Fair Employment and Housing (DFEH) to supply information:

- The principal purpose for requesting information is to receive, investigate, and resolve complaints of discrimination.

- California Government Code section 12900, ex seq. and California Civil Code section 51 et seq. require persons seeking to file complaints with DFEH to provide sufficient information for the Department to establish jurisdiction and conduct an investigation of the allegations.

- The submission of requested information by those against whom a complaint is filed (respondent) is voluntary. However, all respondents should be aware that DFEH has the authority to subpoena those records and witnesses it deems necessary to complete the investigation.

- As authorized by law, information furnished may be transferred to the U.S. Equal Employment Opportunity Commission, the National Labor Relations Board, the U.S. Department of Labor, the U.S. Department of Housing and Urban Development, the U.S. Department of Health and Human Services, the U.S. Department of Education, the U.S. Department of Justice, or any branch of the California State Government, or any other local or Federal agency with similar jurisdiction.

- Information furnished would also be released pursuant to a valid subpoena.

- For the purpose of seeking a determination on a complaint, the information provided may be disclosed to members of the California Fair Employment and Housing Commission and an Administrative Law Judge at a public hearing.

- As permitted by the Information Practices Act, unless compelled by a subpoena, we do not release information in complaint files relating to open cases other than non-personal information on the complaint form itself. Once a complaint is closed, individuals have the right of access to records containing personal information about them which are maintained by the Department of Fair Employment and Housing. Non-personal information, including the allegations in the complaint document itself, are disclosable to the public when a case has been closed. The official responsible for maintaining the information is the District Administrator of the office where the complaint was filed.

DFEH-100-02 (04/97)

CHEVRON/PANDE03876