1  Michele Ballard Miller (CSBN 104198)
   Kerry McInerney Freeman (CSBN 184764)
2  Lisa C. Hamasaki (CSBN 197628)
   MILLER LAW GROUP
3  A Professional Corporation
   60 E. Sir Francis Drake Blvd., Ste. 302
4  Larkspur, CA 94939
   Tel. (415) 464-4300
5  Fax (415) 464-4336

6  Attorneys for Defendants CHEVRON INTERNATIONAL
   EXPLORATION AND PRODUCTION (formerly known
7  as CHEVRONTEXACO OVERSEAS PETROLEUM and
   improperly sued as CHEVRONTEXACO OVERSEAS
8  PETROLEUM PACIFIC COMPANY) AND CHEVRON
   CORPORATION (formerly known as CHEVRONTEXACO
9  CORPORATION)

10

11                    UNITED STATES DISTRICT COURT

12                  NORTHERN DISTRICT OF CALIFORNIA

13

14  KIRAN PANDE,                          Case No.: C 04 5107 CW

15          Plaintiff,
                                          **DEFENDANTS' OBJECTIONS TO**
16  v.                                    **EVIDENCE CITED IN PLAINTIFF'S**
                                          **MEMORANDUM OF POINTS AND**
17  CHEVRON CORPORATION (f/k/a            **AUTHORITIES IN OPPOSITION TO**
    CHEVRONTEXACO CORPORATION), a         **MOTION FOR SUMMARY JUDGMENT**
18  Delaware corporation, and CHEVRON
    INTERNATIONAL EXPLORATION &           Date:    January 5, 2007
19  PRODUCTION (f/k/a CHEVRON TEXACO      Time:    10:00 a.m.
    OVERSEAS PETROLEUM COMPANY), a        Courtroom: 2
20  division of Chevron U.S.A. Inc.
                                          Complaint filed:  December 2, 2004
21          Defendants.
                                          Trial Date:  April 16, 2007
22
                                          Honorable Claudia Wilken
23

24

25

26

27

28
                                        1
_____
**DEFENDANTS' OBJECTIONS TO EVIDENCE CITED BY PLAINTIFF IN MEMORANDUM OF POINTS AND**
**AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. C 04 5107 CW**

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1    Defendants CHEVRON INTERNATIONAL EXPLORATION AND

2  PRODUCTION COMPANY (formerly known as CHEVRONTEXACO OVERSEAS

3  PETROLEUM and improperly sued as CHEVRONTEXACO OVERSEAS PETROLEUM

4  PACIFIC COMPANY) and CHEVRON CORPORATION (formerly known as

5  CHEVRONTEXACO CORPORATION) hereby object to and move to strike the following

6  evidence cited by Plaintiff Kiran Pande in her Memorandum of Points and Authorities In

7  Opposition to Defendants' Motion For Summary Judgment set for hearing before this Court

8  on January 5, 2007.

9

10  **1.    Page 3, lines 14-15: "Pande also told Johnson that she had learned about a
11  recent occasion where Mitchell referred to a group of people of East Indian
    origin as "towel heads."**

12

| EVIDENCE CITED BY PLAINTIFF: | DEFENDANTS' OBJECTION: |
|---|---|
| Answer ¶ 13; *but see* Johnson Declaration ¶ 5. | Defendants object to Pande's characterization of the testimony contained in James Johnson's declaration at paragraph 5 as Mr. Johnson's declaration does not contradict this assertion or any admission set forth in Defendants' Answer to Pande's Second Amended Complaint. |

18  **2.    Page 3, line 17:  "Johnson did nothing to investigate Pande's complaints."**

19

| EVIDENCE CITED BY PLAINTIFF: | DEFENDANTS' OBJECTION: |
|---|---|
| Pande Decl. ¶ 10. | *See* Defendants' Objections to the Declaration of Kiran Pande ¶ 20.<br><br>Defendants object to this statement on the grounds that it is argumentative and lacks foundation, that the declarant lacks personal knowledge of the matter stated, and that it constitutes inadmissible lay opinion testimony.  Defendants also object on the grounds that this statement is conclusory, rather than factual.  This statement is pure conjecture and speculation, and is irrelevant. |

3.    **Page 3, footnote 2:** **"This document is Pande's performance review for the year 1999. The supervisor comments in the document incorporate comments from Jean Camy, among others. If the Court does not strike Mr. Camy's declaration, it should look with a critical eye to what Camy states in comparison with the all-around glowing comments reflected in this 1999 performance review, including positive comments about Pande's communication skills and commitment to teamwork."**

**EVIDENCE CITED BY PLAINTIFF:**

Camy Decl. ¶ 2. Pande Decl. Exh. A pp. 24, 27.

**DEFENDANTS' OBJECTION:**

*See* Defendants' Objections to the Declaration of Kiran Pande ¶¶ 13-14.

As set forth in greater detail therein, Defendants object to Pande's unsupported assertion that the document attached as Exhibit A to her declaration contains the comments of Mr. Jean Pierre Camy. Pande has laid no foundation for this assertion. Further, the document attached to Pande's Declaration is not signed by Mr. Camy (or by any purported supervisor of Ms. Pande). Finally, the document is not bates labeled, and there is no indication that it has been previously produced by Pande in this litigation.

4.    **Page 4, lines 14-15:** **"Mitchell attempted to minimize his behavior, attributing it to stress."**

**EVIDENCE CITED BY PLAINTIFF:**

Answer ¶ 16.

**DEFENDANTS' OBJECTION:**

Pande's purported reliance on Defendants' Answer in support of this statement is misleading, argumentative, and inaccurate. Defendants' Answer admits only that Pande told Mitchell that she felt his behavior was "inappropriate" and that "Mitchell attributed his behavior to stress. (Answer ¶ 16) Contrary to Pande's argument, there is no admission that Pande complained that Mitchell's conduct "constituted harassment" or that Mitchell in any way attempted to minimize his behavior.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1

2

Further, this statement is irrelevant and immaterial to this motion

3

4

5

**5.    Page 2, lines 24-28:  "Pande and the only other female in the group, Victoria Thompson ("Thompson") were ranked lower than the men in the group and received lower raises and merit increases than the men in the group."**

6

7

**EVIDENCE CITED BY PLAINTIFF:**

**DEFENDANTS' OBJECTION:**

8

9

Pande Depo. 246:9-21[1]; Thompson Dec. ¶ 4.

10

(Pande Depo. 246:9-21)

11

12

"Do you know of the other employees that Rex Mitchell rated for 2001, do you know if any were rated one?

13

14

A. Yes, I believe that most of the men, if not all of the men, in the group were rated one.

15

16

Q. How do you know that?  Or do you just believe that?

17

18

19

20

21

A. I had asked Dan Wallem what his rating was, and he told me that he was ranked exceptional.  And I had asked Kemal Ambarci what his rating was, and he said he was ranked exceptional.  And I had not asked Matt Palmer, but I had believed that his rating was likely also exceptional."

Defendants object to Pande's unsupported, conclusory and argumentative assertion that she and Victoria Thompson were ranked lower and received lower salary increases than the men in the group.

As Pande's deposition testimony makes clear, Pande lacks personal knowledge as to the ratings or salary actions impacting the other employees working under Rex Mitchell at the time.

Further, Mitchell's Supplemental Declaration makes clear that Pande's assertions in this regard are not only speculative, but are also INCORRECT.  Other men working under Mitchell received the same rating as Pande and Thompson and NEITHER Plaintiff nor Thompson received the lowest salary increase in the group.  Supp. Mitchell Decl. ¶¶ 2-3.

*See also* Defendants' Objections to the Declaration of Victoria Thompson at ¶¶ 2-12.

22

23

24

**6.    Page 5, lines 9-10:  "On April 24, 2002, Yamashita held what was supposed to be an investigatory meeting."**

25

26

27

28

---

[1] For ease of reference, Defendants have inserted excerpts of the various deposition transcripts cited by Plaintiff in his Opposition brief. The relevant pages from the transcripts are attached to the Declaration of Noah D. Lebowitz In Support of Plaintiff's Opposition to Defendants' Motion For Summary Judgment, Or Alternatively, Partial Summary Judgment.  Reference to deposition excerpts in this document is not intended to, and in no way waives any objections Defendants may have as to the admissibility of such deposition testimony for use in this action.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

DEFENDANTS' OBJECTIONS TO EVIDENCE CITED BY PLAINTIFF IN MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. C 04 5107 CW

| EVIDENCE CITED BY PLAINTIFF: | DEFENDANTS' OBJECTION: |
|---|---|

**EVIDENCE CITED BY PLAINTIFF:**

Answer ¶ 19; Thompson Decl. ¶ 11; Pande Depo. 272:22-273:5.

(Pande Depo. 272:22-273:5)

Who was going to be at that meeting on the -- actually, it would have been on the 25th of April?

A.    That meeting was scheduled where Gary would go in and talk to James Johnson and for -- first, and then Vicki and I would come in and join them.

So the four participants in total would be Gary Yamashita, James Johnson and Vicki Thompson and myself."

**DEFENDANTS' OBJECTION:**

Defendants object to the characterization of the April 24, 2002 meeting on the grounds that it is unsupported, argumentative and conclusory.  Plaintiff has failed to cite any admissible evidence addressing the purported intent or purpose of such meeting.

Further, this statement is irrelevant and immaterial to this motion.

**7.    Page 5, lines 13-15:  "During that meeting, both Pande's and Thompson's complaints were given no credence by Johnson."**

**EVIDENCE CITED BY PLAINTIFF:**

Thompson Decl. ¶ 11-18; Pande Depo. 277:2-22.

(Pande Depo. 277:2-22)

Q. Well, when the four of you met on April 25th, did you discuss each of these bullet points?

A. When the four of us met, as I mentioned, Gary and Jay Johnson met prior to Vicki and I coming in to meet, and when Vicki and I came in to meet with Jay, we didn't end up going through this bullet point list.

Q. You did not?

A. That was the way that Jay conducted

**DEFENDANTS' OBJECTION:**

Defendants object to this statement on the grounds that it is argumentative and lacks foundation, that the declarants lack personal knowledge of the matter stated, and that it constitutes inadmissible lay opinion testimony.  Significantly, neither Pande nor Thompson have any personal knowledge relating to the mindset of Johnson. Defendants also object on the grounds that this statement is conclusory, rather than factual.  This statement is pure conjecture and speculation, and is irrelevant.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**DEFENDANTS' OBJECTIONS TO EVIDENCE CITED BY PLAINTIFF IN MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT**
**Case No. C 04 5107 CW**

1  the conversation.

2  Q.  Okay.  What did you discuss?

3  A.  Jay spent most of the conversation
4  rebutting my concerns about Rex's
   treatment of me and Rex's evaluation of
5  my performance.  And it wasn't until the
   very end of the conversation or a very
6  long discussion where Jay Johnson
   focused specifically on me that he turned
7  to address Vicki.

8  So he didn't address us.  Although Vicki
9  was sitting at the table, he separated our
   concerns and addressed them
10  separately.

11

12  **8.    Page 5, lines 15-17:  "In fact, the meeting turned into an attack on Pande's**
   **performance, whereby Johnson levied false accusations about Pande's**
13  **performance."**

14  EVIDENCE CITED BY PLAINTIFF:          **DEFENDANTS' OBJECTION:**

15  Answer ¶ 19; Thompson Decl. ¶ 11-18;    Defendants object on the basis that the
16  Pande Depo. 277:2-22.                   statement is purely conclusory and
                                           speculative and Pande has provided no
17  (Pande Depo. 277:2-22)                  admissible evidentiary support for this
                                           statement.  Pande's purported reliance on
18  Q.  Well, when the four of you met on    Defendants' Answer in support of this
19  April 25th, did you discuss each of these  statement is misleading, argumentative, and
   bullet points?                          inaccurate.  Defendants' Answer makes no
20                                          mention of any purported "attack on Pande's
21  A.    When the four of us met, as I      performance" or upon alleged "false
   mentioned, Gary and Jay Johnson met     accusations" about Pande's performance.
22  prior to Vicki and I coming in to meet,  Likewise, neither Pande's deposition
   and when Vicki and I came in to meet    testimony nor Thompson's declaration
23  with Jay, we didn't end up going through  mentions any "false accusations." Further,
   this bullet point list.                 Thompson lacks personal knowledge about
24                                          Pande's performance and any purported
   Q.  You did not?                         testimony on the subject constitutes
25                                          inadmissible lay opinion testimony.  *See also*
26  A.  That was the way that Jay conducted  Objections to Thompson Declaration at ¶¶
   the conversation.                       26-47.  This statement is also irrelevant and
27                                          immaterial to this motion.
   Q.  Okay.  What did you discuss?
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1 | A.   Jay spent most of the conversation rebutting my concerns about Rex's treatment of me and Rex's evaluation of
2
3 | my performance.  And it wasn't until the very end of the conversation or a very
4 | long discussion where Jay Johnson focused specifically on me that he turned
5 | to address Vicki.

6 | So he didn't address us.  Although Vicki was sitting at the table, he separated our
7 | concerns and addressed them separately.

8

9

**9.    Page 5, lines 17-20:  "Pande specifically expressed her concern about Mitchell's use of racial and ethnic slurs to refer to people of her ethnic background, but received no feedback or assurances of remedial action."**

10

11

12 | <u>**EVIDENCE CITED BY PLAINTIFF:**</u> | <u>**DEFENDANTS' OBJECTION:**</u>

13 | Answer ¶ 19; Thompson Decl. ¶ 11-18; Pande Depo. 277:24-278:8.

14 | Defendants object on the basis that Pande's statement is conclusory, speculative and argumentative.  Further Pande has provided no admissible evidentiary support for the proposition that Mitchell has ever used any racial or ethnic slurs to refer to people of her ethnic background.  To the contrary, Pande admits that she did not hear any such comments. (Pande 285:8-14)  Further, to the extent this statement purports to suggest that Mitchell used racial or ethnic slurs, it is inadmissible hearsay.

15 | (Pande Depo. 277:24-278:8)

16 | And did you tell Jay Johnson at this meeting that you thought you'd been
17 | treated unfairly by Rex Mitchell?

18 | A. I told Jay Johnson that I thought that
19 | Rex Mitchell had treated me differently because I was a woman and a minority
20 | and that Rex had a habit of making disparaging comments about women
21 | and minorities.    And I went through several examples where Rex had made
22 | disparaging comments about women and minorities.

23

Further, Pande's purported reliance on Defendants' Answer in support of this statement is misleading, argumentative, and inaccurate.

24

*See also* Objections to Thompson Declaration at ¶¶ 26-47.

25

26 | This statement is also irrelevant and immaterial to this motion.

27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**DEFENDANTS' OBJECTIONS TO EVIDENCE CITED BY PLAINTIFF IN MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. C 04 5107 CW**

1
2
3

**10.    Page 5, lines 21-24:  "Even though Pande and Thompson followed company policy by lodging their complaints with the Ombuds, Yamashita did nothing to follow through on an investigation or do anything outlined in the policy as far as investigating the allegations."**

4

**EVIDENCE CITED BY PLAINTIFF:**                    **DEFENDANTS' OBJECTION:**

5
6

Yamashita Depo 25:16-26:5 and Exh. 1.

7
8
9

(Yamashita Depo 25:16-26:5)

Q.  Now, section c, little "c," on the same page 3 lists again in bullet format actions that should be taken upon receipt of a complaint. Did you read those bullet points today?

10
11
12
13
14
15
16
17

A. I glanced through them.
MS. MILLER:  Is there a question pending?
MR. LEBOWITZ:  I asked him to read them. He said he glanced through them. I asked him to read them.
THE WITNESS:  Okay.
MR. LEBOWITZ: Q. When Ms. Pande came to you with her complaints, did you take any of the steps outlined in the bullet points under section c?
A. No.
Q. Why not?
A. Because I didn't believe that was my role.

Defendants object to Pande's assertions on the grounds that they are irrelevant and immaterial to this motion.  Further, Pande's assertions are conclusory, argumentative and lack foundation.

Pande has failed to establish any foundation for the proposition that Yamashita had any obligation to conduct an investigation. Further, the fact that Johnson conducted a prompt and thorough investigation into Pande's allegations (*see* Johnson Dec. ¶¶ 2-15) renders any actions by Yamashita irrelevant and immaterial, both to this motion and to this lawsuit.

18
19
20

**11.    Page 5, lines 24-26:  "The extent of Yamashita's investigation was to meet with Mitchell and ask him if he agreed with any of Pande's accusations."**

21

**EVIDENCE CITED BY PLAINTIFF:**                    **DEFENDANTS' OBJECTION:**

22
23
24

Yamashita Depo. 36:11-19.

(Yamashita Depo. 36:11-19)

25
26
27

Q. How did Mr. Mitchell respond to whatever it was that you were telling him?
A. As I recall -- I don't recall specifics, but I don't recall anything that raised a red flag for me.

Defendants object on the basis that Pande's statement is purely conclusory and speculative and Pande has provided no admissible evidentiary support for this statement.  The deposition testimony of Yamashita fails to support the statement set forth above.  Further, this statement lacks foundation.

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

Q.  What kind of thing would raise a red flag for you?
A.  If he admitted he was wrong or if he said he'll change something or do something different.  None of that came out.

The fact that Johnson conducted a prompt and thorough investigation into Pande's allegations (*see* Johnson Dec. ¶¶ 2-15) renders any actions by Yamashita irrelevant and immaterial.

**12.    Page 5, lines 26-27:  "When Mitchell denied any wrongdoing, that was the end of Yamashita's inquiry."**

**EVIDENCE CITED BY PLAINTIFF:**

Yamashita Depo 25:16-26:5 and Exh. 1.

(Yamashita Depo 25:16-26:5)

Q.  Now, section c, little "c," on the same page 3 lists again in bullet format actions that should be taken upon receipt of a complaint.  Did you read those bullet points today?

A. I glanced through them.
MS. MILLER:  Is there a question pending?
MR. LEBOWITZ:  I asked him to read them.  He said he glanced through them.  I asked him to read them.
THE WITNESS:  Okay.
MR. LEBOWITZ: Q. When Ms. Pande came to you with her complaints, did you take any of the steps outlined in the bullet points under section c?
A. No.
Q. Why not?
A. Because I didn't believe that was my role.

**DEFENDANTS' OBJECTION:**

Defendants object on the basis that Pande's statement is purely conclusory and speculative and Pande has provided no admissible evidentiary support for this statement.    The deposition testimony of Yamashita fails to support the statement set forth above. Further, this statement lacks foundation

The fact that Johnson conducted a prompt and thorough investigation into Pande's allegations (*see* Johnson Dec. ¶¶ 2-15) renders any actions by Yamashita irrelevant and immaterial.

**13.    Page 5, lines 27-28:  "This was so even though Yamashita recognized that Pande was not satisfied with the outcome of the process he initiated."**

**EVIDENCE CITED BY PLAINTIFF:**

Yamashita Depo 31:3-5; 32:5-13.

(Yamashita Depo 31:3-5)

Q. Do you recall the result of the meeting?
A. I don't think the parties were satisfied with

**DEFENDANTS' OBJECTION:**

Defendants object on the basis that Pande's statement is purely conclusory and speculative.  Pande has provided no admissible evidentiary support for this statement, and has failed to lay a foundation for this assertion.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1 | the outcome.

2 | (Yamashita Depo 32:5-13)

Further, this statement is irrelevant and immaterial to this motion.

3
4 | MR. LEBOWITZ:  Q.  How long after the group 6 meeting was your next individual meeting with Ms. Pande?

5 |     A.  I don't know.

6 |     Q.  And what was discussed in this next individual meeting you had with Ms. Pande?

7 |     A.  I don't know the specifics.

8 |     Q.  But you recall coming away with the impression that Ms. Pande was not satisfied with the process?

9 |     A.  Yes.

10

11 | **14.     Page 6, lines 1-2:  "Yamashita never advised Pande to file any sort of complaint**
12 | **with management, human resources, or any administrative agency."**

13 | <u>**EVIDENCE CITED BY PLAINTIFF:**</u>

<u>**DEFENDANTS' OBJECTION:**</u>

14
15 | Yamashita Depo 33:9-34:3.

Defendants object on the basis that Pande's statement is purely conclusory, speculative, and argumentative.  Pande has provided no admissible evidentiary support for this statement.  The deposition testimony of Yamashita does not support Pande's statement.  Pande has also failed to lay any foundation for her assertion.

16 | (Yamashita Depo 33:9-34:3)

17 | In 2002, did you ever advise Ms. Pande to file a formal complaint with human

18 | resources?
    A.  I don't recall.

19 |     Q.  In 2002, did you ever advise Ms. Pande to lodge a complaint with anyone

20 | above Jay Johnson?

Further, this statement is irrelevant and immaterial to this motion.

21 |     A.  I don't recall that either.
    Q.  In 2002, did you ever advise Ms.

22 | Pande to file an administrative complaint with the California Department of Fair

23 | Employment and Housing?

24 |     A.  No, not that I recall.
    Q.  In 2002, did you ever advise Ms.

25 | Pande to file a formal administrative complaint with the U.S. Equal Employment

26 | Opportunity Commission?

27 |     A.  No, not that I recall.
    Q.  At any time in 2002, did you advise

28 | Ms. Pande to initiate the STEPS process at

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**DEFENDANTS' OBJECTIONS TO EVIDENCE CITED BY PLAINTIFF IN MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. C 04 5107 CW**

1  Chevron?
      A.  I can give you a generic answer to
2  that.  I can't answer that specifically.
      Q.  Well, first, if you can -- for a specific
3  answer?
      A.  The answer is, I don't remember.
4

5

6  **15.    Page 6, lines 2-4:  "He even dissuaded Pande and Thompson from pursuing
         their complaint through the company's internal resolution process, the so-called
7        STEPS process."**

8  **EVIDENCE CITED BY PLAINTIFF:**           **DEFENDANTS' OBJECTION:**

9  Thompson Decl. ¶9.                          Defendants object on the basis that Pande's
                                               statement is purely conclusory, speculative
10                                             and argumentative.  Further Thompson lacks
                                               personal knowledge as to the both the intent
11                                             of Yamashita and the mindset of Pande and
                                               therefore, her testimony is inadmissible.
12                                             Pande    has    provided    no    admissible
                                               evidentiary support for this statement.
13

14                                             Further, this statement is irrelevant and
                                               immaterial to this motion.
15

16                                             *See   also*   Objections   to   Thompson
                                               Declaration at ¶ 20-24
17

18

19  **16.    Page 6, lines 9-10:  "Throughout the next several months, Mitchell continued to
          isolate Pande from the work group and impede her ability to perform and
20        advance within the company."**

21  **EVIDENCE CITED BY PLAINTIFF:**           **DEFENDANTS' OBJECTION:**

22  No evidence cited.                          Defendants object on the basis that Pande's
23                                             statement is purely conclusory, speculative
                                               and argumentative.
24

25                                             Pande's statement does not comply with
                                               FRCP 56(e) because it fails to set froth
26                                             specific facts supporting her claim.  *See
                                               Carmen v. San Francisco Unified School
27                                             District,* 237 F.3d 1026 (9th Cir. 2001).  "The
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

---

11

1
2
3
4

district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found." *Id.* at 1031.

5

6
7
8

17.    **Page 6, lines 9-12: "In late September 2002, Pande learned that Mitchell had been saying negative things about her abilities to managers and employees in other departments."**

9

**EVIDENCE CITED BY PLAINTIFF:**          **DEFENDANTS' OBJECTION:**

10
11
12
13
14
15
16

Thompson Decl. ¶ 19, Exh. B.

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande has failed to lay a foundation for her assertion. Further, the evidence cited by Pande is inadmissible double hearsay that does not fall within any hearsay exception. *See also* Objections to Thompson Declaration at ¶¶ 48-50.

17
18

18.    **Page 6, lines 17-18: "As it turns out, Pande was being considered for a position in the Congo group."**

19

**EVIDENCE CITED BY PLAINTIFF:**          **DEFENDANTS' OBJECTION:**

20
21
22
23
24

Thompson Decl. ¶ 19, Exh. B.

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande has failed to lay a foundation for her assertion. Further, the evidence cited by Pande is inadmissible double hearsay that does not fall within any hearsay exception. *See also* Objections to Thompson Declaration at ¶¶ 48-50.

25
26
27
28

This statement is irrelevant and immaterial to this motion. Indeed, Pande did not post for the position and her Personnel Development Representative did not pursue the position on her behalf. *See* Supplemental Hartshorn Dec. ¶ 3.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

12

1
2

**19.     Page 6, lines 18-19:  "However, after Magner's group learned of Mitchell's comments, Pande was no longer considered for the position."**

3

**EVIDENCE CITED BY PLAINTIFF:**              **DEFENDANTS' OBJECTION:**

4     Thompson Decl. ¶ 19, Exh. B.                        Defendants object on the basis that Pande's
5                                                                          statement is purely conclusory, speculative
                                                                             and argumentative.  Pande has failed to lay a
6                                                                          foundation for her assertion.  Further, the
7                                                                          evidence cited by Pande is inadmissible
                                                                             double hearsay that does not fall within any
8                                                                          hearsay exception.  *See also* Objections to
                                                                             Thompson Declaration at ¶¶ 48-50.
9
                                                                             This statement is irrelevant and immaterial
10                                                                        to this motion.  Indeed, Pande did not post
                                                                             for   the   position   and   her   Personnel
11                                                                        Development   Representative   did   not
12                                                                        pursue the position on her behalf.  *See*
                                                                             Supplemental Hartshorn Dec. ¶ 3.
13

14    **20.     Page 6, lines 20-24:  "From March through December 2002, Pande attempted to find another job within the company.  However, on December 9, 2002 Pande was forced to take a less desirable job as Simulation Engineer in the Southern Africa Strategic Business Unit ("SASBU"), one which is considered a step down on the career path at Chevron for petroleum engineers like Pande."**
15
16

17

**EVIDENCE CITED BY PLAINTIFF:**              **DEFENDANTS' OBJECTION:**
18
19    Answer ¶ 23;  Pande Depo. 297:8-18,          Pande's purported reliance on Defendants'
        299:3-300:4.                                              Answer in support of this statement is
20                                                                       misleading, argumentative and inaccurate.
        (Pande Depo. 297:8-18:                              Defendants' Answer admits only that "on
21    Q.     . . . And you were notified that you        December 9, 2003 Plaintiff accepted a job as
        had   been   selected   for   the   Block  14      a   Simulation   Engineer."     (Answer   ¶   23).
22    position by Kelly Hartshorn, correct?          Further, Pande fails to lay any foundation as
        A.     That is correct.                              to her contention that the position is "less
23    Q.       And when you met with her to        desirable" or "is considered a step down on
24    discuss the position, at that time, you        the career path at Chevron."  Pande lacks
        asked her about a promotion, correct?        personal knowledge and is not competent to
25    A.       Actually, before she even did the    make such assertions.  Pande's testimony in
        nominations, I had indicated to her that I     this   regard   constitutes   inadmissible   lay
26    did not want to be placed on the slate for   opinion testimony.
        that position unless it was a promotion.)
27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

Further, this statement is irrelevant and immaterial to this motion.

**21.    Page 6, lines 24-25:  "In fact, Chevron had not been able to fill this position for several months because they could not find an experienced engineer willing to take this position."**

**EVIDENCE CITED BY PLAINTIFF:**

Pande Depo. 298:12-22.

(Pande Depo. 298:12-22:
Q.    Did anybody ever -- did Kelly talk to you afterward and explain to you why that position was viewed as a good fit for your skills and development?
A.    Kelly talked to me afterwards and indicated that Jack Dunn, who was a good friend of hers and was the job owner for that position, was very happy to see someone of my caliber as a candidate for that position, because they had posted it several times and had not been able to attract anybody of my caliber to that position.)

**DEFENDANTS' OBJECTION:**

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande fails to lay any foundation for her statements and lacks personal knowledge. Further, the deposition testimony cited is based upon inadmissible hearsay that does not fall within any hearsay exception. Pande's testimony also constitutes inadmissible lay opinion testimony.

Further, this statement is irrelevant and immaterial to this motion.

**22.    Page 7, lines 6-7:  "This decision was made by Mitchell."**

**EVIDENCE CITED BY PLAINTIFF:**

Dunn Depo. 21:15-22:8,  23:25-24:10, 38:14-25, 32:3-10 & Exh. 2.

(Dunn Depo. 21:15-22:8:
Q    At what point are raises considered, if any?
A.    The raise is considered in the evaluation process, usually occurs in the first quarter of the following year, you know, the year following the year of performance, and it is analyzed.
Q    And do you recall, in the first quarter

**DEFENDANTS' OBJECTION:**

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande fails to lay any foundation for her statements and lacks personal knowledge.  Further, Pande's reliance on the deposition testimony cited is misleading and argumentative as Dunn never testified that Mitchell made the decision.

Further, this statement is irrelevant and immaterial to this motion

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  of 2003, having conversations with Ms.
2  Pande about potential raises?
   A      No.     That would have been
3  inappropriate because the raise in early
   2003 would have been related to her
4  performance prior to her coming on my
   team, so that wouldn't be my -- my call.
5  Q    So who would Ms. Pande speak to
6  about a potential raise at that point?
   A    Her supervisor prior to joining our
7  team.  As you mentioned, she joined our
8  team in December, so her performance
   would be related to that -- what is it?
9  2002 performance would be related to
   who she was working for in 2002.

10 Dunn Depo. 23:25-24:10:
11 Q     (BY MR. LEBOWITZ)   Well, in a
   typical year –
12 A    Put it this way.
   Q    I'm sorry.
13 A    If you work -- if -- the people that
14 decide the raises are the supervisors of
   the employee during the calendar year.
15 So if somebody worked for me during a
16 calendar year, I would decide their raise,
   and if I -- they worked for me for half the
17 year, I would be -- I would give the input
   to their current -- their -- you know, their -
18 - the person that had them for the
   second half of the year.

19 Dunn Depo. 38:14-25:
20 Q    And just to clarify the meaning of the
   last sentence here, says, "We discussed
21 the possibility of a small merit raise," et
   cetera.  And that is -- is that you and Ms.
22 Hartshorn     describing     what     you
23 anticipated the action being or -- or what
   was it?
24 A    I think I've answered that question
25 but it wasn't clear.  At this time, those
   decisions   were   not   finalized,   this
26 decision being a decision that their
27 former organization would make on what
   merit raise she would get.  And they -- I
28 was   paraphrasing,  if  you  will,  what  I

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

15

1  heard from her, which was this is what
2  they were thinking about.

3  Dunn Depo.32:3-10:
   Q     (BY MR. LEBOWITZ) Mr. Dunn,
4  you've just been handed what's been
   marked Exhibit 2 for this deposition. It is
5  a printout of an e-mail from you to Mark
   Krolow with a cc to Kelly Hartshorn on
6  the date of January 7th, 2000 -- January
   27th, 2003.  Will you review the e-mail
7  and let me know when you're ready to
   proceed?
8  A    Okay.)
9

10
11  **23.     Page 7, lines 19-20:  "Pande was fully qualified for each of the jobs to which she
            applied."**
12

13  **EVIDENCE CITED BY PLAINTIFF:**              **DEFENDANTS' OBJECTION:**

14  Pande Dec. ¶ 14.                              Defendants object on the basis that Pande's
15                                                statement    is    purely    conclusory    and
                                                  speculative. Pande has failed to lay any
16                                                foundation   for   her   assertion   and   her
17                                                statement    constitutes    inadmissible    lay
                                                  opinion testimony.  Moreover, her opinion as
18                                                to  her  qualifications  is  irrelevant  and
                                                  immaterial to this motion and this lawsuit.
19
                                                  *See also* Objections to Pande Declaration ¶
20                                                33.

21
22  **24.     Page 7, lines 24-26:  "In October 2003, Dunn offered Pande continued work in
            San Ramon on a project which would last through at least most of 2004."**
23

24  **EVIDENCE CITED BY PLAINTIFF:**              **DEFENDANTS' OBJECTION:**

25  Pande Depo. 447:7-14, 446:9-14 & Exh. 33.    Defendants object on the basis that Pande's
26                                                statement    is    purely    conclusory    and
    (Pande Depo. 447:7-14:                        speculative and Pande has produced no
27  Q     What offer had you received prior to    admissible    evidence    supporting    this
    November 11th, 2004, to continue work in      statement.
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**DEFENDANTS' OBJECTIONS TO EVIDENCE CITED BY PLAINTIFF IN MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. C 04 5107 CW**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

San Ramon? It says, "Before I went on medical disability, I was offered and accepted to continue to work through 2004." What job were you offered?
A.      I was offered to continue working on projects and to provide decision analysis support to the projects.

Pande Depo. 446:9-14:
(DEFENDANTS' EXHIBIT NO. 33 WAS MARKED FOR IDENTIFICATION.)
MS. MILLER:        Q.  Is this the response that you were referring to to Ms. Shawstad?
A.     Yes, it is.)

Further, the statement is irrelevant and immaterial to this motion.

**25.     Page 8, lines 6-8:  "Part of that policy requires that all employees who are or will be absent from work for more than five days due to medical condition must file for short term disability through Chevron's disability policy carrier, UnumProvident."**

**EVIDENCE CITED BY PLAINTIFF:**

Answer ¶ 30.

**DEFENDANTS' OBJECTION:**

Pande's purported reliance on Defendants' Answer in support of this statement is misleading, argumentative, and inaccurate. Defendants' Answer states that "under Defendants' Disability Management Program, if an employee is absent for more than five workdays in a row for their own illness or injury they must report the absence to UnumProvident […] **to be eligible for benefits**." (Answer ¶ 30, emphasis added) Pande's mischaracterization of this language which indicates only a requirement to report an absence (not a requirement to file for short term disability), and her exclusion of the key language "to be eligible for benefits" can only be construed as bad faith, mischaracterization of evidence. Accordingly, it must be disregarded.

Further, this statement is irrelevant and immaterial to this motion

17

**26.    Page 8, lines 8-10:   "The Disability Management Program also requires employees to fill out overly broad medical release forms."**

**EVIDENCE CITED BY PLAINTIFF:**

Pande Dec. ¶ 16 & Exh. B

**DEFENDANTS' OBJECTION:**

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande fails to lay any foundation for her statements and has provided no admissible evidence in support of her allegation that she was "required" to fill out any medical release forms.  Even the authorization (attached erroneously as Exhibit C to Pande's Declaration) states "You are not required to sign the authorization, but if you do not, UnumProvident may not be able to administer or evaluate your claim(s)."

Further, this statement is irrelevant and immaterial to this motion.

*See also* Objections to Pande Declaration ¶¶ 41-43

**27.    Page 8, lines 10-13:  "Despite having sufficient information to certify Pande for an extended medical leave, Chevron imposed its across-the-board policy and only certified Pande's leave for a period of 30 days, thereafter requiring Pande to re-certify her eligibility for leave."**

**EVIDENCE CITED BY PLAINTIFF:**

Pande Dec. ¶ 16 & Exh. C

**DEFENDANTS' OBJECTION:**

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande fails to lay any foundation for her statements and has provided no admissible evidence in support of her allegation that Defendants impose any "across-the-board policy," much less a policy that FMLA and/or CFRA leave eligibility is approved for only 30 days.  Further Pande has failed to produce any evidence that Pande ever submitted any certification to UnumProvident's FMLA Unit for purposes of assessing FMLA/CFRA eligibility.   Neither Pande's unsupported declaration testimony –

18

which lacks foundation and constitutes inadmissible lay opinion testimony – nor Exhibit C, support Pande's assertions in this regard.

*See also* Objections to Pande Declaration ¶¶ 41-43

**28.    Page 8, lines 15-17:  "On October 30, 2003, Pande informed Dunn that she was applying to take a medical leave.  Dunn reacted by asking what was medically wrong with her."**

**EVIDENCE CITED BY PLAINTIFF:**

Answer ¶ 31.

**DEFENDANTS' OBJECTION:**

Pande's purported reliance on Defendants' Answer in support of these statements is misleading, argumentative and inaccurate. Defendants' Answer admits only that "on or about October 30, 2003, Plaintiff informed Dunn that she was going to take a medical leave and that Dunn communicated his concerns regarding her well-being and the need to ensure her duties were covered in her absence…." (Answer ¶ 31)  Pande fails to lay any foundation or provide any evidentiary support for her claim that "Dunn reacted by asking what was medically wrong with her."  Such mischaracterization of evidence can only be construed as bad faith.

Further, this statement is irrelevant and immaterial to this motion.

**29.    Page 8, line 27 – page 9, line 3:  "He also does not contradict emails which show that Pande was so distraught with Dunn's prying questions that she contacted Chevron human resources to seek guidance and gain assurances that no private information would be given to Dunn."**

**EVIDENCE CITED BY PLAINTIFF:**

Dunn Depo 87:8-89:7 & Exh. 8.

Q    (BY MR. LEBOWITZ) Okay, Mr. Dunn. You've just been handed what's been marked as Exhibit 8 for this deposition, which is

**DEFENDANTS' OBJECTION:**

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative.  Further Pande's statement in this regard are nonsensical as Dunn's testimony makes clear only that he could not refute what Pande may or may not

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

19

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

another one of the progress notes from the UnumProvident file related to Ms. Pande. Take a minute and review it and let me know when you're ready to proceed.

A    Okay.

Q    Okay.  First of all, have you ever seen this document before?

A    No.

Q    Reading the second sentence of the -- of the note here, it says, "Employee's manager has been pushing her for info, and employee does not want manager to know anything." Reading that, does that refresh your recollection as to whether or not you had been asking Ms. Pande details of her medical condition?

A    No, it doesn't.  And this, to me, refers to, you know, what's -- as I basically previously testified or mentioned was, how is she and how is -- and any idea in how long she's going to be out given the -- the work needs.

Q    Well, let's read that sentence in conjunction with the first sentence, which as I read, it says, "Employee is concerned that manager might receive med -- med info, advised no," and then the sentence that we just read as well.  Now, does that -- reading those two sentences in conjunction where Ms. Pande is con—is relating concerns about her manager receiving medical info, does that in any way refresh your recollection as to whether or not you were actually asking Ms. Pande for details about her medical information?

A    This -- these are not my comments, of course. These are the employee, meaning Kiran's, comments. So no.  This is -- she was -- she was concerned.  This is -- no.  No. This was -- this isn't related to -- to me. It's related to her.

Q    Well, it's -- it's --

A    Her perceptions.

Q    It's her perceptions of what you were asking, so --

A    Correct.

Q    Can you think of any reason why Ms. Pande would believe you were asking about her medical condition?

have felt or perceived.  He does testify explicitly that he thought her perception was "inaccurate." (Dunn 88:24-89:7)  Although Pande does not appear to grasp this distinction, Dunn's testimony makes clear that he does not have personal knowledge as to what may or may not have been in Pande's mind.

Further, this statement is irrelevant and immaterial to this motion.

20

1
2
3
4
5

A    No, I cannot.  In fact, I think this is an inaccurate perception.  I had no interest in unders—in knowing anything about one's medical condition.  My – my inquiries were purely related to how long they were going to be out just like if you were out on vacation and what are we going to do to transition someone's work to someone else.

6
7

**30.    Page 9, line 7:  "Dunn was incensed about Pande's request for medical leave."**

8

**EVIDENCE CITED BY PLAINTIFF:**                **DEFENDANTS' OBJECTION:**

9
10

No evidence cited.                                       Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative.

11
12
13
14
15
16
17

Pande's statement does not comply with FRCP 56(e) because it fails to set froth specific facts supporting her claim.  *See Carmen v. San Francisco Unified School District,* 237 F.3d 1026 (9th Cir. 2001).  "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found." *Id.* at 1031.

18
19
20
21
22

**31.    Page 9, lines 7-10:  "On or about November 4, 2003, on an international conference call attended by approximately 10 of Pande's coworkers (some in person and some by phone), Dunn went on a tirade."**

23

**EVIDENCE CITED BY PLAINTIFF:**                **DEFENDANTS' OBJECTION:**

24
25
26
27

Dunn Depo 77:7-79:4.

(Dunn Depo 77:7-79:4:
Q    Do you recall having a -- a meeting on November 4th, 2003 with the folks in your group, including Ms. Pande?
A    Yes.

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative.  The deposition testimony of Dunn does not support Pande's contention that "Dunn went on a tirade."  Accordingly, Pande has provided no admissible evidentiary support for this

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

DEFENDANTS' OBJECTIONS TO EVIDENCE CITED BY PLAINTIFF IN MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. C 04 5107 CW

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  Q    What was the purpose of that meeting?
2  A    We were discussing the work plans with the group.
3  Q    And who attended that meeting?
   A    The work team.
4  Q    How many people in total attended the meeting?
5  A    I don't recall.
6  Q    And where did the meeting take place?
   A    One of our conference rooms on the
7  floor we were -- where we worked.
8  Q    In addition to people attending in person, were there also people attending by telephone?
9  A    Yes.
10 Q    And where were those people located?
   A    Houston.
11 Q    How many people were in Houston that attended the phone call -- the conference?
12 A    Whoever was part of the new team that was in Houston.  We were transitioning to
13 Houston and we -- we had added some people to -- to the team that were taking over
14 jobs for people that weren't going to Houston.  I don't recall specifically.  There
15 may have been a couple.
16 Q    Was there anyone from Angola on the phone or who was located –
17 A    No.
18 Q    -- in Angola when they attended the meeting?
19 A    Not -- not that I recall.  It's possible.  The time was that if it was late, it would have -- it
20 wouldn't have been them but if it was in our morning, it's possible.
21 MR. LEBOWITZ:  The tape is going to end, so why don't we go ahead and just take a
22 regular five-minute break, anyway.
23 VIDEOGRAPHER:  The time is 11:19 and we're off the record.
24 (Recess from 11:19 to 11:32)
25 VIDEOGRAPHER:  The time is 11:32 and we are back on the record.
26 Q    (BY MR. LEBOWITZ) Okay. Mr. Dunn, when we took a break, we were talking about
27 the November 4th, 2003 meeting.  How long did the meeting last until?
28

statement.

Further, this statement is irrelevant and immaterial to this motion.

22

1  A   I don't recall.
   Q   More than an hour?
2  A   Perhaps.)

3

4  **32.     Page 9, lines 23-24:  "This conduct by Dunn was extreme and sent Pande into tears."**

5

6  <u>**EVIDENCE CITED BY PLAINTIFF:**</u>          <u>**DEFENDANTS' OBJECTION:**</u>

7  Mabe Depo 49:20-50:11; Burkes Depo 33:7-     Defendants object to this statement on the
8  34:15.                                        grounds that it is argumentative and lacks
                                                 foundation.  Moreover, the testimony cited by
9  (Mabe Depo 49:20-50:11:                       Pande does not indicate that the conduct was
   Q     Describe for me that conversation you   "extreme."  Indeed, as his testimony makes
10 had with Ms. Pande where you first learned    clear, Burkes was not even present during
   that the leave that she was taking was        the meeting in question.  Accordingly, to the
11 medically-related.                            extent he has any information about what
   A     It was on a break from that -- from the was said during the November 4th meeting,
12 meeting that we've been talking about and I   that information is inadmissible hearsay and
13 went back into her room and she was crying    is based upon self-serving statements made
   and, if I remember correctly, I put my arms  by the Plaintiff.   Defendants also object on
14 around her and, you know -- you know,         the grounds that this statement is conclusory,
15 asked her what was wrong and, you know,       rather than factual.  This statement is pure
   what -- you know, what was going on and --    conjecture and speculation, and is irrelevant,
16 and she told me that she had given notice
   that she was going on a medical leave.
17 Q       What else did she say in this
18 conversation?
   A       It wasn't a very long conversation
19 because we were just on break and I don't
   remember what else she said but she was
20 just explaining that she was going on medical
21 leave and, you know, I just -- I just told her to
   take care of herself and, you know, don't
22 worry about all the work that we were going
   to have to do.)
23
   (Burkes Depo 33:7-34:15:
24 Q.   Any other complaints that you heard from
25 Ms. Pande about Mr. Dunn?
   A.    Yeah.  The time that she came into my
26 office, I think it was a break at the meeting
   that one of the Block 14 groups was having.
27 Q.    Is this in the middle of the conference
   call in early November 2003?
28 A.    Yes.

                                    23

M<span>ILLER</span> L<span>AW</span> G<span>ROUP</span>
A P<span>ROFESSIONAL</span> C<span>ORPORATION</span>
L<span>ARKSPUR, </span>C<span>ALIFORNIA</span>

1  Q.    And when Ms. Pande came into your
office, how did she appear to you?

2  A.    She was crying or sniffling.  She had
been crying.

3  Q.    Prior to this moment where she came
into your office, had you ever seen Ms.

4  Pande cry at work?

5  A.    No.

6  Q.    And did she tell you what was going on?
A.    In general terms, yes.

7  Q.    What did she say?

8  A.    She mentioned that Jack had wanted her
to complete some tasks that he described for

9  some Block 14 work, and she explained that
she would be going out on medical leave,

10  and he made some -- some -- some rude and
derogatory remarks at that time.

11  Q.    Did she tell you what those rude and
derogatory remarks were?

12  A.    No.

13  Q.    Did she tell you anything else in these
conversations?

14  A.    Yeah.  That -- that Jack was very mad
and angry.

15  Q.    What did you say in response to anything
that Ms. Pande was telling you?

16  A.    Well, I just expressed my sympathy for
her undergoing such an experience.)

17

18  **33.    Page 10, lines 4-6:  "Dunn also denied that his conduct caused any trauma to**

19  **Pande, instead tersely testifying that Pande said very little as to how her work**
**was going to get done while she was gone."**

20

21  <u>**EVIDENCE CITED BY PLAINTIFF:**</u>        <u>**DEFENDANTS' OBJECTION:**</u>

22  Dunn Depo. 82:17-83:1.                Defendants object to this statement on the
grounds that it is argumentative, lacks

23  Q    Do you recall Ms. Pande being upset at    foundation, and is conclusory rather than
how the meeting was proceeding?          factual.  Further, this statement is irrelevant

24  A    My recollection was that she was        to the motion.
saying very little at the meeting about the

25  work    that    she    had    under    her
responsibility and the reason for the ele--

26  my elevated voice was that she was not

27  giving  the  team  any  response  to  the

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

things that she was supposed to be doing.

Q    Do you recall Ms. Pande's reaction to you -- you speaking to her in that elevated tone of voice?

A    No.

**34.    Page 10, lines 6-7:  "He also falsely testified that Pande attended a group lunch immediately after the meeting; she did not."**

| EVIDENCE CITED BY PLAINTIFF: | DEFENDANTS' OBJECTION: |
|---|---|
| Dunn Depo. 83:16-23; Pande Decl. ¶ 18.<br><br>(Dunn Depo. 83:16-23:<br><br>Q    At any point in the -- on the day, not just in the meeting but at any point during the day of November 4th, 2003, did you come to learn that Ms. Pande had been brought to tears as a result of the way you interacted with her at the meeting?<br>A    No.  As I recall, we had the meeting. Afterwards we had a team lunch and Kiran attended.  She sat -- she was there.  I was there.) | Defendants object to Plaintiff's characterization of Dunn's testimony in this regard.  As is evident from his testimony, Dunn stated only that he "recalled" Pande being present at such meeting.<br><br>Further, this statement is irrelevant and immaterial to this motion and to this lawsuit. |

**35.    Page 10, lines 8-10:   "Pande's coworkers were so outraged by Dunn's conduct that at least one coworker made an internal complaint against Dunn for his conduct on the conference call."**

| EVIDENCE CITED BY PLAINTIFF: | DEFENDANTS' OBJECTION: |
|---|---|
| Mabe Depo. 30:5-32:2, 36:8-25, 40:25-44:25, 47:8-49:4.<br><br>(Mabe Depo. 30:5-32:2:<br>Q    Why did you go to speak to Mr. Krolow?<br>A    I felt that Jack should be counseled on not speaking loudly to people in meetings.<br>Q    In what form did you communicate with Mr. Krolow?  Did you speak with him on person, on the phone, or he – | Defendants object to this statement on the grounds that it is argumentative and lacks foundation.  Further, Pande mischaracterizes Mabe's deposition testimony. Mabe never uses the word "complaint" or "complained" and the evidence fails to support any inference that Dunn's conduct had anything to do with Pande's medical condition or request for medical leave.  To the contrary, Mabe clearly testified that she spoke to |

MILLER LAW GROUP<br>A PROFESSIONAL CORPORATION<br>LARKSPUR, CALIFORNIA

25

1   A    On the phone.

2   Q    And what specifically did you tell Mr. Krolow?

3   A    I told him that I felt Jack was -- that his voice, his tone of voice, was -- was too loud

4   and that I felt that Kiran was a very soft-spoken person and not confront --

5   confrontational at all and that I -- you know, I've gotten into arguments with Jack before

6   and, you know, I raise my voice, too, and it doesn't bother me.   But I could see that it

7   bothered Kiran and I felt like he should be

8   counseled on how to interact with -- with -- with people to do a better job.

9   Q    Did you tell Mr. Krolow that Mr. Dunn had been confrontational towards Ms. Pande

10  during this meeting?

11  A    I don't know if I used the word "confrontational."   I don't remember.   It's

12  been so long, I don't remember the exact word.

13  Q    Do you have any recollection of what word you used to describe Mr. Dunn's

14  interaction with Ms. Pande during this

15  meeting in your conversation with Mr. Krolow?

16  A    I remember using, you know, "loud voice."   I don't remember if I used the word

17  "confrontational."

18  Q    Did you use the word "yell"?   Did you describe to Mr. Krolow that Mr. Dunn was

19  yelling at Ms. Pande during the meeting?

    A    I don't remember using the word "yell."

20  Q    And why did you go to Mr. Krolow to make -- to express your feelings about Mr.

21  Dunn's conduct?

22  A    Because I felt like that he -- he should be aware of his conduct and I left it up to him as

23  to what he wanted to do about it.   I just felt like he should be aware.

24  Q    Mr. Krolow was Mr. Dunn's supervisor at the time?

25  A    Yes.

26  Q    In this conver-- well, did you have any more conversations with Mr. Krolow about

27  Mr. Dunn's conduct during this meeting other than the one telephone conversation you've

28

individuals because she felt "Jack should be counseled on not speaking loudly to people in meetings."   Defendants also object on the grounds that this statement is conclusory, rather than factual.   This statement is also irrelevant to this motion.

26

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  described to me?
2  A    No.

3  Mabe Depo. 36:8-25:
   Q    Okay.  And what did Mr. Krolow respond
4  to you when you told him your opinion about
   Mr. Dunn?
5  A    He told me that he was glad that I let him
   know and that -- that he would deal with it.
6  And I also asked him for it to be in
   confidence and he told me that he would not
7  tell, you know, anyone as -- you know, as far
   as Jack, he wouldn't go and tell Jack or other
8  people in the group.
   Q    And why were you concerned that it
9  should be held in confidence?
   A    Because Jack is my supervisor.
10 Q    And why were you concerned if Jack
   learned about your conversation with Mr.
11 Krolow?
   A    Because I did not want him to have
12 negative feelings about me.  I -- I didn't know
   Jack very well at that point, so I didn't want
13 him to have negative feelings about me and I
   felt like I would be -- you know, that he didn't
14 need to know.
15
16 Mabe Depo. 40:25-44:25:
17 Q    Did you ever express to anyone else
   other than Mr. Krolow your concerns about
18 Jack Dunn's conduct on this one day in this
   one meeting?
19 A    Yes.
20 Q    Who was that?
   A    My mother.
21 Q    Anybody else?
   A    Roger Severson.
22 Q    Anybody else?
23 A    I'm sure I did.  I don't remember everyone
   I ever talked to about it.  I -- I don't
24 remember.  I'm sure if -- I probably talked to
   other people about it but it would be people
25 close to me.
26 Q    How about Jeff Shellaberger?
   A    Oh, yes.  Jeff Shellaberger.
27 Q    And what was Mr. Shellaberger's position
   at the time you talked to him about Mr.
28

---

27

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  Dunn?

2  A    He was Krolow's manager.

   Q   Did you speak to Mr. Shellaberger before
3  or after you spoke with Mr. Krolow?

4  A    Before.

   Q    And -- or how did you speak to Mr.
   Shellaberger?   In person, on the phone, or
5  by e-mail?

6  A    Phone.

   Q   Did you call him or did he call you?
7
   A   I don't remember.
8  Q    Did you -- or why did you communicate
   with   Mr.   Shellaberger   about   Mr.   Dunn's
   conduct at this meeting?
9
   A    I told him the same thing I told Mark
10 Krolow.

   Q  And what did -- well, I guess my question
11 was more why.   Why did you go to Mr.
   Shellaberger?
12
   A    Because I worked with Jeff before and I
   didn't Mark, so I felt comfortable just telling
13 him.

14 Q   And –

   A   And he asked me to –
15
   Q   I'm sorry.
16 A   He asked me to tell Mark Krolow.

   Q   Did he have -- did Mr. Shellaberger have
17 any   other  --  any  other  response  to  your
   concerns?
18
   A     He thanked me and he -- and pretty
19 much just told me, you know, that "Would it
   be okay for Mark to call you and you tell him
20 exactly what you told me?" And -- and so I
   pretty much had the same conversation with
21 Jeff that I did with Mark.  I just repeated what
   I had told him about the behavior.
22
   Q    How soon after the meeting did you call
23 or did you speak with Mr. Shellaberger?

   A   I don't remember the exact timing.  It was
24 definitely within a month.

   Q    Was it closer, maybe within a couple
25 days -- I know you put it within a month.
   Is there any closer time you can get it to?
26
   A    It probably was within two weeks.  I don't
27 remember the exact time.

   Q    And so at the time you called -- or you
28 spoke with Mr. Shellaberger, were you aware

---

28

1  that the leave that Ms. -- Mr. Dunn was
   talking about was a medical leave?
2  A   Yes.
3  Q    And did you relate to Mr. Shellaberger
   that what Mr. Dunn was commenting on in a
4  meeting was Ms. Pande's medical leave?
   MS. MILLER:    I'm going to object.    It
5  mischaracterizes her testimony.
6  A   I don't remember.
   Q      (BY MR. LEBOWITZ)    Tell me
7  everything you can recall as to what you told
   Mr. Shellaberger that Mr. Dunn did during
8  the meeting that you felt he needed
   counseling for.
9  A   The -- the tone of his voice and he also
   pointed his finger at her, at Kiran.   That --
10 that was those two things are those main thing.
11 Q      Did you tell Mr. Shellaberger the
   substance of what Mr. Dunn was saying
12 when he was -- had an elevated tone of
   voice and pointing his finger at Ms. Pande?
13 A   He -- he never said anything that was -- I
14 mean, he -- he didn't use bad language.   It
   was really the tone of his voice and -- I
15 mean, he never made a reference to her
   leave of absence.   He just said that he would
16 -- she would not be there to do the work.
17 Q    No.  I understand that.  My question -- I
   understand that's your testimony that that's
18 what Mr. Dunn said.  My question, though, is:
   When you were speaking to Mr. Shellaberger
19 --
   A   Right.
20 Q    -- did you relate to Mr. Shellaberger the
   substance of Mr. Dunn's comments?   For
21 instance, did you say to Mr. Shellaberger
   that Mr. Dunn was using an elevated tone of
22 voice, pointing his finger, and commenting to
23 -- saying things to the effect of "Ms. Pande is
   not going to be here"?
24 A   I don't remember if I -- it wasn't that he
   was -- I mean, it really had nothing to do with
25 what came out of his mouth.  It was -- it was
26 his tone of voice that bothered -- that
   concerned me.   So that was the behavior
27 that I felt like should be corrected, that -- I
   just believe that when you're in a meeting

Miller Law Group
A Professional Corporation
Larkspur, California

DEFENDANTS' OBJECTIONS TO EVIDENCE CITED BY PLAINTIFF IN MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. C 04 5107 CW

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  that you shouldn't -- you know, you're in the
2  office environment, you shouldn't, you know -
   - I think people raise their voice all the time
3  but when it bothers someone, that's when
   you shouldn't.
4
   Mabe Depo. 47:8-49:4:
5  Q      What conversation did you have with
   Roger Severson about -- in relation to this
6  meeting?
7  A    I -- I knew that Roger was on the phone
   and when I talked to Jeff, I told him that, you
8  know, he should get another person's
   opinion, you know, don't -- don't just count on
9  me but why doesn't -- why doesn't he talk to
   someone else.  And I said, you know, Roger
10 was on the phone and he can -- he could ask
   him about the meeting.   And so Roger
11 actually came to me and -- and said that he
12 had also talked and I don't remember if he
   talked to Jeff or if he talked to -- I think he
13 talked to Mark Krolow but I'm not sure.
   Q      So Roger Severson came to you and
14 said   that   he   had   --   correct   me   if   I'm
15 misunderstanding,   but   that   he   had   been
   called   by   either   Mr.   Krolow   or   Mr.
16 Shellaberger?
17 A    I think that's how it happened.
   Q      And when Mr. Severson came to you,
18 did it appear that he knew that you had also
   spoken with them?
19 A       I   think   he   approached   me   more
   questioning.
20 Q    "Had they called you, too," kind of thing?
   A    That -- yes.
21 Q    Okay.  And describe for me what -- what
22 you   can   recall   from   your   conversation   with
   Mr. Severson.
23 A    I just remember, you know, that he felt
   the same as -- as I did, that his tone of voice
24 was too loud and...
   Q      Anything else you can remember from
25 your conversation with Mr. Severson?
26 A    No.)

27

28

**36.     Page 11, lines 3-5:   "Dunn also told Pande that he had consulted with an 'employment lawyer' to affirm that it was 'kosher' to terminate Pande while she was on FMLA leave."**

| EVIDENCE CITED BY PLAINTIFF: | DEFENDANTS' OBJECTION: |
|---|---|
| Pande Depo. 451:1-18; *but see* Dunn Depo. 103:3-9. | This statement is irrelevant and immaterial to this motion and to this lawsuit. |

(Pande Depo 451:1-18:
Q.     When you spoke to Jack Dunn on November 17th at about 3:30 in the afternoon, didn't you tell him at that time that you could not be fired because you were on a leave?
A.     No, I did not tell him that.
Q.     Did you tell him that because you were on a FMLA leave that your employment could not be terminated?
A.     No, I did not tell him that.  In fact, the conversation was more around Jack's -- basically it was a conversation where Jack was telling me about this letter and how they had consulted -- he had consulted with an employment lawyer and that Jack was concerned about whether it was kosher or not to terminate me on FMLA and that that might complicate things.  And I asked him a number -- a couple of questions, and he responded that "It sounds like you're trying to take my deposition.")

Nonetheless, Defendants object to the statement on the ground that Pande's deposition testimony constitutes inadmissible hearsay that does not fall within any hearsay exception.

(Dunn Depo. 103:3-9:
Q    And in either this telephone conversation or any other telephone conversation you had with Ms. Pande, did you ever tell her anything along the lines of the fact that Chevron or you had consulted with an employment attorney to determine whether or not ending her employment while she was on medical leave was okay?
A    Not that I recall, no.)

**37.     Page 11, lines 5-7:   "Dunn told Pande that her FMLA status did not protect her because the company considered her to have voluntarily resigned in June."**

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**EVIDENCE CITED BY PLAINTIFF:**

**DEFENDANTS' OBJECTION:**

Pande Depo. 451:1-18; *but see* Dunn Depo. 103:3-9.

This statement is irrelevant and immaterial to this motion and to this lawsuit.

(Pande Depo 451:1-18:
Q.      When you spoke to Jack Dunn on November 17th at about 3:30 in the afternoon, didn't you tell him at that time that you could not be fired because you were on a leave?
A.      No, I did not tell him that.
Q.      Did you tell him that because you were on a FMLA leave that your employment could not be terminated?
A.      No, I did not tell him that.  In fact, the conversation was more around Jack's -- basically it was a conversation where Jack was telling me about this letter and how they had consulted -- he had consulted with an employment lawyer and that Jack was concerned about whether it was kosher or not to terminate me on FMLA and that that might complicate things.  And I asked him a number -- a couple of questions, and he responded that "It sounds like you're trying to take my deposition.")

Nonetheless, Defendants object to the statement on the ground that Pande's deposition testimony purporting to summarize Dunn's statements constitutes inadmissible hearsay that does not fall within any hearsay exception.

(Dunn Depo. 103:3-9:
Q    And in either this telephone conversation or any other telephone conversation you had with Ms. Pande, did you ever tell her anything along the lines of the fact that Chevron or you had consulted with an employment attorney to determine whether or not ending her employment while she was on medical leave was okay?
A    Not that I recall, no.)

38.    **Page 12, lines 4-5:  "Pande met the requirements to be considered for these openings."**

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

| EVIDENCE CITED BY PLAINTIFF: | DEFENDANTS' OBJECTION: |
|---|---|

Pande Depo. 464:12-465:2.

(Q.  . . . And on what facts do you base your belief that you were more qualified than either Jalal Affifi or Graham Housen for the positions in question?

A.  The positions in question specifically focused on evaluating new opportunities. And I had spent several years and had worked on several new venture evaluations.  Also that position -- those positions were going to be supporting the portfolio and business development efforts, that the corporation had to change the portfolios.  And a combination of business planning and portfolio experience with the technical petroleum engineering and reservoir engineering were some of the reasons that I believed I was more qualified for those positions.)

Defendants object on the basis that Pande's statement is purely conclusory and speculative.  Pande has failed to lay any foundation for her assertion and her statement constitutes inadmissible lay opinion testimony.  Moreover, her opinion as to her qualifications is irrelevant and immaterial to this motion and this lawsuit.

The testimony cited is also misleading because Pande omits key testimony in which she acknowledged that she did not know about the qualifications of the individuals selected for the positions.  She testified: "Q. Did either individual have a background in evaluating new opportunities?  A.  I don't know whether either individual had a very significant background in evaluating new opportunities." (Pande Depo. 465:3-7)

39.    **Page 12, lines 18-21:  "Dunn made these comments even though he cannot explain a single concrete example of where she supposedly lost such focus or underperformed in her job."**

| EVIDENCE CITED BY PLAINTIFF: | DEFENDANTS' OBJECTION: |
|---|---|

Dunn Depo. 52:9-53:21.

Q    And as of this time frame, the time that the -- say from the time that Ms. Pande declined the offer to move to Houston and the formal fall of 2003 PDC, what was your honest opinion of Ms. Pande's performance? A    Oh, she did a fantastic job for the first six months of the year, from -- up until the middle part of the year, very hard worker, very bright, intelligent, and as the year went on, she became less focused.  But very capable.

Defendants object on the basis that Pande's statements are purely conclusory, speculative and that they mischaracterize Dunn's deposition testimony.

As is evident from review of the cited deposition testimony, Dunn mentioned that Pande was not as "diligent about getting … her key job responsibilities completed", that he saw a falloff in her "reservoir simulation work", and that she was not very engaged in seeing that her petroleum engineering was achieved.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  Q    And what do you mean by "less
focused"?

2  A    "Less focused" is self-explanatory.

3  Q    Give me any -- can you give me any
examples of where you believe Ms. Pande

4  was demonstrating that she was less
focused?

5  A    She wasn't -- she wasn't as diligent
about getting her -- her key job

6  responsibilities completed as -- as the year
progressed.

7  Q    Can you give me any example of any

8  key job responsibility that she was not
performing up to what you mean?

9  A    She was responsible for reservoir
simulation and I saw a falloff of that work.

10  Q    Any other key job responsibilities you felt

11  she was not performing --

A    She was responsible --

12  Q    -- as diligently as she should have?

A    She was responsible for the work plan,

13  the petroleum engineering side of the work
plan, and she wasn't very engaged in seeing

14  that it was achieved for somebody of her
Group 24 being paid, you know, over

15  $110,000 a year.  But in the -- as you pointed

16  out in that e-mail, in a -- an informal
leadership role.

17  Q    Can you give me an example of what
you mean by being not very engaged?

18  A    No.

19  Q    Any other key job responsibilities you felt
she was not being as diligent as she should

20  have been?

A    Not at this time.

21

22  **40.    Page 12, line 26 – 13, line 1:  "Though he was informed that his move date was**

23  **December 31, he actually stayed on in San Ramon and continued his work for**

24  **SASBU even after that date and before receiving the offer to work in Omoregie's**
**group."**

25

26

27

28

Further, this statement is irrelevant and
immaterial to this motion.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1

**EVIDENCE CITED BY PLAINTIFF:**                    **DEFENDANTS' OBJECTION:**

2

Afifi Depo. 32:5-13, 33:18-25.                     This statement is irrelevant and immaterial to

3                                                   this motion as Pande fails to produce any
                                                    admissible evidence suggesting that Mr. Afifi
(Afifi Depo. 32:5-13)                               was, in any way, similarly situated to Pande.

4

Q.   And when was it that your group within

5   SASBU actually moved from San Ramon to           To the contrary, the undisputed evidence is
    Houston?                                         that Mr. Afifi was not part of Block 14 (Afifi

6        A.   31st of December, '03, I think.        9:16-10:21) and that no one from Block 14
         Q.   And as of that date, did you have a   was permitted to remain in San Ramon past

7   new job within Chevron?                          December 31, 2003.  (Dunn Dec. ¶ 5)

8    A.   My job -- the answer is yes and no.
         Q.   Can you explain that, please?

9        A.   My job continued another month, but
    I did not have a new job.

10

11  (Afifi Depo. 33:18-25)

12  MR. LEBOWITZ:  Q.   And how long did you
    continue to work for SASBU in San Ramon

13  after the group officially moved to Houston?

14       A.   Just about a month.
         Q.   And what happened at the end of

15  that month?
         A.   I started a new job.

16       Q.   That's when you started the ETC
    position?

17       A.   Yes.

18

19

20  **41.    Page 13, lines 1-3:  "Housen had actually accepted the move to Houston and
            had already begun his work in Houston prior to accepting the offer from

21          Omoregie's group."**

22  **EVIDENCE CITED BY PLAINTIFF:**                    **DEFENDANTS' OBJECTION:**

23  Housen Depo. 19-7-9; 22:19-21.                     This statement is irrelevant and immaterial to
                                                       this motion as Pande fails to produce any

24  (Housen Depo. 19:7-9:                               admissible evidence suggesting that Housen
                                                       was, in any way, similarly situated to Pande.

25  Q.   Did you accept the offer to move to
    Houston op?

26                                                     To the contrary, the undisputed evidence is
    A.   Yes.)                                          that Housen was not part of Block 14

27                                                     (Housen 9:18-10:8) and that no one from
                                                       Block 14 was permitted to remain in San

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  (Housen Depo. 22:19-21:

2  Q.   So the point you received the job offer
   from Mr. Omoregie, you were working in
3  Houston?

4
   A.   That's correct.)
5

Ramon past December 31, 2003.   (Dunn
Dec. ¶ 5)

6  **42.   Page 13, lines 3-5:  "Housen was permitted to take the job in Omoregie's despite
7        Chevron's policy that all employees who accepted the move to Houston were
       expected to remain there for at least 18 months."**
8

9  <u>**EVIDENCE CITED BY PLAINTIFF:**</u>

10 Answer ¶ 28.

11

12

13

14

<u>**DEFENDANTS' OBJECTION:**</u>

This statement is irrelevant and immaterial to
this motion and to this lawsuit.

Further Defendants object to Pande's citation
to Defendants' Answer on the ground that
Pande mischaracterizes the answer which
makes no mention of any "Chevron policy."

15 **43.   Page 14, lines 11-15:  "Chevron is a worldwide institution made up of untold
16       numbers of 'companies,' each of which focus on varying geographical regions
       and varying aspects of Chevron's business.  It is a company which is constantly
17       expanding, absorbing business ventures of all sizes, including other global
       companies like Texaco.  It is a place where professional employees spend entire
18       careers."**
19

20 <u>**EVIDENCE CITED BY PLAINTIFF:**</u>

21 No evidence cited.

22

23

24

25

26

27

28

<u>**DEFENDANTS' OBJECTION:**</u>

Defendants object on the basis that Pande's
statement is purely conclusory, speculative
and argumentative.    Pande has presented
**no** evidence in support of such assertions.

Pande's statement does not comply with
FRCP 56(e) because it fails to set froth
specific facts supporting her claim.   *See
Carmen v. San Francisco Unified School
District,* 237 F.3d 1026 (9th Cir. 2001).  "The
district court need not examine the entire file
for evidence establishing a genuine issue of

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found." *Id.* at 1031.

Further, this statement is irrelevant and immaterial to this motion.

**44.    Page 14, lines 15-19:  "One need only look to the witnesses deposed in this case – including the plaintiff, herself – to see that professional employees spend decades with Chevron, moving from job to job and Chevron company to Chevron company every few years."**

**EVIDENCE CITED BY PLAINTIFF:**

Yamashita Depo.  8:16-9:12;  Omoregie Depo. 8:13-9:24; Housen Depo. 7:8-12; Afifi Depo. 7:17-11:15; Burkes Depo. Exh. 1, ¶ 1; Vita Depo. 9:16-23.

(Yamashita Depo. 8:16-9:12)

Who is your current employer?
A.  Chevron Corporation.
Q.  What is your title?
A.  Manager, office of -- Global Office of Ombuds.
MS. MILLER:  That's okay.
THE WITNESS:  I think I have a card here.
MR. LEBOWITZ:  Q.  Okay.  Thanks.
How long have you held that position?
A.  Since October of 1997.
Q.  Prior to that, for whom did you work?
A.  Chevron Corporation.
Q.  In what position?
A.  The immediate prior position was in the information technology company -- I'm sorry. The immediate prior position was in the audit department.  Wait a minute.  Let me think through this a second here.
Q.  That's okay.
A.  It was the IT company, information technology company.  Prior to that was audit.

**DEFENDANTS' OBJECTION:**

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative.   At most, the testimony cited shows that these six individuals each worked for Chevron or Chevron-related entities for a significant period of time. Extrapolating from this information that "professional employees spend decades with Chevron" is argumentative, misleading and unsupported by the evidence.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1   Q.  How long, in total, have you been with
    Chevron?
2   A.  A little over 25 years.

3   (Omoregie Depo. 8:13-9:24)

4
    Q.    How long have you worked for
5   Chevron?
    A.    Since '81.
6   Q.    I would like to short-cut some things.  If
    you can just give me your educational
7   background starting with undergraduate.
8   A.    Bachelor's, master's and Ph.D. in
    petroleum engineering at U.S.C. in Los
9   Angeles.
    Q.    When did you receive your BA, what
10  year?
11  A.    BS, 1978.
    Q.    And your master's?
12  A.    The same year, 1978.
    Q.    And your doctorate?
13  A.    1981.
    Q.    And from what I can see already you
14  went to work immediately for Chevron?
15  A.    Yes, I did.
    Q.    And you have been with Chevron ever
16  since?
    A.    Yes.
17  Q.    That is unique for any company.  I know
    people at Chevron move around a lot and
18  have a lot of different jobs.  If you can run
19  down for me at least in broad strokes what
    positions you have held at Chevron since
20  you started.
    A.    Positions or work locations?
21  Q.    Positions, titles, and if you would like to
22  include in that work locations, that's fine.
    A.    Being a research engineer, team leader,
23  reservoir supervisor, petroleum engineering
    manager, subsurface manager, petroleum
24  engineering sponsor, asset manager,
    manager international relations, and team
25  leader.
    Q.    And what is your current job?
26  A.    Team leader, petroleum engineering
27  consulting services in Chevron's Energy
    Technology Company.
28

38

1  Q.    Is that more commonly known as ETC?
   A.    Yes.
2

3  (Housen Depo. 7:8-12)

4  Q.    Who is your current employer?
   A.    Chevron Corporation.
5  Q.    And how long have you been employed
   by Chevron or some entity?
6  A.    Approximately 21 years.

7  (Afifi Depo. 7:17-11:15; )

8
9  Q.    Who was your current employer?
   A.    Chevron.
   Q.    And what is your title?
10 A.    CSOC advisor and planning analyst.
11 Q.    What was the first?
   A.    C-S-O-C.
12 Q.    Advisor?
   A.    And planning analyst.
13 Q.    What does C-S-O-C stand for?
   Captain Stewardship Organizational
14 Capabilities.
   Q.    And for what division of Chevron are you
15 working?
   A.    Chevron International.
16 Q.    Is there an abbreviation that goes with
   that group?
17 A.    C-I-E-P.
18 Q.    And is -- did this group have a different
   name in the recent years?
19 A.    It could have been Chevron Texaco
   Overseas Petroleum.
20 Q.    So it was CTOP?
21 A.    Yes.
   Q.    And how long have you been in the
22 CSOC advisor and planning position?
23 A.    Six weeks.
   Q.    And prior to this job, what was your
24 position with Chevron?
   A.    I was working for another part of the
25 company.
26 Q.    And what was that?
   A.    Project Resources Company.
27 Q.    What was your title?
   A.    Asset consultant.
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

39

1  Q.   How long did you hold that job?

A.   About 16 months.

2  Q.   And immediately prior to the Project

3  Resources Company job, what was your

position with Chevron?

4  A.   I was in the Energy Technology

Company.

5  Q.   Is that known as ETC?

A.   Correct.

6  Q.   What was your job title there?

7  A.   Petroleum engineer.

Q.   Who was your direct supervisor when

8  you were the petroleum engineer in ETC?

A.   Dr. Zuwa Omoregie.

9  Q.   When did you first start working as the

petroleum engineer with ETC?

10  A.   I believe it was around first of February,

11  '04.

Q.   And prior to this ETC job, what job were

12  you employed with at Chevron?

A.   I was in a group called the Congo group.

13  Q.   And is that part of the Southern African

Strategic Business Unit?

14  A.   Correct.

15  Q.   Otherwise known as SASBU?

A.   Yes.

16  Q.   And how long were you in the Congo

Group with SASBU?

17  A.   I believe about three and a half years.

Q.   Who was your supervisor in the Congo

18  Group?

19  A.   I had two.

Q.   Okay.  Who were they?

20  A.   The last one was Fernando Gaggino.

Q.   How long do you spell that last name?

21  A.   G-A -- G-A-G-G-I-N-O.

Q.   And before Mr. Gaggino?

22  A.   Dan McKay.

23  Q.   Dan McKay?

A.   Dan McKay.

24  Q.   And where, physically, within Chevron's

company were you actually located when

25  you worked with SASBU?

26  MS. HAMASAKI:  Object on the grounds it's

vague.

27  Are you calling for a city or a building or

what?

28

40

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  MR. LEBOWITZ:  City is good enough.
   Q.  How about a city?
2  A.  San Ramon.
   Q.  And the ETC job with Zuma Omoregie,
3  what city were you working in for Chevron at
   that point?
4  A.  San Ramon.
   Q.  And today you still work in San Ramon?
5  A.  Yes.
   Q.  Are you what is considered an "ICE
6  employee"?
7  A.  I am.  Well, yes and no.  ICE doesn't
   exist anymore, I don't think, but I'm an
8  international employee.
   Q.  What does that mean that you're an
9  international employee?
10 A.  It means my home of record is outside of
   the U.S.
11 Q.  And what is your home of record, as far
   as Chevron is concerned?
12 A.  United Kingdom.
   Q.  And how long, all told, have you worked
13 for Chevron?
14 A.  About 17 years.

15 (Vita Depo. 9:16-23)

16
17 Q. Who is your current employer?
   A. Chevron North America Exploration &
18 Production Company.
   Q. What's your title?
19 A. Area operations manager, Lost
   Hills/Cymric.
20 Q. How long have you worked for Chevron or
   any of its entities in total:
21 A. Approximately 27-and-a-half years.

22

23 45.   **Page 14, lines 20-24:  "Perhaps the most important aspect of Chevron's work**
24    **environment which must be considered in this case is the significant role that**
       **word-of-mouth plays in a particular employee's prospects for achieving desired**
25    **career path positions.  It cannot be minimized.  Indeed, it is just as important as**
       **core competencies.  In such an environment, it is the subjective comments**
26    **which make all the difference."**

27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1

| EVIDENCE CITED BY PLAINTIFF: | DEFENDANTS' OBJECTION: |
|---|---|
| No evidence cited. | Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande has presented **no** evidence in support of such assertions.

Pande's statement does not comply with FRCP 56(e) because it fails to set froth specific facts supporting her claim. *See Carmen v. San Francisco Unified School District,* 237 F.3d 1026 (9th Cir. 2001). "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found." *Id.* at 1031.

Further, this statement is irrelevant and immaterial to this motion. |

46.  **Page 14, lines 25-27:  "As the email thread, and Thompson's sworn declaration explain, in late 2002, Pande was being considered for a position in the Congo group."**

| EVIDENCE CITED BY PLAINTIFF: | DEFENDANTS' OBJECTION: |
|---|---|
| Thompson Decl. ¶ 19-20 & Ex. B. | Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande has failed to lay a foundation for her assertion.  Further, the evidence cited by Pande is inadmissible double hearsay that does not fall within any hearsay exception.  *See also* Objections to Thompson Declaration at ¶¶ 48-53.

This statement is irrelevant and immaterial to this motion.  Indeed, Pande did not post for the position and her Personnel Development Representative did not pursue the position on her behalf.  *See* Supplemental Hartshorn Dec. ¶ 3. |

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

47.    **Page 15, lines 1-3:  "What the evidence shows, however, is that Mitchell's subjective comments about Pande had a direct negative impact on her career opportunities within Chevron."**

**EVIDENCE CITED BY PLAINTIFF:**

**DEFENDANTS' OBJECTION:**

Thompson Decl. ¶ 19-20 & Ex. B.

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande has failed to lay a foundation for her assertion.  Further, the evidence cited by Pande is inadmissible double hearsay that does not fall within any hearsay exception.  *See also* Objections to Thompson Declaration at ¶¶ 48-53.

This statement is irrelevant and immaterial to this motion.  Indeed, Pande did not post for the position and her Personnel Development Representative did not pursue the position on her behalf.  *See* Supplemental Hartshorn Dec. ¶ 3.

48.    **Page 16, lines 3-6:  "While Pande, indeed, declined the offer to move to Houston with SASBU, she did not intend, nor was she ever told, that the effect of such a decision was to voluntarily resign six months in advance."**

**EVIDENCE CITED BY PLAINTIFF:**

**DEFENDANTS' OBJECTION:**

No evidence cited.

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative.  Pande has presented **no** evidence in support of such assertions.

Pande's statement does not comply with FRCP 56(e) because it fails to set froth specific facts supporting her claim.  *See Carmen v. San Francisco Unified School District,* 237 F.3d 1026 (9th Cir. 2001).  "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

43

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1

found." *Id.* at 1031.

2

3

4

5

6

7

8

9

10

Further, it is undisputed that employees who chose to decline the relocation offer were asked to sign the following statement: "I do not accept this assignment. I understand that the Company might not place me in another assignment and that I may be subject to termination of employment…." (Pande 363:6-16 and Exh. 19) The documentation also stated that termination dates were not open to negotiation, rather, they were "set according to management's judgment based on the company's business needs." (Dunn Dec. ¶3 and Exh. A)

11

12  **49.  Page 16, lines 6-9:  "As Pande and others testified, the documentation and**
13  **information from Chevron management was purposefully and hopelessly vague**
14  **in regard to what would happen to employees who were unsuccessful in finding**
**a new position by the time their business unit actually moved out of San**
**Ramon."**

15

16  **EVIDENCE CITED BY PLAINTIFF:**        **DEFENDANTS' OBJECTION:**

17  No evidence cited.                      Defendants object on the basis that
18                                          Pande's statement is purely conclusory,
19                                          speculative and argumentative. Pande has presented ***no*** evidence in support of such assertions.

20

21                                          Pande's statement does not comply with FRCP 56(e) because it fails to set froth specific facts supporting her claim. *See Carmen v. San Francisco Unified School District,* 237 F.3d 1026 (9th Cir. 2001). "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found." *Id.* at 1031.

22

23

24

25

26

27                                          Further, it is undisputed that employees

28

44

1

2

3

4

5

6

7

8

who chose to decline the relocation offer were asked to sign the following statement: "I do not accept this assignment. I understand that the Company might not place me in another assignment and that I may be subject to termination of employment…." (Pande 363:6-16 and Exh. 19) The documentation also stated that termination dates were not open to negotiation, rather, they were "set according to management's judgment based on the company's business needs." (Dunn Dec. ¶3 and Exh. A)

9

10

11

**50.    Page 16, lines 8-11:   "Evidence also shows that these supposed 'drop dead' move dates were actually quite flexible.   For instance SASBU employees such as Afifi, Burkes and others were permitted to remain in San Ramon after their units had officially moved to Houston."**

12

**EVIDENCE CITED BY PLAINTIFF:**

**DEFENDANTS' OBJECTION:**

13

14

15

16

No evidence cited.

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande has presented **no** evidence in support of such assertions.

17

18

19

20

21

22

Pande's statement does not comply with FRCP 56(e) because it fails to set froth specific facts supporting her claim. *See Carmen v. San Francisco Unified School District,* 237 F.3d 1026 (9th Cir. 2001). "The district court need not examine the entire file for evidence establishing a genuine issue of fact, where the evidence is not set forth in the opposing papers with adequate references so that it could be conveniently found." *Id.* at 1031.

23

24

25

26

Further, the undisputed evidence is that neither Afifi nor Burkes were part of Block 14 (Afifi 9:16-10:21; Burkes 8:4-14) and that no one from Block 14 was permitted to remain in San Ramon past December 31, 2003. (Dunn Dec. ¶ 5)

27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**51.    Page 17, lines 4-9:  "However, Pande has raised a triable issue that Dunn harbored animus against Pande for taking her medical leave right when the unit was packing up and leaving for Houston."**

**EVIDENCE CITED BY PLAINTIFF:**

*See e.g.* Dunn Depo. 81:15-82:9 (attributing his conduct at the November 4 conference call to it being "a stressful time" and being under a lot of "pressure"), *see also id.* Exh. 4 (October 10 email nothing how problems will be "compounded" if Pande leaves the group early).

(Dunn Depo. 81:15-82:9:
Q    At any point during the period -- during the time in the meeting where you were discussing this transition of work from Ms. Pande to others, did you speak in an elevated tone of voice?
A    That -- that meeting was -- it was a stressful time and I did raise my voice because we were moving, we had lots of work to do, a lot of pressure, a big transition of a lot of people on and off the team, and -- and I -- and I -- and I did raise my voice.
Q    Okay.  I understand that generally but my question was a little bit more specific than that, which is:  When speaking in regard to Ms. Pande specifically and the transitioning of her work to others, did you speak in an elevated tone of voice?
A    I don't recall speaking specifically to her any way different than anyone else.  I do -- I -- as I mentioned, I did -- I did speak in an elevated voice due to the pressure we were under and my -- you know, my -- my -- my responsibility to make sure that the work program was completed as supervisor.)

**DEFENDANTS' OBJECTION:**

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande has failed to lay a foundation for her assertion and the evidence cited does not support this conclusory statement.

**52.    Page 17, line 18 – page 18, line 2:  "The evidence shows that – after Pande informed Dunn of her need for leave, and after his November 4 tirade – Dunn made subjective, negative comments about Pande to Omoregie.  Dunn was unable to support those comments with facts at his deposition, and documentary evidence tends to show Dunn held the opposite opinion of Pande as late as October 10, 2003."**

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**EVIDENCE CITED BY PLAINTIFF:**

*See* Dunn Depo. Exh. 4 (telling Pande 'I know the delays are not your fault…').")

**DEFENDANTS' OBJECTION:**

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande has failed to lay a foundation for her assertion.    Indeed, as explained above in item number 39, Dunn did testify as to certain specific performance problems by Pande.  Further, the email cited does not support the Pande's assertion. This becomes even more apparent if one looks at Dunn's testimony on the subject – testimony conspicuously excluded from Pande's brief.  Dunn testified as follows:

Dunn 61:13-23:
Q  And skip down to the second-to-last line where it says, "I know the delays are not your fault." When you sid that to Ms. Pande, were you being honest?
A  What do you mean?
Q  Did you actually think they were her fault but just wrong that you believed they were not her fault?
A  No.  It was a - - as I mentioned, this was a - - I probably should have said, "entirely your fault."   I mean, it was a joint - - as I mentioned, it was a joint responsibility between Kiran and - - and the other people on her team."

53.    **Page 19, lines 18-20:  "Chevron also violated the FMLA/CFRA by implementing its across-the-board policy of only certifying leave in 30-day increments.    As shown in the approval letter sent to Pande, this was the company's policy."**

**EVIDENCE CITED BY PLAINTIFF:**

Pande Decl. Exh. C.

**DEFENDANTS' OBJECTION:**

Defendants object on the basis that Pande's statement is purely conclusory, speculative and argumentative. Pande fails to lay any foundation for her statements and has provided no admissible evidence in support of her allegation that Defendants impose any

47

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

"across-the-board policy," much less a policy that FMLA and/or CFRA leave eligibility is approved for only 30 days. Neither Pande's unsupported declaration testimony – which lacks foundation and constitutes inadmissible lay opinion testimony – nor Exhibit C, support Pande's assertions in this regard.

*See also* Objections to Pande Declaration at ¶¶ 41-43.

54.    **Page 20, lines 6-9:  "It was made very clear to Pande on that site that the DMP required her to file for short-term disability coverage if she was going to be absent from work for more than five consecutive days for a medical-related reason."**

**EVIDENCE CITED BY PLAINTIFF:**                    **DEFENDANTS' OBJECTION:**

Pande Decl. ¶¶15-16.                    *See* Objections to Pande Declaration at ¶¶ 36-43.

55.    **Page 20, lines 9-12:  "The information also instructed Pande that to comply with the DMP's requirements for applying for all leave, including both short-term disability and FMLA/CFRA, she must communicate with UnumProvident and provide them with all requested documentation."**

**EVIDENCE CITED BY PLAINTIFF:**                    **DEFENDANTS' OBJECTION:**

Pande Decl. ¶¶15-16.                    *See* Objections to Pande Declaration at ¶¶ 36-43.

56.    **Page 20, lines 12-14:  "Pande subsequently contacted UnumProvident and was told to sign and submit the medical records waivers which she had downloaded from Chevron's internal web site."**

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

48

**EVIDENCE CITED BY PLAINTIFF:**

Pande Decl. ¶¶15-16.

**DEFENDANTS' OBJECTION:**

*See* Objections to Pande Declaration at ¶¶ 36-43.

57.     **Page 21, lines 5-8:  "As both Richardson and Taylor confirm, UnumProvident relies exclusively on the medical records obtained through the short-term disability evaluation which requires a vastly overbroad release of medical records in comparison with FMLA/CFRA requirements."**

**EVIDENCE CITED BY PLAINTIFF:**

No evidence cited.

**DEFENDANTS' OBJECTION:**

Defendants object to Pande's mischaracterization of the declaration testimony of Richardson and Taylor. Pande's assertions are purely conclusory, speculative and argumentative.

Taylor's declaration clearly states that "In circumstances where an employee seeks both STD benefits and FMLA/CFRA leave protection, the FMLA Unit does not require the submission of any medical information for purposes of determining FMLA/CFRA eligibility…. In such cases, the FMLA Unit does not review any medical documentation, does not make inquiries of the employee's health care provider, does not require the submission of a Certification of Health Care Provider or the execution of an authorization for the release of medical records, and does not discuss medical information with the members of the STD Unit." (Taylor Dec. ¶ 5) In light of the fact that *NO* medical records are reviewed or considered for purposes of determining FMLA/CFRA eligibility, Pande's statement unsupported, nonsensical and argumentative. (*See also* Richardson Dec. ¶ 5)

58.     **Page 23, lines 1-4:  "First, Mitchell's flat denial of making any statements showing animus towards people of East Indian descent is contradicted not only by Pande, but by Yamashita, and by Chevron in its Answer."**

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

49

1 | **EVIDENCE CITED BY PLAINTIFF:** | **DEFENDANTS' OBJECTION:**

2

3 *Supra* § III.C.

Defendants object on the ground that Pande's assertion is argumentative, conclusory and unsupported by any admissible evidence. Further, Pande has failed to lay any foundation for such assertion. It is patently untrue that Defendants' Answer contradicts Mitchell's denial in this regard. Defendants' Answer stated only that "Plaintiff **told** Johnson about a situation in the past when Mitchell referred to a taxi driver of Indian Origin a [sic] as a "towel head." (Answer ¶ 13, emphasis added) Further neither Pande nor Yamashita overheard any such statements (*see* Pande 285:8-14), accordingly, at best, their comments are inadmissible hearsay. Pande testified that such comments were heard by Iris Owens, but Ms. Owens herself denies ever hearing any comments of this sort. (Owens Dec. ¶¶ 2-3)

59. **Page 23, lines 4-10: "Moreover, Iris Owens' denial of her involvement in relaying the comment to Pande should be disregarded. Aside from the fact that she is still employed by Chevron and dependent upon the company for continued employment, Yamashita testified that (1) he confirmed with Owens that Mitchell had made the 'towel heads' comment, and (2) Owens was reluctant to come forward with the comment because she feared retaliation – even in the face of assurances from Yamashita that she would be protected from such retaliation."**

**EVIDENCE CITED BY PLAINTIFF:** | **DEFENDANTS' OBJECTION:**

Yamashita Depo. 38:23-40:24.

MR. LEBOWITZ: Q. In 2002, when Ms. Pande came to you with her complaints, do you recall her telling you about complaints she had heard about Rex Mitchell from someone named Iris Owens?
A. I didn't remember the name until someone mentioned it yesterday, but I do recall that, yes.
Q. What do you recall about what Ms.

Defendants object on the ground that Pande's statements are argumentative, conclusory and lack foundation. Moreover, the statement is unsupported by admissible evidence. Yamashita's deposition testimony, which itself makes clear that Yamashita's recollection of any discussion with Owens is vague, constitutes inadmissible hearsay.

1  Pande told you in regard to Ms. Owens?
2  A.  I don't remember the exact words, but it
   was along the lines that Iris was making
3  some sort of reservation for Rex, I believe, in
   Houston and asked him if he wanted a rental
4  car or he was going to take a taxi; and the
   response was that "Why would I want to take
5  a taxi and ride with a towel-head," or
   something along those lines.  I don't know
6  exact words.
7  And what was your response to Ms. Pande
   when she related the story to you?
8  I was shocked, surprised that anyone would
   say something like that.
9  Q.  Did you raise this particular item with Jay
   Johnson at any time during this process in
10 2002?
11 A.  I don't recall if I did or didn't.
   Q.  Did you ever speak directly with Ms.
12 Owens about this issue?
   A.  I did, yes.
13 Q.  And when did you speak with her?
   A.  I don't remember when.
14 Q.  And what did she tell you?
15 A.  As I recall, she confirmed it, but she didn't
   want anything done with it.
16 Q.  Did she tell you why not?
   A.  Something along the lines of wanting her
17 job.
   Q.  I don't understand that.
18 A.  She was afraid that would jeopardize her
19 job if she raised the issue.
   Q.  Did you do anything to try and assure her
20 that her job would not be jeopardized if she
   made a complaint?
21 A.  Yes, I did.
   Q.  And -- so, do I understand from your
22 testimony that despite your assurances, Ms.
23 Owens still did not make a complaint?
   A.  I don't know if she did or didn't.
24 Q.  But she did not make that complaint to
   you?  Is that what you're saying?
25 A.  She -- I'm not -- I'm off the record, so I
26 tried to get her to raise it with appropriate
   persons, which would have been Jay or
27 someone in HR.  And whether she did or
   didn't, I don't know.
28

---

51

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1   Q. But, in any event, you did not in any way
2   initiate anything with HR or upper
3   management in regard to Ms. Owens's
  statement; is that correct?
4   A. No, I did not.

5

6   **60.**   **Page 24, lines 20-24: "As explained above, Chevron is a workplace where**
7   **employees rely heavily on word-of-mouth for career path opportunities. Moving**
8   **up means moving around to various Chevron companies. Once negative**
  **subjective comments begin to circulate about an employee, avenues for**
9   **favorable assignments vanish."**

10   <u>**EVIDENCE CITED BY PLAINTIFF:**</u>       <u>**DEFENDANTS' OBJECTION:**</u>

11   No evidence cited.       Defendants object on the basis that Pande's
12       statement is purely conclusory, speculative
13       and argumentative. Pande has presented
      ***no*** evidence in support of such assertions.

14       Pande's statement does not comply with
15       FRCP 56(e) because it fails to set froth
16       specific facts supporting her claim. *See*
      *Carmen v. San Francisco Unified School*
17       *District,* 237 F.3d 1026 (9th Cir. 2001). "The
18       district court need not examine the entire file
      for evidence establishing a genuine issue of
19       fact, where the evidence is not set forth in
20       the opposing papers with adequate
      references so that it could be conveniently
      found." *Id.* at 1031.

21       Further, this statement is irrelevant and
22       immaterial to this motion.

23

24   **61.**   **Page 24, lines 24-25: "As Tim Magner put it, such comments are "real career**
  **killers.'"**

25

26   <u>**EVIDENCE CITED BY PLAINTIFF:**</u>       <u>**DEFENDANTS' OBJECTION:**</u>

27   Thompson Decl. ¶ 19-20, Exh. B.       Defendants object on the basis that Pande's
28       statement is purely conclusory, speculative

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**DEFENDANTS' OBJECTIONS TO EVIDENCE CITED BY PLAINTIFF IN MEMORANDUM OF POINTS AND
AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. C 04 5107 CW**

and argumentative. Pande has failed to lay a foundation for her assertion. Further, the evidence cited by Pande is inadmissible double hearsay that does not fall within any hearsay exception. *See also* Objections to Thompson Declaration at ¶¶ 48-53.

This statement is irrelevant and immaterial to this motion. Indeed, Pande did not post for the position referenced in the email and her Personnel Development Representative did not pursue the position on her behalf. *See* Supplemental Hartshorn Dec. ¶ 3.

Defendants respectfully request that the Court sustain the above objections and strike the evidence referred to above.

Dated:  December 22, 2006

MILLER LAW GROUP
Professional Corporation

By:            /S/
        Michele Ballard Miller
Attorneys for Defendants CHEVRON INTERNATIONAL EXPLORATION AND PRODUCTION (formerly known as CHEVRONTEXACO OVERSEAS PETROLEUM and improperly sued as CHEVRONTEXACO OVERSEAS PETROLEUM PACIFIC COMPANY) AND CHEVRON CORPORATION (formerly known as CHEVRONTEXACO CORPORATION)

Z:\Chevron\Pande\Pleadings\Summary Judgment\Reply Brief and Supporting Documents\003.Objection to Plaintiff's Statement of Facts.doc

Side text
MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

DEFENDANTS' OBJECTIONS TO EVIDENCE CITED BY PLAINTIFF IN MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO MOTION FOR SUMMARY JUDGMENT
Case No. C 04 5107 CW