Michele Ballard Miller (SBN 104198)
Kerry McInerney Freeman (SBN184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE,<br><br>Plaintiff,<br><br>v.<br><br>CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.<br><br>Defendants. | Case No. 04-5107 CW<br><br>**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO BIFURCATE PUNITIVE DAMAGES FROM ANY LIABILITY PHASE OF TRIAL**<br><br>Date:   March 30, 2007<br>Place:  Courtroom 2<br>Time:   1:30 p.m.<br><br>Pretrial Conference: March 30, 2007<br>Trial Date:          April 16, 2007<br>Complaint filed:     December 2, 2004 |

### I. INTRODUCTION

In light of skyrocketing oil prices and reportedly record profits, can anyone not feel anger toward big oil companies like Defendants? Every trip to the gas station is a painful reminder. And, if that were not enough, the situation in the Middle East, the inclusion of

1
**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO BIFURCATE PUNITIVE DAMAGES**
Case No. 04-5107 CW

Proposition 87 on the November 2006 ballot and the increased focus on global warming only compounds the problem.  Oil companies, like Chevron, have become easy targets for public frustration.[1]  How easy it would be for a jury to vent its anger at this state of affairs by "punishing" Defendants.  Only the Court can prevent this outcome – indeed, something more than a verbal instruction to the jury is required.

In order to promote a fair and impartial trial of this matter and avoid any undue and unnecessary prejudice, Defendants respectfully request that this Court bifurcate the issue of punitive damages from the liability phase of trial.  Good cause exists for bifurcation of punitive damages on the ground that evidence relating to punitive damages and Defendants' financial condition prior to establishing liability create a substatnital risk of prejudice to Defendants which cannot be mitigated by any other means.  Indeed, in the absence of a finding of liability, the information serves no useful purpose other than to inflame the jury. For these reasons, Defendants request that all parties and all counsel be prohibited from commenting on or presenting evidence or testimony relating to Plaintiff's claim for punitive damages, including any reference to Chevron's financial worth, profits or condition unless and until a jury finds in Plaintiff's favor, awards actual damages, ***and*** determines that Defendants are guilty of malice, oppression or fraud.

## II.   LEGAL ANALYSIS

Federal Rule of Civil Procedure 42(b) grants courts broad discretion to bifurcate trials (i) "in furtherance of convenience", (ii) "to avoid prejudice", or (iii) "when separate trials will

---

[1] The recent election graphically illustrates this point.  In the weeks leading up to the November 2006 election, the "Yes on Proposition 87" television and broadcast advertisements vilified Chevron – insinuating that Chevron is nothing more than a callous member of the "Big Oil" holding California hostage.  Indeed, one of the "Yes on Proposition 87" television spots started with a deep voice stating, "We buy their oil, they burn our flag." Immediately after the image of the burning American flag faded, a picture of the Chevron flag appeared on screen with a voice overlay stating, "We are being held hostage by the oil companies."   The message portrayed to the public – Chevron is anti-American, looking out for its own financial interests at the expense of national security.  The other message – Chevron cares more about profit than the environment.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

2
**DEFENDANTS' MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF
MOTION TO BIFURCATE PUNITIVE DAMAGES**
Case No. 04-5107 CW

be conducive to expedition and economy." Fed. R. Civ. Proc. § 42(b); *see Amato v. City of Saratoga Sprints,* 972 F.Supp. 120, 123 (N.D.N.Y. 1997). Courts agree that severing liability issues from punitive damages claims is an appropriate use of such discretionary power. *Figueroa v. Gates,* 207 F.Supp.2d 1085, 1102 (C.D. Cal. 2000); *see also Arthur Young & Co. v. United States District Court,* 549 F.3d 686, 697 (9th Cir. 1977) ("[b]ifurcation of the trial of liability and damage issues is well within the scope of a trial court's discretion."). Although there exists no rigid test for determining the appropriateness of bifurcation in federal law, any one of the three criteria is sufficient to justify bifurcation. *See Saxion v. Titan-C-Mft., Inc.,* 86 F.3d 553, 556 (6th Cir. 1996). In this case, all three criteria – the interests of judicial economy and convenience as well as the interest in avoiding undue and unnecessary prejudice –compel bifurcation.

### A. Because Defendants' Financial Condition Has No Bearing On Liability, Bifurcating Punitive Damages Promotes Convenience, Expedition and Judicial Economy.

In this case, Defendants' financial condition is irrelevant to this lawsuit prior to a finding of liability as Plaintiff makes **no** allegations and presents **no** theories which suggest that Defendants' worth, profits or financial condition had anything to do with Plaintiff's employment, her termination from employment, or her alleged statutory or common law violations. *See Plaintiff's Second Amended Complaint.* Rather, liability in this action is dependent only upon whether Plaintiff can prove that Defendants' denied Plaintiff statutory protections, or discriminated or retaliated against her on the basis of a protected characteristic or activity. Indeed, should the jury find in Defendants' favor on the issue of liability, the need for any evidence relating to Defendants' financial condition is obviated. Accordingly, the interests of convenience, expedition and judicial economy all weigh

strongly in favor of bifurcation.[2]  *See generally, Barnell v. Paine Webber Jackson & Curtis, Inc.*, 577 F. Supp. 976, 978 (S.D.N.Y. 1984) ("since the trial of [equitable tolling] issue may obviate the need for any further proceedings herein, a significant saving of time and money may follow from a separate trial on this issue"); *Huffmaster v. United States*, 186 F. Supp. 120, 124 (N.D. Cal. 1960) (bifurcation appropriate where resolution of complicated issues will be unnecessary if defendant prevails on one issue); *Evans v. State of Conn.*, 168 F.R.D. 118, 120 (D. Conn. 1996) ("It is clearly convenient to await consideration of relief where a finding of liability is a sine qua non for such damages or other award").

Moreover, given the complexity of Defendants' organizations – as well as the fact that both Chevron International Exploration and Production Company, a division of Chevron U.S.A., Inc. and Chevron Corporation are defendants in this action – a showing of Defendants' financial condition will entail numerous witnesses and significant evidence. Accordingly, unless this issue is bifurcated, a significant amount of time may be wasted on evidence which will have no relevance whatsoever unless the jury returns a verdict in Plaintiff's favor <u>and</u> finds Defendants acted with oppression, fraud, or malice.  Bifurcation is warranted on these bases alone.

**B.   Evidence of Defendants' Financial Condition or of Punitive Damages Generally Will Unduly and Unnecessarily Prejudice Defendants in the Jurors' Eyes.**

In addition to prolonging and unnecessarily complicating the trial, permitting reference to Defendants' financial condition or profits and allowing such evidence to

---

[2] In fact, the Court will only reach the issue of punitive damages if Plaintiff proves that "an officer, director, or managing agent" committed the alleged violations with oppression, fraud, or malice *and* Plaintiff proves by clear and convincing evidence that Defendants "had advance knowledge of the unfitness of [the officer, director, or managing agent of the corporation] and employed him or her with a conscious disregard of the rights or safety of others or authorized or ratified the wrongful conduct." (*White v. Ultramar, Inc.*, 21 Cal. 4th 563, 571-72 (1999) (quoting California Civil Code § 3294(b)).)  In other words, if the jury finds against Plaintiff on either of these issues, any testimony and evidence concerning Defendants' financial condition will be unnecessary.

intermingle with evidence on liability will severely prejudice Defendants. This prejudice is accentuated by the fact that the public already has preconceived opinions about big oil, that Chevron and the other big oil companies have been repeatedly attacked in the news media, and that jurors who have been impacted by increased gas prices may be particularly sensitive to oil company profits.

In situations such as this, where bifurcation of punitive damages "minimizes potential prejudice by preventing jurors from learning of a defendant's 'deep pockets' before they determine the threshold issues" of liability and malice, oppression or fraud" it is clearly warranted. *See e.g., Torres v. Automobile Club of So. California*, 15 Cal. 4th 771, 777-78 (1997). Indeed, in recognition of this fact, California law mandates bifurcation of punitive damages upon application of any defendant. Specifically, a party may not admit evidence of the defendant's profits or financial condition until after the trier of fact returns a plaintiff's verdict awarding actual damages and finds the defendant guilty of malice, oppression or fraud. *See* Cal. Civ. Code § 3295(d). California District Courts have also exercised their discretion to sever liability issues from punitive damages. *See Figueroa v. Gates*, 207 F.Supp.2d 1085, 1102 (C.D. Cal. 2000) (bifurcating liability issues from punitive damages claims); *Birdsong v. State Farm Mutual Automobile Insurance Co.*, 1997 U.S. Dist. LEXIS 18504, at *17 (N.D. Cal. 1997) (indicating court's intention to bifurcate the trial on the issues of contract/bad faith and punitive damages).

Here, Defendants' financial condition is not relevant to the liability phase of the trial. This fact, combined with the severe prejudice that testimony or evidence of Defendants' profits and financial condition will cause to jurors who – no doubt – have already been subjected to negative publicity concerning big oil, justifies bifurcation.

### III. CONCLUSION

For the foregoing reasons, Defendants respectfully request that the Court issue an order bifurcating punitive damages from the liability phase of trial and:

1. Prohibiting the attorneys, parties and witnesses from offering evidence or making any reference in the presence of the jurors and/or prospective jurors relating to (a) the net worth, profits or financial condition of Defendants or any Chevron-related entities or to (b) Plaintiff's prayer for punitive damages, unless and until Plaintiff obtains a favorable verdict entitling her to actual damages <u>and</u> proves Defendants are guilty of malice, oppression, or fraud.

2. Requiring that the trial attorneys instruct their witnesses not to offer any evidence or make reference in the presence of jurors and/or prospective jurors relating to (a) the net worth, profits or financial condition of Defendants or any Chevron-related entities or to (b) Plaintiff's prayer for punitive damages, unless and until Plaintiff obtains a favorable verdict entitling her to actual damages <u>and</u> proves Defendants are guilty of malice, oppression, or fraud.

Dated: February 23, 2007

MILLER LAW GROUP
A Professional Corporation

By: _____/S/_____
Michele Ballard Miller
Attorneys for Defendants CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.