Michele Ballard Miller (SBN 104198)
Kerry McInerney Freeman (SBN184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON
CORPORATION (f/k/a ChevronTexaco
Corporation) and CHEVRON INTERNATIONAL
EXPLORATION & PRODUCTION COMPANY
(f/k/a ChevronTexaco Overseas Petroleum),
a division of Chevron U.S.A. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIRAN PANDE,

        Plaintiff,

v.

CHEVRON CORPORATION (f/k/a
ChevronTexaco Corporation) and CHEVRON
INTERNATIONAL EXPLORATION &
PRODUCTION (f/k/a ChevronTexaco
Overseas Petroleum), a division of Chevron
U.S.A. Inc.

        Defendants.

Case No. C 04-5107 CW

**DEFENDANTS' MOTIONS *IN LIMINE***

Trial Date:     October 9, 2007
Time:         8:30 a.m.
Place:        Courtroom 2
Pre-Trial Conf.:  May 22, 2007

Complaint filed:  December 2, 2004

*MILLER LAW GROUP*
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

# TABLE OF CONTENTS

**I MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EVIDENCE SUGGESTING PLAINTIFF IS ENTITLED TO RELIEF ON HER FMLA AND CFRA CLAIMS** ...................1

    **A. Statement Of Facts** ...........................................................................2

    **B. Legal Analysis** ................................................................................3

    **1. Plaintiff Cannot Prove That Defendants Interfered With, Restrained, Or Denied Plaintiff Her Statutory Rights Under FMLA/CFRA** .....................3

**II MOTION *IN LIMINE* TO EXCLUDE MAGNER'S "CAREER KILLER" EMAILS** ...........5

    **A. Statement Of Facts** ...........................................................................6

    **B. Legal Analysis** ................................................................................7

    **1. Tim Magner's Email Correspondence Is Irrelevant And Is Properly Excluded Pursuant To FRE 401** ...............................................................7

    **2. Tim Magner's Email Correspondence Contains Multiple Hearsay And Is Properly Excluded** ...............................................................................8

    **3. Tim Magner's Email Correspondence Should Be Excluded Pursuant To Rule 403 Of The Federal Rules Of Evidence Because It Will Unfairly Prejudice Defendants** .........................................................................................9

**III MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF REX MITCHELL'S ALLEGEDLY DISCRIMINATORY COMMENTS AND REFERENCE TO VICTORIA THOMPSON'S CONFLICTS WITH MITCHELL** .....................................................................9

    **A. Statement Of Facts** .........................................................................10

    **B. Legal Analysis** ..............................................................................11

    **1. Testimony Relating To Mitchell's Allegedly Discriminatory Comments Is Hearsay** .............................................................................................11

    **2. Evidence Of Mitchell's Allegedly Discriminatory Comments Should Be Excluded Pursuant To FRE 403 Because It Will Unfairly Prejudice Defendants** 12

    **3. Testimony Concerning Victoria Thompson's alleged conflicts with Mitchell Is Irrelevant** .......................................................................................13

**IV MOTION *IN LIMINE* TO EXCLUDE CHARACTER EVIDENCE REGARDING MR. DUNN AND MR. MITCHELL** ......................................................................13

    **A. Statement Of Facts** .........................................................................14

    **B. Legal Analysis** ..............................................................................15

    **1. Character Evidence Is Inadmissible To Prove That Dunn And Mitchell Acted In Conformity Therewith** ......................................................................15

    **2. The Proffered Character Evidence Is Irrelevant And Properly Excluded Under FRE 402** ...................................................................................15

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

3.  The Proffered Character Evidence Would Unfairly Prejudice Defendants And Waste Trial Time .................................................................................16

V  MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGRADING PLAINTIFF'S WITHDRAWN EMOTIONAL DISTRESS CLAIMS AND HER EMOTIONAL HEALTH .......16

A.  Statement Of Facts ........................................................................16

B.  Legal Analysis ..............................................................................17

VI  MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING PLAINTIFF'S OCTOBER 30 AND NOVEMBER 4, 2003 MEETINGS WITH JACK DUNN .........................17

A.  Statement Of Facts ........................................................................17

B.  Legal Analysis ..............................................................................18

VII  CONCLUSION ..................................................................................19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1

# TABLE OF AUTHORITIES

2

3 **Cases**

4 *Bachelder v. America West Airlines, Inc.*, 259 F.3d 1112 (9th Cir. 2001) ..............................3

*Brokopp v. Ford Motor Co.* (1997) 71 Cal. App. 3d 841 ........................................................15
5
*Cehrs v. Northeast Ohio Alzheimer's Research Ctr.,* 155 F.3d 775 (6th Cir. 1998) ...............4
6
*Colburn v. Parker Hannifi/Nichols Portland Div.,* 429 F.3d 325 (1st Cir. 2005) ....................4
7 *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d 1354 (11th Cir. 1999) .........................8, 11

8 *Haskell v. Kaman Corp.*, 743 F.2d 113 (2nd Cir. 1984) .......................................................13

9 *Hill v. Underwood Memorial Hospital, et al.,* 365 F. Supp. 2d 602 (D.N.J. 2005) ..............4, 5

*Hoptowit v. Ray*, 682 F.2d 1237 (9th Cir. 1982) ..................................................................12
10
*Hoselton v. Metz Baking Co.* 48 F.3d 1056  (8th Cir. 1995) .............................................8, 11
11
*Kanida v. Gulf Coast Medical Personnel LP*, 363 F.3d 568 (5th Cir. 2004) .......................15
12
*Kelso v. Corning Cable Systems Int'l Corp.,* 224 F. Supp. 2d 1052 (W.D.N.C. 2002)...........4
13
*Pang v. Beverly Hospital, Inc.*, 79 Cal. App. 4th 986 (2000) ..................................................3
14 *Pittman by Pittman v. Grayson,* 149 F.3d 111 (2nd Cir. 1998)........................................8, 11

*Price Waterhouse v. Hopkins,* 409 U.S. 228 (1989).............................................................12
15
*Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81 (2002)................................................3
16
*Rojas v. State of Florida*, 285 F.3d 1339 (11th Cir. 2002)................................................8, 11
17
*U.S. v. Hall,* 653 F.2d 1002 (5th Cir. 1981) ....................................................................17, 18
18
*Upshaw v. The Dallas Heart Group*, 961 F. Supp. 997 (D. Tex. 1997) .....................9, 11, 12
19
*Xin Liu v. Amway Corp.,* 347 F.3d 1125 (9th Cir. 2003)........................................................3

20

21 **Statutes**

2 Cal. Code Regs. § 7297.10.....................................................................................................3
22
29 U.S.C. § 2615(a).................................................................................................................3
23
29 U.S.C. § 2617 .....................................................................................................................3

24 Federal Rule of Evidence 1014.............................................................................................16

25 Federal Rule of Evidence 401........................................................................6, 7, 17, 18

26 Federal Rule of Evidence 402.......................................................................2, 15, 17, 18

27 Federal Rule of Evidence 404...............................................................................................15

Federal Rule of Evidence 803.................................................................................................8
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

Federal Rule of Evidence 804.................................................................................8

Federal Rule of Evidence 805.......................................................................6, 8, 11

Federal Rule of Evidence 807.................................................................................8

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

Pursuant to the Court's Case Management and Pretrial Preparation Orders, Defendants Chevron Corporation (formerly known as ChevronTexaco Corporation) and Chevron International Exploration & Production Company (formerly known as ChevronTexaco Overseas Petroleum (formerly known as ChevronTexaco Overseas Petroleum Company), a division of Chevron U.S.A. Inc. (collectively "Defendants") respectfully file the following Motions *in Limine*:[1]

I.      To Exclude Testimony and Evidence Suggesting Plaintiff is Entitled to Relief on Her FMLA and CFRA Claims;

II.     To Exclude Magner's "Career Killer" Emails;

III.    To Exclude Evidence of Rex Mitchell's Allegedly Discriminatory Comments and Reference to Victoria Thompson's Conflicts With Mitchell;

IV.     To Exclude Character Evidence Concerning Mr. Dunn and Mr. Mitchell;

V.      To Exclude Evidence Regarding Plaintiff's Withdrawn Emotional Distress Claims and Her Emotional Health; and

VI.     To Exclude Evidence Regarding Plaintiff's October 30 and November 4, 2003 Meetings with Jack Dunn.

## I
### MOTION *IN LIMINE* TO EXCLUDE TESTIMONY AND EVIDENCE SUGGESTING PLAINTIFF IS ENTITLED TO RELIEF ON HER FMLA AND CFRA CLAIMS

By this Motion, Defendants seek to exclude any evidence suggesting that Plaintiff Kiran Pande ("Pande" or "Plaintiff") is entitled to lost wages, lost earnings, or equitable or other relief, based upon her first and second causes of action for violation of the Family Medical Leave Act ("FMLA") and the California Family Rights Act ("CFRA").   Such

---

[1] Based upon the representations of Plaintiff's counsel that Plaintiff will not seek to introduce testimony from Plaintiff's treating physicians, Drs. Task and Wong, Defendants have withdrawn their previously prepared and exchanged motion *in limine* seeking exclusion of such testimony.

evidence and testimony is wholly irrelevant to Plaintiff's claims.  FRE 402.[2]  Such evidence is also unduly prejudicial and would serve only to inflame the passions of the jury against Defendants.  FRE 403.  Defendants further seek an order *in limine* holding that Plaintiff is not entitled to any relief pursuant to her FMLA and/or CFRA causes of action and precluding such issues from submission to the jury.

**A.    Statement Of Facts**

Plaintiff began an FMLA/CFRA leave on November 10, 2003.  *See* Exh. B. to Pande Declaration in Opposition to Defendants' Motion For Summary Judgment, attached as Exh. A to the Declaration of Michele B. Miller ("Miller Decl."), at ¶ 3.  Accordingly, her 12-week leave entitlement ended no later than **February 2, 2004**.[3]  Plaintiff's doctor indicated that Plaintiff could be out on leave for her medical condition through April or May 2004. Miller Decl. ¶¶ 4-5, and Exhs. B and C thereto (Pande Deposition ("Depo.") at 469:14-470:13 and Exh. 38).  Plaintiff admitted under oath that she was not able to return to gainful employment until mid-May 2004.  *Id.* at ¶ 4, and Exh. B thereto (Pande Depo. 428:14-429:1, 467:20-471:13.)

/ / / /

/ / / /

/ / / /

/ / / /

---

[2] All statutory references are to the Federal Rules of Evidence, cited as "FRE," unless otherwise indicated.

[3] Any claim that the computation of Pande's FMLA/CFRA entitlement is uncertain is spurious. Indeed, a letter sent to Pande in late October 2003 (which Pande authenticated and attached as an exhibit in support of her Opposition to Defendants' Motion For Summary Judgment) clearly explains that Chevron computes the 12 month FMLA year on a rolling basis – counting 12 months from the date of the first FMLA approved absence for a particular reason/serious health condition.  *See Miller Decl. ¶ 3, and Exh. A thereto.*

**MILLER LAW GROUP**
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**MILLER LAW GROUP**
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**B.    Legal Analysis**

**1.    Plaintiff Cannot Prove That Defendants Interfered With, Restrained, Or Denied Plaintiff Her Statutory Rights Under FMLA/CFRA.**

To prevail on a cause of action alleging interference with one's FMLA or CFRA entitlements an employee must prove, as a threshold matter, that the employer interfered with, restrained or denied the employee his or her statutory rights. *See Ragsdale v. Wolverine World Wide, Inc.,* 535 U.S. 81, 89 (2002).[4]  Even if that threshold showing is made, to recover damages the employee must also show that he or she was prejudiced by the employer's violation.[5]  *Id.*  In other words, ***an aggrieved employee may only recover for actual harm suffered***.  As explained by the United States Supreme Court in *Ragsdale:*

> The employer is liable only for compensation and benefits lost "by reason of the violation," [29 U.S.C.] § 2617(a)(1)(A)(i)(I), for other monetary losses sustained "as a direct result of the violation," § 2617(a)(1)(A)(i)(II), and for "appropriate" equitable relief, including employment reinstatement, and promotion, § 2617(a)(1)(B).  The remedy is tailored to the harm suffered.

*Id.*  Where an employee does not incur damages as a result of the employer's violation of those statutes, the employee may not recover on his or her FMLA/CFRA claims.

---

[4]  Although Plaintiff's Second Amended Complaint alleges both interference and retaliation in violation of the FMLA and the CFRA, the Ninth Circuit treats claims alleging that an employer took adverse action against an employee for taking protected leaves as "interference" claims pursuant to 29 U.S.C. § 2615(a).  *Xin Liu v. Amway Corp.,* 347 F.3d 1125, 1133 fn. 7 (9th Cir. 2003); *Bachelder v. America West Airlines, Inc.,* 259 F.3d 1112, 1124 (9th Cir. 2001).

[5]  California courts have held that the same standards apply to CFRA and FMLA claims. *Dudley v. Dep't of Transp.,* 90 Cal. App. 4th 255, 261 (2001); *see also Pang v. Beverly Hospital, Inc.,* 79 Cal. App. 4th 986, 993 (2000). In addition, the California Code of Regulations provides that "to the extent the FMLA regulations are not inconsistent with this subchapter, other state law or the California Constitution, the Commission incorporates the federal regulations interpreting FMLA which govern any FMLA leave which is also a leave under this subchapter." 2 Cal. Code Regs. § 7297.10.

In this case, it is undisputed that Pande began an FMLA/CFRA leave on November 10, 2003, and her 12-week leave entitlement ended no later than **February 2, 2004**. Miller Decl. ¶ 3, and Exh. A thereto. Pande's doctor indicated on November 13, 2003 that she could be off work through May 2004, and Pande admitted under oath that she was not, in fact, able to return to gainful employment until mid-May 2004. *Id.* at ¶¶ 4-5, and Exhs. B and C thereto (Pande Depo. 428:14-429:1, 467:20-471:13 and Exh. 38). ***There is no question that Pande would not – and could not – have returned to work prior to the expiration of her FMLA/CFRA entitlement***. Thus, she cannot argue that she was damaged or prejudiced as a result of any alleged violation of those laws. *See Hill v. Underwood Memorial Hospital, et al.,* 365 F. Supp. 2d 602, 610 (D.N.J. 2005) (plaintiff could not recover under the FMLA where the evidence showed that she "still would not, and could not, have returned to work within [the FMLA] twelve week period."); *Kelso v. Corning Cable Systems Int'l Corp.,* 224 F. Supp. 2d 1052, 1057 (W.D.N.C. 2002) (even if the employer made an error in calculating FMLA benefits, the plaintiff suffered no loss because his FMLA leave was uncompensated and he was unable to return to work when his FMLA leave should have ended); *Cehrs v. Northeast Ohio Alzheimer's Research Ctr.,* 155 F.3d 775, 784-85 (6th Cir. 1998) (employee could not state an FMLA claim because she was unable to return to work within the period provided by the FMLA); *Colburn v. Parker Hannifi/Nichols Portland Div.,* 429 F.3d 325, 332 (1st Cir. 2005) (plaintiff could not recover on an FMLA interference claim because the employer was under no obligation to reinstate him since he was not able to return to work until after the expiration of his FMLA leave).

*Hill v. Underwood Memorial Hospital* is instructive. In *Hill*, the plaintiff was diagnosed with a temporarily disabling medical condition and requested a medical leave of absence from her employer. Although the plaintiff submitted medical documentation supporting her need for leave, the employer terminated her employment while she was off work, claiming that the plaintiff had previously exhausted her FMLA entitlement. The employee sued claiming that the employer's method of calculating her leave entitlement was

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

unlawful and that the employer provided her insufficient notice concerning its calculation. *Hill,* 365 F. Supp. 2d 602. The court granted summary judgment finding that even if plaintiff's allegations were true, she still would not be entitled to relief because she could not have returned to work within twelve weeks. *Id.* at 610. Relying on the *Ragsdale* opinion, the court explained that:

> If [defendant] had granted Plaintiff a twelve week leave of absence, the evidence shows that Plaintiff still would not, and could not, have returned to work within that twelve week period. Thus, even if [defendant's] notice was inadequate, plaintiff has not established that she suffered prejudice . . . . *Id.*

In this case – as in *Hill* – the evidence shows that Plaintiff could not return to work until months after the exhaustion of her 12-week FMLA/CFRA entitlement. Unless Plaintiff was lying when she testified that "my disability ended in around the middle of May of 2004," (Miller Decl. ¶ 4, and Exh. B thereto (Pande Depo. 468:12-13)) – testimony that would raise a host of other issues – any assertion that she could have returned to work prior to February 2, 2004 is unsupportable. Indeed, her November 13, 2003 doctor's note addressing a "plan for surgery" in February 2004, further belies any such claims. *Id.* at ¶¶ 4-5 and Exhs. B and C thereto (Pande Depo. 467:20-471:13 and Exh. 38). Accordingly, Pande is not entitled to damages under the FMLA/CFRA and any testimony or evidence purporting to suggest such entitlement is irrelevant, argumentative, prejudicial, and should be prohibited by this Court. An order prohibiting such testimony or evidence is appropriate, as is an order *in limine* holding that Plaintiff is not entitled to relief pursuant to the FMLA/CFRA and prohibiting the submission of such issues to the jury.

## II
## MOTION *IN LIMINE* TO EXCLUDE MAGNER'S "CAREER KILLER" EMAILS

Defendants move to preclude Plaintiff and her attorneys from introducing at trial any evidence of, referring to, or eliciting testimony concerning, email correspondence

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

dated September 20, 2002 between Tim Magner and Victoria Thompson.  The email correspondence is wholly irrelevant to Plaintiff's claims (FRE 401), is properly excluded as it contains multiple hearsay and does not fall within a hearsay exception (FRE 801, 805), and is material whose "probative value is substantially outweighed" by the danger of undue prejudice, confusing the issues, misleading the jury and an undue consumption of time (FRE 403).

A.    **Statement Of Facts**

Plaintiff was enthusiastically recruited by Chevron's Rex Mitchell – manager of Business and Strategic Planning – in the fall of 2000 for his group.  After the Company merged with Texaco, Plaintiff did not receive the promotion she expected, she expressed her dissatisfaction and her performance declined.  Plaintiff claims that Mitchell discriminated against her on the basis of her gender and race or national origin, and then retaliated against her after she reported the discrimination to Mitchell's supervisor.  Specifically, Plaintiff contends that after complaining about the discrimination, Mitchell excluded her from work-related meetings, isolated her from the work group and impeded her ability to advance within the Company.  As evidence of this purported conduct, Plaintiff may point to an email recounting an alleged ***fourth-hand comment*** that was *forwarded to her by a co-worker* (Thompson), and *written by different co-worker* (Magner), asserting that Mitchell made negative remarks about Plaintiff to a *third co-worker* (Fernando Gaggino).  Miller Decl. ¶ 7, and Exh. F thereto.  This September 20, 2002 email, a stream of back-and-forth chat between Magner and Thompson, states, in part:

> What is the problem between Rex [Mitchell] and Kiran Pandy [sic]?
> We were considering her for a position that will open up in
> Fernando Gaggino's group, and Rex told him [Gaggino] things like
> "she's not a team player," "she pouts." etc.  Real career killers.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

*Id.* Thompson forwarded the email stream to Plaintiff, adding her own comment: "It looks like Rex is indeed saying some rather bad things about you . . . ." *Id.*

**B.    Legal Analysis**

    **1.    Tim Magner's Email Correspondence Is Irrelevant And Is Properly Excluded Pursuant To FRE 401.**

Evidence that is not relevant is not admissible.  FRE 401.  "Relevant evidence" is evidence that has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence."  FRE 401.  The email between Magner and Thompson about Rex Mitchell's alleged "career killer" comments to another co-worker has no tendency to prove or disprove a fact (i.e., logical relevance) that is "of consequence" or material to a decision in the case (i.e., legal relevance).  The Magner email is properly excluded as irrelevant.[6]  This irrelevance becomes even more obvious when one considers that: (1) Plaintiff was not interested in the position in Mr. Gaggino's group – the so-called "Congo Group" – which is in fact part of SASBU[7], the very same business unit that offered Plaintiff a position one month later (*see* Miller Decl. ¶ 8, and Exh. G thereto (Supp. Hartshorn Decl. ¶¶ 2-3)); (2) Pande never applied for the position (*Id.*); and *(3) SASBU offered her the same position, albeit on a different oil field, after Mitchell's alleged "career killer" comments.*  This evidence shows that these comments, to the extent that they were made at all, had no negative impact on Plaintiff's career opportunities within Chevron.

/ / / /

/ / / /

/ / / /

---

    [6] Moreover, even relevant evidence may be excluded where – as is the case here – its probative value is outweighed by risks of unfair prejudice, confusion of issues or waste of time.  *See* FRE 403, discussed below, section B.3.

    [7]  "SASBU" is the Southern Africa Strategic Business Unit.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1

2

**2.    Tim Magner's Email Correspondence Contains Multiple Hearsay And Is Properly Excluded.**

3

Hearsay is an out-of-court statement offered in evidence to prove the truth of

4 the matter asserted.  FRE 801(c).  Generally, hearsay is inadmissible unless the statement

5 falls within an established exception to the hearsay rule (FRE 803, 804, 807), or is otherwise

6 excluded by definition as non-hearsay pursuant to FRE 801(d)(1) and (2).   Magner's

7 comments concerning alleged communications between Mitchell and Gaggino fall within the

8 definition of hearsay:  they are out-of-court statements and offered for the truth of the matter

9 asserted, i.e., that Mitchell's comments – assuming they were said – were "career killers,"

10 and that Plaintiff was (or Mitchell thought she was) not a "team player" and "pouts."

11

12

Evidence containing multiple levels of hearsay – as the email here does – is

13 inadmissible unless each level, analyzed independently, falls within an established hearsay

14 exception or is treated as non-hearsay.  FRE 805; *Hoselton v. Metz Baking Co.,* 48 F.3d

15 1056, 1061 (8th Cir. 1995); *Pittman by Pittman v. Grayson,* 149 F.3d 111, 124 (2nd Cir.

16 1998).  The Magner email comprises inadmissible hearsay within inadmissible hearsay on

17 several levels:  (1) The alleged communications between Rex Mitchell and Fernando

18 Gaggino, in which purportedly "Rex told him" that Plaintiff was "not a team player" and

19 "pouts;"  (2) An implicit communication between Tim Magner and the unidentified source or

20 sources from whom Magner must have learned what "Rex told" Gaggino; (3) the email

21 chatter between Magner and Thompson about Plaintiff; and (4) Thompson's forwarding to

22 Plaintiff of the entire stream of email adding her speculation that "Rex is indeed saying bad

23 things about you . . . ."  Each layer of hearsay in this email stream falls outside any

24 exception to the hearsay rule and is not otherwise treated as non-hearsay.  *See Rojas v.*

25 *State of Florida*, 285 F.3d 1339, 1343 n.3 (11th Cir. 2002) (holding that testimony that

26 plaintiff's co-worker told plaintiff that their supervisor said not to listen to plaintiff because

27 she was a woman is inadmissible hearsay); *Damon v. Fleming Supermarkets, Inc.*, 196 F.3d

28 1354, 1359 n.1 (11th Cir. 1999) ("The only evidence of this comment is double hearsay

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

8

testimony from a co-worker . . . that another employee . . . overheard the comment at a store meeting and told [the co-worker] about it"); *Upshaw v. The Dallas Heart Group*, 961 F. Supp. 997, 1000 (D. Tex. 1997) ("testimony of co-worker . . . who claims to have been told by another co-worker . . . that [she] overheard [plaintiff's supervisor] say that [plaintiff] was fired because she 'sounded too black'" was inadmissible hearsay). None of these individuals chatting amongst themselves made – or even overheard – the alleged underlying comment. Accordingly, the comments and hence the email are probative of nothing, are the grossest of inadmissible hearsay, and are properly excluded.

> **3.    Tim Magner's Email Correspondence Should Be Excluded Pursuant To Rule 403 Of The Federal Rules Of Evidence Because It Will Unfairly Prejudice Defendants.**

Even assuming for the sake of argument that this email correspondence had the slightest probative value and was admissible, any value is substantially outweighed by its prejudicial effect on Defendants, confusion of the issues, misleading the jury and considerations of judicial economy. The jury could mistakenly find that this quadruple hearsay is somehow probative of discrimination or indicative of animus towards Plaintiff – neither of which is supported by the statements. Indeed, the entire communication stream is nothing more than opinions of co-workers based upon interpretations of others. Not one of these people actually heard the alleged comment. Admission of the emails would lead the proceedings down a "rabbit hole" of sheer speculation to the extreme prejudice of Defendants. Rule 403 mandates exclusion of these emails.

### III
### MOTION *IN LIMINE* TO EXCLUDE EVIDENCE OF REX MITCHELL'S ALLEGEDLY DISCRIMINATORY COMMENTS AND REFERENCE TO VICTORIA THOMPSON'S CONFLICTS WITH MITCHELL

Defendants also request an order *in limine* precluding Plaintiff and her attorneys from introducing or eliciting evidence or testimony regarding Rex Mitchell's alleged comments that "Ali Moshiri . . . can go back now and sell . . . Persian rugs for a living" and

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

"people that provide the airport shuttle services [are] towel heads." As the Court indicated in its Summary Judgment Order, these statements are inadmissible hearsay. (January 17, 2007 MSJ Order, fn. 4)   Moreover, the potential prejudice to Defendants from the introduction of the alleged remarks far outweighs any probative value.  Defendants likewise seek to exclude any reference or testimony concerning Victoria Thompson's alleged conflicts with Mitchell.

**A.    Statement Of Facts**

Plaintiff alleges that her former supervisor, Rex Mitchell, discriminated against her on the basis of her race and national origin.   In support of her discrimination claims, Plaintiff testified at her deposition that Mitchell "had a habit of making disparaging comments about women and minorities."  Miller Decl. ¶ 4, and Exh. B thereto (Pande Depo. at 281:22-25).  When asked for examples, Plaintiff alleged that Mitchell "walk[ed] around" commenting "about how -- . . . Ali Moshiri . . . can go back now and sell . . . Persian rugs for a living." *Id.* (Pande Depo. at 283:9-16).   Plaintiff also alleged that her co-worker, Iris Owens, told her that Mitchell had referred "to the people that provide the airport shuttle services as towel heads." *Id.* (Pande Depo. at 284:14-18).  Owens attested under oath that **she** never heard Mitchell refer to anyone as a "towel head" or make any kind of racial slur or negative comment about women.  *Id.* at ¶ 9, and Exh. H thereto (Owens Decl. ¶¶ 2, 3).  Moreover, Plaintiff testified that Mitchell never made any disparaging remarks directly to her and she never heard him call anyone a "towel head."  *Id.* at ¶ 4, and Exh. B thereto (Pande Depo. at 284:21-285:14).

/ / / /
/ / / /
/ / / /
/ / / /

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  **B.    Legal Analysis**

2

3      **1.    Testimony Relating To Mitchell's Allegedly Discriminatory Comments Is Hearsay.**

4

5          As previously explained, hearsay is a statement, other than one made by the

6  declarant, offered in evidence to prove the truth of the matter asserted.  FRE 801(c).  It is

7  inadmissible unless it falls within an established exception to the hearsay rule or otherwise

8  constitutes non-hearsay pursuant to FRE 801(d)(1) and (2).  Evidence containing multiple

9  levels of hearsay is inadmissible for its truth unless each level, analyzed independently, falls

10 within a hearsay exception or is treated as non-hearsay.  FRE 805; *Hoselton,* 48 F.3d at

11 1061; *Pittman,* 149 F.3d at 124.

12

13         Plaintiff's testimony that Iris Owens told her that Mitchell referred "to the

14 people that provide the airport shuttle services as towel heads" is inadmissible double

15 hearsay.  The alleged statement from Owens to Plaintiff was made out of court and is

16 offered for the truth of the matter asserted – that Mitchell referred to people as "towel

17 heads."  *See Rojas*, 285 F.3d at 1343 n.3  (holding that testimony that plaintiff's co-worker

18 told plaintiff that their supervisor said not to listen to plaintiff because she was a woman is

19 inadmissible hearsay); *Damon*, 196 F.3d at 1359 n.1 ("The only evidence of this comment is

20 double hearsay testimony from a co-worker . . . that another employee . . . overheard the

21 comment at a store meeting and told [the co-worker] about it"); *Upshaw*, 961 F. Supp. at

22 1000 ("testimony of co-worker . . . who claims to have been told by another co-worker . . .

23 that [she] overheard [plaintiff's supervisor] say that [plaintiff] was fired because she

24 'sounded too black'" was inadmissible hearsay).[8]

25

26         [8] Plaintiff's testimony that Owens told her about Mitchell's alleged comment is also unreliable,
   as it is contradicted by Owens' declaration that she never heard the comment and she never told
27 Plaintiff that Mitchell made the comment.  *See Upshaw*, 961 F. Supp. at 1000.  Moreover, Plaintiff
   admitted under oath that she never heard Mitchell call anyone a "towel head."  Miller Decl. ¶ 4, and
28 Exh. B thereto (Pande Depo. at 285:12-14).

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

Plaintiff's testimony that Mitchell walked around saying that "Ali Moshiri . . . can go back now and sell . . . Persian rugs for a living" is also inadmissible hearsay. *See Upshaw*, 961 F. Supp. at 1000. There is no evidence in the record that Mitchell ever made this comment. The alleged comment is not related to a matter within the scope of Mitchell's agency and is thus not excluded from the hearsay definition as an admission by a party-opponent. *See Hoptowit v. Ray*, 682 F.2d 1237, 1262 (9th Cir. 1982).

**2. Evidence Of Mitchell's Allegedly Discriminatory Comments Should Be Excluded Pursuant To FRE 403 Because It Will Unfairly Prejudice Defendants.**

Even assuming that Plaintiff's testimony regarding Mitchell's allegedly discriminatory comments is not hearsay – which it is – any probative value is substantially outweighed by the inevitable prejudice to Defendants, as well as confusion of the issues, the risk of misleading the jury and considerations of judicial economy.

There is no evidence suggesting that Mitchell played any role in Plaintiff's failure to find a position in 2003 or her subsequent termination. Moreover, the evidence is undisputed that Mitchell promoted Plaintiff in her job search efforts in 2002 (*see* Miller Decl. ¶¶ 10-11, and Exhs. I and J thereto (King Decl. ¶ 2; Mitchell Depo. 110:4-112:17)), and that Plaintiff was awarded a job in SASBU at that time. Accordingly, despite their seductively inflammatory appeal, these comments are not probative of any issue – they do not establish discrimination or harassment. *Price Waterhouse v. Hopkins,* 409 U.S. 228 (1989) ("[s]tatements by decision-makers unrelated to the decisional process itself" cannot suffice to satisfy the plaintiff's burden of providing intentional discrimination) (concurring opinion).

Despite its lack of probative value under the law, the jury may be confused by such unsubstantiated, unreliable hearsay testimony. Given the risk that references to such offensive comments may entice jurors to ignore the legal standard for employment discrimination and react viscerally based upon the alleged stray remarks, the potential

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

12

1    prejudice to Defendants far outweighs any minimal probative value of this testimony.

2

3    **3.    Testimony Concerning Victoria Thompson's alleged conflicts with Mitchell Is Irrelevant.**

4

5    In the absence of any direct evidence of discrimination, Plaintiff will likely try to

6    show that Mitchell discriminated against another woman under his supervision – Victoria

7    Thompson – to imply that it was more likely than not that Plaintiff was also a victim of

8    discriminatory treatment.  This Plaintiff cannot do.  It is Plaintiff's burden to prove that *she*

9    was the victim of discrimination.  Plaintiff cannot use a co-worker's unsubstantiated after-

10   the-fact allegations of discrimination to prove such discrimination. Evidence of Mitchell's

11   allegedly discriminatory treatment of Thompson is irrelevant to Plaintiff's case and should be

12   excluded as such.  See, e.g., *Haskell v. Kaman Corp.*, 743 F.2d 113, 120 (2nd Cir. 1984)

13   (the testimony of former employees of the defendant about the circumstances surrounding

14   their terminations and those of other employees was not relevant to the question of whether

15   the plaintiff was terminated for age-related reasons).

16

17   **IV**

18   **MOTION *IN LIMINE* TO EXCLUDE CHARACTER EVIDENCE REGARDING MR. DUNN AND MR. MITCHELL**

19

20   Defendants anticipate that Plaintiff may seek to introduce and/or elicit

21   character evidence regarding supervisors Rex Mitchell and Jack Dunn.[9]  Plaintiff's efforts to

22   attack the character of her supervisors can serve <u>only</u> as an impermissible attempt to

23   secure the sympathy and arouse the passions of the jury in her favor.  Lacking probative

24   value, this testimony is properly excluded as it is: (1) impermissible character evidence; (2)

25

26   [9] By way of example, in her initial disclosures Plaintiff indicated that John Fryters and Mark Moon will testify about Jack Dunn's alleged temper.  Miller Decl. ¶ 6, and Exh. E thereto.  In

27   opposition to Defendants' Motion for Summary Judgment, Plaintiff introduced a declaration wherein Victoria Thompson described Rex Mitchell as "aggressive" and "belligerent."  *Id.* at ¶ 13, and Exh. L

28   thereto.

**MILLER LAW GROUP**
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

not relevant to the issues in this case; (3) highly prejudicial to Defendants; and (4) a waste of time.

## A.    Statement Of Facts

Plaintiff was terminated because Chevron Overseas Petroleum management consolidated its Southern Africa Strategic Business Unit ("SASBU") U.S.-based operations in Houston, Texas, and Plaintiff chose not to relocate.  Miller Decl. ¶¶ 4, 12, and Exhs. B and K thereto (Pande Depo. at 367:7-368:5, 445:13-17, and Exh. 32 thereto).   The employees who chose not to move to Houston were informed that they would either have to find another position within the Company or their employment would terminate.  *Id.* at ¶ 14, and Exh. M thereto (Dunn Decl. ¶ 3 and Exh. A thereto).   Plaintiff did not find another position within the Company, and her employment thus terminated.  *Id.* at ¶¶ 3, 12, and Exhs. A and K thereto (Pande Depo. at 445:13-17, and Exh. 32 thereto).  Plaintiff arbitrarily alleges that Jack Dunn was behind her failure to secure another position within the Company.  Plaintiff also alleges that her previous supervisor, Rex Mitchell, discriminated against her on the basis of her gender and race/national origin such that she was forced to take a career step "backwards" into the SASBU position.

Without evidence to support her claims against Dunn and Mitchell, Defendants anticipate that Plaintiff may seek to introduce testimony about the character of her supervisors to raise the inference that her termination was unlawful.  Whatever Mitchell and Dunn's alleged character flaws may be, Plaintiff cannot use such evidence to support her claims.

/ / / /

/ / / /

/ / / /

14

**MILLER LAW GROUP**
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  **B.    Legal Analysis**

2

3    **1.    Character Evidence Is Inadmissible To Prove That Dunn And Mitchell Acted In Conformity Therewith.**

4

5    "Evidence of a person's character or of a trait of character is not admissible for

6  the purpose of proving action in conformity therewith on a particular occasion."  FRE 404

7  (a).  The only conceivable reason to introduce character evidence about Mitchell and Dunn

8  is to imply that they acted in conformity with their alleged character traits in their interactions

9  with Plaintiff.  This Plaintiff cannot do.  *See Kanida v. Gulf Coast Medical Personnel LP*, 363

10  F.3d 568, 581 (5th Cir. 2004) (court excluded evidence that the founder of the company

11  became angry with a former employee "because it was being introduced to show that [she]

12  was the type of person who got angry"); *Brokopp v. Ford Motor Co.,* 71 Cal. App. 3d 841,

13  851 (1997) ("It is a fundamental rule of evidence that you cannot prove the commission of

14  an act by showing the commission of similar acts by the same person at other times and

15  under other circumstances").

16

17    **2.    The Proffered Character Evidence Is Irrelevant And Properly Excluded Under FRE 402.**

18

19    In addition to being impermissible character evidence, evidence showing that

20  Plaintiff's co-workers found Mitchell and Dunn to be less than ideal supervisors is not

21  relevant to the issues in this case – whether Mitchell discriminated or retaliated against

22  Plaintiff, and whether Dunn interfered with Plaintiff's FMLA and CFRA rights.  The way that

23  Mitchell and Dunn behaved towards Plaintiff's co-workers does not bear on whether they

24  unlawfully influenced the employment actions taken with respect to Plaintiff.  *See Kanida*,

25  363 F.3d at 581 ("the testimony was not relevant because the way Parks behaved towards

26  Coates was not necessarily relevant to Parks' motive regarding any employment action

27  taken with respect to Kanida"); *Brokopp,* 71 Cal. App. 3d at 851 (character evidence "is

28  simply not relevant").  This evidence is properly excluded.

**MILLER LAW GROUP**
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

### 3.    The Proffered Character Evidence Would Unfairly Prejudice Defendants And Waste Trial Time.

Plaintiff's co-workers' irrelevant anecdotes about their personal experiences with Mitchell and Dunn risk improperly influencing the jury.  With absolutely no probative value, testimony bemoaning Mitchell and Dunn's character flaws is unduly prejudicial and properly excluded.  FRE 403.  Moreover, if Plaintiff introduces this damning testimony, Defendants will be forced to put on their own witnesses to rebut the evidence.  For the sake of judicial economy and to avoid potential prejudice, Plaintiff should be precluded from wasting trial time with such irrelevant evidence.

**V**
**MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING PLAINTIFF'S WITHDRAWN EMOTIONAL DISTRESS CLAIMS AND HER EMOTIONAL HEALTH**

**A.    Statement Of Facts**

In her response to Defendants' interrogatories, Plaintiff stated – under oath – that she suffered "significant mental and emotional distress" as a result of Defendants' conduct and had consulted psychotherapist Sylvia Benzler for treatment.  Miller Decl. ¶ 15, and Exh. N thereto.  Defendants timely subpoenaed Ms. Benzler's deposition and documents in order to obtain additional information concerning Plaintiff's allegations.  Although Ms. Benzler initially responded to the subpoena by asserting the psychotherapist-patient privilege, Plaintiff's counsel subsequently agreed to proceed with Benzler's deposition and the production of records. *Id.* at ¶ 16, and Exh. O thereto.  This discovery was postponed at the request of Plaintiff's counsel pending the Court's ruling on Defendants' motion for summary judgment. *Id.*  In mid-April, Plaintiff's new counsel declined to produce Ms. Benzler for deposition, as Plaintiff had "withdrawn her claim for emotional distress damages" and asserted privilege pursuant to FRE 1014. *Id.* at ¶¶ 17-18, and Exhs. P and Q thereto.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

B.    **Legal Analysis**

Irrelevant evidence is inadmissible.    FRE 402.    In order to be relevant, evidence tendered must be probative of a proposition which is of consequence to determination of the action.    *See U.S. v. Hall,* 653 F.2d 1002, 1005 (5th Cir. 1981); FRE 401.    It is undisputed that Plaintiff has withdrawn her claim to damages for emotional distress.    Accordingly, any evidence of Plaintiff's emotional distress, including stress she incurred, as well as the impact that emotional stress may have played in her physical well-being, recovery from surgery, and speed of her recovery, is irrelevant and properly excluded.    FRE   402.    Moreover, given that Plaintiff reneged on her initial agreement to produce Ms. Benzler for deposition, thereby denying Defendants the right to discover additional information about Plaintiff's emotional state, Plaintiff should not be permitted to use such evidence in support of her case.    Exclusion of all evidence regarding Plaintiff's emotional health is therefore warranted.

**VI**
**MOTION *IN LIMINE* TO EXCLUDE EVIDENCE REGARDING PLAINTIFF'S OCTOBER 30 AND NOVEMBER 4, 2003 MEETINGS WITH JACK DUNN**

Plaintiff may seek to introduce testimony or evidence pertaining to Jack Dunn's conduct during meetings with Plaintiff on October 30 and November 4, 2003.    Given the now limited scope of Plaintiff's first and second causes of action, however, and the fact that neither meeting had any bearing on Plaintiff's ultimate termination, such evidence is properly excluded.

A.    **Statement Of Facts**

Plaintiff's Second Amended Complaint alleges that on October 30, 2003, Jack Dunn questioned Plaintiff about her medical condition and her request for medical leave.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1    (Second Amended Complaint ("SAC") ¶ 31).    Plaintiff further alleges that on November 4,

2    2003, during an international conference call, Dunn "went on a tirade" and "confronted

3    Pande about her medical leave...." (SAC ¶ 32)  Such conduct, according to Plaintiff, violated

4    the privacy protections of the FMLA and the CFRA.    (SAC ¶¶ 42, 52).    In ruling on

5    Defendants' summary judgment motion, however, the Court ruled that "Plaintiff has provided

6    no evidence to show that Defendants violated any privacy provision in the FMLA or the

7    CFRA" and thereafter granted summary judgment as to Plaintiff's claims that Defendants

8    violated Plaintiff's right to confidentiality and privacy.  (January 17, 2007 MSJ Order, 18:21-

9    19:14).

10

11    **B.    Legal Analysis**

12

13            As explained in significant detail above, "[e]vidence which is not relevant is not

14    admissible."  FRE 402.  In order to be relevant, evidence tendered must be probative of a

15    proposition which is of consequence to determination of the action.  *See Hall,* 653 F.2d at

16    1005; FRE 401.  Here, given the dismissal of Plaintiff's FMLA and CFRA privacy claims,

17    together with the fact that there is no evidence – and indeed *no allegation* in Plaintiff's SAC

18    – suggesting that either the October 30 or the November 4 meetings had any relation to

19    Plaintiff's ultimate termination, the content, discussion, and indeed the very existence, of

20    such meetings is irrelevant.  Such evidence or testimony should therefore be excluded.

21

22            In addition to the rules of relevance, FRE 403 states that "evidence may be

23    excluded if its probative value is substantially outweighed by the danger of unfair prejudice,

24    confusion of the issues, …, or by considerations of undue delay, waste of time, or needless

25    presentation of cumulative evidence."  Because evidence relating to these two meetings is

26    not relevant to this lawsuit, it has no probative value in this case.    Accordingly,

27    considerations of unfair prejudice and confusion of the issues, as well as considerations of

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**DEFENDANTS' MOTIONS *IN LIMINE***
Case No. C 04-5107 CW

undue delay and waste of judicial resources, must necessarily outweigh any such non-existent probative value.  Such evidence should be precluded on this ground as well.

## VII
## CONCLUSION

For all reasons stated, Defendants' Motions *in Limine* should be granted.

Dated:  May 8, 2007

MILLER LAW GROUP
A Professional Corporation


By: _____/s/_____
    Michele Ballard Miller
    Attorneys for Defendants
    CHEVRON CORPORATION (f/k/a
    ChevronTexaco Corporation) and
    CHEVRON INTERNATIONAL
    EXPLORATION & PRODUCTION
    COMPANY (f/k/a ChevronTexaco
    Overseas Petroleum), a division of
    Chevron U.S.A. Inc.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA