Michele Ballard Miller (SBN 104198)
Kerry McInerney Freeman (SBN184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIRAN PANDE,

Plaintiff,

v.

CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.

Defendants.

Case No. C 04-5107 CW

**DECLARATION OF MICHELE B. MILLER IN SUPPORT OF DEFENDANTS' MOTIONS *IN LIMINE***

Trial Date: October 9, 2007
Time: 8:30 a.m.
Place: Courtroom 2
Pre-Trial Conf.: May 22, 2007

Complaint filed: December 2, 2004

I, MICHELE BALLARD MILLER, declare:

1. I am an attorney at law licensed to practice before the Courts of the State of California and before this Court. I am a partner in the law firm of MILLER LAW GROUP, Professional Corporation, and am the attorney of record for Defendants

CHEVRON CORPORATION (formerly known as CHEVRONTEXACO CORPORATION), a Delaware corporation, and CHEVRON INTERNATIONAL EXPLORATION AND PRODUCTION COMPANY ("CIEP"), a division of Chevron U.S.A. Inc., (formerly known as ChevronTexaco Overseas Petroleum) ("Defendants") in the above-captioned matter. I am also lead trial counsel for Defendants in this case.

2.    I have personal knowledge of the matters set forth herein, except those stated on information and belief.  If called as a witness I could competently testify thereto.

3.    Plaintiff Kiran Pande filed a Declaration in support of her Opposition to Defendants' Motion for Summary Judgment, with exhibits attached.  A true and correct copy of Exhibit B to the Declaration of Plaintiff in support of her Opposition to Defendants' Motion for Summary Judgment, the October 29, 2003 UnumProvident acknowledgement of Plaintiff's disability claim, is attached hereto as Exhibit A.

4.    I conducted the deposition of Plaintiff, Kiran Pande over the course of four days, March 20, 21, 22 and November 27, 2006.  The deposition was transcribed by a certified Shorthand Reporter.   True and correct copies of excerpted portions of Plaintiff's deposition transcripts are attached hereto and incorporated as Exhibit B.  The excerpted portions of the deposition transcripts and the exhibits accurately reflect the testimony given at the deposition.

5.    A true and correct copy of Exhibit 38 to the deposition of Plaintiff, the November 3, 2003 UnumProvident form "Attending Physician's Statement," is attached hereto as Exhibit C.  See paragraph 4, above.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

6. A true and correct copy of Plaintiff Kiran Pande's Initial Disclosures in this action is attached hereto as Exhibit E.

7. A true and correct copy of email correspondence between Tim Magner and Victoria Thompson, produced in the course of discovery in this litigation, is attached hereto as Exhibit F.

8. In support of Defendants' Motion for Summary Judgment, Defendants submitted the Supplemental Declaration of Kelly Hartshorn. A true and correct copy of Kelly Hartshorn's Supplemental Declaration in support of Defendants' Motion for Summary Judgment is attached hereto as Exhibit G.

9. In support of Defendants' Motion for Summary Judgment, Defendants submitted the Declaration of Iris Owens. A true and correct copy of Iris Owens' Declaration in support of Defendants' Motion for Summary Judgment is attached hereto as Exhibit H.

10. In support of Defendants' Motion for Summary Judgment, Defendants submitted the Declaration of Desmond King. A true and correct copy of Desmond King's Declaration in support of Defendants' Motion for Summary Judgment is attached hereto as Exhibit I.

11. I attended the deposition of Rex Mitchell on October 30, 2006. The deposition was transcribed by a certified Shorthand Reporter. True and correct copies of excerpted portions of Mr. Mitchell's deposition transcripts are attached hereto and incorporated as Exhibit J. The excerpted portions of the deposition transcripts and the exhibits accurately reflect the testimony given at the deposition.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

12. A true and correct copy of Exhibit 32 to the deposition of Plaintiff, November 18, 2003 correspondence from T.L. Shawstad to Plaintiff Kiran Pande regarding "Voluntary Termination," is attached hereto as Exhibit K. See paragraph 4, above.

13. In support of her opposition to Defendants' Motion for Summary Judgment, Plaintiff submitted the Declaration of Victoria Thompson. A true and correct copy of the Declaration of Victoria Thompson in support of Plaintiff's Opposition to Defendants' Motion for Summary Judgment is attached hereto as Exhibit L.

14. In support of Defendants' Motion for Summary Judgment, Defendants submitted the Declaration of Jack Dunn. True and correct copies of Jack Dunn's Declaration in support of Defendants' Motion for Summary Judgment, and Exhibit A to his Declaration, are attached hereto as Exhibit M.

15. A true and correct copy of the pertinent portions of Plaintiff Kiran Pande's verified Responses to Defendant CIEP's Interrogatories, Set One, is attached hereto as Exhibit N.

16. During discovery in this action, over the course of several months, my colleague attorney Lisa Hamasaki and I corresponded with Plaintiff's former counsel concerning the deposition of Plaintiff's therapist, identified by Plaintiff in her sworn discovery responses as the person with knowledge pertaining to Plaintiff's emotional distress claims. True and correct copies of our email correspondence with Plaintiff's former counsel, Noah Lebowitz, concerning the scheduling of the deposition of Plaintiff's therapist, Sylvia Benzler, and Ms. Benzler's assertion of the therapist-patient privilege, are attached hereto as Exhibit O.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

4

**DECLARATION OF MICHELE B. MILLER IN SUPPORT OF DEFENDANTS' MOTIONS *IN LIMINE***
Case No. C 04-5107 CW

17. In March and April 2007 I corresponded with Plaintiff's current counsel, Susan Harriman, concerning the deposition of Sylvia Benzler. True and correct copies of my email correspondence with Susan Harriman, confirming that Plaintiff has withdrawn her claim for emotional distress damages and is asserting privilege as to her communications with her therapist, Sylvia Benzler, pursuant to Evidence Code section 1014, are attached hereto as Exhibit P.

18. A true and correct copy of a letter dated March 29, 2007, that I received from attorney Susan Harriman, confirming that Plaintiff has withdrawn her claim for emotional distress damages, is attached hereto as Exhibit Q.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 8th day of May, 2007 in Larkspur, California.

/S/
Michele Ballard Miller

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

# EXHIBIT A



10/29/2003

KIRAN PANDE
7195 LAMAR LOOP
CASTRO VALLEY, CA 94552

Dear KIRAN PANDE:

**Disability Claim**

Recently, we received a disability claim from you, which is currently being reviewed. Every claim is unique, so the time needed to complete a review varies from claim to claim. While we will try to reach a determination on your claim as soon as possible, you can help expedite the process by promptly providing any additional information requested and encouraging your doctor(s) to respond to requests quickly.

Additionally, UnumProvident helps ChevronTexaco track time off that's protected under the Family & Medical Leave Act of 1993 (FMLA). Please note that if your disability claim is approved and if you are eligible for FMLA (or a similar state law), the length of your absence will be considered an FMLA-protected absence from work.

We will continue to update you on the status of your disability claim.

If you need more information about ChevronTexaco's Short-Term Disability Plan or have a question about the status of your claim, contact ChevronTexaco's HR Service Center at 1-888-TALK2HR (1-888-825-5247). Select option 5.

Please keep in mind that you may be eligible for time off for situations other than your own disability under ChevronTexaco's Family Leave or another leave of absence. For more information about all of ChevronTexaco's leaves. Please refer to the Summary Plan Description (SPD), which is available on the intranet (under the North America homepage at https://hr.chevrontexaco.com/northamerica) or the Internet at http://hr2.chevrontexaco.com/plansummaries or contact the HR Service Center Center at 1-888-TALK2HR (1-888-825-5247) and select option 2.

**FMLA-Protected Absence**

On 10/28/2003, the ChevronTexaco Corporation FMLA Unit at UnumProvident was notified of your request to be absent from work due to a serious health condition that makes you unable to perform one or more of the essential functions of your job. You notified us that you need this leave beginning on 11/10/2003 and that you expect this leave to continue until on or about an unknown date. This letter explains how your request coordinates with the Family & Medical Leave Act (FMLA) and how your ChevronTexaco benefits may be affected.

EXHIBIT B

For your information, the Family & Medical Leave Act was enacted in 1993. Under this law and/or the Californial Family Rights Act (CFRA), ChevronTexaco is required to grant you an unpaid leave of absence to handle family matters, including your own serious illness, and to protect your job while you are gone. Eligible employees may take up to 12 weeks of FMLA absence during a 12-month period. The 12-month period used by ChevronTexaco is measured backward from the date that you take any FMLA-protected absence. Under the California Fair Employment and Housing Act's Pregnancy Disability Leave Law (PDLL), if you are disabled due to pregnancy, childbirth or related medical conditions, you also may be eligible for an unpaid pregnancy disability leave for your period of actual disability up to a maximum of 4 months. Generally, FMLA leave and CFRA leave will run at the same time. However, PDLL is separate and distinct from CFRA leave, such that a pregnant employee who is eligible for CFRA will be entitled to take both a PDLL and a CFRA leave for the birth of her child. Any leave taken in excess of these amounts is not protected by the FMLA, CFRA, or PDLL. In addition, ChevronTexaco is require to continue your health care coverage while you are on FMLA-protected absence. **ChevronTexaco's Family Leave and disability plans meet or exceed the requirements of this law.**

Please Note: Eligibility for FMLA leave law may be re-evaluated at the first absence after the conclusion of the 12-month period applicable to your leave. The applicable 12-month period continues for 12 months from the date of the first FMLA approved absence for a particular reason/serious health condition. Therefore, please be advised that if your leave extends beyond this 12-month period, your eligibility for FMLA leave law, if applicable, may be redetermined. If you do not meet the eligibility requirements of the FMLA leave law at that time, your request for leave beyond that date may be denied.

Additional information about your rights, responsibilities and eligibility under FMLA and/or state law(s) is outlined in this letter and in the enclosed document entitled *Family and Medical Leave Act – Rights and Obligations.*

On behalf of ChevronTexaco Corporation ("company") we are providing you with specific notice of the conditions of your protected absence.

**ELIGIBILITY AND DESIGNATION**

☑ You are eligible for protected absence under the ☑ FMLA ☑ CFRA ☐ PDLL.

☑ If you have a disability claim approved for the same period of time as your ☑ FMLA ☑ CFRA ☐ PDLL absence, you will not be required to furnish additional medical certification about your serious health condition. If your disability claim is not approved, you will be required to provide medical certification. If your absence extends beyond your approved disability period, you will be required to provide medical certification for any additional period of the serious health condition. If you do not a have a disability claim associated with this absence, this absence will be designated as an approved protected absence and counted against your ☑ FMLA ☑ CFRA ☐ PDLL entitlement if (1) you return a timely medical certification as required below, and (2) such certification verifies that the condition qualifies under the FMLA, CFRA or PDLL. If UnumProvident does not receive a timely certification or if the certification does not confirm that the condition qualifies under the FMLA, CFRA or PDLL, your absences may be treated according to your local attendance policy.

CHEVRON/PANDE02429

# EXHIBIT B

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIRAN PANDE,

Plaintiff,

vs. No. 04-5107 CW

CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.,

Defendants.

___________________________________/

COPY

DEPOSITION OF KIRAN PANDE

VOLUME II

March 21, 2006

PATRICIA CALLAHAN & ASSOCIATES, INC.
Certified Shorthand Reporters
Oakland, California 510-835-3993
San Francisco, California 415-788-3993
Castro Valley, California 510-885-2371

Facsimile 510-247-9775
WeReport@aol.com

Reported by:
LaRelle M. Fagundes
CSR No. 9762

had questions and answers instead of commentary --

MS. MILLER: Q. What were the comments? I mean, it's nice to hear them. I mean, you know --

Let's see if they're in here.

MR. LEBOWITZ: Once again, the obnoxious comments are really uncalled for.

MS. MILLER: I know, but I have my whole list of questions to ask and, you know, they're not in any of the documents. So maybe I'm missing them.

MR. LEBOWITZ: Again, the obnoxious comments really need to stop. And if you want to ask a question and get an answer, that's fine and appropriate.

MS. MILLER: Q. What were the comments --

MR. LEBOWITZ: Thank you.

MS. MILLER: Q. -- that Rex Mitchell had been saying on a regular basis prior to April 25th, 2002?

A. So there were -- so some of the comments that we discussed with Jay were -- included the fact that Rex made disparaging remarks about women and minorities.

she is just focused on moving up. Those would be examples.

Another example that we discussed with Jay Johnson, was -- were comments that Rex had made about Ali Moshiri. And Ali Moshiri used to be Rex's manager when Ali Moshiri was, I believe, general manager of business development and planning or planning and business development. It's COPI. And specific examples that we discussed with Jay were where Rex was walking around overjoyed and very jubilant upon hearing the news that Richard Matski or Dick Matski, who was the vice chairman, would be retiring, and making comments about how -- well, "Ali Moshiri is deadman walking. He can go back now and sell, you know, Persian rugs for a living."

And another example was where Rex specifically attacked Ali's credibility and made comments to the effect of "I know that" -- "I know that John Watson knows that Ali has lied to him."

And another example that we discussed with Jay Johnson was Rex's comments about Pat Yearington and how Pat Yearington, who was the corporate general manager of planning, I believe was her title, for the corporation, that Pat Yearington was

totally incompetent and that Pat knew exactly what Rex thought of her and that, you know, that Pat Yearington knew that Rex thought that she was totally incompetent.

And another example was Janet Neuville, who was the general manager or vice president of CTOP's HSC function, health, safety and environment, where he had made comments saying that Peter Robertson knows that Janet Neuville is completely incompetent to do her job.

Q. Other than these comments, have you ever heard Rex Harrison (sic) make any other disparaging remarks against women who are minorities?

A. Well, one of the other disparaging remarks that Rex had made to Iris Owens where Iris Owens had complained to me about Rex's behavior was his reference to the people that provide the airport shuttle services as towel heads.

Q. Rex called them that?

A. Yes.

Q. Did Rex Mitchell ever use any disparaging remarks to you?

A. Yes. As I've testified earlier, his tone of voice, his treatment of me.

Q. We're back on the same page. I'm asking

you what did he say to you. Did he ever say anything? I know the tone of voice. We went through that yesterday. I understand that. Might be that he didn't say anything, but the manner or the tone led you to believe that. That's fine.

All I'm asking is, did he ever say anything like these five remarks to you?

A. So you're asking me whether he made -- he ever called me a towel head directly?

Q. Yes.

A. No, he did not.

Q. Did you ever hear him call anyone a towel head?

A. No, I did not.

Q. Okay.

Did he ever make any similar comments to the ones that you just related to me about gender directly to you?

MR. LEBOWITZ: You mean about you or to you, right?

MS. MILLER: No.

Q. I mean directly to you, anything about you.

A. Can you repeat the question, please?

(Record read by the reporter as follows:

"Q. Did he ever make any similar comments

CERTIFICATE

I, the undersigned, a Certified Shorthand Reporter, State of California, hereby certify that the witness in the foregoing deposition was by me first duly sworn to testify to the truth, the whole truth, and nothing but the truth in the within-entitled cause; that said deposition was taken at the time and place therein stated; that the testimony of said witness was reported by me, a disinterested person, and was thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said testimony; and that the witness was given an opportunity to read and, if necessary, correct said deposition and to subscribe the same.

I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing deposition and caption named, nor in any way interested in the outcome of the cause named in said caption.

Executed this 4th day of April, 2006.

LaRelle M. Fagundes

LARELLE M. FAGUNDES, CSR 9762

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIRAN PANDE,

Plaintiff,

vs. No. 04-5107 CW

CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.,

Defendants.

_________________________________/

COPY

DEPOSITION OF KIRAN PANDE

VOLUME III

March 22, 2006

PATRICIA CALLAHAN & ASSOCIATES, INC.
Certified Shorthand Reporters
Oakland, California 510-835-3993
San Francisco, California 415-788-3993
Castro Valley, California 510-885-2371

Facsimile 510-247-9775
WeReport@aol.com

Reported by:
LaRelle M. Fagundes
CSR No. 9762

A. I don't remember if it was the Web site where the SASBU Q&A was or whether it was a written document, but I looked at something that talked about -- that was a SASBU Q&A. I can't recollect if it was specifically on a Web site or whether it was on a physical document.

Q. Did you return the fixed duration assignment offer by the deadline of June 9th, 2003?

A. No, I didn't return the fixed duration offer by the deadline, because the offer letter itself indicated that by not returning it within that seven-day time period, it would be deemed a nonacceptance.

Q. So by not returning it, you were indicating you were not accepting the offer to relocate to Houston, correct?

A. That's correct.

Q. Why did you decide not to move to Houston?

A. Well, there were multiple factors in my decision not to accept this move to Houston. Some of them were personal related to wanting to try and stay in the Bay Area, if possible, due to family reasons. And some of it was professional. And some of it was based on interactions that I had had with Jack Dunn, you know, prior to having the

opportunity to move to Houston. And part of it was based on my understanding that I could go back to EPTC as an alternative in San Ramon. So there were multiple factors that went into my decision not to accept the offer.

Q. When you say could go back to EPTC, when was the last time you had worked for EPTC?

A. I think my transfer from EPTC to COPI was in late 1995, I believe, late November 1995, something like that.

Q. When you were transferred out of EPTC, you were told at the time that you were moving to COPI if it didn't work out, you could move back, correct?

A. That was part of the conversation, but, you know, essentially it was, you know, that anytime I wanted to come back to EPTC, you know, anytime in my career, that they weren't cutting off the umbilical cord, is the way that -- is the commonly known phrase, in my transferring to COPI, but anytime that I was interested in coming back, that I could come back.

Q. In June of 2003, did you e-mail Tom to tell him that you expected him to have a job for you, you were coming back?

A. So are you talking about my specific medical condition or that the leave was related to medical issues?

Q. The specifics of the medical condition.

A. My understanding was that UnumProvident would not -- was not supposed to release information about my private medical situation to Jack Dunn or to my supervisor.

Q. Did you know if UnumProvident ever told Jack Dunn the specific nature of your medical condition?

A. I do not know that.

Q. Do you have any -- never mind.

At the time that you requested this leave of absence, your doctor had stated that you would be out till at least May of 2004, correct?

MR. LEBOWITZ: Objection. Vague.

THE WITNESS: So you're asking on October 28th of 2004, whether my doctor had stated that?

MS. MILLER: Q. If you know, how long was the leave that your doctor was requesting for you?

A. I believe that the paperwork that my doctor filled out indicated that it could take up to April

or May of 2004.

Q. Aside from UnumProvident, do you know if Jack Dunn ever found out from anyone the exact nature of your medical condition that required the leave?

A. I do not know whether he did or not.

Q. In this conversation on October 29th, was Jack Dunn yelling at you?

A. No, he was not yelling at me.

Q. Was that an in-person or on-the-telephone -- I'm sorry, I didn't ask that -- conversation?

A. This conversation was in his office.

Q. So he had not yet moved to Houston, right?

A. Pardon?

Q. He had not yet moved to Houston?

A. "He"?

Q. Yeah, Jack Dunn.

A. That's correct.

Q. Was anybody else present at this meeting between you and Jack Dunn?

A. No, this was just Jack Dunn and myself.

MR. LEBOWITZ: Can we take a break whenever you --

MS. MILLER: Oh, sure.

A. That's correct.

Q. Okay.

And in that conversation, he told you that you were receiving a letter from human resources about the end date of your employment, correct?

A. Actually, he told me that a letter had already been mailed out from human resources by registered mail, and he read me the contents of the letter.

Q. Okay.

(DEFENDANTS' EXHIBIT NO. 32 WAS MARKED FOR IDENTIFICATION.)

MS. MILLER: Q. Is Exhibit 32 the letter that Jack read to you?

A. Much of the content sounds familiar, but I don't know, you know, word for word if that was the exact letter that he read.

Q. Did you have any discussion with Taryn Shawstad about this November 18th letter after you received it?

A. I had a -- I replied to Taryn Shawstad with the letter.

Q. And you disagreed with the termination of -- of the characterization of your employment termination as voluntary, correct?

conclusion that Rex Mitchell and Jack Dunn had provided input to the selection team; is that right?

A. Based on what Zuwa said, that it was standard practice to talk to the employee's supervisor, I reached the conclusion that it would have been standard practice for him to talk to Jack Dunn; however, at that time, Rex Mitchell was not my supervisor.

Q. Did Zuwa Omoregie ever tell you or indicate in any way that Jack Dunn had provided an unfavorable reference to you during this selection process?

A. No. As I stated, Zuwa indicated that Chevron legal had contacted him and he could not discuss the specifics or details of the selection process.

Q. How long were you on disability in 2004?

MR. LEBOWITZ: Objection. Vague.

MS. MILLER: Q. Your doctor's note indicated that you would be out of work until May '04.

Is that when you were able to return to work, or did it last a shorter duration or longer?

MR. LEBOWITZ: Objection. Vague.

THE WITNESS: I believe the date that the disability benefits terminated was around middle of May of 2004. However, there were complications to my medical treatment and recovery as a result of the stress that this whole situation with Jack Dunn and the wrongful termination put me through. And if it hadn't been for that, I would have been able to return to work earlier.

MS. MILLER: Q. When did these complications end that then allowed you to return to work or be able to work?

A. I was able to -- as I said, my disability ended in around the middle of May of 2004.

Q. Okay.

But it says there were complications as a result of the stress due to the situation.

Did those complications result in your being unable to work after the middle of May 2004? In other words, was your disability extended as a result of these complications?

MR. LEBOWITZ: Objection. Vague.

THE WITNESS: I don't understand exactly what you're asking, please.

MS. MILLER: Q. Well, you say your disability benefits ended mid May of 2004.

At that point in time, were you able to return to work?

A. Yes.

Q. Okay.

So the complications as a result of the stress due to the situation, that's not something that happened after May of 2004, correct?

A. The complications in terms of my treatment and recovery related to my medical problem didn't occur after May of 2004.

Q. Okay.

A. I'm not sure exactly what you're asking again.

Q. In November, your doctor estimates that you would not be able to return to work until May of 2004.

MR. LEBOWITZ: Objection. Assumes facts.

MS. MILLER: Let's mark this next in order.

(DEFENDANTS' EXHIBIT NO. 38 WAS MARKED FOR IDENTIFICATION.)

MS. MILLER: Q. Have you seen Exhibit 38 before today?

A. Yes, I have.

Q. Okay.

This was a form that was filled out for UnumProvident in November of 2003, correct?

A. That's correct.

Q. You see where it says -- in the middle, under "other conditions," it says, "Has patient been released to work in his/her own occupation? No. In any occupation? No. If not, when should the patient be able to return to work. May 2004."

Do you see that?

A. I'm looking for it.

MR. LEBOWITZ: It's here.

THE WITNESS: Okay.

Yes, I do see that.

MS. MILLER: Okay.

Q. So going back to my initial question where you said there were complications as a result of the stress due to the situation, your doctor in November anticipates that you're going to be unable to work until May of 2004.

The question was, did these complications prolong your return to work to a date after May of 2004?

MR. LEBOWITZ: Objection. Asked and answered.

THE WITNESS: The complications prolonged my ability to return to work in May of 2004 and before that as well.

MS. MILLER: Okay.

Q. So when were you able to return to work?

A. My disability benefits ended in middle of May of 2004.

Q. Okay.

At that point in time, were you able to return to work? Well, were you released at that point from your doctor to return to work?

A. I was able to return to work around mid May of 2004.

Q. Okay.

Did you register with any headhunters or employment search firms to try to find employment at any time after May of 2004?

A. Yes, I did.

Q. With what firms or entities did you register with?

A. I registered with several different entities. I also registered with the State of California entity, the service.

Q. What I was asking -- I know you registered with several different entities.

CERTIFICATE

I, the undersigned, a Certified Shorthand Reporter, State of California, hereby certify that the witness in the foregoing deposition was by me first duly sworn to testify to the truth, the whole truth, and nothing but the truth in the within-entitled cause; that said deposition was taken at the time and place therein stated; that the testimony of said witness was reported by me, a disinterested person, and was thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said testimony; and that the witness was given an opportunity to read and, if necessary, correct said deposition and to subscribe the same.

I further certify that I am not of counsel or attorney for either or any of the parties in the foregoing deposition and caption named, nor in any way interested in the outcome of the cause named in said caption.

Executed this 5th day of April, 2006.

LaRelle M. Fagundes

LARELLE M. FAGUNDES, CSR 9762

# EXHIBIT C

 # INCOME PROTECTION CLAIM

Mail to: Chattanooga Customer Care Center, P.O. Box 12030, Chattanooga, TN 37401-3030
Claim Questions: 800.633.7479 Fax To: 423.755.3009

EXHIBIT
38
Pande 3-22-06

## A. ATTENDING PHYSICIAN'S STATEMENT (PLEASE PRINT)

| Name of Patient | Home Telephone Number | Date of Birth | Social Security Number |
|---|---|---|---|
| Kiran Pande | 518 4919 | 7/23/62 | 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 |
| Employer Name: Chevron Texaco | | | Employer Telephone Number |

Instructions: If this claim is related to normal pregnancy, complete the Normal Pregnancy section. For all other claims, including complicated pregnancy, complete the All Other Conditions section. **In all situations, you must complete the signature block at the bottom of this form.**

## Normal Pregnancy

- Expected Delivery Date: | If Delivered, Actual Delivery Date: | Type of Delivery ☐ Vaginal ☐ C-Section
- Date First Unable to Work | Date Hospitalized
- Has patient been released to work in her own occupation? ☐ Yes ☐ No In any ocupation? ☐ Yes ☐ No
  If not, when should the patient be able to return to work? Full Time Part Time

## All Other Conditions

- **Diagnosis** - Please include the primary diagnosis and list any secondary conditions.

Diagnosis (including any complications) include ICD9 and/or DSM IV Multi Evaluation Nomenclature and Code Number
Anemia - 285.9 Menorrhagia 626.2
uterine fibroids 218.9

- Date First Unable to Work 11/10/03 | Date Hospitalized
- Has patient been released to work in his/her own occupation? ☐ Yes ☒ No In any ocupation? ☐ Yes ☒ No
  If not, when should the patient be able to return to work? Full Time May 2004 Part Time
- Is this disability related to the patient's employment? ☐ Yes ☒ No ☐ Unknown
- If complicated pregnancy | Expected Delivery Date: | If Delivered, Actual Delivery Date: | Type of Delivery ☐ Vaginal ☐ C-Section
- Date of first visit for this illness or injury July 03
- Nature of treatment (including surgery and medications prescribed) | Date of Surgical Procedure | CPT Code
  Medication to keep anemia and menorrhagia
  Plan for surgery 2/04
- If the patient has demonstrated a loss of function, please describe restrictions and limitations in the space provided below.

RESTRICTIONS (What the patient should not do)

no strenuous exertion or stress.

LIMITATIONS (What the patient cannot do)

No lifting > 10#, no prolonged sitting or walking > 1-2 hours without rests

Date restrictions and limitations began.
11/10/03

Referring physician or other treating physicians (names, addresses, telephone numbers):
Dr Shane Task
510-785-5000

**Please include copies of all applicable office notes and test results.**

**FRAUD NOTICE: Any person who knowingly files a statement of claim containing false or misleading information is subject to criminal and civil penalties. This includes Employer and Attending Physician portions of the claim form.**

| Print or Type Name: Juliana Wong | Degree: MD | Medical Specialty: Family Practice |
|---|---|---|
| Street Address: 329 Diablo Road | | Telephone Number: 925 314-0260 |
| City: Danville | State: CA | ZIP Code: 94526 | Fax: 925 831 2564 |
| Signature of Physician: [signature] | | Date: 11/13/03 |
| Tax or Employer's ID Number: 943148745 | Are you, the physician, related to this patient? ☐ Yes ☒ No If yes, what is the relationship? | |

1159

# EXHIBIT E

John A. McGuinn, Esq. (SBN 36047)
Noah D. Lebowitz, Esq. (SBN 194982)
McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133
Telephone: 415/421-9292
Facsimile: 415/403-0202

Attorneys for Plaintiff
KIRAN PANDE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE,<br><br>Plaintiff,<br><br>vs.<br><br>CHEVRON CORPORATION (f/k/a CHEVRONTEXACO CORPORATION), a Delaware corporation, CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a CHEVRONTEXACO OVERSEAS PETROLEUM COMPANY), a division of Chevron U.S.A. Inc.,<br><br>Defendants. | Case No. 04-5107 CW<br><br>**PLAINTIFF KIRAN PANDE'S INITIAL DISCLOSURES** |

Plaintiff Kiran Pande makes the following disclosures pursuant to FRCivP 26. Plaintiff's disclosures herein are subject to ongoing discovery and investigation. Plaintiff reserves the right to supplement this disclosure as new information is uncovered, or in response to formal discovery demands. Furthermore, Plaintiff reserves the right to not disclose information that is subject to any applicable privilege, the work product

doctrine, or the right to privacy.

## A. WITNESSES

Plaintiff identifies the following individuals as having information that is relevant to this case. On information and belief, the scope of the testimony of each of these individuals is described below.

1. **Kiran Pande**
May be contacted through counsel.

Ms. Pande will provide factual basis for all of the allegations made in her complaint.

2. **Rex Mitchell**
Currently employed by Defendants

Mr. Mitchell will provide information regarding the time period in which he acted as Ms. Pande's supervisor. His testimony will include Ms. Pande's complaints about discriminatory, harassing, and retaliatory conduct by Mr. Mitchell. His testimony will also include information about Mr. Mitchell's efforts to sully Ms. Pande's name throughout the company which led to truncated career options for Ms. Pande. Mr. Mitchell will also testify about Ms. Pande's transfer to her final position with the company.

3. **James "Jay" Johnson**
Currently employed by Defendants.

Mr. Johnson will testify about Ms. Pande's complaints of discrimination, harassment, and retaliation which she suffered at the hands of Mr. Mitchell. Mr. Johnson will also testify about what investigation, if any, was undertaken to look into Ms. Pande's complaints.

///

McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133

4. **Gary Yamashita**
Currently employed by Defendants.

Mr. Yamashita will testify about the complaints lodged by both Ms. Pande and Victoria Thompson alleging discrimination, harassment, and retaliation at the hands of Mr. Mitchell. Mr. Yamashita will testify about the Defendants' policies and practices regarding lodging complaints for unlawful employment practices and policies and practices regarding the investigation of such complaints. Mr. Yamashita will testify about whether or not said policies and practices were followed in regard to Ms. Pande's and Ms. Thompson's complaints against Mr. Mitchell.

5. **Jack Dunn**
Currently employed by Defendants

Mr. Dunn will testify about Ms. Pande's job performance while he was Ms. Pande's supervisor. Mr. Dunn will testify about the group's move to Houston and the details of who in the group moved, who was re-employed in different positions, and who, if anyone, ended their employment involuntarily as a result of declining the move to Houston. He will also testify about the decision to place Ms. Pande in his group as well as the decision to declare Ms. Pande "voluntarily resigned." Mr. Dunn will also testify about his conduct vis-a-vis Ms. Pande's FMLA/CFRA leave. Mr. Dunn will also testify about his pledge to Ms. Pande that she could continue working for his group in San Ramon for the foreseeable future, going forward into 2004.

6. **Zuwa Omeregie**
Currently employed by Defendants

On information and belief, Mr. Omeregie was the "sponsor" for several of the open jobs to which Ms. Pande applied in late 2004, but did not get. Mr. Omeregie will testify about all aspects of the selection process for those jobs.

///

cGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
Francisco, CA 94133

7. **Taryn Shawstad**
Currently employed by Defendants

Ms. Shawstad will testify about the Defendants' Human Resources interactions with Ms. Pande regarding the move to Houston, Ms. Pande's FMLA inquiries, and the determination that Ms. Pande "voluntarily resigned" her position with the Defendants. Ms. Shawstad will also testify about various Human Resources policies and practices which are relevant to this case.

8. **Victoria Thompson**
Currently employed by Defendants

Ms. Thompson will testify about the internal complaints of gender discrimination she lodged with the Defendants about Mr. Mitchell. She will also testify about her knowledge of Ms. Pande's similar complaints and their joint session with Mr. Yamashita and others regarding their complaints. Ms. Thompson will further testify about Ms. Pande's job performance and abilities. Ms. Thomson will also testify about Mr. Mitchell's efforts to curtail Ms. Pande's ability to transfer within Chevron to different positions.

9. **Alizera Moshiri**
Currently employed by Defendants

Mr. Moshiri will testify about Ms. Pande's reaction to learning of Mr. Mitchell's efforts to curtail her ability to transfer within Chevron and her request to him for assistance.

10. **Tim Magner**

Currently employed by Defendants

Mr. Magner will testify about Mr. Mitchell's efforts to curtail Ms. Pande's ability to transfer within Chevron.

McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133

11. **Brian Smith**
Currently employed by Defendants

Mr. Smith was Ms. Pande's PDC sponsor for part of 2003. Mr. Smith will testify about his conversation with Ms. Pande confirming for her that she could move back to EPTC if she desired.

12. **Tom McMillen**
Currently employed by Defendants

Mr. McMillen will testify about his experience working as Ms. Pande's supervisor and her job performance in his group. He will also testify about his statements to Ms. Pande along the lines that she could always return to his group if she desired. Mr. McMillen will also testify to the fact that Ms. Pande was on the succession plan for his position in EPTC.

13. **Graham Housen**
Currently employed by Defendants

Mr. Housen was a co-worker of Ms. Pande's in Mr. Dunn's group. He will testify about his decisions regarding the move to Houston and his subsequent reemployment in a different position within Chevron. He will also testify about his personal perceptions regarding Ms. Pande's job-related abilities.

14. **Jalal Afifi**
Currently employed by Defendants

Mr. Afifi was a coworker of Ms. Pande who similarly turned down the offer to move to Houston. He will testify about his decisions regarding the move to Houston and his subsequent reemployment in a different position with the Defendants. He will also testify about his personal perceptions regarding Ms. Pande's job-related abilities.

///

McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133

15.  **Bob Burkes**
     Currently employed by Defendants

Mr. Burkes was a coworker of Ms. Pande who similarly turned down the offer to move to Houston. He will testify about his decisions regarding the move to Houston and his subsequent reemployment in a different position within Chevron. He will also testify about his personal perceptions regarding Ms. Pande's job-related abilities.

16.  **Randy Smith**
     Current contact information unknown

Mr. Smith was a coworker of Ms. Pande who similarly turned down the offer to move to Houston. Mr. Smith will testify that he received a severance package of four weeks per year of service, plus enhancements.

17.  **Gordon Seto**
     Currently employed by Defendants

Mr. Seto was a coworker of Ms. Pande who similarly turned down the offer to move to Houston. Mr. Seto will testify that, in or about April 2004, he was selected for continued employment with the Defendants.

18.  **Steve Zalan**
     Currently employed by Defendants

Mr. Zalan was a coworker of Ms. Pande who similarly turned down the offer to move to Houston. Mr. Zalan will testify that, despite turning down the offer and not securing a permanent position with the Defendants, he has been allowed to continue working for the Defendants in San Ramon.

19.  **Mike Clark**
     Currently employed by Defendants

Mr. Clark was a coworker of Ms. Pande who similarly turned down the offer to move to Houston. Mr. Clark will testify that, in or about January 2004, he was placed in

an ongoing position with the Defendants.

20. **Paul Vita**
Currently employed by Defendants

Mr. Vita was Ms. Pande's sponsor near the end of her employment with the Defendants. Mr. Vita will testify about Ms. Pande's efforts to find continuing employment with the Defendants and the responses thereto.

21. **Kelly Hartshorn**
Currently employed by Defendants

Ms. Hartshorn was Plaintiff's PDC representative in 2002 and has knowledge regarding Plaintiff's past performance and Mr. McMillen's statement that she could always have a position in his group.

22. **Kathy Mabe**
Currently employed by Defendants

Ms. Mabe attended the November 4, 2003 telephone conference and reported to Jeff Shalleberger about Mr. Dunn's inappropriate behavior towards Ms. Pande. Ms. Mabe will also testify about her direct conversation with Mr. Dunn about his comments in the November 4 conference call.

23. **James Swartz**
Currently employed by Defendants

Mr. Swartz attended the November 4, 2003 telephone conference and will testify about Mr. Dunn's inappropriate conduct towards Ms. Pande.

24. **Roger Severson**
Currently employed by Defendants

Mr. Severson attended the November 4, 2003 telephone conference and will testify about Mr. Dunn's inappropriate conduct towards Ms. Pande.

///

GUINN, HILLSMAN & PALEFSKY
35 Pacific Avenue
Francisco, CA 94133

25. **Tayo Feyijimi**
Currently employed by Defendants

Mr. Feyijimi attended the November 4, 2003 telephone conference and will testify about Mr. Dunn's inappropriate conduct towards Ms. Pande. Mr. Feijimi will also testify about Ms. Pande's work performance. He will also testify about Mr. Dunn's gleeful reaction after telling Ms. Pande on November 17, 2003 that she was being terminated.

26. **Jason Ewles**
Currently employed by Defendants

Mr. Ewles attended the November 4, 2003 telephone conference and will testify about Mr. Dunn's inappropriate conduct towards Ms. Pande. Mr. Ewles will also testify about Mr. Dunn's conduct after November 4 regarding Ms. Pande's work load.

27. **Dale Beeson**
Currently employed by Defendants

Mr. Beeson attended the November 4, 2003 telephone conference and will testify about Mr. Dunn's inappropriate conduct towards Ms. Pande. Mr. Beeson will also testify about Mr. Dunn's attempts to obtain detailed information about Ms. Pande's medical condition.

28. **Robert Koches**
Currently employed by Defendants

Mr. Koches attended the November 4, 2003 telephone conference and will testify about Mr. Dunn's inappropriate conduct towards Ms. Pande.

29. **Michael Clark**
Currently employed by Defendants.

Mr. Clark attended the November 4, 2003 telephone conference and will testify about Mr. Dunn's inappropriate conduct towards Ms. Pande.

///

McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133

30. **Jennifer Gilroy**
Currently employed by Defendants

Ms. Gilroy attended the November 4, 2003 telephone conference and will testify about Mr. Dunn's inappropriate conduct towards Ms. Pande.

31. **Carlos Martins**
Direccao de Producao
Departmento de Reservatorios
Edificio DH Rua 4 de Fevereiro nr 214
P.O. Box 1316
Luanda, Angola

Mr. Martins attended part of the November 4, 2003 telephone conference and will testify about Mr. Dunn's inappropriate conduct towards Ms. Pande. Mr. Martins will also testify about his experience with Ms. Pande as his mentor during his assignment with the Defendants.

32. **Lupe Dejong**
Currently employed by Defendants

Ms. Dejong will testify about Mr. Dunn offering Ms. Pande continued work in the business unit in San Ramon through 2004.

33. **John Fryters**
Currently employed by Defendants

Mr. Fryters will testify regarding Mr. Dunn's temper, throwing of objects in anger, and willingness to lie about work product.

34. **Mark Moon**
Currently employed by Defendants

Mr. Moon will testify regarding Mr. Dunn's temper and his unethical work practices.

35. **David McKay**
Currently employed by Defendants

Mr. McKay will testify about his experience working with Ms. Pande and her work

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
an Francisco, CA 94133

performance. He will also testify about Mr. Dunn's inappropriate actions towards Ms. Pande and his differential treatment of Ms. Pande.

36. **Mark Krolow**
Currently employed by Defendants

Mr. Krolow will testify about reports he received about Mr. Dunn's inappropriate behavior towards Ms. Pande during the November 4 telephone conference. He will also testify about what investigation, if any, he undertook as a result of learning of such reports.

37. **UnumProvident claims agents/case representatives**
Agents of Defendants, exact address unknown to Plaintiff

Members of UnumProvident who, as agents for Defendants, handled Ms. Pande's FMLA file and short term disability file. These yet unidentified individuals will testify about policies and practices in regard to making applications for FMLA leave and short term disability. They will also testify specifically about Ms. Pande's file maintained by UnumProvident and the processes by which that file was created and maintained.

38. **Person Most Knowledgeable re: Contract with UnumProvident to be Defendants' agents for fulfilling Defendants' obligations under FMLA/CFRA**

Corporate designee will testify about the agency agreement between Defendants and UnumProvident through which Defendants' FMLA/CFRA compliance obligations were to be handled by UnumProvident.

39. **Person Most Knowledgeable re: pay rates, elements of compensation, elements of benefits, etc which would have been earned by Ms. Pande had she remained employed by Defendants.**

Corporate designee will testify about the elements of Ms. Pande's compensation package during her employment and what the elements would have been had she continued with her employment with the Defendants.

GUINN, HILLSMAN & PALEFSKY
35 Pacific Avenue
Francisco, CA 94133

40. **Sheri Task, MD**
Bay Valley Medical Group, Inc.
27212 Calaroga Avenue
Hayward, CA 94545
(510)785-5000

Dr. Task will testify about Ms. Pande's medical condition.

41. **Juliana Wong, MD**
319 Diablo Road
Danville, CA 94526
(925) 314-0260

Dr. Wong will testify about Ms. Pande's medical condition.

**B. DOCUMENTS**

At this time, Plaintiff has identified the following categories of documents upon which she intends to rely in pursuing her claims:

1. Performance Reviews & Related Documents:

   Bates Nos. 01-32, 805-867; 1219-1222

2. Chevron Policies and Procedures:

   Bates Nos. 33-36, 462-709, 713-723, 909-919, 946-1018, 1066-1146, 1279-1414

3. Chevron Organizational Charts & Related Documents:

   Bates Nos. 37-81, 905-909

4. Internal Job Applications & Related Documents:

   Bates Nos. 82-461; 869-873; 900-904; 1207-1218

5. Correspondence Related to Job Termination & Related Documents:

   Bates Nos. 710-712, 724-797, 799-804, 1147-1148; 1201-1206

6. Medical Leave Related Documents:

   Bates Nos. 798, 892-899; 1156-1166, 1178-1197

///

7. Administrative & Internal Complaints:

Bates Nos. 920-945; 1223

8. Personnel File:

Bates Nos. 1019-1065

9. Damages Related Information:

Bates Nos. 1149-1155, 1415-1431

10. Signed Witness Statements:

Bates Nos. 1248-1278

## C. DAMAGES

Plaintiff suffered damages as a result of the various adverse actions taken by various managing agents of the Defendants. The elements of her damages, with some relevant calculation regarding certain elements, are as follows:

### 1. Compensatory Damages

#### a. Lost Earnings

Plaintiff's compensation package at the time of her termination was as follows:

| | |
|---|---|
| Salary | $111,600.00 |
| Annual Bonus | $ 10,573.81 |
| Housing Mortgage Interest Buydown | $ 5,460.36 |
| Profit Sharing Savings Plan Company Contribution | $ 8,928.48 |
| Subtotal 1 | $136,562.65 |
| Company Paid Health Insurance | $ 4,052.28 |
| Sub Total 2 | $140,614.93 |
| Pension Plan Contributions (? $20,000/yr) | $ unknown |

The period of loss is January 1, 2004 to the present. With known figures, that amount comes approximately $280,000. Final figures, including valuation of lost value to retirement and benefit plan(s) is subject to continuing discovery and expert valuation.

///

McGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133

**b. Future Wage Loss**

Plaintiff has begun working as an independent contractor as part of her own consulting business. The relative recency of this development does not allow for any way to accurately calculate ongoing wage and compensation differentials. Those figures are subject to ongoing discovery and expert valuation.

**2. Emotional Distress**

Plaintiff has suffered significant emotional distress as a result of the Defendants' actions. The amount of such damages is currently not subject to calculation, but a matter for the finder of fact to assess after hearing relevant evidence.

**3. Liquidated Damages**

Plaintiff is entitled to liquidated damages under the Family Medical Leave Act. The parameters of such an award is set by statute.

**4. Punitive Damages**

Plaintiff is entitled to an award of punitive damages. The financial status of the Defendants is currently unknown to Plaintiff and is the subject of ongoing discovery and potentially expert valuation.

**5. Attorneys' Fees & Costs**

Several of the causes of action alleged by Plaintiff provide for the recovery of attorneys' fees and costs. At the appropriate time, Plaintiff will make an application for recovery of such fees and costs based on approved billing rates and actual costs incurred.

I hereby certify that to the best of my knowledge, information and belief, formed after an inquiry which was reasonable under the circumstances, this disclosure is complete and correct as of the date indicated below.

lcGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue
n Francisco, CA 94133

Dated: December 9, 2005

McGUINN, HILLSMAN & PALEFSKY
Attorneys for Plaintiff

By: 
Noah D. Lebowitz

cGUINN, HILLSMAN & PALEFSKY
535 Pacific Avenue
San Francisco, CA 94133

PLAINTIFF KIRAN PANDE'S INITIAL DISCLOSURES

14

**PROOF OF SERVICE**

CASE NAME: *Pande v. Chevron Corp., et al.*
CASE NO.: C-04-5107-CW
COURT: United States District Court, Northern District of California

I am employed in the City and County of San Francisco, California; I am over the age of eighteen years and not a party to the within action; my business address is 535 Pacific Avenue, San Francisco, California 94133. On the date last written below, I served the following documents:

**PLAINTIFF'S INITIAL DISCLOSURES**

on the parties, through their attorneys of record, by placing true copies thereof in sealed envelopes addressed as shown below for service as designated below:

(A) By First Class Mail - I caused each such envelope, with first-class postage thereon fully prepaid, to be deposited in a recognized place of deposit of the U. S. mail in San Francisco, California, for collection and mailing to the office of the addressee on the date shown herein following ordinary business practices.

(B) By Personal Service - I caused each such envelope to be personally delivered to the office of the addressee by a member of the staff of this law firm on the date last written below.

(C) By Federal Express - I caused each such envelope to be delivered to the Federal Express Corporation at San Francisco, California, with whom we have a direct billing account, to be delivered to the office of the addressee on the next business day.

(D) By Facsimile - I caused a copy of this document to be faxed to the parties noted at the fax numbers stated below. Attached hereto is a verification of reception.

| Type of Service | Addressee | Party |
|---|---|---|
| B | Michelle Ballard Miller, Esq.<br>Kerry McInerney Freeman, Esq.<br>Miller Law Group<br>60 East Sir Francis Drake Blvd., Suite 302<br>Larkspur, CA 94939 | Defendants |

I declare under penalty of perjury that the foregoing is true and correct. Executed this 9th day of December, 2005, at San Francisco, California.

Teresa Tunney

# EXHIBIT F

-----Original Message-----
**From:** Thompson, Vicki (VLTH)
**Sent:** Friday, September 20, 2002 9:12 AM
**To:** Pande, Kiran (Kiran.Pande)
**Subject:** FW: Questions

It looks like Rex is indeed saying some rather bad things about you....

-----Original Message-----
**From:** Magner, Tim (TMagner)
**Sent:** Friday, September 20, 2002 8:23 AM
**To:** Thompson, Vicki (VLTH)
**Subject:** RE: Questions

Yes, it is Sarah's job. She very much wants to get into Business Planning.

Isn't it time they moved Rex on?

-----Original Message-----
**From:** Thompson, Vicki (VLTH)
**Sent:** Friday, September 20, 2002 4:22 PM
**To:** Magner, Tim (TMagner)
**Subject:** RE: Questions

Incidentally, is this opening in Fernando's group, Sarah Saltzer's position? I noted that she interviewed recently with Rex. I do hope that she refrains from accepting a position in the group -- as she will definitely regret it.

-----Original Message-----
**From:** Magner, Tim (TMagner)
**Sent:** Friday, September 20, 2002 7:58 AM
**To:** Thompson, Vicki (VLTH)
**Subject:** Questions

Question #1
I see the SASBU RAC meeting is scheduled to run 5 November through 8 November. Do you really think we'll meet on the Friday?

Question #2
What is the problem between Rex and Kiran Pandy? We were considering her for a position that will open up in Fernando Gaggino's group, and Rex told him things like "she's not a team player", "she pouts", etc. Real career killers.

# EXHIBIT G

Michele Ballard Miller (SBN 104198)
Kerry McInerney Freeman (SBN 184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON CORPORATION (f/k/a CHEVRONTEXACO CORPORATION), a Delaware corporation, and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a CHEVRONTEXACO OVERSEAS PETROLEUM COMPANY), a division of Chevron U.S.A. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIRAN PANDE,

Plaintiff,

v.

CHEVRON CORPORATION (f/k/a CHEVRONTEXACO CORPORATION), a Delaware corporation, and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a CHEVRONTEXACO OVERSEAS PETROLEUM COMPANY), a division of Chevron U.S.A. Inc.,

Defendants.

Case No. 04-5107 CW

**SUPPLEMENTAL DECLARATION OF KELLY HARTSHORN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

Date: January 5, 2007
Time: 10:00 a.m.
Courtroom: 2

Complaint filed: December 2, 2004

Trial Date: April 16, 2007

Honorable Claudia Wilken

I, KELLY HARTSHORN, declare:

1. I began working with Chevron and various Chevron-related entities in 1979. My current job title is General Manager, Asset Development for the Southern Africa Strategic Business Unit. I have personal knowledge of the matters set forth herein, except

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

those stated on information and belief. If called as a witness, I could competently testify thereto.

2. During the fall and winter of 2002, I served as the Personnel Development Representative ("PDR") for the Petroleum Engineering Professional Development Committee ("PE PDC") and in that capacity I represented Ms. Kiran Pande with regard to several positions that she posted for around that time period. I also communicated with Ms. Pande about positions that were available in order to determine which positions Ms. Pande was interested in posting for and to assist in her jobs search process.

3. In my capacity as PDR, I became aware in the fall of 2002, that there was an available position in Fernando Gaggino's group – the Congo Group. The position at issue was filled by an individual named Sarah Saltzer, but she was scheduled to transfer into another position. Accordingly, the Congo Group was looking to fill Ms. Saltzer's position. Although there was originally some discussion about Ms. Pande's suitability for this position, when I spoke to Ms. Pande about the position, she informed me that she was not interested in the Congo position. Accordingly, I did not pursue the position on her behalf and Ms. Pande never posted for that position.

4. In the fall of 2003, I was involved in the selection process for a Manager, Technical Support position in EVP, Business Development (Job Number 50076683). This position was to be located in London, England. Kiran Pande was one of approximately 32 persons considered for that position. The position was listed at grades 26/27. Ms. Pande, who was a grade 24, was not selected for the position because she did not meet the selection criteria.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

5. To the extent any problems or conflicts may have existed between Ms. Pande and any of her supervisors at or prior to the time of the selection process, they did not play a role in the decision not to select her for the Manager, Technical Support position.

6. Likewise, neither Ms. Pande's national origin/race nor her gender played a role in the decision not to select her for that position.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 18th day of December, 2006 in Luanda, Angola.

KELLY HARTSHORN

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

3
SUPPLEMENTAL DECLARATION OF KELLY HARTSHORN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR, ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT
Case No. 04-5107 CW

# EXHIBIT H

Case 4:04-cv-05107-CW Document 47 Filed 12/01/2006 Page 1 of 2

Michele Ballard Miller (SBN 104198)
Kerry McInerney Freeman (SBN 184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON CORPORATION (f/k/a CHEVRONTEXACO CORPORATION), a Delaware corporation, and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a CHEVRONTEXACO OVERSEAS PETROLEUM COMPANY), a division of Chevron U.S.A. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIRAN PANDE,

Plaintiff,

v.

CHEVRON CORPORATION (f/k/a CHEVRONTEXACO CORPORATION), a Delaware corporation, and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a CHEVRONTEXACO OVERSEAS PETROLEUM COMPANY), a division of Chevron U.S.A. Inc.,

Defendants.

Case No. 04-5107 CW

**DECLARATION OF IRIS OWENS IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**

Date: January 5, 2007
Time: 10:00 a.m.
Courtroom: 2

Complaint filed: December 2, 2004

Trial Date: April 16, 2007

Honorable Claudia Wilken

I, IRIS OWENS, declare:

1. I worked as a contractor from 1985-1986 and was hired by Chevron in 1988. In 2001 and 2002, I worked as the administrator in Business and Strategic Planning

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

Case 4:04-cv-05107-CW Document 47 Filed 12/01/2006 Page 2 of 2

for Chevron Overseas Petroleum ("COP").[1] While working in that capacity, I had frequent interaction with Rex Mitchell who was the Manager for Business and Strategic Planning at the time. I have personal knowledge of the matters set forth herein, except those stated on information and belief. If called as a witness, I could competently testify thereto.

2. I have never heard Rex Mitchell make any kind of racial slur or comment reflecting negatively on individuals of any particular racial or ethnic background. Similarly, I have never heard him make any negative comments about women.

3. I do recall that Ms. Kiran Pande, who also worked in Business and Strategic Planning, told me that she'd heard Rex Mitchell make a comment about "rag heads" or "towel heads," but I don't recall who Ms. Pande alleged was the target of that comment. What I do know is that I never heard Mr. Mitchell make such a comment. Rather, Ms. Pande was the one who on several occasions raised that issue with me and who told me about the alleged comment.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 29th day of November, 2006 in San Ramon, California.

Iris Q. Owens

IRIS OWENS

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

[1] "COP" has had various names over the years including ChevronTexaco Overseas Petroleum, and now, Chevron International Exploration and Production Company. For ease of reference, however, I will refer to this entity as "COP" throughout my declaration.

# EXHIBIT I

Michele Ballard Miller (SBN 104198)
Kerry McInerney Freeman (SBN 184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON CORPORATION (f/k/a CHEVRONTEXACO CORPORATION), a Delaware corporation, and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a CHEVRONTEXACO OVERSEAS PETROLEUM COMPANY), a division of Chevron U.S.A. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE,<br><br>Plaintiff,<br><br>v.<br><br>CHEVRON CORPORATION (f/k/a CHEVRONTEXACO CORPORATION), a Delaware corporation, and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a CHEVRONTEXACO OVERSEAS PETROLEUM COMPANY), a division of Chevron U.S.A. Inc.,<br><br>Defendants. | Case No. 04-5107 CW<br><br>**DECLARATION OF DESMOND KING IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT**<br><br>Date: January 5, 2007<br>Time: 10:00 a.m.<br>Courtroom: 2<br><br>Complaint filed: December 2, 2004<br><br>Trial Date: April 16, 2007<br><br>Honorable Claudia Wilken |

I, DESMOND KING, declare:

1. I began working with Chevron and various Chevron-related entities in 1981. In 2002, I worked in the Strategic Planning Unit for Chevron Corporation in San Ramon, California. My title at the time was General Manager Strategic Planning. I have

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

personal knowledge of the matters set forth herein, except those stated on information and belief. If called as a witness, I could competently testify thereto.

2. In the fall of 2002, Strategic Planning posted a job opening for a Senior Staff Analyst to be located in San Ramon, California. I was the position owner for that Senior Staff Analyst position. Numerous individuals, including Ms. Pande, applied for the position. Although I had not originally intended to interview Ms. Pande for the position, based upon the recommendation that I received from her former supervisor, Mr. Rex Mitchell, I decided to interview her – and hence short list her – for the position. Ultimately, Ms. Pande was not selected for the position because another candidate was more qualified for the position.

3. Although, as the position owner I was very involved in the selection process and even interviewed Ms. Pande personally, I do not recall hearing any negative feedback about Ms. Pande from her supervisor or anyone else. To the contrary, as discussed above, my recollection is that her supervisor, Mr. Mitchell, spoke highly of her and convinced me to interview her. I also do not recall hearing of, or knowing about, any conflicts or problems between Ms. Pande and Mr. Mitchell around the time of the selection process. If such conflicts or problems did exist (which I do not know and can neither confirm nor deny), they did not play a role in the decision to select a different candidate for the Senior Staff Analyst position.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on this 30th day of November, 2006 in Sydney, Australia.

Desmond King

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA