**EXHIBIT J**

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

--oOo--

KIRAN PANDE,                          )
                                      )
          Plaintiff,                  )
                                      )
     vs.                              )  Case No. 04-5107 CW
                                      )
CHEVRON CORPORATION, et al.,          )
                                      )
          Defendants.                 )
_____       )

CERTIFIED COPY

DEPOSITION OF REX MITCHELL

Monday, October 30, 2006

REPORTED BY: DENISE A. FORD, CSR 7525 (387693)


LEGALINK®

A MERRILL
COMMUNICATIONS
COMPANY

575 Market St
11th Floor
San Francisco, CA 94105

tel (415) 357-4300
tel (800) 869-9132
fax (415) 357-4301

www.merrillcorp.com

**REX MITCHELL    October 30, 2006**

1    Q.    And was that as a result of the PDC or

2    some other process?

3    A.    As a result of the PDC process.

4    Q.    So once this opportunity went by, did you

5    do anything else to try and assist Ms. Pande to find

6    another job in the company prior to the fall of 2002

7    PDC?

8    A.    I am not sure it was prior to the fall

9    PDC.  We were trying to -- I was working with Desmond

10   King in corporate planning.  There was a job in

11   corporate planning that Kiran was interested in.  I

12   thought we held something open for a period of time to

13   let her post for that position.  Again, I don't recall

14   whether it was just prior to, at the same time or

15   shortly thereafter the PDC meeting.

16   Q.    Sometime in the latter half of 2002?

17   A.    It was definitely latter half of 2002.

18   Q.    How did this potential opening come up?

19   Was this something that Mr. King came and told

20   you or you sought him out?

21   A.    It was a posted job.  It was available for

22   open posting.

23   Q.    Something you saw?

24   A.    I think -- I had two employees in the

25   group that were interested in the job.  I was aware of

110

**REX MITCHELL   October 30, 2006**

1  it.  Des King called me to make me aware that was an

2  opening in his shop.

3      Q.    Did you suggest to Mr. King that Ms. Pande

4  would be a good candidate for it?

5      A.    I suggested that he talk to both

6  candidates that had posted to his job.

7      Q.    One of whom was Ms. Pande?

8      A.    Yes.

9      Q.    Who was the other?

10      A.    Kemal Anbarci.

11      Q.    Did you talk to Mr. King about Ms. Pande

12  in any more detail other than you should take a look at

13  her?

14      A.    I encouraged her to shortlist both of them

15  because originally they did not shortlist Kiran as a top

16  candidate on paper.  He felt Kemal had the stronger

17  qualifications.  I urged him to talk to both of them.  I

18  really felt they brought different skills to the job.

19      Q.    To your knowledge, did Mr. King actually

20  talk to Ms. Pande?

21      A.    Yes, I believe he did.

22      Q.    Did you express to Mr. King any of your

23  concerns about Ms. Pande's performance in your group?

24      A.    No.

25      Q.    Did you express to Mr. King any of your

111

**REX MITCHELL    October 30, 2006**

1    feelings about Ms. Pande's attitude at work?

2         A.    No.

3         Q.    Did you say anything in your own mind that

4    you would characterize as a less than positive

5    statement?

6         A.    No.

7         Q.    Did you ever talk to Ms. Pande about this

8    job?

9         A.    I believe we spoke about it, about the

10   opening.  I think I had to endorse her posting for the

11   position.  I think I did speak to her about the job.  It

12   was a lengthy period of time that they were delaying

13   their interviewing process, and I think that resulted in

14   holding open another opportunity for Kiran for some

15   period of time.

16        Q.    Who ultimately got the job with Mr. King?

17        A.    He didn't select either one of my

18   employees for the role.  I am not sure who he brought

19   in.  Someone from outside of our group.

20        Q.    So what do you mean when you say there was

21   another job that was being held open?

22        A.    There was a position -- my recollection is

23   there was a position that Kiran was selected for out of

24   the fall PDC process in the petroleum engineering arena.

25   That job -- she had been selected for the job but

112

1                    CERTIFICATE OF REPORTER

2          I, DENISE A. FORD, a Certified Shorthand

3    Reporter, hereby certify that the witness in the

4    foregoing deposition was by me duly sworn to tell the

5    truth, the whole truth, and nothing but the truth in the

6    within-entitled cause;

7          That said deposition was taken down in

8    shorthand by me, a disinterested person, at the time and

9    place therein stated, and that the testimony of the said

10   witness was thereafter reduced to typewriting, by

11   computer, under my direction and supervision;

12          That before completion of the deposition,

13   review of the transcript [X] was [ ] was not requested.

14   If requested, any changes made by the deponent (and

15   provided to the reporter) during the period allowed are

16   appended hereto.

17          I further certify that I am not of counsel or

18   attorney for either or any of the parties to the said

19   deposition, nor in any way interested in the event of

20   this cause, and that I am not related to any of the

21   parties thereto.

22       DATED: _____ 11/10/06 _____

23

24       _____

25       DENISE A. FORD, CSR No. 7525

**EXHIBIT K**

ChevronTexaco Overseas Petroleum          **Taryn Shawstad**
6001 Bollinger Canyon Road                General Manager
San Ramon, CA 94583-2324                  Human Resources
P.O. Box 6046
San Ramon, CA 94583-0746
Tel 925 842 1391
Fax 925 842 1300
tary@chevrontexaco.com

# ChevronTexaco

November 18, 2003

Kiran K. Pande
7195 Lamar Loop
Castro Valley, CA 94552

Subject: Voluntary Termination

Kiran:

On June 2, 2003 you received a letter offering you continued employment with ChevronTexaco Overseas Petroleum in Houston, Texas. You did not accept this offer and by turning down this job, you have, in effect, resigned from the company. Based on your voluntary resignation you are not eligible for a severance package, redeployment or outplacement services.

At the time you chose not accept the relocation offer you were informed that as long as there was useful work for you, that your employment with the company could continue until year end 2003. As you know, the SABU Block 14 New Field Development group will officially relocate to Houston effective December 12. With the move of your current work unit, continued useful work will no longer be available for you within CTOP. If you are not selected for another ChevronTexaco position, your last day of employment will be Wednesday, December 31, 2003. You will be paid out for any unused 2003 vacation. Please contact the HR Service Center at 1 888-TALK2HR (1-888-825-5247) to obtain your benefits paperwork.

Sincerely,

*Taryn L Shawstad*

T.L. Shawstad

EXHIBIT LF
32
Pande 3-22-06

1201

**EXHIBIT L**

1   John A. McGuinn, Esq. SBN 36047
    Noah D. Lebowitz, Esq. SBN 194982
2   McGUINN, HILLSMAN & PALEFSKY
    535 Pacific Avenue
3   San Francisco, CA 94133
    Telephone: (415) 421-9292
4   Facsimile: (415) 403-0202

5

6   Attorneys for Plaintiff
    KIRAN PANDE

7

8                UNITED STATES DISTRICT COURT

9                NORTHERN DISTRICT OF CALIFORNIA

10

11  KIRAN PANDE,                          NO.   04-5107 CW

12              Plaintiff,

13  vs.                                   DECLARATION OF VICTORIA
                                          THOMPSON IN SUPPORT OF
14                                        PLAINTIFF'S OPPOSITION TO
                                          DEFENDANTS' MOTION FOR
15  CHEVRON CORPORATION (f/k/a            SUMMARY JUDGMENT, OR
    CHEVRONTEXACO CORPORATION),           ALTERNATIVELY, PARTIAL SUMMARY
16  a Delaware corporation,               JUDGMENT
    CHEVRON INTERNATIONAL
17  EXPLORATION & PRODUCTION (f/k/a
    CHEVRONTEXACO OVERSEAS
18  PETROLEUM COMPANY),
    a division of Chevron U.S.A. Inc,
19
                Defendants.
20

21

22  I, VICTORIA THOMPSON, declare:

23       1.    I was employed by Chevron Corporation since approximately February 1981

24  until April 2006.  The following is based on my personal knowledge, and if called, could

25  testify competently thereto.

26       2.    In the timeframe of late 2001 through 2002, I was working as the Reserves

27  Analyst in ChevronTexaco Overseas Petroleum, Inc., aka CTOP.  Beginning in November

28  2001 through April 2002, my direct supervisor in CTOP was Rex Mitchell ("Mitchell").

DECLARATION OF VICTORIA THOMPSON IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                                    1

McGuinn, Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
415/421-9292

1   During this same time period, Kiran Pande ("Pande") was also being supervised by

2   Mitchell.

3        3.    In February 2002, Mitchell requested that I provide him with a written copy of

4   my 2001 performance management (PMP) forms that were completed with my prior

5   supervisor. I responded back with the forms as completed through August 2001, as that

6   was when the last performance management discussion with my former supervisor had

7   occurred. At that time, my supervisor was Tom Schull ("Schull"). Subsequent to my

8   August 2001 discussion with Schull, he moved into another position which was unrelated

9   to my job function and he no longer supervised me. In the interim (August 2001 to

10  November 2001) period before being reassigned to Mitchell, I had no assigned supervisor.

11       4.    In April 2002, I received an email from Mitchell containing a copy of my

12  finalized 2001 performance review, as completed by Mitchell. Mitchell's email also

13  requested that we schedule a meeting to discuss my 2001 review and performance goals

14  for 2002. I learned via this email that Mitchell had given me an "average" ranking for my

15  performance in 2001 and that my salary treatment which became effective on April 1 had

16  been based upon Mitchell's evaluation. Until this time, Mitchell and I had no discussions

17  relating to my job. And as my new supervisor, I was aware that Mitchell was unfamiliar

18  with my duties. I was also aware that Mitchell had not looked at or reviewed my work

19  products for the year and had no justification for the "average" ranking. Based on the work

20  that I performed for the company that year, in combination with my experience of prior

21  years receiving higher rankings and salary treatments from other supervisors, I believed

22  that Mitchell's ranking was unsupportable.

23       5.    During our April meeting to discuss my "average" 2001 performance ranking

24  and 2002 PMP, Mitchell became verbally aggressive and belligerent, attacking me for a

25  work-related suggestion I was making. He would not stop his attack until I finally put up

26  my hands in a surrender pose and told him that he was absolutely correct in the assertions

27  he was making.

28       6.    Because of Mitchell's overly aggressive conduct towards me and because I

McGuinn, Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
415/421-9292

1   felt that Mitchell's evaluation of my performance had no foundation, I decided to try to use

2   Chevron's Ombuds process to register a complaint and get some sort of relief. So, I met

3   with Chevron Ombuds, Gary Yamashita ("Yamashita") in April 2002 to discuss my issues

4   with Mitchell.

5        7.    Through discussions I was having with Pande at about the same time, I

6   learned that she too was having problems with Mitchell. Because we both had similar

7   complaints about Mitchell, we decided to jointly go to Yamashita. Yamashita agreed to set

8   up a meeting between Pande, myself, and Mitchell's supervisors, Jay Johnson

9   ("Johnson"). Yamashita led us to believe that he would act as our advocate at the meeting

10   and help us explain to Johnson the nature of our complaints about Mitchell.

11        8.    Prior to the planned meeting with Johnson, Yamashita asked us to put

12   together "bullet points" for the meeting. Pande and I came up with the bullet points, as

13   suggested by Yamashita. I have reviewed what is attached hereto as Exhibit A and can

14   attest that it is a true and correct copy of the bullet points Pande and I created and

15   submitted to Yamashita prior to our meeting with Johnson. The overall goal of the bullet

16   points was to provide talking points for explaining how both Pande and I believed that

17   Mitchell was treating us – the only two women under his supervision. Yamashita told us to

18   carefully consider our bullet points as they might be "too confrontational." We did not

19   believe they were overly confrontational – registering a complaint at Chevron is always

20   somewhat confrontational – and did not change them.

21        9.    Prior to the planned meeting with Johnson, we also discussed with

22   Yamashita the possibility of filing a complaint with Chevron's "STEPS" process. STEPS is

23   advertised by Chevron as an informal dispute resolution procedure open to employees

24   who wished to have complaints about workplace conduct investigated. Yamashita

25   dissuaded us from using STEPS. He told us that the people involved in the process are

26   incompetent and that we would not be happy with the results. The message I heard from

27   Yamashita was that taking our complaint to STEPS would be hard, long and likely futile

28   and useless. Based on these comments from Yamashita, we decided to confine our

DECLARATION OF VICTORIA THOMPSON IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT

3

McGuinn, Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
415/421-9292

1    complaints to the Ombuds process.

2         10.    Prior to the meeting, Yamashita told me that there had been other

3    complaints about Mitchell and that Mitchell "had left carnage wherever he had been."

4         11.    In late April 2002, we had the meeting with Johnson. The meeting took

5    place at Johnson's office. Yamashita went in first to speak with Johnson alone. After a

6    short while, Pande and I were invited in to join the meeting. We gave Johnson a copy of

7    the bullet points. We also raised our fear of retaliation from Mitchell. Pande and I

8    discussed that we felt that there was an imbalance in the criteria being used to rank

9    people for salary treatment. Pande and I said that we did not believe that we were being

10   treated fairly and that there was not uniform criteria being employed to evaluate

11   employees.

12        12.    In addition to bullet points, Pande specifically raised a complaint about

13   Mitchell's racial slur involving people of East Indian descent, like Pande. In particular,

14   Pande relayed a conversation she had with Iris Owen ("Owens"), who was Mitchell's

15   administrative assistant at the time. Owens had asked Mitchell if he wanted her to make

16   arrangements for him to have a taxi or limo service to or from the airport for his upcoming

17   air travel. In response, Mitchell made an angry comment to the effect that he did not want

18   to use them, and referred to the drivers as "towel heads".

19        13.    Instead of responding to Pande's various complaints about Mitchell, Johnson

20   redirected the discussion to Pande's work performance over the past year. Johnson did

21   not give any sort of substantive reply to Pande's complaints. At one point Johnson even

22   laughed about one of my complaints. Johnson also told us, referring to Mitchell: "the poor

23   guy is under stress and overworked." Johnson then effectively turned the meeting into a

24   confrontation about Pande's performance. I felt very uncomfortable at this point because I

25   did not feel it was appropriate for Johnson to be discussing Pande's performance with me

26   in the room. The entire experience was quite humiliating for Pande.

27        14.    All the while that Johnson was attacking Pande about her performance,

28   Yamashita did nothing. He did not speak up. He did not try to redirect the conversation to

DECLARATION OF VICTORIA THOMPSON IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                                    4

McGuinn, Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
415/421-9292

1    the substance of our complaints. Really, Yamashita was nothing more than a fly on the

2    wall during this meeting.

3         15.    During the meeting both Pande and I requested that we be given another

4    supervisor instead of Mitchell. In response, Johnson told me that my request would be

5    granted, but then told Pande that hers would not and that she would have to remain with

6    Mitchell as her supervisor. Pande attempted to justify her request by explaining why it

7    would also make business sense to have her moved to another group that also reports to

8    Johnson. Johnson emphatically said no, he would not entertain any such request from

9    her.

10        16.    During the meeting, Johnson also took Pande to task for writing so much in

11   her PMP form. He said that putting so much detail and information into the PMP form

12   would be indicative to someone reading her file later on that there was a problem. Pande

13   explained that the only reason she did that was to try to show Mitchell support for her

14   belief that she should receive a higher rating and salary treatment. Johnson was not

15   swayed by Pande's explanation and said that by writing this "whole litany", showed that

16   she had a problem.

17        17.    In all, Johnson spent about 10% of the meeting addressing my concerns,

18   and the remainder attacking Pande over accusations about her performance.

19        18.    At no time during the meeting did Johnson indicate that there would be any

20   sort of investigation into our complaints. At no time after the meeting did I learn that there

21   was any sort of investigation into our complaints. As far as I am aware, Mitchell received

22   no counseling or discipline for his behavior towards Pande or me.

23        19.    In late September 2002, I received an email from Tim Magner. In that email,

24   Magner asked: "What is the problem between Rex and Kiran Pandy [sic]? We were

25   considering her for a position that will open up in Fernando Gaggino's group, and Rex told

26   him things like 'she's not a team player', 'she pouts', etc. Real career killers." I then

27   forwarded the email to Pande to show her that Mitchell's attitude towards her was affecting

28   her career path at Chevron. I have reviewed what is attached hereto as Exhibit B and can

DECLARATION OF VICTORIA THOMPSON IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                                          5

McGuinn, Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
415/421-9292

McGuinn, Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
415/421-9292

1   attest that it is a true and correct copy of the email thread described above.  In subsequent

2   communications with Tim Magner ("Magner") about this email, I learned that the idea had

3   been discussed to propose an exchange of Pande for an employee named Sarah Saltzer

4   ("Saltzer").  Specifically, the idea was that Pande would move to Magner's group and

5   Saltzer would move into Mitchell's group.  However, after the folks in Magner's group

6   learned of Mitchell's comments, the idea was dropped and Pande was no longer

7   considered for the position.

8        20.     Based on my 25 years of employment with Chevron, including going through

9   the process of transferring amongst several of Chevron's companies, I can very

10   comfortably state that word-of-mouth between supervisors is a very important aspect of

11   the career development of professionals at Chevron.  As soon as one supervisor starts

12   saying bad things about you, you can essentially forget about your career path.  As

13   Magner acknowledged in his email (Exhibit B), subjective comments like "she's not a team

14   player" are, in his words, "Real career killers" at Chevron.  Based on my experiences at

15   Chevron, I completely agree with Magner's characterizations.

16   I declare under penalty of perjury under the laws of the State of California that the

17   foregoing is true and correct to the best of my knowledge.  Executed this 15th day of

18   December, 2006 at Gold River, California

19

20                    Victoria Thompson

21

22

23

24

25

26

27

28

DECLARATION OF VICTORIA THOMPSON IN SUPPORT OF PLAINTIFF'S
OPPOSITION TO MOTION FOR SUMMARY JUDGMENT                                    6

# EXHIBIT M

Michele Ballard Miller (SBN 104198)
Kerry McInerney Freeman (SBN 184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON INTERNATIONAL
EXPLORATION AND PRODUCTION (formerly known Document 40     Filed 12/01/2006     Page 1 of 11
as CHEVRONTEXACO OVERSEAS PETROLEUM and
improperly sued as CHEVRONTEXACO OVERSEAS
PETROLEUM PACIFIC COMPANY) AND CHEVRON
CORPORATION (formerly known as CHEVRONTEXACO
CORPORATION)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE, | Case No. 04-5107 CW |
| Plaintiff, | **DECLARATION OF JOHN DUNN IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT, OR ALTERNATIVELY, PARTIAL SUMMARY JUDGMENT** |
| v. | |
| CHEVRON CORPORATION (f/k/a CHEVRONTEXACO CORPORATION), a Delaware corporation, and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a CHEVRON TEXACO OVERSEAS PETROLEUM COMPANY), a division of Chevron U.S.A. Inc. | Date:     January 5, 2007<br>Time:     10:00 a.m.<br>Courtroom: 2 |
| | Complaint filed:  December 2, 2004 |
| | Trial Date:  April 16, 2007 |
| Defendants. | Honorable Claudia Wilken |

I, JOHN DUNN, declare:

1.      I am currently employed as the Strategic Planning and Business

Manager for the Energy Technology Company ("ETC").  In 2002 through approximately

June 2004, I was the Manager of Block 14 - Field Development within the Southern African

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  Strategic Business Unit ("SASBU") of Chevron Overseas Petroleum ("COP").[1]  In total, I

2  have worked with Chevron and various Chevron-related entities for approximately 20 years.

3  I have personal knowledge of the matters set forth herein, except those stated on

4  information and belief.  If called as a witness, I could competently testify thereto.

5

6          2.        Kiran Pande joined Block 14 of SASBU in December 2002.  I was Ms.
                     Case 4:04-cv-05107-CW    Document 40    Filed 12/01/2006    Page 2 of 11
7  Pande's supervisor while she worked in Block 14.  For the remainder of 2002 and the first

8  half of 2003, Ms. Pande performed quite well in her new position.  In fact, I was very

9  pleased, believing Ms. Pande to be an asset to the group.

10

11         3.        In May 2003, however, all SASBU employees were informed of the

12  decision to relocate SASBU to Houston, Texas.  A town hall meeting was held around that

13  time and all SASBU employees were provided materials relating to the move.  Included in

14  those materials was a timeline describing the timing of various aspects of the move, a copy

15  of the power point presentation shown at the town hall meeting which described aspects of

16  the move, and also a question and answer sheet (called a "FAQs" sheet) which listed

17  common questions about the move and the answers to those questions.  A true and correct

18  copy of the FAQs sheet which was provided to all SASBU employees, including Ms. Pande,

19  is attached and incorporated as Exhibit A.

20

21         4.        Although Ms. Pande was offered her position in Houston and was

22  encouraged to relocate, she declined the relocation offer.  After she declined that move, I

23  noticed a marked decline in her performance and a shift in her attitude.  As was expected,

24  sometime after Ms. Pande rejected the relocation offer, I also became aware that she was

25  posting for other positions within Chevron to find alternative employment.  I was not on the

26  _____

27  [1] "COP" has had various names over the years including ChevronTexaco Overseas Petroleum, and
     now, Chevron International Exploration and Production Company.  For ease of reference, however, I
28  will refer to this entity as "COP" throughout my declaration.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1   selection committee for any of the positions for which Ms. Pande applied during the fall of

2   2003.

3

4       5.      Block 14 employees who declined the offer to relocate were told that

5   they could continue working in their SASBU positions as long as there was useful work for

6   them to do within Block 14. I made it very clear to Block 14 employees that any useful work

7   would end when the group itself relocated to Houston, if not before. No Block 14 employees

8   were permitted to remain in San Ramon doing Block 14 work after December 31, 2003.

9

10      I declare under penalty of perjury under the laws of the United States of

11  America that the foregoing is true and correct. Executed on this 30th day of November,

12  2006 in Houston, Texas.

13

14                                      John Dunn

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

# EXHIBIT A

# FAQ's

## Organization

Q    Why are the San Ramon based SASBU positions being relocated to Houston?

A    There are several work process improvements, as well as cost savings, which support a consolidated SASBU staff in Houston. Co-location in Houston allows greater interaction between VC, MCP and RM within the BU, as well as increasing interaction with more of CTOP for best practice sharing and lessons learned. The simple fact that we are two time zones and one plane flight closer to Angola is a factor. The cost savings pay out in a 2-3 year time frame.

Q    Which building in Houston will our offices be in?

A    In general, we will occupy BAX 2 and BAX 5. We will look at our overall SASBU office space to optimize team interactions during and after the move.

Q    Why did it take management so long to tell us we were moving?

A    As you might imagine, a move of this size involves much upfront work to plan and implement. Until we had final approvals and the logistics, HR policy, and PDC processes worked out, it would have been premature to discuss the move. I understand the anxiety and uncertainty that changes like this create for those employees and their families who are affected.

Q    When will the moves be effective?

A    The moves are being staged in two waves; your move will either be around the 1st August 2003 or 1st January 2004. Your offer to move will identify which wave you will be included in.

Q    How long will I have to stay in Houston before I am allowed to post for another job?

A    In general you would be expected to be in your current position for at least 18 months before you post for another position. Remember that CTOP positions are primarily filled by the PDC's in either September/October or March.

Q    How are staff being selected for the New Organization?

A    The current SASBU organization is being relocated, as is, to Houston. This means that in most cases, employees will be offered an opportunity to move with their jobs to Houston. The jobs are not being opened, and as a result there will not be a requirement to make any selections.

729

SASBU Move FAQ's

## Offer to Move

Q    When will the offer to move be extended?
A    The majority of employees will receive offers to move with their jobs in the week
     commencing 2 June 2003

Q    Will offers to move for both the August 1 and January 1 wave of moves be
     extended at the same time?
A    Yes.

Q    Who will extend the offers to move?
A    Offers to move will be extended by the sponsor group through each employee's
     supervisor.

Case 2:04-cv-05107-CW    Document 40    Filed 12/01/2006    Page 6 of 11

Q    Will they be extended electronically or in hard copy?
A    Staff will be given hard copies of the offer to move and other materials.

Q    How long will an employee have to make a decision on whether to accept/decline
     the offer to move?
A    An employee will have seven days, starting upon receipt of the offer to move, to
     accept or decline the offer to move.

Q    What if an employee is out of the office in the week commencing June 2?
A    If the individual is on vacation or on sick leave offers will be made as soon as
     possible on the employee's return to the office. If the individual is traveling on
     company business and can be reached by e-mail his/her supervisor may decide to
     extend the offer electronically.

Q    How do I accept or decline the offer to move?
A    You accept or decline the offer by signing and dating the FDA form in the
     appropriate space and faxing the form to the fax number quoted on the form.

Q    What will happen if an employee declines their offer to move?
A    Staff who decline the offer to move will be expected to work with their sponsor to
     find alternative employment. There is no guarantee that such alternative
     employment will be found.

Q    What will happen to the expatriates working in the US who decline the offer to
     move?
A    Expatriates working in the US who decline the offer to move will be expected to
     work with their sponsor to find alternative employment. There is no guarantee that
     such alternative employment will be found. If no alternative employment is found
     they will be repatriated to their home country.

**730**

SASBU Move FAQ's

## Severance

Q     Will there be a Severance Package offered for those employees who choose not to
      relocate to Houston?
      All legacy Texaco employees are currently covered by The Separation Pay Plan of
      Texaco Inc. – Change of Control. Any affected employee should discuss his or
      her eligibility for a separation payment with Dolores Matzat at
      matzadf@chevrontexaco.com , CTN 432-2320.

      CTOP has decided in 2003 not to apply for coverage under the Corporation plan
      that relates to transfers and demotions. As a result no one will be directly offered a
      separation benefit as a result of their decision not to move to Houston.

Q     Will there be a Severance Package offered to those employees who are deemed
      surplus.
A     Employees who turn down or are not offered a move to Houston will be expected
      to work with their sponsor to find alternative employment. The sponsors will
      continue to work with employees, but if no alternative employment can be found
      at a time determined by management based on business needs, employment with
      ChevronTexaco will be terminated.

      US $ payroll employees may be eligible for a separation payment under the
      surplus employee program in place and will be advised of their eligibility
      individually.

      Surplus expatriates will be repatriated to their home country, and may become
      eligible for severance under any plan in effect for their payroll if no alternative
      employment can be found for them.

Q     Why don't you have a severance package in place right now?
A     ChevronTexaco is proud to have a strong and capable workforce. We have
      interesting and challenging positions for this workforce around the world and do
      not want to offer our employees any kind of inducement to leave our employment.
      As a result it has been decided not to request a standard severance program. As
      discussed above, individuals for whom no offer of alternative employment is made
      may be eligible for a severance in the future.

Q     How soon will those who accept the severance package know their termination
      date?
A     Just to be clear no-one will be offered severance. Managers will notify employees
      of their anticipated termination dates as soon as possible, based on the company's
      business needs.

Q     Are termination dates open for negotiation?

May 22, 2003                          3                          **731**

SASBU Move FAQ's

A    No. Termination dates will be set according to management's judgment based on the company's business needs.

## Relocation

Q    I am an expatriate working in the US. Do I need to notify the BCIS of my change of address?

A    Yes, you will need to notify the Bureau of Citizenship and Immigration Services (BCIS) (formally known as INS) by completing form AR-11 within 10 days of changing your home address.

Q    Will the Company notify the BCIS about the change in my work location?
A    The Company has 90 days to amend your visa to reflect the new work location.

Q    I am currently in receipt of a mitigation allowance, does this move constitute a new assignment under the terms of these allowances and will I lose my allowance?
A    No.

Q    Will a move to Houston affect my pay?
A    US $ payroll employees will see small differences related to the medical plans they choose and the payroll taxes that they pay.

Expatriate employees in the US will have some of their allowances (GSS and Housing for example) based on different tables relating to the Houston area, this means that their allowances will change. Each affected expatriate employee will receive a new compensation sheet.

Q    What should I do first once I accept the offer to move?
A    You will need to complete:
> 1) For U.S. $ payroll employees - GO-1394 (Relocation Program Enrollment) and forward it to Fiona Young or Debbie Giorgio who will fax it to our relocation company for processing.
> 2) For other payroll employees - GO-1405 (Request for Movement of Household Goods & Personal Effects) and fax it to your Expatriate Counselor (Paula Perez) at CTN 842-2857.

Q    I don't know anything about Houston, are there resources available to help me find out about Houston?
A    A website is being designed specifically to contain information about the SASBU move. It will include General information on Houston and surrounding area (maps; metro links; CT vanpool links; weather links). In addition each employee will receive a package of information on Houston and the surrounding area with their offer to move. Many of you also have colleagues working in Houston now or who have worked there in the past, it is always useful to talk to these contacts if you

May 22, 2003                                    4                                    732

have any particular questions on the city.

Q    I am a US$ Payroll employee. Am I entitled to a House Hunting Trip?
A    Yes, trips can be planned anytime after you submit the appropriate paperwork for
     the Home Finding feature of the Relocation Program. Keep in mind that only one
     house hunting trip is allowed per employee.

Q    How do I find out the provisions of the relocation assistance provided by the
     Company?
A    Everyone will be provided with a summary of the relocation program as it applies
     to them at the same time as they receive their move offer. Specific questions can be
     answered by your Relocation Counselor (US $ payroll employees) or Expatriate
     Counselor (other payrolls). Information on the US Domestic Relocation Program
     can be found on the relocation website at
     (http://hr.chevrontexaco.com/northamerica/us/programs-policies/relocation/).

     Some aspects of this policy do not apply to expatriates working in the US; each of
     whom will receive a summary of the relocation plan which will clearly indicate
     what they are entitled to.

Q    Will I have to apply for a Texas Driver's License?
A    Yes, you will have to apply for one within 30 days of establishing a residence.

Q    Do I need to change my medical and dental benefits?
A    Yes, please call the HR Service Center (1-888-TALK2HR). You will need your
     pin to make any changes. Please remember you only have 31 days from your
     transfer date to make these changes.

Q    I am a US $ payroll employee. Is it critical for me to change my state residency
     with the HR Service Center?
A    Yes, you should contact the HR Service Center (1-888-TALK2HR) as soon as
     possible after establishing a residence in Texas to avoid any inappropriate
     withholding of dual taxes from your paycheck (example: Miscellaneous Expense
     Allowance).

Q    I am a US $ payroll employee - would my spouse or domestic partner receive any
     assistance with finding a job?
A    Yes, the company provides a family assistance up to $1,000 in actual expenses for
     your spouse or domestic partner to use to help with job search expenses. The
     company has contacts with three different career counseling/family assistance
     firms for your spouse to use at their convenience.

     Expatriate employees should have already received the annual $3,000 Spouse
     Allowance.

Q    Could I travel separately from my family to the new location?

**733**

SASBU Move FAQ's

A    Yes, if your management agrees to reimburse you, however, only one Company-paid household goods shipment will be allowed.

Q    Could I ship my car(s) and fly to the new location?
A    Yes, you are allowed to ship up to two vehicles if your new work location is at least 400 miles away from your old one. Your air travel must be approved by the management.

Q    Can I get reimbursed if my car has not arrived yet and I choose to rent a car in the new location?
A    No, this is one of the reasons why you are paid a Miscellaneous Expense Allowance. You should consider shipping one of your cars to Houston earlier so it is available to you when you arrive.

Q    When and how do I apply for my Miscellaneous Expense Allowance (MEA)?
A    US $ Payroll employees can apply anytime by filing GO-1390-ALLOW (U.S. Relocation Expense Report Allowances), however, you will not receive your allowance until your 1st paycheck after your payroll transfer date. The MEA is equal to 1.5 month's salary (taxable).

     Expatriate employees will have their Miscellaneous Expense Allowance processed on their behalf by the Expatriate HR Business Partner. The allowance will be deposited into the employee's bank of record. The MEA is equal to 1 month's salary (non-taxable).

Q    Do I need to insure my household goods that are shipped to the new location?
A    No, the company will take care of it for you.

Q    Does the company pay for the storage of my household goods until I arrive to my new location?
A    Yes, the company will store and pay for your shipped goods in the new location for up to 60 days.

Q    Can I ship my pet(s)?
A    Yes you can but at your own expense. You may use your Miscellaneous Expense allowance to cover the cost.

Q    I am a US $ Payroll employee, should I put my house on the market before I sign the Relocation Program Enrollment Form?
A    No, because you may jeopardize your eligibility for the Direct Home Sale Incentive, Home Sale Plan, Bridging Loan, and Home Sale Loss Assistance.

Q    I am a US $ Payroll employee, does my domestic partner qualify for relocation benefits?
A    Yes as long as he/she are registered with HR Service Center (1-888-TALK2HR) prior to notification of relocation.

734

SASBU Move FAQ's

Q    I am a US $ Payroll employee. What happens if I move to Houston but I have not
     been able to close on my new house?
A    You will be able to use your interim living benefits under the relocation policy.

Q    I am a US $ Payroll employee. If I am currently receiving a Supplemental
     Housing Assistance (SHA) benefit, when would it stop?
A    Your SHA will end 60 days from the last day of the month in which you transfer to
     the non-qualified location.

Q    I am a US $ Payroll employee. If I am currently receiving a Renter's Assistance
     benefit, when would it stop?
A    Your Renter's Assistance will be discontinued beginning with the first paycheck
     after your effective date of transfer to the new location.


**Sonangol**

Q        I work for Sonangol, what will happen to me?
A        Sonangol has been informed of the SASBU decision to move its work
         location from San Ramon to Houston. Every Sonangol employee on
         assignment in the US will receive details of their move to Houston or
         return to Angola as appropriate.

Q        I work for Sonangol. Am I covered by the Domestic Relocation
         Policy?
A        No. This is a ChevronTexaco policy. Sonangol employees will be
         assisted with any expenses associated with their move to Houston.

Q        I work for Sonangol. What will my housing options be in Houston?
A        Sonangol employees with less than six months remaining on their
         assignment at the time of transfer will be allocated furnished corporate
         housing as per the Sonangol Expatriate policy. Those with more than
         six months left on their assignment at their time of transfer will be
         given the option of corporate housing or renting their own home.


Notice: This document is for guidance only and shall not be construed as creating any
contractual or other legally enforceable rights.


**735**

# EXHIBIT N



1  John A. McGuinn, Esq. (SBN 36047)
   Noah D. Lebowitz, Esq. (SBN 194982)
2  McGUINN, HILLSMAN & PALEFSKY
   535 Pacific Avenue
3  San Francisco, CA 94133
   Telephone:  415/421-9292
4  Facsimile:  415/403-0202

5

   Attorneys for Plaintiff
6  KIRAN PANDE

7

8              UNITED STATES DISTRICT COURT

9            NORTHERN DISTRICT OF CALIFORNIA

10

11  KIRAN PANDE,                        )    Case No. 04-5107 CW
                                        )
12               Plaintiff,             )    **PLAINTIFF KIRAN PANDE'S**
                                        )    **RESPONSE TO DEFENDANT**
13  vs.                                 )    **CHEVRON INTERNATIONAL**
                                        )    **EXPLORATION AND PRODUCTION**
14  CHEVRON CORPORATION (f/k/a          )    **COMPANY'S INTERROGATORIES,**
    CHEVRONTEXACO CORPORATION),         )    **SET ONE**
15  a Delaware corporation, CHEVRON     )
    INTERNATIONAL EXPLORATION &         )
16  PRODUCTION (f/k/a                   )
    CHEVRONTEXACO OVERSEAS              )
17  PETROLEUM COMPANY), a division of   )
    Chevron U.S.A. Inc.,                )
18                                      )
19               Defendants.            )
                                        )
20  _____   )

21     PROPOUNDING PARTY:         Defendant, CHEVRON
                                  INTERNATIONAL EXPLORATION AND
22                                PRODUCTION COMPANY (formerly
                                  known as CHEVRONTEXACO
23                                OVERSEAS PETROLEUM and
                                  improperly sued as CHEVRONTEXACO
24                                OVERSEAS PETROLEUM PACIFIC
                                  COMPANY)
25

26
       RESPONDING PARTY:         Plaintiff, KIRAN PANDE
27

28     SET NUMBER:               ONE

GUINN, HILLSMAN
& PALEFSKY
35 Pacific Avenue
Francisco, CA 94133

PLAINTIFF'S KIRAN PANDE'S RESPONSE TO DEFENDANT CHEVRON INTERNATIONAL
EXPLORATION AND PRODUCTION COMPANY'S INTERROGATORIES, SET ONE                    1

1  Loss of housing mortgage paydown with termination on 12/31/2003, ($24,450)

2  Loss of pension benefits.

3  **INTERROGATORY NO. 20:**

4

5  If YOU attribute any physical, mental or emotional injuries to DEFENDANTS'

6  conduct, IDENTIFY each injury YOU attribute to DEFENDANTS' conduct.

7  **RESPONSE TO INTERROGATORY NO. 20:**

8  Plaintiff objects to this interrogatory to the extent that it seeks expert testimony and

9  opinion in advance of the statutory deadlines for the discovery of such testimony and

10  opinion. Without waiving such objection, and with the express reservation of right to

11  amend such answer with expert opinion testimony at the designated time, Plaintiff

12  responds as follows:

13

14  Significant mental and emotional distress incurred from late 2001 – current time.

15  Injuries include severe stress, depression, grief, severe insomnia, difficulty eating,

16  anxiety, nervousness, fear, and heart palpitations.

17  Physical injuries include exacerbating severe anemia due to stress and as yet

18  unknown affects of stress on cardiovascular system and susceptibility to cancer in the

19  future.

20

21  **INTERROGATORY NO. 21:**

22  If YOU have received any consultation or examination from a HEALTH CARE

23  PROVIDER for any injury that YOU attribute to DEFENDANTS' conduct, IDENTIFY

24  each and every HEALTH CARE PROVIDER YOU have seen.

25  **RESPONSE TO INTERROGATORY NO. 21:**

26

27  Dr. Sylvia Benzler

28  Dr. Inna Articshev

PLAINTIFF'S KIRAN PANDE'S RESPONSE TO DEFENDANT CHEVRON INTERNATIONAL
EXPLORATION AND PRODUCTION COMPANY'S INTERROGATORIES, SET ONE

60

1    Senior Reservoir Engineer, Cripps Sears & Partners

2    Reservoir Engineer, Occidental Oil and Gas Company

3    Reservoir Engineer, Worldwide Worker

4    Petroleum Engineer, International Oil and Gas Company

5    Senior Reservoir Engineer, International E&P Company

6    Reservoir Engineer Consultant, Oil Company

7    Head – Strategic Planning, Reliance Industries Limited OCF

8    Head – Technology, Reliance Industries Limited OCF

9    Expert Reservoir Engineer – ENI International Resources Limited

10   Brazil Project for Reservoir/Petroleum Engineer – Independent Oil Company

11

12

13

14   Dated: October 11, 2006                    McGUINN, HILLSMAN & PALEFSKY
                                                Attorneys for Plaintiff

15

16

17                                        By:
                                                Noah D. Lebowitz

18

19

20

21

22

23

24

25

26

27

28

McGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue

PLAINTIFF'S KIRAN PANDE'S RESPONSE TO DEFENDANT CHEVRON INTERNATIONAL
EXPLORATION AND PRODUCTION COMPANY'S INTERROGATORIES, SET ONE                    65

1

2

3    **VERIFICATION**

4    I am the plaintiff in the above-captioned matter. I am familiar with the contents of

5    the foregoing **RESPONSE TO DEFENDANT CHEVRON INTERNATIONAL**

6    **EXPLORATION AND PRODUCTION COMPANY'S INTERROGATORIES.** The

7
     information supplied therein is based on my own personal knowledge and/or has been
8
     supplied by my attorneys or other agents and is therefore provided as required by law.
9

10   The information contained in the foregoing document is true, except as to the matters

11   which were provided by my attorneys or other agents, and, as to those matters, I am

12   informed and believe that they are true.

13

14   Executed on _October  10_____, 2006, at Castro Valley, California.

15

16

17                              _____
                                        Kiran Pande
18

19

20

21

22

23

24

25

26

27

28

1

## PROOF OF SERVICE

2

CASE NAME:     *Pande v. Chevron Texaco*
3
CASE NO.:       04-5107 CW
COURT:          U.S. District Court, Northern District of California

4

I am employed in the City and County of San Francisco, California; I am over the age of
5    eighteen years and not a party to the within action; my business address is 535 Pacific
Avenue, San Francisco, California 94133.  On the date last written below, I served the
6    following documents:

7

**PLAINTIFF'S RESPONSE TO DEFENDANT'S INTERROGATORIES, SET ONE**

8

on the parties, through their attorneys of record, by placing true copies thereof in sealed
9    envelopes addressed as shown below for service as designated below:

10
(A)     By First Class Mail - I caused each such envelope, with first-class postage thereon
11   fully prepaid, to be deposited in a recognized place of deposit of the U. S. mail in San
Francisco, California, for collection and mailing to the office of the addressee on the date
12   shown herein following ordinary business practices.

13
(B)     By Personal Service - I caused each such envelope to be delivered to a courier
14   employed by Special T Delivery Service, with whom we have a direct billing account, who
personally delivered each such envelope to the office of the addressee.

15
(C)     By Federal Express - I caused each such envelope to be delivered to the Federal
16   Express Corporation at San Francisco, California, with whom we have a direct billing
account, to be delivered to the office of the addressee on the next business day.
17

18   (D)     By Facsimile - I caused a copy of this document to be faxed to the parties noted at
the fax numbers stated below.  Attached hereto is a verification of reception.
19

20   | Type of Service | Addressee | Party |
|---|---|---|
| A | Michelle Ballard Miller, Esq. | Defendants |
| | Miller Law Group | |
| | 60 East Sir Francis Drake Blvd., Suite 302 | |
| | Larkspur, CA 94939 | |

23

I declare under penalty of perjury that the foregoing is true and correct.  Executed
24   this 11th day of October, 2006, at San Francisco, California.

25

26

27                                                    *Teresa McLoughlin*
Teresa McLoughlin

28

IcGUINN, HILLSMAN
& PALEFSKY
535 Pacific Avenue

PLAINTIFF'S KIRAN PANDE'S RESPONSE TO DEFENDANT CHEVRON INTERNATIONAL
EXPLORATION AND PRODUCTION COMPANY'S INTERROGATORIES, SET ONE

66

**EXHIBIT O**

## Tracy Wilson

| | |
|---|---|
| **From:** | Michele Ballard Miller |
| **Sent:** | Thursday, November 02, 2006 4:50 PM |
| **To:** | 'Noah Lebowitz'; Lisa Hamasaki |
| **Subject:** | RE: Pande v. Chevron - Supplemental Document Production & Wrap Up Discovery |

Noah -- given that we always seem to go thru lunch, and then are stuck trying to decide whether we should take a break or not, I suggest we start Mr. Yamashita's deposition at 9 am.

Michele

---

**From:** Noah Lebowitz [mailto:ndl@mhpsf.com]
**Sent:** Thursday, November 02, 2006 3:52 PM
**To:** Lisa Hamasaki
**Cc:** Michele Ballard Miller
**Subject:** RE: Pande v. Chevron - Supplemental Document Production & Wrap Up Discovery

Lisa,

Until I read your email, I was unaware of Dr. Benzler's assertion of any privilege. I have placed a call to my client and will get back to you as soon as I have a chance to clear this up.

On the issue of documents, I disagree with your assertion that your client was not in possession of emails exchanged by its employees through the company's server. Also, these documents all were created during the time frame referenced by Ms. Pande's DFEH charge. However, I am willing to consider a reasonable request for additional deposition time. Please provide me with a proposal for how much time you will need for further inquiry. In any event, neither my client nor I am available on the 7th after Mr. Yamashita's deposition.


Noah D. Lebowitz
McGuinn Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
415-421-9292 voice
415-403-0202 fax
email: ndl@mhpsf.com

---

**From:** Lisa Hamasaki [mailto:lch@millerlawgroup.com]
**Sent:** Thursday, November 02, 2006 2:33 PM
**To:** Noah Lebowitz
**Cc:** Michele Ballard Miller
**Subject:** Pande v. Chevron - Supplemental Document Production & Wrap Up Discovery

Noah:

I received your email concerning wrapping up the outstanding depositions, and will provide you with dates for the depositions of Mr. Vita and Ms. Shawstad as soon as I am able to confirm some dates.

With regard to the deposition of Ms. Sylvia Benzler, we recently received a call from Ms. Benzler in which she stated that she intends to assert the psychotherapist-patient privilege and will not appear for deposition or produce the subpoenaed documents. Given your agreement to permit Ms. Benzler's deposition to take place

after the discovery cut-off, as well as Ms. Pande's interrogatory responses alleging "significant mental and emotional distress" and disclosing Ms. Benzler as a health care provider seen by Plaintiff for injuries that **Plaintiff attributes to Defendants' conduct**, we find this privilege assertion to be entirely inappropriate. Please let me know immediately whether the Plaintiff intends to assert this privilege. While I sincerely hope that this is merely a misunderstanding, we will be forced to seek court intervention if Ms. Benzler is not made available for deposition and does not agree to produce the subpoenaed documents. In addition to seeking a Court order permitting that deposition, we will also seek to preclude Plaintiff from testifying about (or producing any evidence related to) any treatment or consultation she received from Ms. Benzler to support her allegations of emotional distress.

Finally, on the issue of Plaintiff's recent document production, while I understand your assertion that Ms. Pande just recently discovered the 400+ pages of documents, I take issue with your characterization of the documents being within Defendants' possession. The fact that some of the documents may be copied to current or former Chevron employees, does not suggest that the documents are within Defendants' possession, custody or control – particularly given the fact that many of these emails and documents date back several years **before** this lawsuit was filed. Accordingly, although we do not anticipate needing a significant amount of time to question Ms. Pande about the documents that we deem pertinent, limiting the deposition to the 13 pages listed below is neither justified nor defensible. Accordingly, we ask that you agree to make Ms. Pande available to answer questions relating to Plaintiff's recent document production immediately following the deposition of Mr. Yamashita on November 7, 2006. Please let us know if this is acceptable.

I look forward to hearing from you.

Regards,
Lisa

Lisa C. Hamasaki
Attorney at Law
MILLER LAW GROUP
Wood Island Center
60 E. Sir Francis Drake Boulevard
Suite 302
Larkspur, CA 94939
Telephone: (415) 464-4300
Facsimile: (415) 464-4336
www.millerlawgroup.com

NOTICE OF CONFIDENTIALITY: This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any of any email and printout thereof.

**From:** Noah Lebowitz [mailto:ndl@mhpsf.com]
**Sent:** Friday, October 27, 2006 3:20 PM
**To:** Lisa Hamasaki
**Cc:** Michele Ballard Miller
**Subject:** RE: Pande v. Chevron - Supplemental Document Production

Lisa,

These documents were just discovered by Ms. Pande this week in a box which she just came across by chance. Of the 431 pages produced yesterday, 418 (i.e., all but 13) are documents which are already in the possession of your client. They are either emails (usually with multiple Chevron employee recipients) or company policies printed from the company's intranet. The remaining 13 pages are as follows:

1459 -- Notes of voicemail recordings; only one of which is relevant (vm from Taryn Shawstad re: Rex Mitchell [RJM]). This document is related to the email reflected in the next page 1460.

1461 -- Handwritten note of congratulations.

1529-38 -- Handwritten notes re telephone conversations re possible job openings at Chevron in Spring 2002.

1539-41 -- Handwritten notes re 2001 PMP. This document is related to documents 1542-67.

If you would like to question Ms. Pande about these non-company documents, I'd be more than happy to make her available at the end of one of our upcoming depositions for such an inquiry.

Noah D. Lebowitz
McGuinn Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
415-421-9292 voice
415-403-0202 fax
email: ndl@mhpsf.com

---

**From:** Lisa Hamasaki [mailto:lch@millerlawgroup.com]
**Sent:** Friday, October 27, 2006 1:53 PM
**To:** Noah Lebowitz
**Cc:** Michele Ballard Miller
**Subject:** Pande v. Chevron - Supplemental Document Production

Dear Noah:

We are in receipt of Plaintiff's supplemental document production consisting of more than 400 pages. It is an understatement to say that this late production was unexpected - particularly since nearly all of the documents seem to date from 2002 or earlier.

Given this late production, we would like to set a date to depose Ms. Pande about these documents. Please provide us with dates at your earliest convenience.

Regards,
Lisa

Lisa C. Hamasaki
Attorney at Law
MILLER LAW GROUP
Wood Island Center
60 E. Sir Francis Drake Boulevard
Suite 302
Larkspur, CA 94939
Telephone: (415) 464-4300
Facsimile: (415) 464-4336
www.millerlawgroup.com

NOTICE OF CONFIDENTIALITY: This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments

4/17/2007

thereto, is strictly prohibited.  If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any of any email and printout thereof.

**Tracy Wilson**

| | |
|---|---|
| **From:** | Michele Ballard Miller |
| **Sent:** | Wednesday, December 20, 2006 11:37 AM |
| **To:** | 'Noah Lebowitz'; Lisa Hamasaki |
| **Subject:** | RE: Pande v. Chevron - Additional Discovery Issues |

Noah -- given your schedule, why don't we schedule Ms. Benler for January 16 or 17, with documents due the week before. I presume we will hear about the MSJ by then. I fnot, we can reschedule in early January.

Michele

---

**From:** Noah Lebowitz [mailto:ndl@mhpsf.com]
**Sent:** Wednesday, December 20, 2006 10:21 AM
**To:** Lisa Hamasaki
**Cc:** Michele Ballard Miller
**Subject:** RE: Pande v. Chevron - Additional Discovery Issues

Lisa,

I was a little distracted last week (as you might imagine), so haven't had a chance to coordinate with Ms. Benzler, though I have now set that in motion.

My initial reaction, however, is that your proposed date for document production doesn't make sense in light of the fact that one of the reasons we put off Ms. Benzler's deposition was to wait until we learned the outcome of your msj.

For advanced scheduling purposes please note I am unavailable the following dates in January: 11, 12, 22, 23, 24. Also note that the conflict on the 24th is that I have jury duty in Hayward that morning, so if, by some bizarre occurrence, I actually have to serve, things might be in flux that next week.

I'll let you know as soon as I hear anything from Benzler.

Thanks.

Noah D. Lebowitz
McGuinn Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
415-421-9292 voice
415-403-0202 fax
email: ndl@mhpsf.com

---

**From:** Lisa Hamasaki [mailto:lch@millerlawgroup.com]
**Sent:** Tuesday, December 19, 2006 4:33 PM
**To:** Noah Lebowitz
**Cc:** Michele Ballard Miller
**Subject:** FW: Pande v. Chevron - Additional Discovery Issues

Dear Noah:

I have not heard back from you with regard to Sylvia Benzler's upcoming deposition or the production of documents in her possession, custody or control. Please let me know at your earliest convenience whether the dates specified below are acceptable or whether we need to discuss these issues further. It is my understanding based on our prior communications that you were going to work with Ms. Benzler to come up with acceptable dates, and for that reason, we agreed to postpone the deposition and document production until after the holidays.

Thank you for your continued cooperation. I look forward to hearing from you.

Regards,
Lisa


Lisa C. Hamasaki
MILLER LAW GROUP, PC
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Telephone: (415) 464-4300
Facsimile: (415) 464-4336

**NOTICE OF CONFIDENTIALITY**: This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any of any email and printout thereof.

IRS CIRCULAR 230 NOTICE: Any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for (a) the purpose of avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

---

**From:** Lisa Hamasaki
**Sent:** Monday, December 04, 2006 1:03 PM
**To:** Noah Lebowitz
**Cc:** Michele Ballard Miller
**Subject:** RE: Pande v. Chevron - Additional Discovery Issues

Noah:

On the issue of Sylvia Benzler's deposition and document production, we request that she produce all documents responsive to the previously served subpoena by January 2, 2006 to our office and, assuming that is acceptable, would like to take her deposition on either January 9, 10, or 11th. Please let me know as soon as possible whether these dates work for you, your client and Ms. Benzler. If we need to serve an amended subpoena on Ms. Benzler, please let us know that as well.

Thank you for your anticipated cooperation.

Regards,
Lisa


Lisa C. Hamasaki
MILLER LAW GROUP, PC
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Telephone: (415) 464-4300
Facsimile: (415) 464-4336

4/17/2007



**NOTICE OF CONFIDENTIALITY:** This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any of any email and printout thereof.

IRS CIRCULAR 230 NOTICE: Any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for (a) the purpose of avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

---

**From:** Noah Lebowitz [mailto:ndl@mhpsf.com]
**Sent:** Monday, November 13, 2006 10:16 AM
**To:** Lisa Hamasaki
**Cc:** Michele Ballard Miller
**Subject:** RE: Pande v. Chevron - Additional Discovery Issues

Lisa,

Thanks for your email. As it turns out, the court sua sponte continued the hearing that was previously scheduled for Nov. 27, so the day is now completely available and I'll be happy to schedule Taryn Shawstad's deposition for that date. I will also be happy to make Ms. Pande available for a one hour continued deposition at the conclusion of Ms. Shawstad's in order to ask questions regarding her final document production. I will not, however, be able to accommodate a request for East Bay location; it will have to take place in my office. If time is an issue for Ms. Shawstad, we can make adjustments to the start-time if requested.

As for Sylvia Benzler, I'll have to check with her about your request for timing, etc, but I don't see a problem with it. Why don't you suggest some dates for the deposition and document production and I can work with Ms. Benzler on the issue all at once.

Noah D. Lebowitz
McGuinn Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
415-421-9292 voice
415-403-0202 fax
email: ndl@mhpsf.com

---

**From:** Lisa Hamasaki [mailto:lch@millerlawgroup.com]
**Sent:** Friday, November 10, 2006 12:25 PM
**To:** Noah Lebowitz
**Cc:** Michele Ballard Miller
**Subject:** Pande v. Chevron - Additional Discovery Issues

Dear Noah:

I have checked again into Taryn Shawstad's availability for deposition and she can be available on Monday, November 27. I know that you said that the 27th was not ideal for you, but you indicated only that the 28th was not possible. Please let me know if this date works with your schedule, as Ms. Shawstad has very limited availability. Further, because Ms. Shawstad's schedule is very busy and she is scheduled to fly out for another trip on November 28th, we respectfully request that you take the deposition in the east bay to help accommodate Ms. Shawstad's needs.

Additionally, we request that we be permitted approximately an additional hour to question Ms. Pande about certain of the documents that were recently produced by your office. If at all possible, we would like to continue

Ms. Pande's deposition on the day of Ms. Shawstad's deposition.

Finally, on the issue of Sylvia Benzler's deposition and the documents subpoenaed from her, we are amenable to postponing Ms. Benzler's deposition until January, but will request that the documents subpoenaed be provided to our office at least a week prior to the deposition. Given that we are agreeing to this postponement, and that having the documents prior to the deposition will certainly help to shorten the deposition itself, we hope that this is agreeable to both you and Ms. Benzler. Further, please let me know whether we should be communicating with your office to arrange the document copying/production and the deposition, or whether we should communicate directly with Ms. Benzler. Please also advise whether Ms. Benzler will agree to the rescheduled deposition and document production without the need for issuance of an amended subpoena. Though we are certainly willing to serve amended subpoenas, we would of course prefer to avoid the additional costs and inconvenience if you and Ms. Benzler are agreeable.

Thank you for your anticipated cooperation and I look forward to hearing from you.

Regards,
Lisa

Lisa C. Hamasaki
Attorney at Law
MILLER LAW GROUP
Wood Island Center
60 E. Sir Francis Drake Boulevard
Suite 302
Larkspur, CA 94939
Telephone: (415) 464-4300
Facsimile: (415) 464-4336
www.millerlawgroup.com

NOTICE OF CONFIDENTIALITY: This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any of any email and printout thereof.

4/17/2007

**Tracy Wilson**

| | |
|---|---|
| **From:** | Noah Lebowitz [ndl@mhpsf.com] |
| **Sent:** | Thursday, February 08, 2007 11:27 PM |
| **To:** | Michele Ballard Miller |
| **Cc:** | Lisa Hamasaki |
| **Subject:** | RE: Pande v. Chevron |

Michele,

Sorry its taken a bit to get back to you but I've been consumed with a summary judgment opposition, which is due next Tuesday.

In any event, the proposed schedule looks fine. I have been successful in reaching Sylvia Benzler and it is her preference that all scheduling go through me, so there is no need to either subpoena or directly contact her. Please select a date in March for her deposition and we can be sure to have her file sent to you in advance.

Thanks.

Noah D. Lebowitz
McGuinn, Hillsman & Palefsky
535 Pacific Avenue
San Francisco, CA 94133
(415) 421-9292 (voice)
(415) 403-0202 (fax)
ndl@mhpsf.com

---

**From:** Michele Ballard Miller [mailto:mbm@millerlawgroup.com]
**Sent:** Wednesday, February 07, 2007 1:51 PM
**To:** Noah Lebowitz
**Cc:** Lisa Hamasaki
**Subject:** Pande v. Chevron

Dear Noah:

As the trial date in this matter is rapidly approaching, and in light of the fact that Mark Rudy has informed us that all further attempts to mediate this matter have proven unsuccessful, we wanted to touch bases with you concerning the timeline for disclosing expert witnesses and exchanging expert reports, for disclosing rebuttal experts and reports and for completing expert discovery. We propose the following schedule:

Expert Disclosure:    February 28

Rebuttal Disclosure:  March 14

Last day for Expert depositions:  March 30

Additionally, as we have discussed on several occasions previously, we need to schedule the deposition of Sylvia Benzler as well as the date for her production of documents. When we last communicated about the timing of this deposition and document production, you informed us that you were waiting to hear back from Ms. Benzler and

would be in touch.  Please advise on the progress of your communications with Ms. Benzler.  We would prefer to avoid the need to re-subpoena her, but will do so if absolutely necessary.

Thank you for your attention to this.

Michele

**Miller Law Group**
**60 East Sir Francis Drake Blvd.**
**Suite 302**
**Larkspur, CA 94939**
**(tel) 415-464-4300**
**(fax) 415-464-4336**
**www.millerlawgroup.com**

NOTICE OF CONFIDENTIALITY: This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any of any email and printout thereof.

IRS CIRCULAR 230 NOTICE: Any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for (a) the purpose of avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**EXHIBIT P**

# Tracy Wilson

| | |
|---|---|
| **From:** | Michele Ballard Miller |
| **Sent:** | Friday, March 23, 2007 4:13 PM |
| **To:** | 'sharriman@kvn.com' |
| **Cc:** | Lisa Hamasaki |
| **Subject:** | Pande v. Chevron Corporation, et al. |
| **Attachments:** | 017.Case Scheduling Order.pdf |

Susan -

As a follow up to our earlier conversation, I wanted to clarify a few issues and also raise some of the outstanding issues that will need to be addressed and resolved before any upcoming trial. Additionally, I have attached a copy of the court's Case Management Order dated January 12, 2006 (which in turn attaches Judge Wilken's Order for Pretrial Preparation). Although the majority of the dates from the Case Management Order were changed by subsequent stipulated orders, it is our understanding that the Pretrial Preparation Order remains in tact.

First of all, it is my understanding that Plaintiff intends to dismiss (with prejudice) her causes of action for gender discrimination, retaliation and race/national origin discrimination and to proceed to trial on only her first, second and sixth causes of action. Further, as you represented on the telephone, Plaintiff's wrongful termination in violation of public policy claim would be limited to claiming that she was terminated for requesting medical leave. In other words, all allegations of discrimination, retaliation or harassment on the basis of gender or race/national origin would be dismissed from that claim as would any claims of retaliation for complaining about discrimination, retaliation or harassment. It is also my understanding that Plaintiff will dismiss any and all claims for emotional distress damages. Please confirm that this is accurate.

Separate and apart from that issue, please be advised that we will need to, and are entitled to, take the deposition of Ms. Sylvia Benzler, who we understand to be a therapist. Ms. Benzler was subpoenaed for deposition but that deposition was postponed at the request of Ms. Pande's prior counsel. Mr. Lebowitz represented to us on several occasions that he was working with Ms. Benzler to come up with alternate dates for her deposition. He further represented that Ms. Benzler had agreed and would provide us with any and all documents responsive to our subpoena at least a week prior to that deposition. We intend to take this deposition notwithstanding the dismissal of Ms. Pande's emotional distress claims as it impacts Defendants' affirmative defenses.

As for expert witnesses, we anticipate being able to exchange expert witness reports on Friday, March 30. While we may be able to exchange earlier, I will not know that until Tuesday as one of our experts is out of town until then. Following that disclosure, however, we will need sufficient time to retain rebuttal experts and time to have such rebuttal experts prepare comprehensive reports. Accordingly, we anticipate needing at least a full week for that process.

Aside from these issues, I anticipate that we will need to discuss the exchange of pre-trial documents and also alternate trial dates (should a determination be made that April 16th will not work). Accordingly, I think it would be beneficial to touch bases on Monday prior to the 2 p.m. conference. I am available anytime that morning, let me know what time works for you.

Michele

**MILLER LAW GROUP, PC**
**60 E. Sir Francis Drake Blvd., Ste. 302**
**Larkspur, CA 94939**
**Telephone: (415) 464-4300**
**Facsimile: (415) 464-4336**

NOTICE OF CONFIDENTIALITY: This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-

client work product.  If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited.  If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any of any email and printout thereof.

IRS CIRCULAR 230 NOTICE: Any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for (a) the purpose of avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

United States District Court

For the Northern District of California

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

KIRAN PANDE,                              No. C 04-05107 CW

    v.                                    MINUTE ORDER AND
                                          CASE MANAGEMENT
CHEVRONTEXACO CORP,                       ORDER
_____/

Clerk: Sheilah Cahill           Reporter: Diane Skillman
Plaintiff Attorney: Noah Lebowitz
Defendant Attorney: Kerry McInerney Freeman

     A case management conference was held on: 1/6/06.  The Case
Management Statement and Proposed Order filed by the parties is hereby
adopted by the Court as the Case Management Order for the case, except
as may be noted below.  The Court's standard Order for Pretrial
Preparation also applies.

The case is hereby referred to the following ADR process:
Non-binding Arbitration: ( )     Early Neutral Evaluation: ( )
Court-connected mediation: ( )     Private mediation: ( X )
Magistrate Judge settlement conference: ( )
ADR session to be held by:                               (06/30/06)
(or as soon thereafter as is convenient to the mediator's schedule)

Deadline to add additional parties or claims:           (01/06/06)
Date of next case management conference:                (12/08/06)

Completion of Fact Discovery:                           (09/29/06)
Disclosure of identities and reports of expert witnesses: (12/22/06)
                              Rebuttal: [01/12/07]
Completion of Expert Discovery:                         (02/23/07)

All case-dispositive motions to be heard at 10:00 AM
     on or before:                                      (12/08/06)
Final Pretrial Conference at 1:30 P.M. on:              (03/30/07)
A 12 day Jury Trial will begin at 8:30 A.M. on:         (04/16/07)

Additional Matters:  Copy of Court's Order for Pretrial Preparation
given to attys in court.  Parties have already met with the private
mediator and are to go back again.  **A FCMC will be held on 12/8/06 at
10:00 a.m. whether or not dispositive motions are filed (or on
whatever date dispositive motions are set.)**

     IT IS SO ORDERED.

Dated: 1/12/06

                              *Claudia Wilken*
                              CLAUDIA WILKEN
                              United States District Judge

Copies to:  Chambers; ADR

United States District Court

For the Northern District of California

1

2

<u>NOTICE</u>

3

4

5

6

7

Criminal Law and Motion calendar is conducted on Mondays at 2:00 p.m. (in custody) and 2:30 p.m. (not in custody). Civil Law and Motion calendar is conducted on Fridays at 10:00 a.m. Case Management Conferences and Pretrial Conferences are conducted on Fridays at 1:30 p.m. Order of call is determined by the Court. Counsel need not reserve a hearing date for civil motions; however, counsel are advised to check the legal newspapers or the Court's website at www.cand.uscourts.gov for unavailable dates.

8

9

10

11

12

13

14

15

Motions for Summary Judgment: All issues shall be contained within one motion and shall conform with Civil L.R. 7-2. Separate statements of undisputed facts in support of or in opposition to motions for summary judgment will not be considered by the Court. (<u>See</u> Civil Local Rule 56-2(a)). All briefing on motions for summary judgment must be included in the memoranda of points and authorities in support of, opposition to, or reply to the motion, and must comply with the page limits of Civil Local Rule 7-4. The memoranda should include a statement of facts supported by citations to the declarations filed with respect to the motion. Cross or counter-motions shall be contained within the opposition to any motion for summary judgment and shall conform with Civil L.R. 7-3. The Court may, *sua sponte* or pursuant to a motion under Civil L.R. 6-3, reschedule the hearing so as to give a moving party time to file a surreply to the cross or counter-motion.

16

17

18

All DISCOVERY MOTIONS are referred to a Magistrate Judge to be heard and considered at the convenience of his/her calendar. All such matters shall be noticed by the moving party for hearing on the assigned Magistrate Judge's regular law and motion calendar, or pursuant to that Judge's procedures.

19

20

(rev. 5/11/05)

21

22

23

24

25

26

27

28

United States District Court
For the Northern District of California

## ORDER FOR PRETRIAL PREPARATION

PRETRIAL CONFERENCE

1. Not less than 30 days prior to the pretrial conference, counsel shall **exchange** (but not file or lodge) the papers described in Civil L.R. 16-10(b)(7),(8),(9), and (10), and their motions in limine.

2. At least 20 days before the final pretrial conference, lead counsel who will try the case shall meet and confer with respect to:

(a) Preparation and content of the joint pretrial conference statement;

(b) Resolution of any differences between the parties regarding the preparation and content of the joint pretrial conference statement and the preparation and exchange of pretrial materials to be served and lodged pursuant to this Order for Pretrial Preparation. To the extent such differences are not resolved, parties will present the issues in the pretrial conference statement so that the judge may rule on the matter during the pretrial conference; and

(c) Settlement of the action.

3. Not less than 10 days prior to the pretrial conference, counsel shall submit the following.

(a) Pretrial Conference Statement. The parties shall file a joint pretrial conference statement containing the following information:

(1) The Action.

(A) Substance of the Action. A brief description of the substance of claims and defenses which remain to be decided.

(B) Relief Prayed. A detailed statement of all the relief claimed, particularly itemizing all elements of damages claimed.

(2) The Factual Basis of the Action.

(A) Undisputed Facts. A plain and concise statement of all relevant facts not reasonably disputed.

(B) Disputed Factual Issues. A plain and concise

statement of all disputed factual issues which remain to be decided.

(C)  Agreed Statement.  A statement assessing whether all or part of the action may be presented upon an agreed statement of facts.

(D)  Stipulations.  A statement of stipulations requested or proposed for pretrial or trial purposes.

(3)  Disputed Legal Issues.   Without extended legal argument, a concise statement of each disputed point of law concerning liability or relief.

(4)  Further Discovery or Motions.  A statement of all remaining discovery or motions.

(5)  Trial Alternatives and Options.

(A)  Settlement Discussion.  A statement summarizing the status of settlement negotiations and indicating whether further negotiations are likely to be productive.

(B)  Consent to Trial Before a Magistrate Judge.  A statement whether the parties consent to a court or jury trial before a magistrate judge, with appeal directly to the Ninth Circuit.

(C)  Bifurcation, Separate Trial of Issues.  A statement of whether bifurcation or a separate trial of specific issues is feasible and desired.

(6)  Miscellaneous.  Any other subjects relevant to the trial of the action, or material to its just, speedy and inexpensive determination.

(b)  Exhibit List and Objections.  The exhibit list shall list each proposed exhibit by its number, description, and sponsoring witness, followed by blanks to accommodate the date on which it is marked for identification and the date on which it is admitted into evidence. **No party shall be permitted to offer any exhibit in its case-in-chief that is not disclosed in its exhibit list without leave of the Court for good cause shown.** Parties shall also deliver a set

**United States District Court**

For the Northern District of California

1  of premarked exhibits to the Courtroom Deputy.    The exhibit markers

2  shall each contain the name and number of the case, the number of the

3  exhibit, and blanks to accommodate the date admitted and the Deputy

4  Clerk's initials.    (Appropriate sample forms are available on the

5  Court's website at www.cand.uscourts.gov).  Any objections to exhibits

6  which remain after the pretrial meeting shall be indicated in the

7  pretrial statement.

8          (c)    Witness List.    In addition to the requirements of

9  FRCivP 26(a)(3)(A), a brief statement describing the substance of the

10  testimony to be given by each witness who may be called at trial.  **No**

11  **party shall be permitted to call any witness in its case-in-chief that**

12  **is not disclosed in its pretrial statement without leave of Court for**

13  **good cause shown.**

14          (d)    Use of Discovery Responses.    In addition to the

15  requirements of FRCivP 26(a)(3)(B), a designation of any excerpts from

16  interrogatory answers or from responses for admissions intended to be

17  offered at trial.    Counsel shall indicate any objections to use of

18  these materials and that counsel have conferred respecting such

19  objections.

20          (e)    Trial briefs.    Briefs on all significant disputed

21  issues of law, including foreseeable procedural and evidentiary

22  issues, which remain after the pretrial meeting.

23          (f)    Motions in Limine.    Any motions in limine that could

24  not be settled at the pretrial meeting shall be filed with the

25  pretrial statement.    All motions in limine shall be contained within

26  one document, limited to 25 pages pursuant to Civil L.R. 7-2(b), with

27  each motion listed as a subheading.    Opposition to the motions in

28  limine shall be contained within one document, limited to 25 pages,

**United States District Court**

For the Northern District of California

1  with corresponding subheadings, and filed five (5) days thereafter.

2         (g)   Joint Proposed Voir Dire.   The attached voir dire

3  questionnaire will be given to the venire members, and copies of the

4  responses will be made available to counsel at the beginning of voir

5  dire.  Counsel may submit a set of additional requested voir dire, to

6  be posed by the Court, to which they have agreed at the pretrial

7  meeting.  Any voir dire questions on which counsel cannot agree shall

8  be submitted separately.  Counsel may be allowed brief follow-up voir

9  dire after the Court's questioning.

10        (h)   Joint Proposed Jury Instructions.   Jury instructions

11  §1.1 through §1.12, §1.13 through §2.2, and §3.1 through §4.3 from the

12  Manual of Model Civil Jury Instructions for the Ninth Circuit (2001

13  Edition) will be given absent objection.  Counsel shall jointly submit

14  one set of additional proposed jury instructions, to which they have

15  agreed at the pretrial meeting.  The instructions shall be ordered in

16  a  logical  sequence,  together  with  a  table  of  contents.   Any

17  instruction  on  which  counsel  cannot  agree  shall  be  marked  as

18  "disputed,"  and  shall  be  included  within  the  jointly  submitted

19  instructions and accompanying table of contents, in the place where

20  the party proposing the instruction believes it should be given.

21  Argument and authority for and against each disputed instruction shall

22  be  included  as  part  of  the  joint  submission,  on  separate  sheets

23  directly following the disputed instruction.

24        Whenever possible, counsel shall deliver to the Courtroom Deputy

25  a copy of their joint proposed jury instructions on a computer disk

26  in WordPerfect or ASCII format.   The disk label should include the

27  name  of  the  parties,  the  case  number  and  a  description  of  the

28  document.

1       (I)   Proposed Verdict Forms, Joint or Separate.

2       (j)  Proposed Findings of Fact and Conclusions of Law (Court

3 Trial only).   Whenever possible, counsel shall deliver to the

4 Courtroom Deputy a copy of their proposed findings of fact and

5 conclusions of law on a computer disk in WordPerfect or ASCII format.

6 The disk label should include the name of the parties, the case number

7 and a description of the document.

8 <u>JURY SELECTION</u>

9      The Jury Commissioner will summon 20 to 25 prospective jurors.

10 The Courtroom Deputy will select their names at random and seat them

11 in the courtroom in the order in which their names are called.

12      Voir dire will be asked of sufficient venire persons so that

13 eight (or more for a lengthy trial) will remain after all peremptory

14 challenges and an anticipated number of hardship dismissals and cause

15 challenges have been made.

16      The Court will then take cause challenges, and discuss hardship

17 claims from the individual jurors, outside the presence of the venire.

18 The Court will inform the attorneys which hardship claims and cause

19 challenges will be granted, but will not announce those dismissals

20 until the process is completed.   Each side may then list in writing

21 up to three peremptory challenges.   The attorneys will review each

22 other's lists and then submit them to the Courtroom Deputy.

23      Then, from the list of jurors in numerical order, the Court will

24 strike the persons with meritorious hardships, those excused for

25 cause, and those challenged peremptorily, and call the first eight

26 people in numerical sequence remaining.   Those people will be the

27 jury.

28      All jurors remaining at the close of the case will deliberate.

1  There are no alternates.

2  <u>SANCTIONS</u>

3      Failure to comply with this Order is cause for sanctions under

4  Federal Rule of Civil Procedure 16(f).

5      IT IS SO ORDERED.

6

7

8  Dated: _____        <u>s/CLAUDIA  WILKEN</u>
                                          CLAUDIA WILKEN
9                                         UNITED STATES DISTRICT JUDGE

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

United States District Court

For the Northern District of California

1

2                              JUROR QUESTIONNAIRE

3   Please fill out this form as completely as possible and print clearly.
    Since we want to make copies for the attorneys and the Court, do not
4   write on the back of any page.  If you need more room, continue at the
    bottom of the page.  Thank you for your cooperation.
5

6   1.   Your name: _____

7   2.   Your age: _____

8   3.   The city where you live: _____

9   4.   Your place of birth: _____

10  5.   Do you rent or own your own home? _____

11  6.   Your marital status: (circle one)

12       single    married    separated    divorced    widowed

13  7.   What is your occupation, and how long have you worked in
         it?  (If you are retired, please describe your main
14       occupation when you were working).

15  _____

16  _____

17  8.   Who is (or was) your employer?

18  _____

19  9.   How long have you worked for this employer? _____

20  10.  Please list the occupations of any adults with whom you
         live.
21
    _____
22
23  11.  If you have children, please list their ages and sex and,
         if they are employed, please give their occupations.

24  _____

25  _____

26       _____

27  12.  Please describe your educational background:

28       Highest grade completed: _____

College and/or vocational schools you have attended:

_____

_____

_____

_____

Major areas of study: _____

13. Have you ever served on a jury before? _____   How many

times?_____

If yes:  State/County Court _____   Federal Court _____

When? _____

Was it a civil or criminal case? _____

Did the jury(ies) reach a verdict? _____

(rev. 9/4/02)

**United States District Court**

For the Northern District of California

## Tracy Wilson

| | |
|---|---|
| **From:** | Susan Harriman [SHarriman@KVN.com] |
| **Sent:** | Friday, March 23, 2007 4:37 PM |
| **To:** | Michele Ballard Miller |
| **Cc:** | Lisa Hamasaki; Christa Anderson |
| **Subject:** | RE: Pande v. Chevron Corporation, et al. |

Michele, thanks for sending the pre-trial order.   Your understanding as to what we intend to dismiss is only partially correct.  We are only dismissing claims if the case proceeds to trial on April 16.  If the trial date gets dragged out, we'll stick with what's in the complaint  -- at least for now.   That means that we will not dismiss any claims until the Court lets us know when trial starts.   Your statement about Ms Benzler's depo made no sense to me.  You'll need to explain with facts and law why you believe that depo will be relevant if we dismiss the claim for emotional distress damages.  I've read through your affirmative defenses, and a therapist's testimony doesn't appear to relate to any of them.  As for expert reports, we're still trying to figure out when ours will be ready.  As a heads' up, we will have an expert on damages so you can start the process now of finding a rebuttal expert. Unfortunately, our expert is out of town next week, making it unlikely that his report will be ready by Friday, March 30.  Please let us know what topics your experts will address.  In that way, we also can get a jump start on rebuttal experts, if we decide to retain any.  Let's talk about the expert witness issues on Monday.  I'm in the office all morning, so feel free to call any time before noon.  In the meantime, enjoy the weekend!  Susan

Susan J. Harriman

KEKER & VAN NEST LLP

710 Sansome Street
San Francisco, CA  94111-1704
tel: (415) 676-2213
fax: (415) 397-7188
www.kvn.com

---

**From:** Michele Ballard Miller [mailto:mbm@millerlawgroup.com]
**Sent:** Friday, March 23, 2007 4:13 PM
**To:** Susan Harriman
**Cc:** Lisa Hamasaki
**Subject:** Pande v. Chevron Corporation, et al.

Susan -

As a follow up to our earlier conversation, I wanted to clarify a few issues and also raise some of the outstanding issues that will need to be addressed and resolved before any upcoming trial. Additionally, I have attached a copy of the court's Case Management Order dated January 12, 2006 (which in turn attaches Judge Wilken's Order for Pretrial Preparation).  Although the majority of the dates from the Case Management Order were changed by subsequent stipulated orders, it is our understanding that the Pretrial Preparation Order remains in tact.



First of all, it is my understanding that Plaintiff intends to dismiss (with prejudice) her causes of action for gender discrimination, retaliation and race/national origin discrimination and to proceed to trial on only her first, second and sixth causes of action. Further, as you represented on the telephone, Plaintiff's wrongful termination in violation of public policy claim would be limited to claiming that she was terminated for requesting medical leave. In other words, all allegations of discrimination, retaliation or harassment on the basis of gender or race/national origin would be dismissed from that claim as would any claims of retaliation for complaining about discrimination, retaliation or harassment. It is also my understanding that Plaintiff will dismiss any and all claims for emotional distress damages. Please confirm that this is accurate.

Separate and apart from that issue, please be advised that we will need to, and are entitled to, take the deposition of Ms. Sylvia Benzler, who we understand to be a therapist. Ms. Benzler was subpoenaed for deposition but that deposition was postponed at the request of Ms. Pande's prior counsel. Mr. Lebowitz represented to us on several occasions that he was working with Ms. Benzler to come up with alternate dates for her deposition. He further represented that Ms. Benzler had agreed and would provide us with any and all documents responsive to our subpoena at least a week prior to that deposition. We intend to take this deposition notwithstanding the dismissal of Ms. Pande's emotional distress claims as it impacts Defendants' affirmative defenses.

As for expert witnesses, I anticipate being able to exchange expert witness reports on Friday, March 30. While we may be able to exchange earlier, I will not know that until Tuesday as one of our experts is out of town until then. Following that disclosure, however, we will need sufficient time to retain rebuttal experts and time to have such rebuttal experts prepare comprehensive reports. Accordingly, we anticipate needing at least a full week for that process.

Aside from these issues, I anticipate that we will need to discuss the exchange of pre-trial documents and also alternate trial dates (should a determination be made that April 16th will not work). Accordingly, I think it would be beneficial to touch bases on Monday prior to the 2 p.m. conference. I am available anytime that morning, let me know what time works for you.

Michele

**MILLER LAW GROUP, PC**
**60 E. Sir Francis Drake Blvd., Ste. 302**
**Larkspur, CA 94939**
**Telephone: (415) 464-4300**
**Facsimile: (415) 464-4336**

**NOTICE OF CONFIDENTIALITY:** This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any of any email and printout thereof.

IRS CIRCULAR 230 NOTICE: Any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for (a) the purpose of avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

# Tracy Wilson

| | |
|---|---|
| **From:** | Michele Ballard Miller |
| **Sent:** | Thursday, April 12, 2007 4:38 PM |
| **To:** | 'SHarriman@KVN.com' |
| **Cc:** | Lisa Hamasaki |

**Subject:** Pande

Susan:

A few issues have come to our attention that I wanted to address with you concerning trial preparation in this matter.

First, we would like to schedule the deposition of Plaintiff's designated expert, Mr. Charles Mahala. To that end, I wanted to touch bases with you to check on your availability for such a deposition as well as the availability of Mr. Mahala. We are considering the following dates: May 2 or 4. Please let me know if either of these dates work with your schedules. If not, please provide a few alternative dates.

Second, although we discussed this briefly in a prior email, I wanted to address the issue of taking the deposition of Plaintiff's therapist, Ms. Sylvia Benzler. Although we understand that Plaintiff is no longer seeking emotional distress damages in this matter, it is my understanding that Plaintiff may attempt to argue that she would have been able to return to gainful employment prior to May 2004 but for the stress associated with her situation vis-à-vis Defendants. Because that issue is directly applicable to Plaintiff's claims under both the FMLA and the CFRA, Ms. Benzler's testimony remains directly relevant to this lawsuit. Her testimony may also be relevant to Plaintiff's claims of discrimination. Accordingly, we do wish to take Ms. Benzler's deposition and obtain her documents and are therefore again requesting dates for that deposition and document production. Separate and apart from the continuing relevance of that testimony, as I am sure you are aware, we did timely subpoena Ms. Benzler for deposition and to produce documents while discovery in this case was open. The deposition was only continued at the request of Plaintiff's counsel and we were given assurances on numerous occasions that the deposition and document production would be rescheduled to a mutually convenient time. I would appreciate your cooperation.

Third, although the Court's pretrial order suggests that we are to exchange completed exhibit lists and exhibits pre-marked for identification on April 24, we wished to propose an alternative arrangement to help streamline the process. Our suggestion is that rather than marking and exchanging exhibits and lists on the 24th, we instead agree to exchange the proposed exhibits themselves (unmarked) on the 27th. During the in-person meet and confer on the 30th, we can go through the exhibits and determine whether we are going to have any objections to the exhibits, cull out any duplicates, and reach agreement prior to marking the exhibits or preparing exhibit lists. My thought is that we will likely have many of the same exhibits and that we should be able to agree upon most of exhibits without significant difficulty or controversy.

Finally, I propose that we agree to postpone the exchange of demonstrative exhibits until after the Pre-trial conference. Given that the trial is not until October, it seems to me appropriate to hold off on the final preparation of demonstratives until much closer to that date.

Please let me know your thoughts on these issues and your availability for the anticipated depositions.

Michele


MILLER LAW GROUP
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Telephone: (415) 464-4300
Facsimile: (415) 464-4336


4/17/2007

**NOTICE OF CONFIDENTIALITY**:  This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product.  If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited.  If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any of any email and printout thereof.

IRS CIRCULAR 230 NOTICE: Any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for (a) the purpose of avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**Tracy Wilson**

| | |
|---|---|
| **From:** | Susan Harriman [SHarriman@KVN.com] |
| **Sent:** | Thursday, April 12, 2007 5:24 PM |
| **To:** | Michele Ballard Miller |
| **Cc:** | Lisa Hamasaki; Christa Anderson |
| **Subject:** | RE: Pande |

Michele, thanks for your e-mail. I'll address your issues in the order in which you presented them.

First, both Mr. Mahla and I are available for his deposition on May 2. Please let me know the time and place of the deposition. Mr. Mahla is scheduled to testify at a trial that week in Bakersfield, but it's likely that his testimony will be required later in the week. I'm giving you the heads-up because trials are unpredictable, and he may need to reschedule his deposition in this case at the last minute.

We do not intend to take Mr. O'Brien's deposition.

Second, we will not offer Ms. Benzler for deposition. Ms. Pande has withdrawn her claim for emotional distress damages, and thus her communications with Ms. Benzler remain privileged under Evidence Code section 1014.

Third, I find your proposal on exhibits to be a good one. Let's agree that we will ensure that we have a set of each other's exhibits by close of business on April 27. I also agree with your suggestion about the demonstratives.

I believed that I previously proposed 10 am in our office for the meeting on April 30. Please confirm that that works for you.

Susan


Susan J. Harriman

KEKER & VAN NEST LLP

710 Sansome Street
San Francisco, CA 94111-1704
tel: (415) 676-2213
fax: (415) 397-7188
www.kvn.com


---

**From:** Michele Ballard Miller [mailto:mbm@millerlawgroup.com]
**Sent:** Thursday, April 12, 2007 4:38 PM
**To:** Susan Harriman
**Cc:** Lisa Hamasaki
**Subject:** Pande

Susan:

A few issues have come to our attention that I wanted to address with you concerning trial preparation in this matter.

4/17/2007

First, we would like to schedule the deposition of Plaintiff's designated expert, Mr. Charles Mahala. To that end, I wanted to touch bases with you to check on your availability for such a deposition as well as the availability of Mr. Mahala. We are considering the following dates: May 2 or 4. Please let me know if either of these dates work with your schedules. If not, please provide a few alternative dates.

Second, although we discussed this briefly in a prior email, I wanted to address the issue of taking the deposition of Plaintiff's therapist, Ms. Sylvia Benzler. Although we understand that Plaintiff is no longer seeking emotional distress damages in this matter, it is my understanding that Plaintiff may attempt to argue that she would have been able to return to gainful employment prior to May 2004 but for the stress associated with her situation vis-à-vis Defendants. Because that issue is directly applicable to Plaintiff's claims under both the FMLA and the CFRA, Ms. Benzler's testimony remains directly relevant to this lawsuit. Her testimony may also be relevant to Plaintiff's claims of discrimination. Accordingly, we do wish to take Ms. Benzler's deposition and obtain her documents and are therefore again requesting dates for that deposition and document production. Separate and apart from the continuing relevance of that testimony, as I am sure you are aware, we did timely subpoena Ms. Benzler for deposition and to produce documents while discovery in this case was open. The deposition was only continued at the request of Plaintiff's counsel and we were given assurances on numerous occasions that the deposition and document production would be rescheduled to a mutually convenient time. I would appreciate your cooperation.

Third, although the Court's pretrial order suggests that we are to exchange completed exhibit lists and exhibits pre-marked for identification on April 24, we wished to propose an alternative arrangement to help streamline the process. Our suggestion is that rather than marking and exchanging exhibits and lists on the 24th, we instead agree to exchange the proposed exhibits themselves (unmarked) on the 27th. During the in-person meet and confer on the 30th, we can go through the exhibits and determine whether we are going to have any objections to the exhibits, cull out any duplicates, and reach agreement prior to marking the exhibits or preparing exhibit lists. My thought is that we will likely have many of the same exhibits and that we should be able to agree upon most of exhibits without significant difficulty or controversy.

Finally, I propose that we agree to postpone the exchange of demonstrative exhibits until after the Pre-trial conference. Given that the trial is not until October, it seems to me appropriate to hold off on the final preparation of demonstratives until much closer to that date.

Please let me know your thoughts on these issues and your availability for the anticipated depositions.

Michele


MILLER LAW GROUP
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Telephone: (415) 464-4300
Facsimile: (415) 464-4336

**NOTICE OF CONFIDENTIALITY**: This email, and any attachments thereto, is intended for use only by the addressee(s) named herein and may contain confidential information, legally privileged information and attorney-client work product. If you are not the intended recipient of this email, you are hereby notified that any dissemination, distribution or copying of this email, and any attachments thereto, is strictly prohibited. If you have received this email in error, please notify the sender by email, telephone or fax, and permanently delete the original and any of any email and printout thereof.

IRS CIRCULAR 230 NOTICE: Any U.S. tax advice contained in this communication (or in any attachment) is not intended or written to be used, and cannot be used, for (a) the purpose of avoiding penalties under the Internal Revenue Code or (b) promoting, marketing or recommending to another party any transaction or matter addressed in this communication (or in any attachment).

**EXHIBIT Q**

LAW OFFICES

# KEKER & VAN NEST
## LLP

710 SANSOME STREET
SAN FRANCISCO, CA 94111-1704
TELEPHONE (415) 391-5400
FAX (415) 397-7188
WWW.KVN.COM

SUSAN J. HARRIMAN
(415) 676-2213
SHARRIMAN@KVN.COM

March 29, 2007

**VIA E-MAIL AND FACSIMILE**

Michele Miller
Miller Law Group
Wood Island Center
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA  94939

Re:    *Pande v. Chevron, et al,*

Dear Ms. Miller:

I am writing in response to your letter of March 29, 2007. Your proposed changes to the schedule are acceptable. We should now assume that your letter of March 29, 2007 contains the schedule under which we will work through the Pretrial Conference. Also, for all due dates, I am assuming that each side will ensure that the other actually receives material on that date – by hand, fax, or e-mail – before the close of business. Please let me know if your assumption is otherwise.

Christa Anderson and I are also free in the morning on April 30. Let's meet at our office at 10:00 a.m., which should allow you to get to the City without traffic.

To answer your other questions, Ms. Pande for now will pursue all causes of action. We may reevaluate as we get closer to trial. Ms. Pande, however, will not seek emotional distress damages.

Very truly yours,

SUSAN J. HARRIMAN

SJH:js

392710.01