Michele Ballard Miller (SBN 104198)
Kerry McInerney Freeman (SBN 184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON
CORPORATION (f/k/a ChevronTexaco
Corporation) and CHEVRON INTERNATIONAL
EXPLORATION & PRODUCTION COMPANY
(f/k/a ChevronTexaco Overseas Petroleum),
a division of Chevron U.S.A. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE,<br><br>    Plaintiff,<br><br>v.<br><br>CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.<br><br>    Defendants. | Case No. C 04-5107 CW<br><br>**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF**<br><br>Trial Date:  October 9, 2007<br>Time:    8:30 a.m.<br>Place:    Courtroom 2<br>Pre-Trial Conf.: May 22, 2007<br><br>Complaint filed: December 2, 2004 |

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**TABLE OF CONTENTS**

**I. INTRODUCTION** ................................................................................................1

**II. STATEMENT OF FACTS** ...............................................................................2

**III. LEGAL ANALYSIS** ........................................................................................4

   **A. Pande Is Not Entitled To Any Relief Under The FMLA Or The CFRA** ..............4

   **1. Applicable Law** ...........................................................................................5

   2. **Pande Has No Support For Her Position** .................................................7

   **B. Pande Should Not Be Allowed To Speculate About Her Medical Condition, Alternative Treatments, Or Provide Testimony That Contradicts Her Doctor** ...11

   **1. Pande – A Petroleum Engineer – Is Not Competent To Testify About Medical Procedures, Recovery Times Or Alternative Treatments** ..................12

   **2. The Court Should Exclude Testimony About Alternative Medical Treatments and/or The Impact of Stress on Plaintiff's Ability To Work** ...................14

   **a. Plaintiff's Testimony And Evidence Concerning Alternative Treatments And/Or Recovery Should Not Be Considered In Deciding Defendants' Motions In Limine And Should Be Precluded From Trial** ...................14

   **b. Pande's Testimony About "Stress" And Emotional Distress Should Not Be Considered And Should Be Precluded From Trial** ...............16

   **C. Pande's Fifth Cause Of Action For Retaliation In Violation Of The FEHA Should Not Include Allegations Relating To Pande's Ultimate Termination Or Other Alleged Adverse Actions After April 2003** ..................17

   **IV. CONCLUSION** ........................................................................................21

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

i

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF**
Case No. C 04-5107 CW

1

## TABLE OF AUTHORITIES

2

**Cases**

*American Title Insurance Co. v. Lacelaw Corp.*
    861 F.2d 224 (9th Cir. 1988) ...................................................................................18

*Barry v. Wing Memorial Hospital*
    142 F. Supp. 2d 161 (D. Mass. 2001) .....................................................................10

*Cagle v. Cooper Cos.* (In re Silicone Gel Breast Implants Products Liability Litigation)
    318 F. Supp. 2d 879 (C.D. Cal. 2004) .....................................................................15

*Cehrs v. Northeast Ohio Alzheimer's Research Center and Windsor House, Inc.*
    155 F. 3d 775 (6th Cir. 1998) ...........................................................................5, 6, 7

*Cleveland v. Policy Management Systems Corporation*
    526 U.S. 795 (1999) .................................................................................................10

*Colburn v. Parker Hannifin/Nichols Portland Div.*
    429 F.3d 325 (1st Cir. 2005) .....................................................................................9

*Edgar v. JAC Products, Inc.*
    443 F. 3d 501 (6th Cir. 2006) .................................................................................5, 6

*Ferris v. Pennsylvania Fed'n Bhd. Of Maint. Of Way Employees*
    153 F.Supp.2d 736 (E.D. Pa. 2001) .......................................................................13

*Franklin v. Shelton*
    250 F.2d 92 (10th Cir. 1957) ..................................................................................13

*Gonzalez v. Executive Airlines, Inc.*
    236 F.R.D. 73 (D.P.R. 2006) ...................................................................................15

*Hegglin v. Workermen's Comp. App. Bd.*
    4 Cal. 3d 162 (1971) ...............................................................................................15

*Henry v. A/S Ocean*
    512 F.2d 401 (2d Cir. 1975) ...................................................................................13

Hill v. Underwood Memorial Hospital
    365 F. Supp. 2d 602 (D. N.J. 2005)...................................................................8, 10

*Kelso v. Corning Cable Systems, Int'l.*
    224 F. Supp. 2d 1052 (W.D. N.C. 2002) .................................................................9

*Kosakow v. New Rochelle Radiology Associates*
    254 F.3d 706 (2d Cir. 2001) ...................................................................................10

*Musser v. Gentiva Health Services*
    356 F.3d 751 (7th Cir. 2004) ..................................................................................15

*Provident Life and Accident Ins. Co. v. Fleischer*
    26 F. Supp. 2d 1220 (C.D. Cal. 1998) ....................................................................15

*Ragsdale v. Wolverine World Wide, Inc.*
    535 U.S. 81 (2002) ................................................................................................5, 7

*Reynolds v. Phillips & Temro Industries, Inc.*
    195 F.3d 411 (8th Cir. 1999) ...................................................................................14

*Roberson v. Cendant Travel Services, Inc.*
    252 F. Supp. 2d 573 (D. Tenn. 2002).....................................................................14

*Thomas v. Pearle Vision, Inc.*
    251 F.3d 1132 (7th Cir. 2001) ..................................................................................9

*Throneberry v. McGehee Desha County Hosp.,* 403 F. 3d 972 (8th Cir. 2005) ....................6

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND
IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF**
Case No. C 04-5107 CW

*United States v. One Heckler-Koch Rifle*
   629 F.3d 1250 (7th Cir. 1980) ........................................................................18
*Williams v. Toyota Motor Manufacturing., Kentucky, Inc.*
   224 F. 3d 840 (6th Cir. 2000) ........................................................................ 6
*Wilson v. AZ Automotive Corp.*
   2007 U.S. Dist. LEXIS 23906 (D. Mich. 2007) ................................................ 14

**Statutes**
29 U.S.C. §2612(a)(1) ...........................................................................................5
29 U.S.C. §2614(a)(1) ...........................................................................................5
29 U.S.C. §2615(a)(1) ...........................................................................................5
Fed. R. of Evid. 702 .............................................................................................15

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND
IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF**
Case No. C 04-5107 CW

# I.

## INTRODUCTION

Plaintiff Kiran Pande's first and second causes of action are predicated on Defendant's alleged interference with her rights under the Family Medical Leave Act ("FMLA") and the California Family Rights Act ("CFRA"). There is no dispute as to what Pande must show in order to establish these two claims.[1]  Rather, the dispute is predicated on what, if any, relief Pande is entitled to if she establishes her interference claims.

Defendants assert that Pande is not entitled any relief because she was unable to return to work after the 12-week statutory leave period ended.  Not surprisingly, Pande disagrees, contending that she is entitled to recover her lost wages and benefits from the date of the interference and continuing until such time as the jury deems appropriate – in other words, to a point well beyond the 12-week statutory leave period.

Pande's argument is not based on what *actually* happened but what *might* have happened.  According to Pande, since she had "some control over her medical decisions," she *could* have chosen treatment that might have accelerated her recovery, thereby allowing her to return within the 12-week period.  Alternatively, Pande asserts she *could* have continued to work notwithstanding the discomfort caused by her anemia.  She blames Defendants for her failure to elect either option – "she never had the luxury of making either of these choices because Chevron terminated her employment only days into her protected leave."  Opp. to Motion at 4:23-26.  While facially appealing, Pande's argument is based on an incorrect statement of the facts and the law.  Accordingly, Defendants' motion *in limine* number one should be granted.

---

[1]  Plaintiff and Defendants agree that the same standards apply to CFRA and FMLA claims. *See*, footnote 4 in Defendants' Motions *In Limine* and footnote 1 in Plaintiff's Opposition.

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF**
Case No. C 04-5107 CW

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

With respect to the scope of Pande's Fifth Cause of Action for Retaliation, Pande now alleges that her complaints about Rex Mitchell in early 2002 were a motivating reason for her December 2003 termination.  This, however, is squarely contradicted by the evidence elicited to date and – most importantly – by her counsel's express admissions as to the scope of that cause of action.  Any attempt at this late date to expand this cause of action should be denied.

## II.

## STATEMENT OF FACTS

Pande's Opposition to Defendants' Motions in Limine and now her Trial Brief confuse the sequence of events and play fast-and-loose with the facts of this case.[2]  For example, although Pande now alleges that Defendants' actions in terminating her employment precluded her from electing medical treatments which might have permitted her to return to work prior to the conclusion of her 12-week FMLA entitlement, she neglects to mention that she was informed that FMLA/CFRA leave was limited to 12 weeks BEFORE she submitted medical documentation indicating that she was unable to return to work for SIX MONTHS.

Similarly, although Pande now claims she *could* have selected alternative treatments to shorten her period of disability or continued to work notwithstanding her anemia, she neglects to mention that she continued to receive disability benefits – based upon her inability to work – until mid-May 2004.  Pande also has failed to – and indeed does not have – any admissible evidence suggesting that she had viable alternative treatments or that

---

[2] This brief constitutes both Defendants' Reply Brief in Support of their Motion In Limine Number One as well as Defendants' Reply to Plaintiff's Trial Brief.  Although these documents were initially intended to be separate documents, in light of the fact that Plaintiff chose to revisit Defendants' Motions In Limine in her Trial Brief, Defendants have combined these separate briefs into one.

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND
IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF
Case No. C 04-5107 CW

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1   such treatments would have enabled her to return to work prior to the end of her 12 week

2   entitlement.[3]

3

4       Despite her liberties in this regard, the facts relating to her FMLA/CFRA claims are

5   both clear and undisputed.  For ease of reference, the pertinent dates and facts are set forth

6   sequentially below:

7
8   • On **October 28, 2003**, Pande requested a medical leave of absence to begin on
    November 10, 2003.

9
10  • The next day, on **October 29, 2003**, UnumProvident sent Pande a letter
    explaining her FMLA eligibility and the rights afforded by that law.  In addition to
11  indicating that Pande was eligible for FMLA and CFRA leave, that letter stated:
    "Under this law [the FMLA] and/or the California Family Rights Act (CFRA),
12  ChevronTexaco is required to grant you an unpaid leave of absence to handle
    family matters, including your own serious illness, and to protect your job while
13  you are gone.  *Eligible employees may take up to 12 weeks of FMLA absence
    during a 12-month period.*" (emphasis added) (attached as Exhibit A to the
14  Declaration of Michele B. Miller In Support of Defendants' Motion in Limine ("Miller
    Decl."))

15
16  • On **November 10, 2003**, Pande began her leave of absence.

17  • Three days later, on **November 13, 2003**, Pande's doctor, Juliana Wong, M.D.
    filled out, signed and submitted to UnumProvident two medical certification forms.
18  One such form, the "Income Protection Claim" (attached as Exhibit D to Miller
    Decl.) stated unequivocally that Pande was first "unable to work" on 11/10/03, that
19  she had not been released to work in her own occupation or in any occupation,
    **that Pande "should" be able to return to work in *May 2004,*** and that the
20

21      [3] Indeed, Pande has not included any of her treating physicians in her witness list and, after
22  learning that Defendants intended to seek a motion *in limine* to exclude testimony from her
    physicians, Pande's counsel indicated that such a motion was unnecessary as Pande would not
23  seek to introduce the testimony of any doctors.  (Supplemental Declaration of Michele B. Miller
    In Support of Defendants' Motion In Limine Number One and In Response to Plaintiff's Trial Brief
24  ("Supp. Miller Decl.") ¶ 5)  In opposing Defendants' Motions *In Limine*, Pande seeks to avoid this
    evidentiary problem by relying upon inadmissible hearsay as to the options allegedly given to her by
25  her treating physicians.  (See Declaration of Kiran Pande In Support of Opposition to Motions *In
    Limine* ¶ 8).  And without any support whatsoever – or any medical knowledge or medical training –
26  Pande reaches the conclusion that her medical condition was adversely impacted by "stress."  (Id.)
    Not only is Pande's purported recitation of her doctor's advice inadmissible hearsay, but Pande is
27  not competent to give medical testimony.  Such testimony or "evidence" should not be permitted in
    this proceeding. (*see* Discussion *infra* at section III.C)
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

nature of her treatment was "[m]edication to help anemia … **plan for surgery in 2/2004.**"

The other form likewise indicated that Pande was "**Off work 11/10/03-May '04**", that Pande was **anticipated to return to work in *May 2004***", and that there were no factors complicating her recovery.  (attached as Exhibit D to Supplemental Miller Decl.)

- Almost three weeks after the UnumProvident notice of FMLA rights was sent to Pande, on **November 17, 2003**, Jack Dunn called Pande and informed her that her employment would end on December 31, 2003 if she was unable to find alternate employment and a letter was sent from Taryn Shawstad confirming this.[4]

- On **December 31, 2003**, Pande's employment, and hence her leave of absence, ended.

- On **February 2, 2004**, any potential 12-week leave of entitlement would have ended (had Pande still been employed by Defendants).

- Pande's disability benefits ceased in **mid-May 2004.**  (Pande 467:18-468:13, attached as Exhibit B to Miller Decl.).  In other words, she certified that she was unable to work until mid-May 2004 and reaped the benefit of those certifications.

Based on these undisputed facts, it is clear that nothing Defendants did impacted Pande's medical choices.  Her recent arguments to the contrary should be ignored.

## III.

## LEGAL ANALYSIS

**A.     Pande Is Not Entitled To Any Relief Under The FMLA Or The CFRA.**

Not one of the cases Pande cites support her position that she is entitled to the unlimited damages she seeks under FMLA/CFRA. This is hardly surprising since there is ***no***

---

[4] This notification hardly came as a surprise to Pande.  On the contrary, she was informed in May of 2003 that her Group was relocating to Houston and that her "Block" or group would be moving by the end of the year.  (Pande 358:20-362:24 and Exhs. 16-18 thereto, attached as Exh. A to Supp. Miller Decl.)  On October 16, she requested information on what severance would be available to her if she "was unsuccessful finding another job," noting that if she was not successful in finding another position she "will likely be forced to leave the Company." (Pande 405:14-407:3 and Exh. 24, attached as Exh. A to Supp. Miller Decl.)  When she was informed that there would be no severance, she requested leave.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

4

1 **case** that allows an employee to recover damages beyond the 12-week statutory period

2 when, as here, **after receiving the required FMLA/CFRA notice,** the employee chooses a

3 course of treatment that precludes returning to work within the statutory 12-week period.

4

5       **1.    Applicable Law.**

6

7       The FMLA allows "an eligible employee" a total of "12 workweeks of leave during any

8 12-month period" because of a serious medical condition. 29 U.S.C. §2612(a)(1).   An

9 employee is entitled to her previous job or a comparable position "on return from [FMLA]

10 leave."  29 U.S.C. §2614(a)(1).  It is unlawful for an employer to "interfere with, restrain, or

11 deny the exercise" of these rights. 29 U.S.C. §2615(a)(1).   Employers who violate this

12 statute "are liable only for compensation and benefits lost 'by reason of the violation.'" 29

13 U.S.C §2617(a)(1). The remedy is "tailored to the harm suffered." *Ragsdale v. Wolverine*

14 *World Wide, Inc.,* 535 U.S. 81, 89 (2002).

15

16       Thus, even if the employer interferes with the employee's FMLA rights, the employee

17 is not entitled to relief since she cannot show any prejudice as a result of the employer's

18 actions -- since the employee could not return to work, she likewise is not entitled to the

19 benefits that would have come with reinstatement.   This is true even if the employer

20 terminates the employee before the FMLA period expires.   *Cehrs v. Northeast Ohio*

21 *Alzheimer's Research Center and Windsor House, Inc.,* 155 F. 3d 775 (6th Cir. 1998)  In other

22 words, in the absence of some prejudice caused by the employer's actions, the employee is

23 not entitled to any relief under the statute.  The cases are in accord.

24

25       The decision in *Edgar v. JAC Products, Inc.,* 443 F. 3d 501, 503, 509 (6th Cir. 2006).is

26 instructive.  In *Edgar*, the employee began suffering from work-related stress following a job

27 transfer and asked to take time off work.   *Id.*at 504.  When she failed to provide timely

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND
IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF
Case No. C 04-5107 CW

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  medical certification to support the leave, JAC Products terminated her employment.  Edgar

2  filed suit alleging, *inter alia*, interference with her FMLA rights.  The district court granted

3  summary judgment in favor of JAC Products, concluding that because Edgar "'was not

4  released to return to work at the time her leave would have ended [she] had no claim under

5  the FMLA.'"  *Id.* at 506.  Edgar appealed, claiming that since her employer was unaware of

6  this fact when it terminated her employment, it could not rely upon this after acquired

7  evidence to deny her the FMLA benefits to which she was entitled.  *Id.* at 507.

8

9       The Sixth Circuit disagreed, holding that the inquiry as to whether an employer

10  interfered with or denied an FMLA benefit is an "objective one divorced from the employer's

11  motives."  *Id.* at 511-12.  Because the employer's motives are not in issue, the court

12  concluded that the "objective inquiry required in [interference] cases does not preclude the

13  use of evidence acquired by the employer after the termination decision."  Thus, regardless

14  of when the knowledge is obtained, an employer "does not violate the FMLA when it fires an

15  employee who is indisputably unable to return to work at the conclusion of the 12-week

16  period of statutory leave."  *Id.* at 506-07.[5]

17

18       Finally, the Court rejected Edgar's testimony that she could have returned to work at

19  the end of her leave period, the court determined that Edgar's belief was not competent

20  evidence and failed to rebut the uncontroverted evidence that her own doctors were

21  "unwilling to release her to work until long after the FMLA-leave period would have ended."

22  *Id.* at 514.  Simply put, the employer does not violate the FMLA when it terminates an

23  ―――――――――――――

[5] See also, *Throneberry v. McGehee Desha County Hosp.,* 403 F. 3d 972, 978 (8th Cir.
24  2005) (explaining that an employer is permitted to "deny restoration to employment" if the employer
can "show that an employee would not otherwise have been employed at the time reinstatement is
25  requested"); *Williams v. Toyota Motor Manufacturing., Kentucky, Inc.,* 224 F. 3d 840, 844-45 (6th Cir.
2000) (where the evidence demonstrated that plaintiff's doctors recommended she cease all work
26  and was restricted from all work "at the time of her termination and up until at least nine months
later," plaintiff "suffered no damages" and the employer was entitled to summary judgment even if it
27  had improperly denied FMLA leave);  *Cehrs, supra,* at 784-85.

28

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND
IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF**
Case No. C 04-5107 CW

employee who is incapable of returning to work at the end of the leave period. *Cehrs, supra,* at 784-85.

### 2. Pande Has No Support For Her Position.

None of the cases cited by Plaintiff compel a different conclusion. On the contrary, all support Defendants' position that the employee must suffer some prejudice due to the employer's interference in order to be entitled to relief under the statute.

For example, in *Ragsdale, supra,* the employee claimed that she was entitled to an additional 12 weeks of leave due to her employer's failure to notify her that any of the 30 weeks of leave already taken would be considered FMLA leave. Ragsdale sued under the FMLA, relying on a regulation promulgated by the Secretary of Labor which penalized an employer's failure to provide timely notice of the FMLA designation by denying the employer any credit for leave granted before the notice. After the Eighth Circuit upheld the district court's grant of summary judgment, finding the penalty regulation in conflict with the FMLA, the United States Supreme Court granted *certiorari*. The sole issue before the Court was the validity of this regulation.

The Supreme Court struck down the regulation, finding it "incompatible with the FMLA's comprehensive remedial mechanism." Because the penalty was unconnected to any prejudice the employee might have suffered from the employer's failure to notify, it transformed the failure to give notice into an actionable violation entitling Ragsdale to reinstatement and back pay, "even though reinstatement could not be said to be 'appropriate' in these circumstances and Ragsdale lost no compensation 'by reason of' Wolverine's failure to designate her absences as FMLA leave." By mandating these results absent a showing of consequential harm, the regulation "worked an end run around important limitations of the statute's remedial scheme" and impermissibly altered the

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

7

1  statutory guarantee of a "total" 12 weeks leave by entitling certain employees to leave

2  beyond the 12 week mandate.

3

4      Contrary to Pande's assertion, the *Ragsdale* decision did not hold that the employee

5  "had no claim under the FMLA" because it was undisputed she could not return to work with

6  the 12 week period. Opp. 2:26-3:2 *Ragsdale* simply cannot be read as authorizing relief for

7  an employee who, ***after receiving express notice of the 12-week FMLA leave period***,

8  elects a course of treatment that precludes her returning to work within the statutory time

9  period.

10

11     *Hill v. Underwood Memorial Hospital,* 365 F. Supp. 2d 602 (D. N.J. 2005) also

12  provides no support for Pande's position. In *Hill*, the employee was diagnosed with a

13  temporarily disabling medical condition and requested leave. While Hill was on leave, her

14  employer determined she had previously exhausted her FMLA entitlement and terminated

15  her employment. Hill sued, claiming that she was prejudiced by her employer's failure to

16  provide sufficient notice of its method of calculating leave entitlement under the FMLA. The

17  court granted summary judgment finding that even if Hill's allegations were true, she still

18  would not be entitled to relief as "the evidence shows that Plaintiff still would not, and could

19  not, have returned to work within that twelve week period." *Id.* at 610.

20

21     Pande ignores these underlying facts. Instead, she jumps on language in a footnote,

22  arguing that because she had "some control over her medical decisions" she is entitled to

23  recover damages beyond the 12-week period. The *Hill* decision does not support such an

24  interpretation. Although the Court implied that inadequate notice might, in certain

25  circumstances, cause actual prejudice, such as when "an employee has some flexibility

26  with regard to when she takes FMLA leave," this was not the case here – Hill

27  "would not have been able to choose when she took leave, regardless of the calculation

28

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND
IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF**
Case No. C 04-5107 CW

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1    method utilized, and regardless of whether she fully understood how available leave was

2    calculated." *Hill*, fn 17.  Clearly, this language has no application here since Pande was

3    given express notice of her FMLA rights and 12-week entitlement yet choose to disregard it.

4    *Hill* does not allow Pande to avoid the consequences of her actions simply by asserting that

5    she had other options that she *could have* but did not choose.

6

7        Indeed, sound public policy reasons also mandate rejection of Pande's argument.

8    According to Pande, an employee who is given *yet ignores* the required FMLA notice by

9    choosing a course of treatment that precludes returning to work within 12 weeks would be

10   entitled to greater relief than an employee who is neither given adequate notice nor able to

11   control when to take leave.  The employee with no treatment options would not be entitled

12   to relief if they did not return within 12 weeks, while an employee with treatment choices

13   could freely ignore the statutory notice, not return to work and seek damages presumably

14   through retirement.  Such a result would fundamentally alter the remedial mechanism of the

15   FMLA and must be rejected.[6]

16       [6] Pande's attempts to distinguish the cases cited by Defendants are unpersuasive.  First, she
17   attempts to distinguish *Kelso v. Corning Cable Systems, Int'l.,* 224 F. Supp. 2d 1052, 1056 (W.D.
     N.C. 2002) on the basis that the FMLA violation at issue in *Kelso* concerned the notice provided to
18   the plaintiff. (Opp. fn.2)  *Kelso*, relying on *Ragsdale,* was cited for the black-letter proposition that
     the FMLA – and specifically 29 U.S.C. § 2617(a)(1)(A)(i)(I) – provides no relief unless the employee
19   has been prejudiced by the violation.  Although there is a factual difference between *Kelso* and this
     case, it is a distinction without a difference.  Second, Plaintiff attempts to distinguish *Colburn v.*
20   *Parker Hannifin/Nichols Portland Div.,* 429 F.3d 325, 332 (1st Cir. 2005) alleging that the *Colburn*
     court was addressing FMLA retaliation, rather than an interference claim. (Opp. fn.2)  Plaintiff fails
21   to note, however, that in *Colburn,* the plaintiff actually made two FMLA claims, one for interference
     with his FMLA claims, and a second for retaliation.  *See Id.* at 329.  The proposition cited by
22   Defendants – that the plaintiff could not recover on an FMLA interference claim because the
     employer was under no obligation to reinstate him – pertains to the plaintiff's interference claim.
23   Since Pande has not alleged a FMLA retaliation claim, the *Colburn* holding with respect to FMLA
     retaliation has no application to this case.  Finally, and perhaps most tellingly, Pande did not even
24   attempt to distinguish *Cehrs v. Northeast Ohio Alzheimer's Research Center and Windsor House,*
     *Inc.,* 155 F.3d 775 (6th Cir. 1998).  As set forth in Defendants' moving papers, *Cehrs* clearly holds
25   that an employee cannot survive summary judgment on an FMLA claim where she remained unable
     to work at the end of the 12 week entitlement.  Finally, Pande inexplicitly cites to *Thomas v. Pearle*
26   *Vision, Inc.,* 251 F.3d 1132 (7th Cir. 2001) in her Trial Brief.  However, as the claims in that case did
     not arise "under FMLA, but under the language of the employee's contract," it provides no guidance.
27   *Id.* at 1136.
     *continued*

28

                                                     9

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1    Here, as in *Hill*, Pande cannot show that any of Defendants' actions caused her

2    prejudice.  It is undisputed that Pande began an FMLA/CFRA leave on November 10, 2003,

3    and her 12 week leave entitlement ended no later than **February 2, 2004**.  Miller Decl. ¶ 3,

4    and Exh. A, thereto.  Two weeks after the October 29th FMLA/CFRA notice to Pande,

5    Pande's doctor indicated on November 13, 2003 that she could be off work through May

6    2004.  Further, Pande admitted under oath that she was not, in fact, able to return to gainful

7    employment until mid-May 2004.[7]  *Id.* at ¶¶ 4-5, and Exhs. B and C thereto (Pande Depo.

8    428:14-429:1, 467:20-471:13 and Exh. 38).  ***There is no question that Pande would not –***

9    ***and could not – have returned to work prior to the expiration of her FMLA/CFRA***

10   ***entitlement***.  Although Pande might have had some degree of control over her medical

11   treatment, she nonetheless elected to take leave and scheduled surgery for a date well

12   beyond her 12 week entitlement.  Under these circumstances the law is clear – if an

13   employee is unable to return to work at the end of the protected leave, he or she is not

14   entitled to any relief under FMLA or CFRA.[8]

15   _____

16   [7] Although Pande argues that Defendants should be estopped from claiming that Pande
     could not return to work during her 12 week entitlement period – an argument unsupported by any
17   applicable law – the real estoppel argument should prevent Pande from claiming that she *could*
     return to work prior to May 2004.  Pande submitted certifications concerning her inability to work to
18   UnumProvident (who administers Defendants' disability benefits) and received monetary payments
     as a result of her inability to work.  Pande should not be able to reap the benefits of her purported
19   inability to work, while now claiming that she actually could have worked *if she chose to do so.*
     *See e.g., Barry v. Wing Memorial Hospital,* 142 F. Supp. 2d 161, 165-66 (D. Mass. 2001) (Plaintiff's
20   statement that she was totally disabled for purposes of social security and workers' compensation
     benefits considered as evidence that she could not return to work during her 12 week FMLA
21   entitlement); *see e.g., Cleveland v. Policy Management Systems Corporation,* 526 U.S. 795, 806
     (1999)  ("a plaintiff's sworn assertion in an application for disability benefits that she is, for example,
22   'unable to work' will appear to negate an essential element of an ADA case – at least if she does not
     offer a sufficient explanation.")

23

24   [8] Pande's equitable estoppel argument, and her reliance on *Kosakow v. New Rochelle
     Radiology Associates,* 254 F.3d 706 (2d Cir. 2001) is entirely misplaced.  This case and *Kosakow*
25   have nothing in common.  *Kosakow* involved a situation in which the employer failed to inform the
     employee that she needed 1250 hours of work to qualify for FMLA leave.  The Court held that since
26   the employer failed to provide the proper notice regarding FMLA eligibility requirements, it was
     estopped from arguing that Kosakow was not an "eligible employee."  *Id.* at 723.  There is no similar
27   argument here.  Trying to fit a square block into a round hole, Pande argues that Defendants failed
     to notify her that she had to return within 12 weeks or risk termination.  Opp. 5:24-25.  This assertion
28   *continued*

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**B.  Pande Should Not Be Allowed To Speculate About Her Medical Condition, Alternative Treatments, Or Provide Testimony That Contradicts Her Doctor.**

The only time that the employee's control over her medical condition may be relevant is when the employee suffers prejudice due to the employer's failure to provide the employee the required FMLA/CFRA notice.  Notice is not an issue in this case.[9]

Here, it is undisputed that Defendants gave Pande notice of her FMLA/CFRA rights in a letter dated October 29, 2003.  Miller Decl. ¶ 3 and Exh. B.  It is also undisputed that Plaintiff's FMLA and CFRA entitlements expired on February 2, 2004, that Plaintiff did not have surgery until March 2004, and that Plaintiff testified she remained disabled and continued to receive disability benefits until mid-May 2004.  Plaintiff's doctors are in accord. *See* Miller Decl. ¶¶ 4-5 and Exhs. B & C and Exh. D to Supp. Miller Dec.

Notwithstanding her doctors' opinions, Plaintiff clearly intends to testify at trial about alternative medical treatments that **may** have shortened her period of disability by 15 weeks or more.  This purported testimony is properly excluded for many reasons and should not be considered for purposes of ruling on Defendants' motions *in limine*.  First, Pande – a petroleum engineer by trade – is not competent to testify about medical procedures or the likelihood that such procedures could have shortened her period of disability, and has chosen not to elicit testimony of any medical professionals.  Indeed, any opinion – and

is blatantly false.  Just one day after Pande's request for leave, she was sent a letter stating explicitly that "[e]ligible employees may take up to 12 weeks of FMLA absence during a 12-month period."  Miller Decl. ¶3 and Exh. A.  Indeed, even Pande acknowledges where it behooves her, that this case does not involve any issues of defective notice.  *See* Opp. fn.2.  Accordingly, this argument should be disregarded.

[9] Even in circumstances where notice is deficient, it is not enough for the employee to simply assert that she would have chosen a different course of treatment and did not do so because the employer did not inform her that the protected leave was for only 12 weeks.  Rather, the employee must still show through competent medical evidence that these alternatives would have altered the outcome and permitted an earlier return to work.  In other words, the employee must still establish prejudice.

11

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  especially the opinion of Pande herself – as to what alternative treatments she might have

2  selected, their likelihood of success, the duration of her recovery, and when she might have

3  returned to work had she submitted to alternative treatments, is inadmissibly speculative.

4  FRE 702.

5

6  Second, Pande never disclosed her treating doctors as expert witnesses on any

7  subject.  Accordingly, any purported expert testimony regarding alternative medical

8  treatments is properly excluded under Federal Rule of Civil Procedure 37(c)(1) and would

9  prejudice Defendants.  This holds true regardless of whether Pande intends to put on the

10  testimony of her doctors or tries to backdoor the evidence through her own unsubstantiated

11  speculation and conclusion.   And third, as to Pande's claims that stress somehow impacted

12  her medical condition and prolonged her disability, Pande's assertions that she would not

13  seek damages for emotional distress and her refusal to produce her therapist, Sylvia

14  Benzler for deposition, should preclude her from making any reference to emotional

15  distress, emotional harm or the impact that stress may or may not have had ability to work.

16  To hold otherwise would reward Pande for stonewalling Defendants in discovery, permit her

17  to avoid potentially harmful testimony (e.g., that she was so stressed out that she could not

18  work) while allowing her to rely on the effects of stress to increase damages, would be

19  highly prejudicial to Defendants, and could significantly confuse a jury.

20
21  ### 1.    Pande – A Petroleum Engineer – Is Not Competent To Testify About Medical Procedures, Recovery Times Or Alternative Treatments.
22

23  Having conceded that she does not intend to introduce testimony from her treating

24  physicians, Pande now seeks to introduce medical testimony in the form of hearsay

25  evidence concerning alternative treatments allegedly proposed to her by her doctors and

26  her bare conclusions as to the efficacy of such alternatives and the impact of stress on her

27  recovery time.  In particular, in opposition to Defendants' motions *in limine*, Pande alleges

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

that her surgeon, Sheri Task, M.D. gave her two options for medical treatment; that Dr. Task told her that stress *could* impact her condition; and – without a shred of evidence or a medical degree to support her conclusion – Pande concludes that "She [Dr. Task] turned out to be correct [about stress impacting Pande's condition." Pande Decl. In Opposition to Defendants' Motions In Limine, ¶¶ 7-8. Additionally, during the May 22, 2007 Pretrial Conference, Pande's counsel indicated that Pande will testify that her supervisor's conduct in allegedly screaming at her in a meeting, calling her on the telephone and then terminating contributed to her stress – which, again according to Pande's lawyer, Pande was told "to avoid." Supp. Miller Decl. ¶ 6 and Exh. C, at 37:7-19.[10]   All such evidence and testimony is properly excluded and should not be considered for purposes of ruling on Defendants' Motions In Limine, or permitted at the time of trial. *See Henry v. A/S Ocean,* 512 F.2d 401, 408 (2d Cir. 1975) ("lay testimony to a medical fact beyond the witness's knowledge would be entitled to no weight."); *Ferris v. Pennsylvania Fed'n Bhd. Of Maint. Of Way Employees*, 153 F.Supp.2d 736, 746 (E.D. Pa. 2001) (holding plaintiff's belief as to what caused his mental ailments "may not be presented to the jury in the absence of expert testimony regarding causation"); *Franklin v. Shelton*, 250 F.2d 92, 98 (10th Cir. 1957) ("The conditions complained of were of a nature requiring competent medical testimony to establish their cause, and their cause could not by laymen be definitely attributed to the accident, absent expert medical testimony to that effect"). Not only is such testimony unreliable, but it would be highly prejudicial to Defendants since Plaintiff denied Defendants the opportunity to depose Plaintiff's therapist about any such purported "stress." *See discussion* at Defendants' Motion In Limine No. V.

Even setting aside the issue of competency, Pande's unsupported and speculative assertions as to what *might have been* are irrelevant to the issue of whether she is entitled

[10] Interestingly, despite these conclusory assertions made by Pande, Plaintiff's counsel did concede during the pretrial conference that "[Pande's] not a medical doctor. She is not going to take the stand and pretend she is." Supp. Miller Decl. ¶ 6 and Exh. C (at 38:20-22).

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1   to damages on her FMLA/CFRA claims.   Numerous cases are in accord.   *Roberson v.*

2   *Cendant Travel Services, Inc.*, 252 F. Supp. 2d 573 (D. Tenn. 2002) is instructive.   In

3   *Robertson*, the Court granted summary judgment for the employer on the plaintiff's FMLA

4   claim because the plaintiff could not have returned to work prior to the expiration of her

5   FMLA entitlement and was therefore not "prejudiced" as required by the FMLA.   Although

6   the plaintiff argued that she "could have" returned to work prior to the expiration of her

7   entitlement had she asked her doctor to change her medication and claimed that her doctor

8   would testify that the plaintiff's treatment regime could have been altered to allow an earlier

9   return to work, the Court held that "Plaintiff's raw assertions that she could have returned to

10  work are insufficient to survive Defendant's Motion for Summary Judgment."   *Id.* at 581; *see*

11  *also, Reynolds v. Phillips & Temro Industries, Inc.,* 195 F.3d 411, 413-14 (8th Cir. 1999)

12  (granting summary judgment to employer notwithstanding the fact that the Plaintiff asserted

13  he was ready, willing and able to return to his job prior to the expiration of his FMLA

14  entitlement); *Wilson v. AZ Automotive Corp.,* 2007 U.S. Dist. LEXIS 23906 (D. Mich. 2007)

15  (plaintiff's testimony that she was able to return to work prior to the expiration of her leave

16  entitlement was not sufficient to defeat summary judgment on her FMLA claims where the

17  only evidence in support of such claims was the plaintiff's own assertions).

    **2.**    **The Court Should Exclude Testimony About Alternative Medical Treatments and/or The Impact of Stress on Plaintiff's Ability To Work.**

    **a. Plaintiff's Testimony And Evidence Concerning Alternative Treatments And/Or Recovery Should Not Be Considered In Deciding Defendants' Motions In Limine And Should Be Precluded From Trial.**

23  Pande has not disclosed her treating doctors – Drs. Task and Wong – as expert

24  witnesses, or even as testifying witnesses in this matter.   Rather, the only disclosure made

25  to date is that Pande listed Drs. Task and Wong in her initial disclosures as fact witnesses to

26  testify only "about Ms. Pande's medical condition."   Because the issue of Plaintiff's medical

27  condition and her eligibility for FMLA/CFRA leave has never been an issue in dispute – and

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

14

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

indeed is a stipulated fact in this case – such testimony is unnecessary to decide the issues in this case.   Accordingly, Defendants determined that deposing these physicians about Pande's "medical condition" was not necessary to the defense of this action.

Defendants assumed that if Plaintiff sought to introduce medical testimony beyond the scope of Plaintiff's "medical condition" – e.g., testimony concerning the availability of alternative treatments or opinions concerning possible recovery scenarios – Plaintiff would disclose such medical professionals as expert witnesses.[11]   Indeed, the law is clear that such opinion testimony – which clearly exceeds the scope of actual medical treatment – is expert testimony even when proffered by a treating physician.   *See Musser v. Gentiva Health Services*, 356 F.3d 751, 757 (7th Cir. 2004) ("a treating doctor . . . is providing expert testimony if the testimony consists of opinions based on scientific, technical, or other specialized knowledge regardless of whether those opinions were formed during the scope of interaction with a party prior to litigation"); *see also Gonzalez v. Executive Airlines, Inc.*, 236 F.R.D. 73, 78 (D.P.R. 2006) ("for a treating physician not to be bound by the expert witness requirements of Rule 26, the physician's testimony must be closely constrained to the facts of the treatment administered and discussed in his notes taken at the time of his examination").   Had such disclosures been made, Defendants would have had an

---

[11] Even if Plaintiff had designated Dr. Task as an expert, her anticipated testimony is inadmissible speculation.  As explained in *Cagle v. Cooper Cos.* (In re Silicone Gel Breast Implants Products Liability Litigation), 318 F. Supp. 2d 879, 889-90 (C.D. Cal. 2004), "FRE 702 imposes a 'gatekeeping' duty on district courts to ensure that testimony based on scientific, technical, or other specialized knowledge rests on a reliable foundation.'" (*Citing Daubert*, 509 U.S. at 597.)  Moreover, "[t]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." *Id.* (*citing* FRE 702 Advisory Committee's Notes.)   Plaintiff's treaters – much less plaintiff herself – cannot state to a reasonable medical certainty that Plaintiff would have recovered and returned to work *15 weeks earlier than she actually did return* with alternative treatment.  *See Provident Life and Accident Ins. Co. v. Fleischer*, 26 F. Supp. 2d 1220 (C.D. Cal. 1998) ("the court should exclude proffered expert testimony that is no more than unsupported speculation"); *Hegglin v. Workermen's Comp. App. Bd.*, 4 Cal. 3d 162, 169 (1971) ("Medical opinion . . . fails to support the Board's findings if it is based on surmise, speculation, conjecture, or guess").  Speculation as to when Plaintiff would have returned to work had she undergone a different treatment is inadmissible.

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF**
Case No. C 04-5107 CW

1    opportunity to conduct expert discovery and explore the bases for any such testimony.

2    However, what Defendants did not anticipate is that Pande would forego any medical

3    testimony on the subject, but instead would attempt to back-door such testimony by using

4    her own unsubstantiated and conclusory assertions as to what her doctors *may* have told

5    her and how such treatments *might* have impacted her recover time.  Even assuming that

6    Pande was competent to provide this sort of testimony – which she is not – any such

7    evidence or testimony should be disallowed because Pande has essentially denied

8    Defendants the ability to cross-examine witnesses on her speculative theories.  Not only are

9    Pande's tactics questionable at best, but relying on Pande's unsupported "medical"

10   testimony could be highly prejudicial to Defendants in this action.

**b. Pande's Testimony About "Stress" And Emotional Distress Should Not Be Considered And Should Be Precluded From Trial.**

14        Plaintiff's evidence and testimony that she was told to avoid stress, that stress

15   impacted her medical condition, that Defendants' conduct contributed to her stress, and that

16   stress prolonged her period of disability should likewise be precluded both from

17   consideration for purposes of deciding Defendants' motions *in limine* and from trial.  As set

18   forth in Defendants' Motion In Limine No. V, and explained in detail in the evidence in

19   support of that motion, Plaintiff's have denied Defendants the opportunity to depose

20   Plaintiff's therapist, Sylvia Benzler or to obtain documents from Ms. Benzler.  Indeed,

21   despite Plaintiff's initial agreement to the deposition and document production, and request

22   to continue that deposition (a request which Defendants accommodated), after the close of

23   discovery and while in the midst of trial preparation, Plaintiff changed her mind and refused

24   Defendants access to Ms. Benzler.  Plaintiff claimed that since she agreed to withdraw her

25   claims for emotional distress, Defendants were no longer entitled access to Ms. Benzler.

26   *See* Miller Decl. ¶¶ 17-18 and Exhs. P & Q.  Unfortunately, it now appears that Plaintiff

27   wants to testify that Defendants' conduct caused her emotional distress and wants the jury

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1  to be made aware of this purported "emotional distress" for purposes of assessing punitive

2  damages.  *See* Miller Decl. ¶ 6 and Exh. C at 37:7-19.  In other words, Plaintiff wants to use

3  her purported "emotional distress" and "stress" to her benefit, while at the same time

4  preventing Defendants from conducting discovery into her purported emotional distress.[12]

5  Such backhanded tactics should not be permitted.  Not only should Plaintiff be precluded

6  from testifying about stress or emotional distress in any way or at all at trial, but such

7  evidence or testimony should likewise be accorded no weight for purposes of deciding

8  Defendants' motions *in limine*.

9

10  **C.     Pande's Fifth Cause Of Action For Retaliation In Violation Of The FEHA Should
        Not Include Allegations Relating To Pande's Ultimate Termination Or Other
11       Alleged Adverse Actions After April 2003.**

12
        Pande's fifth cause of action for retaliation alleges that Pande complained about
13
   gender and race discrimination and harassment by her former supervisor, Rex Mitchell, and
14
   that those complaints were a motivating factor in subsequent adverse employment
15
   decisions.  As she points out in her trial brief, the Second Amended Complaint alleges that
16
   "Pande's complaints were a motivating factor in, *inter alia,* the Defendant's adverse
17
   decisions related to Pande's compensation, job assignment, and termination." (See SAC ¶
18
   70)  What she fails to point out, however, is that over the course of this litigation and
19
   particularly in opposing Defendants' Motion For Summary Judgment, the scope of this
20
   cause of action was both clarified and limited by Pande's attorney.  Pande should not be
21
   permitted to expand the scope of her claim at this late date.  Indeed, given the complete
22
   dearth of evidence supporting such claims as well as Pande's express admissions
23
   concerning the scope of her allegations, Pande's current position can only be described as
24
   gamesmanship – an unfair and unsupported plea to the emotions of jurors.

25

26        [12]  Indeed, Plaintiff's own doctor indicated in a medical certification submitted to
27  UnumProvident on or about November 13, 2003, that there were no "[f]actors complicating recovery
   (including psychological issues)." Supp. Miller Decl. ¶ 7 and Exh. D.

28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

17

1    The law is clear – a statement made by an attorney is generally admissible against

2    the client. *See Totten v. Merkle,* 137 F.3d 1172, 1176 ("Under the federal rules, a statement

3    made by an attorney is generally admissible against the client."). Moreover, statements

4    contained in legal briefs and at oral argument may also constitute binding admissions upon

5    the party making them. *See American Title Insurance Co. v. Lacelaw Corp.,* 861 F.2d 224,

6    227 (9th Cir. 1988) ("statements of fact contained in a brief *may* be considered admissions of

7    the party in the discretion of the district court."); *United States v. One Heckler-Koch Rifle,*

8    629 F.3d 1250, 1253 (7th Cir. 1980) (finding that representations of counsel in a brief, as

9    opposed to a pleading or affidavit, may be treated as an admission). Since Pande's counsel

10   has made it abundantly clear on several occasions that Pande is ***not*** alleging that her

11   ultimate termination was motivated by complaints about Rex Mitchell, Pande should now be

12   bound by those admissions.

13

14   Pande's Opposition to Defendants' Motion For Summary Judgment ("MSJ

15   Opposition") unequivocally delineates Pande's allegations. She points to five actions which

16   she alleges constituted adverse actions in retaliation for complaining about Rex Mitchell.

17   Her Opposition states:

18       Pande suffered adverse employment actions in the form of (1) receiving a
19       rating of "average" in April 2002; (2) receiving a lower salary increase in April
         2002; (3) Mitchell's failure to promote her; (4) repeated negative performance-
20       related comments by Mitchell, thwarting Pande's ability to attain career goals;
         and (5) being forced to take a career step backwards into the SASBU
21       position." (MSJ Opposition: 22:21-24; 24:6-7)

22   There is no evidence anywhere – either in her summary judgment Opposition or even in her

23   deposition testimony – of complaints about Mitchell playing any role in her ultimate

24   termination from employment.[13]

25   _____

26       [13] Indeed, Pande's MSJ Opposition brief alleges that her termination – as distinguished from
     the adverse actions set forth above – resulted from her request for and taking of medical leave and
27   that Jack Dunn (her supervisor from December 2002 through December 2003) "scuttle[d]" her
     opportunities to find alternate employment. (MSJ Opposition 11:1-13:5)

28

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND
IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF**
Case No. C 04-5107 CW

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

Although Pande's Opposition brief alone is sufficient to limit the fifth cause of action, the Court elicited significant oral argument on precisely this issue – *which actions Pande alleged were committed in retaliation for her complaints about Mitchell.*  Again, Pande's counsel made **no** mention of any actions post-dating April 2003 and **no** mention of anything having to do with Pande's ultimate termination in December 2003.  As seen below, the discussion on this topic once again clearly delineated the scope of Pande's retaliation claim.

**THE COURT:**  WELL, IF YOU COULD JUST BULLET-POINT FOR ME THE DATES OF WHAT YOU ARE CALLING YOUR ADVERSE EMPLOYMENT ACTIONS THAT CONSTITUE YOUR RETALIATION.

**MR. LEBOWITZ:**  THE FIRST ADVERSE EMPLOYMENT ACTION WAS IN -- WAS IN APRIL OF 2002, WHICH WAS THE – THE NEGATIVE RANKING, AND, THEREFORE, THE NEGATIVE SALARY ACTION THAT WENT ALONG WITH IT.
THE FALL OF 2002, SEPTEMBER, OCTOBER TIME FRAME WHERE WE'RE TALKING ABOUT – AT LEAST THAT WE KNOW OF.  THAT'S WHEN WE KNOW IT HAPPENED.  WE DON'T KNOW WHEN IT HAPPENED IN BETWEEN THERE, BUT THERE WAS THE NEGATIVE COMMENTS THAT MR. MITCHELL MADE TO THE FOLKS AT THE CONGO GROUP ABOUT –

[…]

**THE COURT:**  I'M JUST ASKING FOR BULLET POINTS.  NOW – THE CONGO GROUP, THAT'S NO. 2.  WHAT'S NO. 3?

**MR. LEBOWITZ**: NO. 3 IS THE – IS PUSHING HER INTO THE NEGATIVE – WHAT WE DRAW FROM THAT IS THE FACT THAT SHE ENDED UP IN THIS OTHER GROUP WITH JACK DUNN IN A POSITION THAT SHE DIDN'T WANT TO TAKE AND WAS BASICALLY TOLD THIS IS THE ONLY ONE FOR YOU AND YOU'VE GOT TO GO.  AND THEN –

**THE COURT:** WELL –

**MR. LEBOWITZ:**  AND THAT WAS DECEMBER – THAT ENDED UP –

[…]

**THE COURT:**  SO SHE GOT THE SOUTH AFRICA JOB BECAUSE MITCHELL MADE HER GET THE SOUTH AFRICA JOB.

19

1

2

3

  **MR. LEBOWITZ:** THAT'S MITCHELL'S INFLUENCE ON THE PROCESS IS WHAT PUT HER INTO THIS JOB THAT SHE DIDN'T WANT AND WAS A – IN FACT, A CAREER – A BACKWARDS STEP BY MORE THAN TEN YEARS –

  [...]

4

5

6

7

  **THE COURT:** [...] OKAY.  SO SO FAR WE'VE GOT THE SPRING EVALUATION AND THE LACK OF PAY INCREASE.  YOU WANT TO ADD THE CONGO GROUP COMMENTS, BUT THAT'S HEARSAY.  SO WE'RE BACK TO THE SPRING.
  WHAT ELSE THERE?

8

9

10

  **MR. LEBOWITZ:** THERE'S – WELL, THERE'S THE – THERE'S THE CONGO GROUP.  THEN THERE'S THE MOVE INTO THE SOUTH AFRICA GROUP.  THAT'S THE SAME TIME PERIOD, FALL OF '02.  AND THEN APRIL '03 IS THE NEGATIVE SALARY ACTION –

11

  **THE COURT:** SO THAT'S THE NEXT –

12

13

  **MR. LEBOWITZ:** – WHEN SHE'S MOVED INTO THE SOUTH AFRICA GROUP.

14

  [...]

15

16

17

  **MR. LEBOWITZ:** [...]  AND WHEN YOU LOOK TO THE APRIL '03 NEGATIVE SALARY ACTION, WHAT YOU'RE LOOKING AT IS MR. MITCHELL'S FINAL BLOW TO MS. PANDE.  AND THAT'S ALL BASED ON MISS PANDE'S INTERACTIONS WITH MR. MITCHELL THROUGH THE YEAR 2002.  THAT'S WHAT THE '03 PAY ACTION IS ALL ABOUT.

18

  **THE COURT:** OKAY. OKAY.  I GUESS THAT'S IT, THEN.

19

20

21

(Transcript of Proceedings, Friday, January 5, 2007, at 11:9-15:20, attached as Exh. B to Supp. Miller Decl.)

22

23

24

25

26

27

  Given Pande's admission that the April 2003 salary action was the "final blow," any ambiguity concerning her retaliation claim ceased in January 2007, at the latest.  Indeed all of Defendants' pretrial preparation and evaluation with regard to this claim has been premised upon Defendants' understanding that the retaliation claim had to do with alleged actions predating April 2003.  To permit the expansion of this claim – particularly in the

28

**MILLER LAW GROUP**
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

20

1   absence of any evidence suggesting a nexus between Pande's termination and her

2   complaints about Mitchell – would not only severely prejudice Defendants in this action, but

3   could also cause confusion amongst jurors and would undoubtedly waste trail time.

4   Accordingly, it should not be permitted.

5

6                                                    **IV.**

7                                            **CONCLUSION**

8

9          For all reasons stated, Defendants' Motions *in Limine* Number One should be

10  granted and her request to expand the scope of her fifth cause of action for Retaliation in

11  Violation of the FEHA should be denied.

12

13  Dated:  June 5, 2007                          MILLER LAW GROUP
                                                    A Professional Corporation
14

15                                                  By:  _____/S/_____

16                                                       Michele Ballard Miller
                                                         Attorneys for Defendants
17                                                       CHEVRON CORPORATION (f/k/a
                                                         ChevronTexaco Corporation) and
18                                                       CHEVRON INTERNATIONAL
                                                         EXPLORATION & PRODUCTION
19                                                       COMPANY (f/k/a ChevronTexaco
                                                         Overseas Petroleum), a division of
20                                                       Chevron U.S.A. Inc.

21

22

23

24

25

26

27

28

**DEFENDANTS' REPLY MEMORANDUM IN SUPPORT OF MOTION *IN LIMINE* NUMBER ONE AND
IN RESPONSE TO PLAINTIFF'S TRIAL BRIEF**
Case No. C 04-5107 CW

**MILLER LAW GROUP**
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA