1  KEKER & VAN NEST, LLP
   SUSAN J. HARRIMAN - #111703
2  CHRISTA M. ANDERSON - #184325
   710 Sansome Street
3  San Francisco, CA  94111-1704
   Telephone:  (415) 391-5400
4  Facsimile:  (415) 397-7188

5  Attorneys for Plaintiff
   KIRAN PANDE

6

7

8

9                  UNITED STATES DISTRICT COURT

10              NORTHERN DISTRICT OF CALIFORNIA

11

12 KIRAN PANDE,                          Case No. 04-5107 JCS

13                          Plaintiff,   **MOTION FOR ADVERSE INFERENCE**
                                         **INSTRUCTION; MEMORANDUM OF**
14      v.                               **POINTS AND AUTHORITIES IN**
                                         **SUPPORT THEREOF**
15 CHEVRON CORPORATION (f/k/a
   CHEVRONTEXACO CORPORATION), a
16 Delaware corporation,                 Judge:          Hon. Joseph C. Spero
   CHEVRON INTERNATIONAL
17 EXPLORATION & PRODUCTION (f/k/a       Date Comp. Filed:   December 2, 2004
   CHEVRONTEXACO OVERSEAS
18 PETROLEUM COMPANY),                   Trial Date:         October 9, 2007
   a division of Chevron U.S.A., Inc.,
19
                          Defendants.
20

21

22

23

24

25

26

27

28

## I.    INTRODUCTION

Under the Federal Rules of Civil Procedure and this Court's inherent authority, Plaintiff Kiran Pande hereby moves the Court for an instruction that, because of Chevron's refusal to produce documents it has now placed squarely at issue through statements in its opening, the jury may infer that those documents favor Ms. Pande's claims.  Specifically, Ms. Pande requests that the Court give the adverse inference instruction attached as Exhibit A to the Declaration of Christa M. Anderson filed herewith ("Anderson Decl.").  Ms. Pande's proposed instruction advises the jury that it may draw a negative inference from Chevron's failure to produce to Ms. Pande in this litigation its complete selection materials for the positions Ms. Pande sought in Zuwa Omoregie's group in late 2003.

## II.    ARGUMENT

**A.    Ms. Pande issued specific discovery requests for Chevron's selection materials for the positions Ms. Pande sought in Zuwa Omoregie's group.**

Earlier in this case, Ms. Pande requested several categories of documents related to her attempts to obtain a new position within Chevron in 2003, including documents specifically related to the jobs she sought with Zuwa Omoregie.  Kiran Pande's Request for Production of Documents, Set One, Requests Nos. 55, 56, 57, 72, 73, and 74 (Anderson Decl. Exhibit B).  Each of these six requests asked for documents Chevron used in filling the positions Ms. Pande sought.  Request No. 55 requested "[a]ll documents reflecting or relating to PANDE's attempts to find a new position from June 1, 2003 through January 31, 2004."  Request No. 72 specifically requested "[a]ll DOCUMENTS reflecting communications between Zuwa Omeregie [sic] and any other CHEVRON employee regarding the filling of open job positions in Mr. Omeregie's [sic] group during the time period September 1, 2003 through January 31, 2004."  Although Chevron made various objections to Ms. Pande's requests, its responses indicated that Chevron had "conducted a diligent search and a reasonable inquiry and produced non-privileged documents responsive to this request to the extent that such documents relate to Plaintiff's claims herein and were found to exist."  Chevron's Response to Pande's Request for Production, Set One (Anderson Decl. Exhibit C).

1

404302.02

**B.      Chevron admits that it has withheld selection materials for the positions Ms. Pande applied for in Mr. Omoregie's group.**

Chevron made an intentional decision not to produce its selection materials for the positions Ms. Pande applied for in Mr. Omoregie's group, generally claiming that they were irrelevant.  Specifically, at his deposition on April 6, 2006, Mr. Omoregie was asked about the selection process for the petroleum engineer jobs Ms. Pande applied for in his group.  See Anderson Decl. Exhibit D.  Mr. Omoregie indicated that the "selection record" included his notes of the committee's comments about all of the candidates the committee considered, including Ms. Pande, and the supervisor feedback that the committee considered (id. at 28:21-29:24).  Mr. Omoregie also said that he had this document in his computer at Chevron (id. at 23:22-24:1), and had looked at it several months before when he was asked to produce it to Chevron's lawyers (id. at 29:25-30:5).  Chevron had not previously disclosed the selection record's existence to Ms. Pande.

Chevron's counsel stated on the record that Mr. Omoregie had produced the selection record and other documents related to the jobs "to legal, and we produced the ones that are responsive to the [document] request." Id. at 23:6-8.  However, she indicated that "[t]he selection is not part of this lawsuit" and was not produced because "I believe it took place after she notified a charge [sic] about this particular selection." Id. at 23:11-16.  In short, Chevron generally appeared to take the position that the documents did not need to be produced because, according to Chevron, they were not relevant.

Chevron has not produced these withheld documents concerning the positions with Mr. Omoregie.[1]

**C.      In its opening, Chevron has now placed the materials it has withheld squarely at issue.**

Chevron delivered its opening statement in this case on October 9, 2007.  Chevron's opening statement has placed all of its selection materials for the positions Ms. Pande sought

---

[1] Ms. Pande issued a subpoena requiring Mr. Omoregie to bring the selection record to trial if he should appear (Anderson Decl. Exhibit E), but not requiring his appearance if he would not otherwise testify.  September 19, 2007 letter from Christa Anderson to Michele Miller & Lisa Hamasaki (Anderson Decl. Exhibit F).  Because Chevron is no longer producing Mr. Omoregie

MOTION FOR ADVERSE INFERENCE INSTRUCTION; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF
CASE NO. 04-5107 JCS

404302.02

1  squarely at issue, directly negating Chevron's earlier claim that the withheld documents are not

2  relevant to its defense.  Specifically, Chevron revealed in its opening statement that it will argue

3  that Ms. Pande's employment at Chevron ended because she is a "prideful woman" who

4  consistently exaggerated her own abilities, ranking herself in a way no other applicants did, and

5  sought positions well above her station at the company.  Transcript of Chevron's Opening

6  Statement (Anderson Decl. Exhibit G), at 164:10-11 ("prideful woman"); id. at 164:22-25 ("And

7  typically most people evaluate themselves with some tens, some nine's, some seven's.  Every

8  one of Kiran Pande's self-evaluation[s] for every facet of every job was a ten."); id. at 179:17-19

9  (stating that one key "reason that Kiran wasn't selected was . . . because she was applying for

10  positions above her level").  The complete materials that Chevron considered and used to fill the

11  positions Ms. Pande sought in Mr. Omoregie's group, including both Chevron's materials

12  evaluating candidates and competing candidates' own self-evaluations and other submissions,

13  are plainly directly relevant to assessing the truth of these characterizations made by Chevron in

14  opening.

15  **D.  Ms. Pande's requested instruction is necessary and proper to avoid severe prejudice to Ms. Pande from Chevron's failure to produce its complete selection materials.**

16

17  **1.  Ms. Pande is prejudiced by Chevron's decision to withhold documents directly relevant to rebutting assertions advanced by Chevron during its opening statement.**

18

19  Because Chevron has not produced its complete selection materials, Ms. Pande cannot

20  adequately refute Chevron's claim that those materials support its defense as outlined in its

21  opening.  Chevron undoubtedly knew well in advance of trial that it intended to pursue the

22  arguments set forth in its opening statement, making the withheld selection materials relevant to

23  its defense.  Chevron had a clear duty to produce its complete documents related to its defense in

24  this action, in response to Ms. Pande's requests, and to supplement its discovery disclosures and

25  responses upon learning that previous responses were incomplete or incorrect in any material

26  respect.  Fed. R. Civ. P. 26(e).  The duty to supplement or correct earlier discovery responses

27  continues even after the close of scheduled discovery.  Adv. Comm. Notes on 1993 Amendments

28  to testify, as it had planned, the subpoena is no longer in effect.

3

MOTION FOR ADVERSE INFERENCE INSTRUCTION; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF
CASE NO. 04-5107 JCS

404302.02

1   to FRCP 26(e) ("Supplementations . . . should be made . . . with special promptness as the trial

2   date approaches"). Chevron's duty to produce documents in compliance with the Federal Rules

3   also does not depend on the existence of a discovery order compelling production of specific

4   documents, and the Court can hold Chevron accountable for misconduct in discovery even

5   absent such an order. Residential Funding Corp. v. DeGeorge Financial Corp., 306 F.3d 99, 106-

6   07 (2d Cir. 2002).

7           2.      **Ms. Pande's requested adverse inference instruction is the proper remedy to
                    Chevron's improper withholding of documents.**
8

9           Ms. Pande requests an adverse inference instruction, submitted as Ex. A to the Anderson

10  Declaration filed herewith, to address the prejudice created by Chevron's withholding of

11  documents. The instruction is necessary to prevent Chevron from exploiting its failure to

12  produce complete selection-related materials for the jobs Ms. Pande sought with Mr. Omoregie,

13  thus gaining an unfair advantage during trial.

14          Under its inherent judicial powers, the Court can issue instructions or exclude evidence as

15  necessary to provide a fair and orderly trial, where a party has destroyed or otherwise improperly

16  withheld evidence from its opponent. See Unigard Security Ins. Co. v. Lakewood Eng'g & Mfg.

17  Corp., 982 F.2d 363, 368 (9th Cir. 1992). The Court has the inherent power and broad discretion

18  to sanction Chevron for disregarding its discovery obligations here, even absent any prior

19  discovery order, and should do so by providing the adverse inference instruction Ms. Pande

20  requests. See Residential Funding, 306 F.3d at 106-07. In a similar case, the Second Circuit

21  held that a district court had erred by refusing such an instruction where a party had failed to

22  produce certain emails in its control in time for trial. Id. at 107. Although some culpable state of

23  mind is required, bad faith is not: a knowing or negligent failure to produce relevant evidence

24  under one's control can also justify an adverse inference instruction. Id. at 108. This rule

25  ensures that the party responsible for the absence of the evidence bears the risk of any

26  uncertainty about what it would show, preventing any unfairness to the party not at fault. Id.

27          An adverse inference instruction is appropriate here, under the Residential Funding test.

28  First, Chevron has control over the documents in question, which are from its own internal files

MOTION FOR ADVERSE INFERENCE INSTRUCTION; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF
CASE NO. 04-5107 JCS

404302.02

1   and were made available to Chevron's counsel during this litigation.  Second, the documents are

2   at the heart of Chevron's defenses, as confirmed in Chevron's opening statement.  Third,

3   Chevron has knowingly or negligently failed to produce them, although it clearly knew or should

4   have known that they were relevant to its defenses in this action.  See id. at 107; World Courier

5   v. Barone, No. 06-3072 THE, 2007 WL 1119196, *1 (N.D. Cal. April 16, 2007) (endorsing

6   Residential Funding's test for adverse inference instructions and noting that several district

7   courts in California have done so).

**III.   CONCLUSION**

9       For all the foregoing reasons, Ms. Pande respectfully requests that the Court instruct the

10  jury that it may draw an adverse inference from Chevron's failure to comply with its discovery

11  obligations, by providing the proposed instruction submitted as Exhibit A to the Anderson

12  declaration accompanying this motion.

13                                              Respectfully submitted,

14  Dated:  October 12, 2007                    KEKER & VAN NEST, LLP

15

16

17                              By:   /s/ Christa M. Anderson
                                      SUSAN J. HARRIMAN
                                      CHRISTA M. ANDERSON
18                                    Attorneys for Plaintiff
                                      KIRAN PANDE
19

20

21

22

23

24

25

26

27

28

MOTION FOR ADVERSE INFERENCE INSTRUCTION; MEMORANDUM OF POINTS AND AUTHORITIES
IN SUPPORT THEREOF
CASE NO. 04-5107 JCS

404302.02