Michele Ballard Miller (SBN 104198)
Janine S. Simerly (SBN 102361)
Kerry McInerney Freeman (SBN 184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.<br><br>　　　　　Defendants. | Case No. C 04-5107 JCS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ADVERSE INFERENCE INSTRUCTION; MEMORANDUM OR POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Trial Date:　　October 9, 2007<br>Time:　　　　8:30 a.m.<br>Place:　　　　Courtroom D, 15th Floor<br><br>Complaint filed:　December 2, 2004<br><br>Honorable Joseph C. Spero |

## I.   INTRODUCTION

Defendants notified Plaintiff of the existence of the selection record for Mr. Omoregie's ETC Petroleum Engineering positions **more than sixteen months ago.**  At that same time, Defendants explained the reason that it was not produced in this action – that it is not relevant since neither Plaintiff's Civil Complaint nor her administrative complaint allege wrongful conduct on the part of Defendants in 2004.   Although Plaintiff's then counsel indicated an intent to bring a motion to compel, no such motion ever ensued.  Indeed, despite numerous discussions between counsel regarding this subject, Plaintiff let the issue drop.

Now – more than a year and a half later – and in the midst of trial, Plaintiff's belated attempt to raise the issue by seeking an adverse inference instruction is unwarranted and should be denied.  Her contention that Defendants put this document squarely at issue by vague references to Plaintiff's pattern of indicating "10s" on self-assessment forms – a pattern which Plaintiff admitted during her testimony – is likewise without merit.

## II.   STATEMENT OF FACTS

Plaintiff's Complaint alleges that "[t]hroughout the Fall of 2003, Pande attempted to find another job within Chevron", that on or about November 17, 2003, she learned from Jack Dunn of her impending termination, and that she was terminated effective December 31, 2003.  (SAC ¶¶ 27, 34)  **No where does it allege that Plaintiff was wrongfully denied any Chevron positions in 2004.**  Not surprisingly, Plaintiff's administrative complaint – which closed on December 9, 2003 – also fails to mention any purportedly wrongful conduct in 2004. (*See* Exhibit 71; *see also* SAC ¶ 35)   For this

1

1 reason, Defendants have consistently taken the position that job selection documents post-dating January 1, 2004 are neither relevant to this lawsuit, nor reasonably calculated to lead to the discovery of admissible evidence.

Nonetheless, in January 2006, Plaintiff propounded document requests seeking job selection records and other documents dating from September 21, 2003 through January 31, 2004.  (*See* Exhibit B to Anderson Declaration filed in support of Plaintiff's Motion for Adverse Inference Instruction ("Anderson Dec.")).  Chevron objected to these requests on the grounds that such requests were overly broad as to both ***time*** and subject matter, and were not reasonably calculated to lead to the discovery of admissible evidence.  (*Id.*)  Defendants also explained that they would produce non-privileged documents to the extent they related to Plaintiff's claims and were found to exist.  *(Id.)* (*See* Exhibit C to Anderson Dec.)  This Defendants did.

What is clear and indisputable is that there was never any attempt to hide the scope of documents that were produced by Defendants.  Indeed, on April 6, 2006, more than a year and a half ago, a conversation between Plaintiff's former counsel, Noah Lebowitz, and defense counsel addressing this very subject was captured *on the record.* During the deposition of Mr. Zuwa Omoregie, the following exchange took place:

> MS. MILLER:  He [Mr. Omoregie] did.  He produced them [selection records] all to legal, and we produced the ones that are responsive to the request.
> MR. LEBOWITZ:  Well, I will represent to you there was no selection record produced.
> MS. MILLER:  That's correct.  The selection is not part of this lawsuit.
> MR. LEBOWITZ:  Well, who said that?
> MS. MILLER:  I believe it took place after she notified a charge about this particular selection.  So no, it was not produced.
> MR. LEBOWITZ:  We will have to make a motion on that and bring the witness back to talk about it. (Omoregie Depo. 23:6-19, Miller Dec., Exh. A)

Numerous communications ensued between Mr. Lebowitz and defense counsel over the ensuing months. (Miller Dec. ¶ 4) In fact, two months later, on June 6, 2006, Mr. Lebowitz wrote an email again stating his position and suggesting that, should mediation prove unsuccessful, he would bring a motion to compel. (Miller Dec. Exhibit B, ¶5). No motion followed. Rather, Mr. Lebowitz abandoned the issue and there was no further discussion of these documents for more than 14 months. (Miller Dec. ¶ 6)

On September 19, 2007 – just weeks before trial and 16 months after Mr. Lebowitz threat to file a motion to compel – Plaintiff served a trial subpoena on Mr. Omoregie seeking documents only.[1] (Miller Dec. Exhibit C, ¶ 7) The cover letter accompanying the subpoena explained:

> The enclosed subpoena does not require Mr. Omoregie's attendance at the trial. Rather, if Mr. Omoregie does appear, the subpoena required him to produce at that time a single relevant document he identified at his April 6, 2006 deposition as in his custody: his "selection record" for a petroleum engineering job in ETC with a start date of January 1, 2004, based in San Ramon, California. If Mr. Omoregie does not appear at trial, we will withdraw the subpoena. (Miller Dec. Exh. C)

Although Plaintiff indicated that she had no objection to designating Mr. Omoregie to testify by deposition and *not* to "appear" at trial, inexplicably, she now seeks an adverse inference instruction based upon Defendants' purported failure to produce the document at issue in that now withdrawn subpoena.

---

[1] Mr. Omoregie was not included on Plaintiff's Witness List and Plaintiff never indicated to Defendants any intention of calling Mr. Omoregie to testify in her case-in-chief. Indeed, for each Chevron-affiliated witness included on Plaintiff's Witness List, Plaintiff's counsel asked and received assurances from defense counsel that they would accept service of trial subpoenas. No such request was ever made with regard to Mr. Omoregie.

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

### III.     LEGAL ANALYIS

**A.     Plaintiff Is Not Entitled To An Adverse Instruction As She Can Show Neither Prejudice Nor The Other Elements Necessary For Such An Instruction.**

Plaintiff cannot, in good faith, argue that she suffered prejudice as a result of Chevron's decision not to produce the job selection records from January 2004.  Indeed, to the extent there is prejudice at all, the blame lies squarely on Plaintiff's own counsel who had knowledge of such documents, knowledge of Defendants' position with regard to such documents, and did nothing.  Plaintiff never filed the motion and never brought the issue to the Court's attention.

Where an adverse inference instruction is sought on the basis that the evidence was not produced in time for use at trial, the party seeking the instruction must show:  (1) that the party having control over the evidence had an obligation to timely produce it; (2) that the party that failed to timely produce the evidence had a "culpable state of mind"; and  (3) that the missing evidence is "relevant" to the party's claim or defense such that a reasonable trier of fact could find that it would support that claim or defense.  *Residential Funding Corp. v. DeGeorge Financial Corp.*, 306 F.3d 99, 107 (2d Cir. 2002). Pande cannot satisfy this burden.  Indeed, Defendants had no obligation to produce the documents given that they are not within the scope of Plaintiff's Complaint.  And clearly, Defendants have no culpability as Plaintiff's counsel was told no later than April 2006 of the status of such documents and the basis for Defendants' decision not to produce them. Defendants cannot be "culpable" for Plaintiff's inaction.  *Aniero Concrete Company, Inc. v. New York City Construction et al.*, 308 F. Supp. 2d 164 (S.D.N.Y. 2003) is instructive.

In *Aniero*, defendant Aetna claimed that plaintiff Aniero was prejudicing Aetna's defense by failing to produce documents relevant to Aetna's defense, whose

4

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ADVERSE INFERENCE INSTRUCTION; MEMORANDUM OR POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. C 04-5107 JCS

1 disclosure Aetna had demanded during pre-trial discovery. *Id.* at 184. Aetna requested an
2 adverse inference instruction as a sanction for Aniero's non-production. Prior to trial, Aetna
3 had never complained to the court about the disputed documents. *Id.* at 187. The court
4 denied Aetna's request for an adverse inference instruction relying on the fact that Aetna
5 never made a pre-trial application to the court concerning the discovery dispute but instead
6 made the tactical decision to hold back until trial and then argue that Aniero's failure to
7 produce the supporting documents supported an adverse inference jury instruction. *Id.* In
8 denying Aetna's request, the court found that that Aetna could not demonstrate any
9 resulting prejudice to its defense. *Id.* at 188. Like defendant Aetna in the *Aniero* case,
10 Plaintiff cannot demonstrate prejudice and is not entitled to an adverse inference instruction.

### B. Defendants Had No Obligation To Supplement Their Initial Disclosures To Reference These Documents.

The selection documents at issue have never been – and are still not – relevant to this case as they are beyond the scope of Plaintiff's Civil Complaint as well as her administrative charge. Moreover, contrary to Plaintiff's assertions, Defendants have not put them at issue. Nothing set forth in Defendants' opening statement is contrary. Indeed, none of the excerpts from Defendants' opening statement cited in Plaintiff's motion refer to the selection for Zuwa Omoregie's ETC Petroleum Engineering position. Rather, as was clear in Defendants' opening statement, these comments referred to Plaintiff's pattern in completing her own self-assessment forms across many positions – a pattern which Plaintiff acknowledged during her own testimony.[2] Plaintiff's assertions to the contrary are simply without merit.

---

[2] Indeed, with respect to selection records in this matter, Defendants have produced well in excess of 2,000 pages of job selection and job related documents including both the application materials of Ms. Pande as well as the application materials of other candidates. (Miller Dec. ¶ 9) Plaintiff's decision not to use those documents in her case lies squarely on her.

5
DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR ADVERSE INFERENCE INSTRUCTION; MEMORANDUM
OR POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. C 04-5107 JCS

As Defendants had no intention of using these documents to support their defenses, they had no obligation to identify them in their initial disclosures. *See* Fed. R. Civ. Proc. 26(a)(1). Indeed, even had Defendants decided later to use these documents in support of its case, they had no obligation to supplement initial disclosures under these circumstances. Rather, Federal Rule of Civil Procedure 26 requires parties to supplement initial disclosures and discovery "if the party learns that in some material respect the information disclosed is incomplete or incorrect ***and if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing.***" Fed. R. Civ. Proc. 26(e), emphasis added. As explained in the Advisory Committee Notes:

> The obligation to supplement disclosures and discovery responses applies whenever a party learns that its prior disclosures or responses are in some material respect incomplete or incorrect. There is, however, ***no obligation to provide supplemental or corrective information that has been otherwise made known to the parties in writing or during the discovery process….***
> (Adv. Comm. Notes on 1993 Amendments to Fed. R. Civ. Proc. 26(a)).

Accordingly, where (as here) the other party is clearly aware of the documents at issue, supplementation is unnecessary, and no adverse instruction is warranted.

### IV.   CONCLUSION

For the reasons set forth above, Defendants respectfully requests that the Court deny Plaintiff's Motion for an Adverse Inference Instruction in its entirety.

Dated: October 15, 2007

MILLER LAW GROUP
A Professional Corporation

By: _____/S/_____
Michele Ballard Miller
Attorneys for Defendants