Michele Ballard Miller (SBN 104198)
Janine S. Simerly (SBN 102361)
Kerry McInerney Freeman (SBN184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON
CORPORATION (f/k/a ChevronTexaco
Corporation) and CHEVRON INTERNATIONAL
EXPLORATION & PRODUCTION
(f/k/a ChevronTexaco Overseas Petroleum),
a division of Chevron U.S.A. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE, <br><br>    Plaintiff, <br><br> v. <br><br> CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc. <br><br>    Defendants. | Case No. C 04-5107 JCS <br><br> **DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR MITIGATION INSTRUCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** <br><br> Trial Date:   October 9, 2007 <br> Time:        8:30 a.m. <br> Place:       Courtroom D, 15th Floor <br><br> Complaint filed:   December 2, 2004 <br><br> Honorable Joseph C. Spero |

## I.   INTRODUCTION

Perhaps recognizing the inadequacy of Plaintiff's post-Chevron job search efforts, Plaintiff now seeks an order precluding the jury from considering the insufficiency of her minimal efforts to find work outside the San Francisco Bay Area. In support of her efforts, Plaintiff misstates the law governing mitigation, claiming that an employee is never required to look for work outside her place of residence. However, the law governing mitigation is not as limited as Plaintiff insists. Indeed, the Northern District Court has recognized that there are circumstances where an employee may be required to relocate to satisfy her mitigation obligation. This is one of those cases.

Having chosen to work in the *global oil industry* for an *international* company that required *international mobility* from its employees, Plaintiff's duty to mitigate extends far beyond the San Francisco Bay Area. Plaintiff's request for this inaccurate and misleading jury instruction is meritless, and should be denied.

## II.   STATEMENT OF FACTS

After earning a doctorate in petroleum engineering, Plaintiff chose to work for a Chevron entity that focused on international oil exploration and production. During the time period relevant to this litigation, that entity has been known as Chevron *Overseas* Petroleum, ChevronTexaco *Overseas* Petroleum, and (presently) Chevron *International* Exploration & Production ("Chevron International," for the purposes of this motion).

There has been significant testimony that geographical mobility is important to one's success within Chevron International. There has also been evidence that Plaintiff was well aware of Chevron International's need for geographically mobile employees. Indeed,

1

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR MITIGATION INSTRUCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. C 04-5107 JCS

during her employment with Chevron International, Plaintiff worked internationally. Moreover, after she chose to reject the opportunity to move with her entire business unit from San Ramon to Houston, she sought international positions within the Company.

Furthermore, it is clear that Plaintiff understands the obvious fact that the majority of petroleum engineer jobs are found in locations close to where there is oil – i.e., in locations outside the San Francisco Bay Area. That explains why after leaving Chevron International Plaintiff looked for work in Kazakhstan, Algeria, India and Europe. In fact, Plaintiff's deposition testimony (a party admission) indicates her willingness to work anywhere except Libya, Saudi Arabia and Iraq:

> Q. Did you -- in looking for jobs, did you limit your search to the San Francisco Bay Area?
> A. No.
> Q. Did you look for positions all over the world?
> A. I looked for positions in both the Bay Area ***and in other parts of the world as well***.
> Q. So did you have -- there was no scope, no geographic limitation on your search; is that what you're saying?
> A. When I was -- I looked at, you know, all of the jobs that I could find. And I didn't apply, as I had mentioned before, as I testified to before, to every single job that I saw posted.
> Q. No, I know that. But my question was, was there a geographical limitation on the scope of your search for a job?
> A. ***There wasn't a specific geographical limitation; however, I was focused -- I wasn't looking at jobs in, you know, Iraq and Libya or Saudi Arabia with a great deal of interest in terms of accepting a permanent employment over there.***
> Q. Did you look for jobs in, like, Kazakhstan or that area, like Central Asia?
> A. Yes, I did. I actually applied for a position in Kazakhstan. ***I believe I applied for a position in Kazakhstan and also in Algeria, a position in India and one or more positions in Europe.***
> Q. Were these positions for -- were they petroleum engineer positions?
> A. Are you asking whether the title of the position was petroleum engineer?
> Q. Yeah, or close to it as opposed to a corporate planning position?
> A. Those specific positions that I just discussed had technical petroleum engineering as an important dimension of the job, but many of them also had planning and commercial aspects to the job as well. (Pande Depo. 476:10-477:25, emphasis added)

2

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR MITIGATION INSTRUCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. C 04-5107 JCS

Despite obviously understanding that the majority of petroleum engineer opportunities were outside the San Francisco Bay Area, Plaintiff's efforts to find work outside the Bay Area were weak – a fact she now seeks to hide from the jury.

### III.     LEGAL ANALYSIS

#### A.     Plaintiff Misstates The Law Regarding Her Duty To Mitigate.

As the Ninth Circuit has recognized, "[u]nder California law, an employee who has been wrongfully terminated has a duty to mitigate damages through reasonable efforts to achieve other employment." *Boehm v. American Broadcasting Co.*, 929 F.2d 482, 485 (9th Cir. 1991). The "general rule" regarding an employee's duty to mitigate "is that the measure of recovery by a wrongfully discharged employee is the amount of salary agreed upon for the period of service, less the amount which the employer affirmatively proves the employee has earned or with reasonable effort might have earned from other employment." *Id.*, citing *Parker v. Twentieth Century-Fox Film Corp.*, 3 Cal.3d 176, 181 (1970). For an employer to limit damages based on failure to mitigate, the employer must show that the employee failed to look for "other employment [that] was comparable, or substantially similar, to that of which the employee has been deprived; the employee's rejection of or failure to seek other available employment of a different or inferior kind may not be resorted to in order to mitigate damages." *Parker*, 3 Cal.3d at 181-82.

Plaintiff misreads the case law to provide an absolute rule that "work that requires relocation from an employee's place of residence is inferior employment as a matter of law." (Plaintiff's Motion for Mitigation Instruction at 1:16-20.) There is no such absolute rule. Although there are some circumstances where plaintiffs are not required to consider relocation in order to satisfy their duty to mitigate, there are other circumstances —

like the circumstances here — where courts have held that a plaintiff's failure to consider relocation is unreasonable and limits the damages to which the plaintiff is entitled.

### B. Having Chosen To Work In The *Global Oil Industry* For An *International* Company That Required *International Mobility* From Its Employees, Plaintiff's Duty To Mitigate Extends Beyond The San Francisco Bay Area.

As the case law prescribes, the rulings in mitigation cases rest on the determination of whether the alternative employment the plaintiffs rejected or refused to seek is "comparable, or substantially similar, to that of which the employee has been deprived." *Id.* So, for example, one Northern District of California Court flatly rejected a plaintiff's claim that he reasonably turned down a job because it was located a great distance from his California home. *Real v. The Continental Group, 627 F.Supp. 434, 448 (N.D. Cal. 1986).* The *Real* court was particularly swayed by the fact that the plaintiff, like Plaintiff here, had sought earlier to prove he was willing to relocate for the company. *Id.*, citing *Cowen v. Standard Brands*, 572 F.Supp 1576, 1581-1582 (N.D. Ala. 1983).

*Cowen* is particularly instructive. There, the court expressly found that even though an alternative job would have required the plaintiff to relocate, the other job was nonetheless "comparable" under the law. *Id.* In finding that the plaintiff's refusal to accept the other job terminated the plaintiff's entitlement to back pay or front pay, the court explained:

> The Pittsburgh job, while perhaps not as attractive to Mr. Cowan as his Birmingham job, was in the legal sense 'comparable.' … In the corporate real world an employee can expect to be moved from time to time, just as Mr. Cowan has been moved several times ... earlier in his career. The fact that a number of long distance moves occurred during the reorganization which precipitated this lawsuit proves the pre-existing right of [the company] to transfer its salesmen.

*Id.*; *see also Ford v. Nicks*, 866 F.2d 865, 874-75 (6th Cir. 1989) (ruling that a college professor's prior willingness to relocate thousands of miles away from home made her subsequent refusal to relocate unreasonable).

Likewise, in *Hopkins v. Price Waterhouse*, the court substantially reduced the plaintiff's damages award after finding that the plaintiff "failed to make a reasonable effort to obtain similar employment during the years after leaving Price Waterhouse when opportunities elsewhere clearly existed" both "locally and nationwide." *Hopkins v. Price Waterhouse*, 737 F.Supp.1202, 1213-14 (D.D.C. 1990). Faced with evidence remarkably similar to that presented in this case, the court explained,

> Price Waterhouse introduced evidence from job search specialists and principals at various firms that in 1984, after Ms. Hopkins left the firm, there was a significant demand both locally and nationwide for management consultants at Big Eight and other accounting firms, management consulting firms, and within large businesses. Given her extensive successful experience in the management consulting area, it appears that Ms. Hopkins would have been a solid candidate for a high-paying position at many such firms. ***Because Price Waterhouse is a national firm that regularly asks and expects its partners to transfer offices, Ms. Hopkins' duty to mitigate had to include a willingness to consider jobs that would or might take her out of the Washington area***.

*Id*. (emphasis added).

By contrast, the cases Plaintiff relies on – i.e., cases where the courts ruled that the plaintiffs need not consider relocation to satisfy their duty to mitigate – are all distinguishable. In *Parker*, where the plaintiff (Shirley MacLaine Parker) had previously agreed to act in a movie musical to be filmed in Los Angeles, the court ruled that her refusal to accept a different role to be filmed in Australia was reasonable because, among other reasons, the different location rendered the second offer "both different and inferior." *Parker*, 3 Cal.3d at 183. Unlike *Parker*, where the parties had a one-movie contract as

5

opposed to an extended employment relationship that expressly contemplated international assignments, Plaintiff's employment history puts the global job market within the realm of "reasonable" for mitigation purposes.  *See also*, *Cunningham v. Retail Clerks Union Local 1222*, 149 Cal. App. 3d 296, 306-07 (ruling that it was reasonable for a widowed union local office worker to reject a position that required her to relocate.)

In short, Plaintiff chose to work in the *global* oil industry,[1] and by doing so she was obligated to search for jobs beyond the San Francisco Bay Area.

### C. The Current Mitigation Instruction – To Which Plaintiff Agreed Knowing Of Defendants' Position Regarding Her Geographically Limited Job Search – Is Sufficient, And Should Therefore Not Be Supplemented As Plaintiff Proposes.

Plaintiff was aware of Defendants' position that she failed to properly mitigate her damages by unreasonably limiting her search efforts to the San Francisco Bay Area well before submitting the parties' Joint Proposed Jury Instructions in June 2007.  Indeed, Defendants' vocational rehabilitation expert, Andrew M. O'Brien, issued a report on April 9, 2007 indicating his opinions concerning the availability of Petroleum Engineer jobs since 2004 and Plaintiff's efforts to obtain employment comparable to her employment with Chevron International.  (See Proposed Exhibit 307).  That report states: "if she [Plaintiff] limits her job search to the Bay Area and/or makes a career change then she is effectively removing herself from the market place on a voluntary basis." (*Id.*)  Notwithstanding knowledge of these issues, Plaintiff nonetheless agreed to Proposed Jury Instruction No. 62 – "Mitigation of Damages" – and in fact submitted that jury instruction to the Court on June

---

[1] In fact, as the evidence at trial has shown, Plaintiff worked in the "Upstream" side of the oil industry which involves exploration and production (i.e., getting the oil out of rock).  Accordingly, whereas the "Downstream" – or refining – side of the industry may have more presence in the San Francisco Bay Area, the evidence has clearly shown that there are very few "Upsteam" Petroleum Engineering positions in the area.  Indeed, even the job that Plaintiff held in SASBU no longer exists in the area as it was relocated to Houston in December 2003.

21, 2007.[2]  (See Docket No. 126, 06/21/2007, page 94 of 109)  Any effort to change her position at this late date, should be denied.

## IV.   CONCLUSION

For the reasons set forth above, Defendants respectfully requests that the Court deny Plaintiff's motion to limit mitigation evidence to employment opportunities within the San Francisco Bay Area.

Dated:  October 21, 2007                    MILLER LAW GROUP
                                            A Professional Corporation


                                            By:  _____/S/_____
                                                 Michele Ballard Miller
                                                 Attorneys for Defendants

---

[2] The "Mitigation of Damages" jury instruction submitted jointly by the parties on June 21, 2007 has now been adopted by the Court as "Jury Instruction No. 23" in the Court's Proposed Jury Instructions dated October 19, 2007. (See Docket No. 168, 10/19/2007, page 24 of 32)

7

DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR MITIGATION INSTRUCTION; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF
Case No. C 04-5107 JCS