Michele Ballard Miller (SBN 104198)
Janine S. Simerly (SBN 102361)
Kerry McInerney Freeman (SBN184764)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON
CORPORATION (f/k/a ChevronTexaco
Corporation) and CHEVRON INTERNATIONAL
EXPLORATION & PRODUCTION
(f/k/a ChevronTexaco Overseas Petroleum),
a division of Chevron U.S.A. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.<br><br>　　　　　Defendants. | Case No. C 04-5107 JCS<br><br>**DECLARATION OF MICHELE BALLARD MILLER IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**<br><br>Hearing Date:　　December 21, 2007<br>Time:　　　　　　9:30 a.m.<br>Place:　　　　　　Courtroom A, 15th Fl.<br><br>Complaint filed:　December 2, 2004 |

I, MICHELE BALLARD MILLER, declare:

　　　　1.　　I am an attorney at law licensed to practice before the Courts of the

State of California and before this Court. I am a partner in the law firm of MILLER LAW

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

1

GROUP, Professional Corporation, and am the attorney of record for Defendants CHEVRON CORPORATION and CHEVRON INTERNATIONAL EXPLORATION AND PRODUCTION COMPANY, a division of Chevron U.S.A. Inc., ("Defendants") in the above-captioned matter.

2.    I have personal knowledge of the matters set forth herein, except those stated on information and belief.  If called as a witness I could competently testify thereto.

3.    On January 5, 2007, a hearing was held in the United States District Court, Northern District of California, on Defendants' Motion For Summary Judgment Or, Alternatively, Partial Summary Judgment.  The Honorable Claudia Wilken presided at that hearing.  I represented Defendants at that hearing and the Plaintiff Kiran Pande was represented by Noah Lebowitz, then of McGuinn, Hillsman & Palefsky.  Attached and incorporated as Exhibit A is a true and correct copy of the Transcript of Proceedings from that hearing.  The transcript accurately reflects the hearing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.  Executed on this 13th day of November, 2007 in San Francisco, California.

_____
/S/
Michele Ballard Miller

MILLER LAW GROUP
A PROFESSIONAL CORPORATION
LARKSPUR, CALIFORNIA

**DECLARATION OF MICHELE BALLARD MILLER IN SUPPORT OF DEFENDANTS' MOTION FOR JUDGMENT AS A MATTER OF LAW OR, IN THE ALTERNATIVE, MOTION FOR A NEW TRIAL**
Case No. C 04-5107 JCS

# EXHIBIT A

Summary Judgment Transcript.txt


UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE CLAUDIA WILKEN, JUDGE

| | | |
|---|---|---|
| KIRAN PANDE, | ) | |
| | ) | |
| PLAINTIFF, | ) | |
| | ) | |
| VS. | ) | NO. C 04-5107CW |
| | ) | |
| CHEVRON TEXACO CORPORATION | ) | |
| A DELAWARE CORPORATION, | ) | PAGES 1 - 29 |
| ET AL., | ) | |
| | ) | |
| DEFENDANTS. | ) | OAKLAND, CALIFORNIA |
| | ) | FRIDAY, JANUARY 5, 2007 |


TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

FOR PLAINTIFF:          MCGUINN, HILLSMAN & PALEFSKY
                        535 PACIFIC AVENUE
                        SAN FRANCISCO, CALIFORNIA  94133
                BY:  NOAH D. LEBOWITZ, ATTORNEY AT LAW




FOR DEFENDANTS:          MILLER LAW GROUP
                         WOOD ISLAND CENTER
                         60 E. SIR FRANCIS DRAKE BOULEVARD
                         SUITE 302
                         LARKSPUR, CALIFORNIA  94939
                BY:  LISA C. HAMASAKI,
                     MICHELE BALLARD MILLER,
                     ATTORNEYS AT LAW


REPORTED BY:          RAYNEE H. MERCADO, CSR NO. 8258

                                                                2

1    FRIDAY, JANUARY 5, 2007                          10:09 A.M.

2                    P R O C E E D I N G S

3          THE CLERK:  CALLING THE MATTER OF PANDE VERSUS

4    CHEVRON, CIVIL ACTION NO. C04-5107.

5          COUNSEL, PLEASE COME FORWARD, STATE YOUR APPEARANCES

                          Page 1

Summary Judgment Transcript.txt

6      FOR THE RECORD.

7              MR. LEBOWITZ:  GOOD MORNING, YOUR HONOR.  NOAH

8      LEBOWITZ ON BEHALF OF THE PLAINTIFF.

9              MS. MILLER:  GOOD MORNING, YOUR HONOR.  MICHELE

10     BALLARD MILLER ON BEHALF OF THE DEFENDANTS.

11             MS. HAMASAKI:  GOOD MORNING, YOUR HONOR.  LISA

12     HAMASAKI ON BEHALF OF DEFENDANTS.

13             THE COURT:  GOOD MORNING.

14             SO WE HAVE OUR FMLA CLAIMS, THE FIRST ONE BEING THAT

15     MS. -- IS IT PANDE?

16             MR. LEBOWITZ:  YES.

17             THE COURT:  MS. PANDE'S USE OF MEDICAL LEAVE WAS A

18     FACTOR IN HER TERMINATION, WHICH IS TO SAY IN THIS CASE, REALLY

19     A FACTOR IN HER FAILING TO GET OTHER POSITIONS WHICH THEN

20     RESULTED INDIRECTLY IN HER TERMINATION BECAUSE SHE DIDN'T GET

21     OTHER POSITIONS.

22             AND I THINK THAT ONE COULD SAY THAT THERE IS A

23     DISPUTE OF FACT AS TO WHETHER THE -- WHETHER AN OFFER OF A 2004

24     SAN RAMON PROJECT WAS ACTUALLY MADE, AND IF IT WAS MADE, WHETHER

25     IT WAS WITHDRAWN BECAUSE OF THE TAKING OF THE MEDICAL LEAVE.

                                                                3

1              AND ONE MIGHT ALSO SAY THAT THERE'S A DISPUTE OF FACT

2      AS TO WHETHER THE '03 ENGINEER POSITIONS WITH OMOREGIE --

3              MR. LEBOWITZ:  MR. OMOREGIE.

4              THE COURT:  -- WERE NOT GIVEN BECAUSE NEGATIVE

5      STATEMENTS WERE MADE, AND THOSE STATEMENTS WERE INFLUENCED BY

6      THE TAKING OF MEDICAL LEAVE.  SO I WOULD BE INCLINED TO SAY THAT

7      THOSE CLAIMS COULD GO FORWARD.

8              I'M PUZZLED BY THIS CLAIM ABOUT NOT GETTING THE FULL

9      LEAVE ENTITLED TO.  I SUPPOSE THAT MIGHT BE A -- SOMETHING OF A

10     ELEMENT OF DAMAGES FROM THE TERMINATION, BUT I DON'T KNOW WHAT

11     DAMAGES THERE WOULD BE SINCE IT'S UNPAID LEAVE.

                              Page 2

Summary Judgment Transcript.txt

12          MR. LEBOWITZ:  WELL --

13          THE COURT:  AND I GUESS SHE WAS ON -- ON THE

14    DISABILITY, SHORT-TERM DISABILITY.

15          MR. LEBOWITZ:  CORRECT.

16          THE COURT:  I SUPPOSE WITH PROBABLY PAID LEAVE, AND

17    THAT'S A TOTALLY DIFFERENT QUESTION.

18          MR. LEBOWITZ:  RIGHT.  THE FOCUS OF THE CLAIM ON THE

19    NOT GETTING THE FULL LEAVE IS THE -- IS NOT GETTING THE FULL

20    PROTECTION OF THE FMLA, WHICH IS THE FULL LEAVE PLUS THE

21    REINSTATEMENT TO THE JOB OR COMPARABLE JOB AT THE END OF THE

22    LEAVE.  AND ASSUMING THAT THE 2004 OFFER TO REMAIN IN SAN RAMON

23    WAS, IN FACT, MADE, THEN SHE WOULD HAVE BEEN GIVEN -- HAD SHE

24    BEEN GIVEN HER FULL LEAVE AND ALLOWED TO CONTINUE ON LEAVE

25    THROUGH THE FULL EXTENT OF HER 12 WORK WEEKS AND REPORT BACK,
                                                                    4
1     THEN SHE WOULD HAVE HAD A JOB.

2           THE COURT:  THE 2004 JOB.

3           MR. LEBOWITZ:  EXACTLY.

4           THE COURT:  SO THAT'S THE SAME CLAIM.  THERE'S

5     NOTHING DIFFERENT ABOUT IT.

6           MR. LEBOWITZ:  IT IS AN ELEMENT OF THE SAME CLAIM,

7     BUT IT IS TECHNICALLY -- UNDER THE LAW, IT IS A SEPARATE --

8     THERE ARE SEPARATE CLAIMS FOR -- INTERFERENCE, NOT GETTING THE

9     FULL AMOUNT OF LEAVE.  IT'S ESSENTIALLY THE SAME THING, BUT

10    TECHNICALLY UNDER THE LAW, IT COULD BE READ TO BE SEPARATE

11    CLAIMS.

12          THE COURT:  HMM, BUT I DON'T REALLY SEE THAT, BUT I

13    GUESS IT'S NEITHER HERE NOR THERE.  IN TERMS OF POLICIES, I

14    DON'T SEE ANYTHING WRONG WITH THE DEFENDANTS' POLICIES.  I DON'T

15    SEE ANY VIOLATION WITH THE FMLA THERE.

16          REGARDING THE FEHA CLAIMS, TURNING FIRST TO THE

17    GENDER AND NATIONAL ORIGIN CLAIMS, ORIGINALLY THE ARGUMENT WAS

Summary Judgment Transcript.txt

18    THE STATUTE OF LIMITATIONS ARGUMENT, WHICH IS -- APPEARS TO BE

19    SOMEWHAT WELL TAKEN.   THE ONLY ARGUMENT I CAN SEE -- WELL, I'M

20    NOT EVEN SURE THIS IS THE ARGUMENT.

21            WHAT IS YOUR ARGUMENT WITH RESPECT TO THE CONTINUING

22    VIOLATION?   WHAT VIOLATION CONTINUED?

23            MR. LEBOWITZ:   THE -- REX MITCHELL'S CONTINUED -- I

24    MEAN -- IT IS BOTH -- MAKES UP THE RETALIATION CLAIM AND IS --

25    ALSO CAN BE SEEN AS A GENDER AND NATIONAL ORIGIN CLAIMS, WHICH

                                                              5

1    IS THAT REX MITCHELL'S CONDUCT CONTINUING THROUGH 2002 AND

2    CONTINUING TO -- TO INTERFERE WITH MS. PANDE'S ATTEMPTS TO GET

3    OTHER JOBS, BAD-MOUTHING HER WITHIN THE ORGANIZATION, WHICH, AS

4    WE'VE DEMONSTRATED --

5            THE COURT:   TELL ME WHAT MITCHELL -- WHAT IS THERE

6    EVIDENCE OF THAT MITCHELL DID AFTER DECEMBER 6TH OF 2002 THAT

7    COULD POSSIBLY HAVE BEEN GENDER OR NATIONAL ORIGIN

8    DISCRIMINATION.

9            MR. LEBOWITZ:   WELL, FIRST OF ALL, DECEMBER 9TH IS

10    THE DATE THAT MISS PANDE BEGAN WORKING IN THE OTHER UNIT, SO

11    THAT'S THE DATE THAT WE USE.

12            THE COURT:   I DON'T THINK SO.   I THINK THE DATE IS

13    THE LAST DATE THAT SHE WORKED FOR MITCHELL UNLESS HE WAS OVER

14    HER HOUSE AT THE WEEKEND DOING SOMETHING.

15            MR. LEBOWITZ:   WELL, IN APRIL 2003, IN FACT, MITCHELL

16    HAD DIRECT IMPACT ON MISS PANDE'S PAY.   THE TESTIMONY FROM JACK

17    DUNN AND THE DOCUMENTARY EVIDENCE FROM JACK DUNN'S DEPOSITION IS

18    THAT MISS PANDE DID NOT RECEIVE A MERIT PAY INCREASE IN APRIL OF

19    2003.

20            THE COURT:   SO --

21            MR. LEBOWITZ:   AND THAT THE REASON THAT SHE DID NOT

22    GET THAT RAISE WAS BECAUSE OF INPUT FROM REX MITCHELL AND THAT

23    INPUT CAME IN THE BEGINNING OF 2003.

                              Page 4

Summary Judgment Transcript.txt

24          THE COURT:  AND YOU SEE THAT AS GENDER AND NATIONAL

25   ORIGIN DISCRIMINATION?

                                                              6

1           MR. LEBOWITZ:  AS WELL.  I MEAN, IT'S ALL PART OF --

2    AND PARCEL OF THE COURSE OF CONDUCT ALL MOTIVATED BY HIS BIAS

3    TOWARDS HER AND IN -- IT'S ALSO -- AND IT ALSO MAKES UP THE

4    RETALIATION CLAIM AS WELL.

5           THE COURT:  OKAY.  WELL, THEN THE SECOND ARGUMENT

6    THAT THE DEFENDANTS MAKE AND THIS IS INCORRECTLY MADE ONLY IN

7    THEIR REPLY AND THAT IS THAT THERE ISN'T A PRIMA FACIE CASE --

8    THERE ISN'T ANY EVIDENCE AT ALL OF THE GENDER OR NATIONAL ORIGIN

9    DISCRIMINATION ON THE MERITS.

10          YOU DIDN'T HAVE A CHANCE TO ADDRESS THAT SINCE IT WAS

11   ONLY RAISED IN THE REPLY, AND I'M NOT SURE WHETHER I'LL CONSIDER

12   IT.  BUT WHAT WOULD -- WHAT WOULD YOU SAY ABOUT EVIDENCE THAT

13   WHATEVER BAD WAS DONE WAS DONE BECAUSE OF GENDER AND NATIONAL

14   ORIGIN?

15          MR. LEBOWITZ:  WELL, WE HAVE THE TESTIMONY OF

16   MISS PANDE AND THE DECLARATION OF MISS VICTORIA THOMPSON WHEREIN

17   THEY BOTH STATE UNDER OATH THAT -- THAT MR. MITCHELL ONLY

18   TREATED THEM, THE ONLY TWO WOMEN IN THE GROUP, IN A NEGATIVE WAY

19   AND THAT THEY WERE THE ONLY TWO WHO WERE RATED AS A TWO,

20   AVERAGE, MEETS EXPECTATIONS, HOWEVER YOU WANT TO CATEGORIZE IT.

21   IT'S NOT A ONE.  ALL THE MEN WERE CATEGORIZED AS ONE.

22          NOW, THERE'S --

23          THE COURT:  HOW DID THEY KNOW THAT?

24          MR. LEBOWITZ:  WELL, THIS IS WHAT MS. THOMPSON PUT IN

25   HER DECLARATION, THAT SHE TALKED TO THE OTHER MEN IN THE GROUP

                                                              7

1    AND, IN FACT, THAT'S WHAT SHE HAD BEEN TOLD.

2           THE COURT:  WOULDN'T THAT BE HEARSAY?

3           MR. LEBOWITZ:  IT COULD BE, BUT IT COULD ALSO BE -- I

                                Page 5

Summary Judgment Transcript.txt

4    THINK WE COULD FIND A WAY TO SAY THAT IT'S ADMISSIBLE.  BUT AT

5    THE STAGE OF SUMMARY JUDGMENT, I THINK, YOU KNOW, THAT WHAT WE

6    LOOK AT IS, IS THERE A POSSIBILITY THAT IT COULD BE ADMISSIBLE

7    AT TRIAL.  AND THAT KIND OF STATEMENT, I THINK, IS BECAUSE IT'S

8    EVIDENCE OF A STATE OF MIND OF MR. MITCHELL.  AND, THEREFORE, IT

9    COULD BE ADMISSIBLE.

10              AND WITH THAT STATE OF MIND --

11              THE COURT:  IT'S PRETTY CLEARLY NOT ADMISSIBLE.  NOW,

12    IT'S AN OBJECTIVE FACT WHO GOT TWOS AND WHO GOT ONES.  AND I

13    DON'T -- IS THAT IN EVIDENCE?  DO YOU KNOW WHO GOT TWOS AND WHO

14    GOT ONES IN THAT GROUP?

15              MS. MILLER:  YEAH.  AND MS. PANDE WAS IN THE MIDDLE

16    OF THE PACK.  I DON'T THINK -- I WOULD -- I'D LIKE TO RESERVE

17    'CAUSE I DON'T -- NOT ONLY DISAGREE WITH A LOT OF WHAT THE

18    OPPOSING COUNSEL IS SAYING, IT'S JUST NOT IN THE RECORD.  AND

19    IT'S NOT IN THE OPPOSITION EITHER.

20              THE COURT:  WELL, WHAT I'M ASKING YOU, THOUGH, IS, IS

21    IT IN THE RECORD THAT PEOPLE -- THAT MEN GOT TWOS -- THAT ANY

22    MEN IN THAT UNIT GOT TWOS?

23              MS. MILLER:  YES, REX MITCHELL'S SUPPLEMENTAL

24    DECLARATION IN '03.

25              MR. LEBOWITZ:  AGAIN, RIGHT, WHICH IS ONLY PART OF

8

1    THE REPLY -- IF IT'S IN THE RECORD AT ALL, IT'S PART OF THE

2    REPLY.  BUT WHAT'S IN THE RECORD AS PART OF THE ORIGINAL PAPERS

3    AND AS PART OF THE OPPOSITION IS THE TESTIMONY OF MISS PANDE AND

4    THE TESTIMONY OF MISS THOMPSON.

5              THE COURT:  SO YOU'RE SAYING THAT ONLY THE WOMEN GOT

6    TWOS AND ALL MEN GOT ONES.  ANYTHING ELSE?

7              MR. LEBOWITZ:  AND THERE'S THE NATIONAL ORIGIN

8    DISCRIMINATION, WHICH IS THE COMMENT -- THE "TOWEL HEADS"

9    COMMENT.

```
                        Summary Judgment Transcript.txt
10              THE COURT:  RIGHT.  THE PROBLEM WITH THAT IS YOU

11    DON'T HAVE ANY ADMISSIBLE EVIDENCE OF IT.  IF IRIS OWENS, WHO'S

12    THE PERSON WHO SUPPOSEDLY HEARD IT, NOW SAYS SHE DIDN'T HEAR IT,

13    THERE'S NO EVIDENCE THAT.

14              MR. LEBOWITZ:  WELL, I THINK THAT'S A CREDIBILITY

15    ISSUE BECAUSE WE HAVE TESTIMONY THAT'S IN THE RECORD FROM GARY

16    YAMASHITA, WHO SAID THAT AFTER -- WHO TESTIFIED THAT AFTER

17    MISS PANDE RELATED THIS "TOWEL HEADS" COMMENT TO HIM, THAT

18    MR. YAMASHITA HIMSELF WENT TO MISS OWENS AND ASKED, IS THIS

19    TRUE.

20              THE COURT:  RIGHT, BUT THAT'S STILL HEARSAY.  IT'S

21    STILL OWENS TELLING YAMASHITA THAT SHE HEARD --

22              MR. LEBOWITZ:  BUT I THINK IT BECOMES A CREDIBILITY

23    ISSUE --

24              THE COURT:  IT'S NOT.  THERE'S NO CREDIBILITY IF

25    THERE'S NO ADMISSIBLE EVIDENCE.
                                                                  9
1              MR. LEBOWITZ:  I THINK IT'S ADMISSIBLE UNDER THE --

2    BECAUSE IT'S -- IT'S A STATEMENT OF MR. MITCHELL'S STATE OF

3    MIND.  NOW THE QUESTION --

4              THE COURT:  IT WOULD BE ADMISSIBLE IF HE HAD SAID IT,

5    BUT YOU'VE GOT TRIPLE HEARSAY HERE.  YOU DON'T HAVE AN EXCEPTION

6    FOR --

7              MR. LEBOWITZ:  IF WE START --

8              THE COURT:  -- TWO --

9              MR. LEBOWITZ:  -- MR. MITCHELL'S COMMENT AS BEING A

10    STATE OF MIND AND THEREFORE ADMISSIBLE --

11              THE COURT:  RIGHT.  IF OWENS WERE WILLING TO TESTIFY

12    THAT HE SAID IT, THEN, YES, THAT WOULD DEFINITELY BE A HEARSAY

13    EXCEPTION.

14              MR. LEBOWITZ:  SURE.

15              THE COURT:  BUT IF OWENS WON'T SAY IT, THEN YOU'VE
```

Summary Judgment Transcript.txt

16    GOT A PROBLEM.

17            MR. LEBOWITZ:  OKAY.  AND MR. MITCHELL DENIED IT AT

18    HIS DEPOSITION.  AT THAT POINT, WE HAVE A DISPUTE.  BECAUSE --

19            THE COURT:  BUT NOW YOU DON'T BECAUSE OWENS HAS

20    RECANTED AND SHE WON'T SAY IT, SO YOU DON'T HAVE ANY ADMISSIBLE

21    EVIDENCE THAT IT WAS SAID.

22            MR. LEBOWITZ:  BUT WE HAVE A MORE CONTEMPORANEOUS SHE

23    HAS NOW RECANTED, BUT IN MORE CONTEMPORANEOUS TIME FRAME, SHE

24    ADMITTED IT AND, INDEED, SAID THE REASON WHY SHE DIDN'T WANT TO

25    GO FORWARD WAS BECAUSE SHE FEARED RETALIATION.  THAT'S WHAT

                                                                    10

1    MR. YAMASHITA TESTIFIED TO UNDER OATH.  AND, THEREFORE, I THINK

2    A JURY WOULD BE ENTITLED TO HEAR MOTIVATION FOR A RECANTING WHEN

3    IT'S BEEN REPEATED BY MORE THAN ONE -- MORE THAN ONE PERSON.

4            THE COURT:  HMM.  OKAY.  ANYTHING ELSE?  THERE IS A

5    PRIOR CONSISTENT STATEMENT, BUT I THINK THAT THAT'S -- I DON'T

6    KNOW IF THAT WOULD WORK OR NOT.  ANYTHING ELSE?

7            MR. LEBOWITZ:  NO, YOUR HONOR.

8            MS. MILLER:  YOUR HONOR, CAN I JUST ADDRESS THAT?  I

9    MEAN THIS IS SOMEWHAT --

10            THE COURT:  WELL, COULD -- IF YOU'D WAIT FOR JUST A

11    MINUTE.  WE WERE TALKING ABOUT THE GENDER AND RETALIATION.

12            MR. LEBOWITZ:  WELL, IF WE'RE TALKING ABOUT THE

13    RETALIATION -- WE WERE JUST TALKING ABOUT THE --

14            THE COURT:  I'M SORRY.  GENDER AND NATIONAL ORIGIN.

15            RETALIATION, PROBLEM THERE IS ONE OF CAUSATION.  IF

16    THE RETALIATION -- WELL, THE -- THE PROTECTED CONDUCT TOOK PLACE

17    IN THE SPRING OF '02.

18            MR. LEBOWITZ:  IT TOOK PLACE BEGINNING IN THE SPRING

19    OF '02 THROUGH SUMMER OF '02, YES.

20            THE COURT:  THE PROTECTED CONDUCT?

21            MR. LEBOWITZ:  YES.  SHE CONTINUED -- SHE FIRST WENT

                              Page 8

Summary Judgment Transcript.txt

22   TO JAMES JOHNSON IN MARCH OF '02, AND THEN WENT TO GARY

23   YAMASHITA SOON THEREAFTER, AND THAT CONTINUED THROUGH THE END OF

24   APRIL.

25               AND THEN AS THINGS PROGRESSED THROUGH THE SUMMER, SHE

                                                                    11

1    ALSO WENT BACK TO MR. YAMASHITA AND CONTINUED TO KEEP HIM

2    INFORMED AS TO WHAT THINGS WERE GOING ON.

3               AND IT WAS MR. MITCHELL'S CONDUCT THAT STARTED AFTER

4    THAT MARCH 2002 INTERACTION WITH JAMES JOHNSON THAT MAKES UP THE

5    RETALIATION CLAIM GOING INTO -- INCLUDING THE -- THE

6    BAD-MOUTHING AND THE EVIDENCE THAT WE HAVE ABOUT THE CONGO GROUP

7    AND GOING INTO 2003 WHEN WE TALK ABOUT THE -- AGAIN, THE MERIT

8    INCREASE.  AND IS ALL PART OF THE SAME COURSE OF CONDUCT.

9               THE COURT:  WELL, IF YOU COULD JUST BULLET-POINT FOR

10   ME THE DATES OF WHAT YOU ARE CALLING YOUR ADVERSE EMPLOYMENT

11   ACTIONS THAT CONSTITUTE YOUR RETALIATION.

12               MR. LEBOWITZ:  THE FIRST ADVERSE EMPLOYMENT ACTION

13   WAS IN -- WAS IN APRIL OF 2002, WHICH WAS THE -- THE NEGATIVE

14   RANKING, AND, THEREFORE, THE NEGATIVE SALARY ACTION THAT WENT

15   ALONG WITH IT.

16               THE FALL OF 2002, SEPTEMBER, OCTOBER TIME FRAME WHERE

17   WE'RE TALKING ABOUT -- AT LEAST THAT WE KNOW OF.  THAT'S WHEN WE

18   KNOW IT HAPPENED.  WE DON'T KNOW WHEN IT HAPPENED IN BETWEEN

19   THERE, BUT THERE WAS THE NEGATIVE COMMENTS THAT MR. MITCHELL

20   MADE TO THE FOLKS AT THE CONGO GROUP ABOUT --

21               THE COURT:  YEAH, WELL, THERE AGAIN, YOU HAVE A

22   HEARSAY PROBLEM.  YOU DON'T HAVE ANYONE WHO HEARD HIM SAY THAT

23   WHO IS GOING TO SAY THAT HE SAID IT.  YOU'VE GOT TRIPLE HEARSAY.

24   BUT ANYWAY, GO ON.  WHAT ELSE?

25               MR. LEBOWITZ:  AND THEN WE HAVE --

                                                                    12

1               THE COURT:  RULES OF EVIDENCE, THEY'RE THERE, AND YOU

2    CAN'T GET IN EVIDENCE --

                              Page 9

Summary Judgment Transcript.txt

3              (SIMULTANEOUS. COLLOQUY.)

4          THE COURT:  -- TRIPLE HEARSAY.

5          MR. LEBOWITZ:  SO WE'VE GOT THE FALL TIME FRAME,

6   WE'VE GOT THE CONGO GROUP.  AND, AGAIN, THIS IS EVIDENCE.

7          THE COURT:  I'M JUST ASKING FOR BULLET POINTS.

8   NOW -- CONGO GROUP, THAT'S NO. 2.  WHAT'S NO. 3?

9          MR. LEBOWITZ:  NO. 3 IS THE -- IS PUSHING HER INTO

10  THE NEGATIVE -- WHAT WE DRAW FROM THAT IS THE FACT THAT SHE

11  ENDED UP IN THIS OTHER GROUP WITH JACK DUNN IN A POSITION THAT

12  SHE DIDN'T WANT TO TAKE AND WAS BASICALLY TOLD THIS IS THE ONLY

13  ONE FOR YOU AND YOU'VE GOT TO GO.  AND THEN --

14         THE COURT:  WELL --

15         MR. LEBOWITZ:  AND THAT WAS DECEMBER -- THAT ENDED

16  UP --

17         THE COURT:  THAT'S NOT -- GETTING A JOB IS NOT AN

18  ADVERSE ACTION.  FAILING TO GET A JOB IS AN ADVERSE ACTION.  SO

19  IF YOU WANT TO SAY SHE FAILED TO GET A CERTAIN JOB BECAUSE OF

20  SOMETHING MITCHELL DID AND YOU HAVE EVIDENCE OF THAT, I'D LIKE

21  TO HEAR THAT.  BUT FAILING TO GET A JOB -- I MEAN, GETTING A

22  JOB --

23         MR. LEBOWITZ:  YOUR HONOR, I BELIEVE UNDER THE PATTON

24  VS. GRANT UNIFIED SCHOOL DISTRICT CASE, CALIFORNIA COURT OF

25  APPEAL CASE THAT CAME DOWN AFTER YANOWITZ, IN FACT, THE

                                                        13

1   PLAINTIFF THERE CLAIMED THAT SHE GOT A JOB.  YOU KNOW, THE

2   EVIDENCE THERE WAS THAT SHE GOT A JOB, BUT SHE CLAIMED THAT THE

3   JOB SHE GOT WAS AN ADVERSE ACTION BECAUSE OF THE NATURE OF THE

4   JOB AND THE CONTEXT OF THAT JOB.  SHE WAS A PRINCIPAL AT A

5   MIDDLE SCHOOL AND WAS TRANSFERRED TO ANOTHER PRINCIPAL AT A

6   MIDDLE SCHOOL --

7          THE COURT:  SO SHE GOT THE SOUTH AFRICA JOB BECAUSE

8   MITCHELL MADE HER GET THE SOUTH AFRICA JOB.

                        Page 10

Summary Judgment Transcript.txt

9          MR. LEBOWITZ:  THAT MITCHELL'S INFLUENCE ON THE

10   PROCESS IS WHAT PUT HER INTO THIS JOB THAT SHE DIDN'T WANT AND

11   WAS A -- IN FACT, A CAREER -- A BACKWARDS STEP BY MORE THAN TEN

12   YEARS --

13          THE COURT:  BUT WHAT I NEED IS SPECIFIC THINGS THAT

14   YOU HAVE EVIDENCE OF THAT MITCHELL DID.

15          MR. LEBOWITZ:  WELL, WHAT WE HAVE -- THE ONLY THING

16   WE HAVE EVIDENCE OF IS THROUGH THE CONGO GROUP.  AND THAT IS --

17   YOU KNOW, THIS IS ALL SECRETIVE BEHIND CLOSED DOORS.  THE ONLY

18   THING WE'RE GOING TO BE ABLE TO GET IS SOMETHING LIKE THIS EMAIL

19   THAT WE HAVE FROM TIM MAGNER.

20          AND SO THE ONLY WAY WE'RE EVER GOING TO BE ABLE TO

21   GET ANY EVIDENCE OF WHAT GOES ON BEHIND THESE CLOSED DOOR

22   MEETINGS IS THROUGH INDEPENDENT EVIDENCE THAT'S UNSOLICITED.

23   AND WHEN YOU SOLICIT THE TESTIMONY OF THESE PEOPLE, THEY'RE

24   NEVER GOING TO ADMIT TO IT.

25          THE COURT:  WELL, THAT'S A DIFFICULTY IN OUR SYSTEM
                                                                      14

1    OF LAW, BUT I CAN'T DO ANYTHING ABOUT THAT.

2          WHAT ELSE IS THERE?

3              (SIMULTANEOUS COLLOQUY.)

4          MR. LEBOWITZ:  -- WE BULLET-POINT, AND SO

5    DECEMBER 9TH IS THE DATE WE USE, WHICH IS THE DATE SHE BEGAN IN

6    THE SOUTH AFRICA --

7          THE COURT:  YOU'RE STILL GIVING ME BULLET POINTS OF

8    YOUR CLAIMED ADVERSE ACTIONS BY MITCHELL.  AND WHAT'S THE NEXT

9    ONE AFTER --

10          EXCUSE ME.

11              (SIMULTANEOUS COLLOQUY.)

12          THE COURT:  YOU NEED TO STOP WHEN I TRY TO INTERRUPT

13   YOU --

14              (SIMULTANEOUS COLLOQUY.)
                          Page 11

Summary Judgment Transcript.txt

15          THE COURT:  -- TO GET MORE CLARITY, BECAUSE SHE CAN'T
16   TAKE DOWN BOTH OF US AT ONCE.

17          OKAY.  SO SO FAR WE'VE GOT THE SPRING EVALUATION AND
18   LACK OF PAY INCREASE.  YOU WANT TO ADD THE CONGO GROUP COMMENTS,
19   BUT THAT'S HEARSAY.  SO WE'RE BACK TO THE SPRING.

20          WHAT ELSE THERE?

21          MR. LEBOWITZ:  THERE'S -- WELL, THERE'S THE --
22   THERE'S THE CONGO GROUP.  THEN THERE'S THE MOVE INTO THE
23   SOUTH AFRICA GROUP.  THAT'S SAME TIME PERIOD, FALL OF '02.  AND
24   THEN APRIL '03 IS THE NEGATIVE SALARY ACTION --

25          THE COURT:  SO THAT'S THE NEXT --
                                                                  15

1          MR. LEBOWITZ:  -- WHEN SHE'S MOVED INTO THE
2   SOUTH AFRICA GROUP.

3          THE COURT:  HMM.  WELL, PROXIMITY IN TIME CAN BE
4   EVIDENCE OF CAUSATION, BUT THE -- IT'S GETTING A LITTLE BIT
5   ATTENUATED FROM THE SUMMER OF '02 UP UNTIL APRIL OF '03 FOR THAT
6   PROXIMITY TO REALLY WORK.

7          WHAT DO THE CASES SAY?  SEEMS TO BE ABOUT 90 DAYS.

8          MR. LEBOWITZ:  YANOWITZ, ACTUALLY WHEN WE TALK ABOUT
9   THE CALIFORNIA LAW ON RETALIATION AND WE TALK ABOUT YANOWITZ,
10   THE -- YANOWITZ IS REALLY FOCUSED ON THIS ACCUMULATION OF
11   EVENTS.  THERE'S NOT ONE SWIFT BLOW, YOU KNOW, QUOTE FROM
12   YANOWITZ WHERE IT CAN BE SOMETHING THAT BUILDS OVER TIME AND
13   BUILDS OVER TIME AND CAN ALL BE -- WHEN YOU LOOK BACK ON IN
14   HINDSIGHT CAN SEE IT WAS ALL PART OF A PATTERN OF BEHAVIOR.

15          AND WHEN YOU LOOK TO THE APRIL '03 NEGATIVE SALARY
16   ACTION, WHAT YOU'RE LOOKING AT IS MR. MITCHELL'S FINAL BLOW TO
17   MS. PANDE.  AND THAT'S ALL BASED ON MISS PANDE'S INTERACTIONS
18   WITH MR. MITCHELL THROUGH THE YEAR 2002.  THAT'S WHAT THE '03
19   PAY ACTION IS ALL ABOUT.

20          THE COURT:  OKAY.  OKAY.  I GUESS THAT'S IT, THEN.
                              Page 12

Summary Judgment Transcript.txt

21          YOU MAY RESPOND TO ANYTHING THAT YOU'D LIKE TO

22     ADDRESS THEN.

23          MS. MILLER:  I WOULD, YOUR HONOR.  I -- I THINK THIS

24     ARGUMENT IS A CONTINUATION OF TRYING TO RESPOND TO EVIDENCE THAT

25     IS EITHER COMPLETELY LACKING OR ABSOLUTELY MISQUOTED.  AND I

                                                             16

1      REALLY, FRANKLY, IN -- IN FEDERAL COURT -- I DON'T THINK I'VE

2      EVER DONE AN OPPOSITION OF EVIDENCE CITED IN SOMEBODY'S

3      MEMORANDUM, BUT THE ENTIRE ARGUMENT THERE'S NO CITES TO ANY

4      FACTS.

5          AND A LOT OF WHAT MR. LEBOWITZ JUST SAID, I SAT IN

6      THE SAME DEPOSITIONS AND I GUESS I COULD SAY, WITHOUT CITING ANY

7      FACTS, IS THAT'S NOT WHAT MR. DUNN SAID, AND THAT'S NOT WHAT

8      MR. YAMASHITA SAID, BUT THAT DOESN'T GET US ANYWHERE.

9          BUT WE NEED SOME FACTS, AND WE NEED THE OPPORTUNITY

10     TO ADDRESS THE FACTS THAT WE'RE NOW SAYING OCCURRED.  SO LET'S

11     SEPARATE THE TWO, SORT OF THE JACK DUNN AND REX MITCHELL, WHICH

12     IS KIND OF INTERESTING, BECAUSE IF YOU'RE TALKING ABOUT A

13     CONTINUING VIOLATION, IT MEANS THE SAME TYPE OF CONDUCT --

14          THE COURT:  WELL, I WOULD AGREE WITH YOU THAT WE

15     CAN'T USE DUNN TO RESCUE THE MITCHELL CONDUCT.  BUT WE DO HAVE

16     THE MITCHELL CONDUCT IN APRIL OF '03.  AND ONE MIGHT ARGUE THAT

17     THAT COULD SAVE BOTH THE GENDER AND NATIONAL ORIGIN AND THE

18     RETALIATION.  I RECOGNIZE THAT THERE'S PROBLEMS WITH BOTH, BUT

19     THAT COULD HAPPEN.

20          MS. MILLER:  WELL, THE RETALIATION, THE FAILURE TO

21     GET A JOB, THE THING THAT'S VERY INTERESTING IS WE KEEP CALLING

22     IT THE CONGO GROUP, WE'RE TALK GOING THE SAME BUSINESS UNITS.

23     WE'RE TALKING ABOUT THE SOUTHERN AFRICAN STRATEGIC BUSINESS

24     UNIT.

25          THE COURT:  RIGHT.

                                                             17

Summary Judgment Transcript.txt

1          MS. MILLER:  SHE WANTED A JOB IN THE CONGO, I GUESS,

2    ALTHOUGH OUR EVIDENCE SAYS SHE EXPRESSED NO INTEREST IN IT, AND

3    WHEN SHE WENT TO MITCHELL -- WHEN MITCHELL WENT TO HER ABOUT A

4    POSSIBLE SWAP, SHE SAID, I'M NOT INTERESTED.

5          WE HAVE ANOTHER HR REP WHO SAYS THE SAME THING,

6    'CAUSE THEY CONFIRM WHETHER SHE INTERESTED IN GOING.  THE PERSON

7    THEY WERE DOING A SWAP WITH WAS A FEMALE, AND THAT FEMALE

8    WORKED -- WAS MOVED INTO REX MITCHELL'S GROUP.  SO WHERE'S THE

9    GENDER DISCRIMINATION?

10          THAT APPARENTLY WAS A PLUM ASSIGNMENT THAT MISS PANDE

11   IS NOW VERY UPSET SHE DIDN'T GET.  TWO MONTHS LATER, SHE'S OFF

12   OFFERED A JOB, SAME -- SAME POSITION BUT IN A DIFFERENT OIL

13   FIELD.  AND THAT'S SOMETHING I NEVER WANTED TO GO TO, THE ONE IN

14   JACK DUNN'S.  SO HOW CAN ONE SIDE BE A GREAT ASSIGNMENT AND ON

15   THE OTHER SIDE, IT'S AN ADVERSE -- IT'S AN ADVERSE ACTION.

16          SO I MEAN, THAT'S A LITTLE -- THAT'S A LITTLE

17   DIFFICULT.  IF YOU KIND OF LOOK AT THE FACTS, AND I WOULD REALLY

18   ENCOURAGE THE COURT AND -- PRESUMING WE'VE ALREADY DONE IT, BUT

19   THERE'S A LOT OF EVIDENCE THAT JUST -- WHAT'S CITED, TO THE

20   EXTENT IT'S CITED AT ALL, IT -- THE DEPOSITIONS DON'T SUPPORT

21   WHAT --

22          THE COURT:  WELL, WE LOOK AT THAT.  I MEAN, YOU CAN

23   MENTION SPECIFICS IF YOU WANT TO, BUT REST ASSURED THAT WHEN

24   THERE'S A FACT STATED AND THERE'S NO CITE FOR IT, THAT WE DON'T

25   LEND ANY CREDENCE TO IT.  AND WHEN THIS IS A CITE STATED AND WE

                                                               18

1    LOOK AT IT, WE CHECK TO SEE IF IT REALLY SAYS THAT.  SO YOU

2    DON'T NEED TO WORRY ABOUT THAT.  IF YOU WANT TO MENTION ANYTHING

3    IN PARTICULAR, YOU CAN.

4          MS. MILLER:  THERE'S ALSO ON PAGE 7, LINE 6 AND 7,

5    THERE'S THE DECISION WAS MADE -- THE ISSUE ABOUT WHETHER OR NOT

6    SHE'D GET A RAISE IN '03.  THE -- THE OPPOSITION AND MISS PANDE

Summary Judgment Transcript.txt

```
 7   STATES -- AND I THINK A LOT OF THIS IS -- THIS IS -- I KNOW

 8   MISS PANDE BELIEVES IT.  I KNOW SHE BELIEVES IT VERY STRONGLY.

 9   THERE'S JUST IS NO EVIDENCE -- ANYTHING TO SUPPORT WHAT SHE SAYS

10   THAT THE DECISION TO -- IN TERMS OF GIVING HER THE RAISE WAS

11   MADE BY REX MITCHELL.

12              BUT -- AND THIS IS IN THE DEFENDANTS' OPPOSITIONS TO

13   EVIDENCE AT PAGE 14 AND 15.  AND IT SAYS THAT THERE'S NO MENTION

14   OF MITCHELL.  THAT WAS JACK DUNN.  JACK DUNN'S TESTIMONY IS THAT

15   THAT DECISION WAS MADE WHEN IT WAS -- WHEN THE OPPOSITION WAS

16   FILED, WE BENT BACK TO REX MITCHELL AND WE SAID WHO ELSE IN THE

17   GROUP BECAUSE, APPARENTLY, EVENLY THOUGH IT'S NOT ONE OF THE

18   STATED ADVERSE ACTIONS THAT'S IN THE BRIEF, IN THE -- IN THE

19   OPPOSITION BRIEF, WE WENT BACK AND SAID WHO ELSE IN THE GROUP?

20              AND SHE WAS RATED ALONG WITH EVERYBODY ELSE, AND SHE

21   WAS RIGHT IN THE MIDDLE.  SHE WASN'T THE LOWEST.  SO I GUESS WE

22   COULD GO TO TRIAL, BUT EVERYBODY'S GOING TO SAY THE SAME THING.

23   MISS PANDE BELIEVED SHE WAS THE LOWEST, BUT THE EVIDENCE WAS

24   CONTRARY.  AND SHE HAS NO EVIDENCE WHATSOEVER TO REFUTE THAT.

25              THE COURT:  I'VE LOST YOU HERE.  I THOUGHT WE WERE
```
                                                                19
```
 1   TALKING ABOUT WHETHER MITCHELL HAD INPUT INTO THE DECISION THAT

 2   SHE WOULD NOT GET A RAISE IN APRIL OF '03.

 3              AND ARE YOU SAYING THERE'S NO EVIDENCE --

 4              MS. MILLER:  SHE DID GET A RAISE.

 5              THE COURT:  SHE DIDN'T GET AS HIGH A RAISE --

 6              MS. MILLER:  AS SHE WOULD WANT.

 7                   (SIMULTANEOUS COLLOQUY.)

 8              MS. MILLER:  AND YOU'RE SAYING --

 9              THE COURT:  YOU'RE SAYING MITCHELL DIDN'T HAVE INPUT

10   IN THAT OR --

11              MS. MILLER:  VERY MINIMAL, IF ANY.

12              THE COURT:  WELL, THAT'S ALL IT TAKES.
```

Page 15

Summary Judgment Transcript.txt

13          MS. MILLER:  AND JACK DUNN, WHO WAS IN THAT POSITION,

14    SAYS THAT THAT IS NOT SOMETHING THAT HIS INPUT WAS NOT SOUGHT.

15          THE COURT:  THAT WAS NOT SOMETHING THAT HIS INPUT WAS

16    NOT SOUGHT.

17          MS. MILLER:  HIS INPUT WAS NOT SOUGHT ON --

18          THE COURT:  IF WE COULD TAKE OUT THE DOUBLE NEGATIVE

19    AND THE UNCLEAR PRONOUN AND SAY IT AGAIN.

20          MS. MILLER:  NO.  IN TERMS OF WHO MADE THE DECISION

21    AS TO WHERE SHE FELL WITHIN THE SALARY RANKING IN '03, THAT WAS

22    NOT MITCHELL'S DETERMINATION.

23          THE COURT:  NOT --

24          MS. MILLER:  IT WAS MADE BY HER NEW GROUP.

25          THE COURT:  NOT --
                                                                    20

1           RIGHT.  BUT APPARENTLY MITCHELL HAD SOME INPUT INTO

2     IT.

3           MS. MILLER:  HE GAVE HER A PERFORMANCE REVIEW, BUT

4     THAT'S DIFFERENT FROM THE SALARY ACTION.

5           THE COURT:  HMM.  OKAY.

6           MS. MILLER:  ALL RIGHT.

7           THE COURT:  THERE'S NO --

8           MS. MILLER:  THERE IS NO -- THERE'S NO CONNECTION

9     BETWEEN -- AND ALSO THE CONTINUING VIOLATION, ALLOWING THEM TO

10    GO BACK IS -- SHE'S ALREADY SAID THAT DUNN DID NOT DISCRIMINATE

11    AGAINST HER BASED ON EITHER GENDER OR NATIONAL ORIGIN.

12    MITCHELL, SHE SAYS, DID DISCRIMINATE AGAINST HER BASED ON GENDER

13    AND NATIONAL ORIGIN.  THEY'RE COMPLETELY DIFFERENT.  EVEN IF

14    BOTH OF THEM DISCRIMINATED, YOU CAN'T RELATE THE TWO.  SO

15    THERE'S NO GOING BACK UNDER A CONTINUING VIOLATION THEORY.

16          AND WE DID ADDRESS THIS IN OUR OPPOSITION IN OUR

17    OPENING BRIEF IN TERMS OF MITCHELL'S CONDUCT THAT SHE CONSIDERED

18    DISCRIMINATORY AND WHAT THE COMPANY DID IN RESPONSE TO THE

Summary Judgment Transcript.txt

19    COMPLAINTS THAT SHE DID MAKE IN APRIL OF '02.

20            BUT THE BOTTOM LINE IS THAT IT IS TIME BARRED, THAT

21    SHE FILED HER CHARGE OF DISCRIMINATION AS TO MITCHELL TOO LATE.

22    THEN WE GET TO JACK DUNN'S ALLEGED COMMENT AND WITH HIS ALLEGED

23    CONDUCT, SHE SAYS THAT -- MISS PANDE SAYS THAT JACK DUNN

24    DISCRIMINATED AGAINST HER ONCE HE FOUND OUT THAT SHE WANTED TO

25    TAKE A LEAVE.

                                                            21

1             AND I THINK IF YOU TAKE A LOOK AT THE -- THE TIME

2     FRAME, SHE -- JACK DUNN FINDS OUT IN OCTOBER ON OCTOBER 29TH

3     THAT SHE WANTS TO TAKE A LEAVE.  TEN DAYS LATER, SHE'S ON A

4     LEAVE.  THE ONLY THING THAT HAPPENED IN THAT ENTIRE TEN-DAY

5     PERIOD WAS ONE MEETING WHERE DUNN IS VERY FRUSTRATED ON NOT ONLY

6     MISS PANDE BUT ON THE ENTIRE GROUP, AND HE VENTS, AND HE LETS

7     PEOPLE KNOW.  HE SAYS NOTHING ABOUT HER BEING ON LEAVE.

8             THE COURT:  WELL, HE TALKS ABOUT HER NOT BEING THERE.

9             MS. MILLER:  THAT'S RIGHT.  WHO'S GOING TO DO YOUR

10    WORK IF YOU'RE NOT GOING TO BE HERE?  WHERE'S THE TRANSITION?

11            THE COURT:  THAT I DON'T SEE AS THE ADVERSE ACTION,

12    BUT THE ADVERSE ACTION IS THE WITHDRAWAL OF THE SAN RAMON OFFER

13    AND THE INPUT ON THE '03 ENGINEER POSITION.

14            MS. MILLER:  THE WITHDRAWAL -- FIRST OF ALL, THE ONLY

15    PERSON WHO SAYS THERE'S AN OFFER IS MISS PANDE.

16            THE COURT:  RIGHT.  BUT THAT'S ENOUGH.

17                (SIMULTANEOUS COLLOQUY.)

18            THE COURT:  AT SUMMARY JUDGMENT, ALL THEY NEED IS

19    SOME EVIDENCE, AND IF SHE SAYS IT, SHE SAYS IT.  AND IF SOMEBODY

20    ELSE DISPUTES IT, THAT'S A DISPUTE OF FACT.

21            MS. MILLER:  SEVEN DAYS BEFORE, SHE SENDS AN EMAIL TO

22    HR.

23            THE COURT:  I --

24                (SIMULTANEOUS COLLOQUY.)

                        Page 17

Summary Judgment Transcript.txt
```
25              THE COURT:  I UNDERSTAND THAT --
                                                            22
 1              MS. MILLER:  -- WHAT'S MY SEVERANCE BENEFITS?  WHY

 2   WOULD SHE SEND THAT IF SHE HAS THIS JOB?

 3              THE COURT:  THAT WILL BE AN INTERESTING CREDIBILITY

 4   ARGUMENT --

 5                   (SIMULTANEOUS COLLOQUY.)

 6              THE COURT:  BUT, AGAIN, IF I -- IF I NEED TO CUT YOU

 7   OFF OR REDIRECT, YOU NEED TO STOP BECAUSE THE COURT REPORTER

 8   CAN'T TAKE US BOTH AS WE BOTH KEEP GOING.

 9              MS. MILLER:  I APOLOGIZE.  I KNOW HOW HARD IT IS.

10              THE COURT:  OKAY.

11              SO I UNDERSTAND THE FACTS ABOUT THE MEETING, BUT AS I

12   MENTIONED, THE POINTS THAT I WOULD SEE AS POTENTIALLY FMLA

13   VIOLATIONS WOULD BE THE '04 SAN RAMON OFFER.  I UNDERSTAND

14   THAT'S CONTESTED, BUT ON SUMMARY JUDGMENT, IF THERE'S ADMISSIBLE

15   EVIDENCE ON THE POINT, EVEN THOUGH THERE IS IMPEACHMENT OF THAT

16   ADMISSIBLE EVIDENCE, IT'S STILL A DISPUTE OF FACT.

17              MS. MILLER:  I THINK ON SUMMARY JUDGMENT, THOUGH, IT

18   REALLY HAS TO BE SOME SUBSTANTIAL EVIDENCE.  MISS PANDE SAYING

19   IT HAPPENED IS NOT SUBSTANTIAL EVIDENCE --

20              THE COURT:  IT'S CLEARLY --

21              MS. MILLER:  -- PARTICULARLY IN LIGHT OF WHAT -- WHAT

22   THE EVIDENCE DOES SHOW.  ON ONE HAND, SHE'S SAYING THAT JACK

23   DUNN WANTED TO GET RID OF HER 'CAUSE SHE TOOK A LEAVE.  ON THE

24   16TH, SHE ASKED WHAT HER SEVERANCE BENEFITS ARE.  SHE TELLS JACK

25   DUNN THAT SHE'S TAKING A LEAVE.
                                                            23
 1              I GUESS SOMETIME IN THAT PERIOD, EVEN THOUGH HE

 2   WANTED TO GET RID OF HER BECAUSE SHE WAS TAKING A LEAVE, HE

 3   OFFERS HER A JOB.  I MEAN, IT DOESN'T MAKE ANY SENSE.

 4              THE COURT:  AS I SAY, THOSE WILL BE INTERESTING

 5   CREDIBILITY ARGUMENTS THAT YOU CAN MAKE TO A JURY, BUT IT'S A
                          Page 18
```

Summary Judgment Transcript.txt

6    JURY WHO HAS TO DECIDE CREDIBILITY, NOT THE COURT ON ANY SUMMARY

7    JUDGMENT.

8            SO IF YOU WANT TO ADDRESS A DIFFERENT POINT, GO

9    AHEAD.

10            MS. MILLER:  THERE'S ONLY TWO JOBS THAT ARISE AFTER

11    SHE ANNOUNCES THE LEAVE, SO WE'RE TALKING ABOUT TWO JOBS IN

12    OMOREGIE'S GROUP.

13            THE COURT:  RIGHT.  THOSE ARE THE ONES THAT I

14    MENTIONED.

15            MS. MILLER:  THERE'S NO CHARGE PENDING ON EITHER OF

16    THEM.  THERE WAS A CHARGE THAT WAS FILED THE BEGINNING OF

17    DECEMBER.

18            THE COURT:  RIGHT, BUT THESE ARE FMLA CLAIMS.

19            MS. MILLER:  TRUE.

20            THE ONLY EVIDENCE THERE IS THAT OMOREGIE SPOKE TO

21    JACK DUNN AND JACK DUNN SAID TO ZUWA -- AND THIS IS -- DUNN SAYS

22    THE SAME THING.  HE USES THE WORD "FOCUS."  ZUWA PUTS IT A

23    LITTLE BIT DIFFERENTLY, THAT WE'RE MOVING TO HOUSTON.  WHEN IT

24    WAS ANNOUNCED, MS. PANDE IS TECHNICALLY VERY PROFICIENT, BUT SHE

25    LOST FOCUS AT -- ONCE THE MOVE WAS ANNOUNCED.  BUT SHE STILL HAD

                                                    24

1    A JOB IN HOUSTON.

2            WHERE'S THE -- WHERE'S THE FMLA VIOLATION IN

3    REPEATING SOMETHING LIKE THAT, PARTICULARLY WHEN THE ONLY OTHER

4    EVIDENCE -- THAT THIS IS SOMEBODY THAT THE PLAINTIFF DEPOSED IS

5    ONE OF HER COWORKERS WAS MUCH MORE HARSH IN SAYING THAT, YEAH,

6    SHE LOST FOCUS.  SHE WASN'T AROUND.  SHE DIDN'T COME TO WORK.

7    AND HOW CAN THAT BE TIED TO A WANTING TO GET RID OF HER BECAUSE

8    SHE WAS TAKING A FMLA LEAVE?

9            AND ALSO WHY DIDN'T JACK SAY, WHY IS SHE APPLYING FOR

10    YOUR JOB?  SHE'S GOING TO BE WORKING IN SAN RAMON WITH ME.  SO

11    IF THOSE ARE THE ONLY TWO, THEN THE EVIDENCE -- THERE'S NO

                            Page 19

Summary Judgment Transcript.txt

12    EVIDENCE OR AT LEAST SUFFICIENT EVIDENCE TO WITHSTAND SUMMARY

13    JUDGMENT ON THOSE TWO PARTICULAR JOBS THAT JACK DUNN -- OR SHE

14    DIDN'T GET THE JOB BECAUSE SHE WAS TAKING A FMLA LEAVE,

15    PARTICULARLY IN LIGHT OF THE OTHER MEMBERS OF THE SELECTION

16    COMMITTEE AND THEIR INDEPENDENT FEELINGS ABOUT MS. PANDE AND HER

17    PERFORMANCE.

18           THE COURT:  OKAY.  DID YOU HAVE ANY BRIEF REPLY

19    REMARKS?

20           MR. LEBOWITZ:  JUST ON THE -- THE CLAIM THAT THERE'S

21    NO EVIDENCE IN THE RECORD ON MR. MITCHELL'S INPUT IN THE 2003

22    SALARY ACTION.  ON PAGE 7, LINE 7, WE CITE SEVERAL PORTIONS OF

23    MR. DUNN'S DEPOSITION WHERE HE EXPLAINS HOW HE, IN FACT, HAD NO

24    INPUT ON THE 2003 RAISE ISSUE, THAT HE SAYS, QUOTE, IT WOULD

25    HAVE BEEN INAPPROPRIATE FOR ME TO HAVE ANY INPUT ON IT BECAUSE

                                                              25

1    IT WOULD HAVE BEEN ALL UNDER THE RUBRIC AND THE JURISDICTION OF

2    PRIOR YEAR'S SUPERVISOR, WHICH WAS MR. MITCHELL.

3           OTHERWISE, I DON'T THINK I HAVE ANYTHING.

4           THE COURT:  OKAY.  WELL, I'LL ISSUE A WRITTEN ORDER,

5    BUT IT'S THE -- AT LEAST THE FMLA CLAIMS WILL PROCEED, PROBABLY

6    THE RETALIATION CLAIM AND POSSIBLY THE GENDER AND NATIONAL

7    ORIGIN CLAIM, BUT I'LL GIVE THAT SOME FURTHER THOUGHT.

8           AND IN TERMS OF CASE MANAGEMENT, YOU'VE TRIED TO

9    SETTLE THE CASE WITH MARK RUDY AND REACHED AN IMPASSE, I GUESS.

10   PERHAPS WHEN THE ORDER COMES OUT AND AFTER OUR DISCUSSION HERE

11   TODAY, I THINK ANOTHER SESSION WITH MR. RUDY WOULD BE --

12          MS. MILLER:  YOUR HONOR, I THINK WE'VE TRIED TO

13   SETTLE THIS THREE TIMES.

14          THE COURT:  MAYBE SO, BUT NOW YOU'LL HAVE AN ORDER

15   THAT WILL GIVE YOU A LOT MORE INFORMATION ABOUT WHAT'S GOING TO

16   REMAIN FOR TRIAL, SO I THINK IT WOULD BE USEFUL TO TRY AGAIN.

17   AND I WOULD SUGGEST YOU GO BACK TO MR. RUDY.

Summary Judgment Transcript.txt

18          I COULD SEND YOU TO A MAGISTRATE JUDGE IF YOU DON'T

19    WANT TO GO BACK TO MR. RUDY.  BUT THIS STRIKES ME AS THE KIND OF

20    CASE THAT HE'S QUITE GOOD AT IN SETTLING AND QUITE GOOD AT

21    EVALUATING, SO I WOULD SUGGEST YOU GO BACK TO HIM SINCE HE'S

22    FAMILIAR WITH IT, AND GIVE HIM MY ORDER AND THE COMMENTS THAT

23    WERE MADE TODAY AND WHOEVER -- WELL, I DON'T KNOW IF ANYONE

24    ISN'T LISTENING TO HIM, BUT WHOEVER ISN'T MIGHT RECONSIDER THEIR

25    THOUGHTS AND MAYBE HE'LL CHANGE HIS EVALUATION ONCE HE SEES THE

                                                                26

1     OUTCOME OF THE SUMMARY JUDGMENT MOTION.  I DON'T KNOW.

2           SO, AGAIN, UNLESS SOMEBODY DECLINES TO GO BACK TO HIM

3     AND WANTS ME TO ORDER YOU TO A MAGISTRATE JUDGE INSTEAD --

4           MR. LEBOWITZ:  NO, WE'RE MORE THAN HAPPY TO

5     RE-APPROACH MR. RUDY.

6           MS. MILLER:  I THINK THE ONLY ISSUE IS COST.  WE HAVE

7     TRIED THOSE THREE TIMES.  CAN WE -- CAN WE HAVE A MOMENT TO TALK

8     TO THE CLIENT?  WE HAVE -- WE HAVE TRIED TO SETTLE THIS THREE

9     TIMES BEFORE, AND UNDER ALL OF THEM, I BELIEVE DEFENDANT HAS

10    PICKED UP ALL THE COSTS.

11          MR. LEBOWITZ:  NO, THAT'S NOT CORRECT.  THAT WAS ONLY

12    THE FIRST.  THAT WAS THE ONLY FIRST ONE.

13          MS. MILLER:  RIGHT.

14          THE COURT:  SO YOU'RE WILLING TO SPLIT IT?

15          MR. LEBOWITZ:  OF COURSE.

16          MS. MILLER:  THAT'S FINE.

17          THE COURT:  OKAY.

18          THEN YOU'RE SET FOR TRIAL ON APRIL 16TH.  I HAVE A

19    CRIMINAL CASE SET THAT'S SUPPOSED TO START ON THE 9TH.  I CAN

20    NEVER BE SURE IF THOSE ARE GOING TO GO.  IF IT DOES, THOUGH,

21    IT'S A THREE-WEEK TRIAL, AND YOU WOULD EITHER HAVE TO TRAIL IT

22    OR GET RESCHEDULED.  IF IT --

23          MS. MILLER:  I --

                            Page 21

Summary Judgment Transcript.txt

24          THE COURT:  AND IF THE CRIMINAL CASE DOES GO AWAY AND

25  YOUR CASE IS TRIED, I -- I WILL PROBABLY BE OUT ON THE 23RD OF

                                                               27

1  APRIL, SO WE WOULD HAVE TO GO FROM -- AND I HAVE YOU DOWN FOR 12

2  DAYS, BY THE WAY.  YOU'RE SAYING 15.  I THINK 12 IS PLENTY.

3          MR. LEBOWITZ:  YES.

4          THE COURT:  WE'LL DIVIDE THAT BY TWO, AND THAT'S --

5          MR. LEBOWITZ:  I THINK THAT'S MORE THAN ENOUGH.

6          THE COURT:  OKAY.  GOOD.

7          SO EVEN TO KEEP THE 12 DAYS, THOUGH, WE'D GO THE 16TH

8  THROUGH THE 19TH, THEN WE'D GO THE 24TH THROUGH THE 26TH, AND

9  THEN WE'D GO THE 30TH THROUGH THE 3RD.  AND IF NECESSARY, I

10  GUESS WE COULD FINISH UP ON THE 7TH OF MAY.

11          AND YOU'VE GOT A PRETRIAL CONFERENCE SET.  WHEN IS

12  YOUR PRETRIAL CONFERENCE?

13          THE CLERK:  MARCH 30TH.

14          THE COURT:  MARCH 30TH.  OKAY.  SO THAT WILL WORK.

15          SO I THINK THAT'S ALL I HAVE, THEN, IN TERMS OF CASE

16  MANAGEMENT.  SO I'LL GET THE ORDER OUT AS QUICKLY AS I CAN.

17  SHOULDN'T BE TOO LONG.

18          SO IF YOU WANT TO GO AHEAD AND GET A DATE WITH

19  MR. RUDY, SAY, IN THE NEXT -- AFTER NEXT WEEK, LET'S SAY.

20          MS. MILLER:  I WAS GOING TO SAY GOOD LUCK.

21          MR. LEBOWITZ:  HE'S PRETTY BOOKED THROUGH JUNE

22  PROBABLY.

23          THE COURT:  IS THAT RIGHT?

24          MS. MILLER:  WE MIGHT HAVE TO COME BACK TO YOU FOR

25  OTHER REASONS.

                                                               28

1          THE COURT:  OKAY.  WELL, AS LONG AS HE'S HAD YOU

2  BEFORE, HE MIGHT BE -- HE KNOWS THE CASE AND EVERYTHING.  HE

3  MIGHT BE WILLING TO SQUEEZE YOU IN SOMEWHERE.

Summary Judgment Transcript.txt

4          MS. MILLER:  YOUR HONOR, CAN I JUST SAY ONE THING?  I

5    DO HAVE A TRIAL THAT STARTS MAY 11TH IN ALAMEDA SUPERIOR COURT,

6    SO IF -- IF YOU -- IF YOUR CRIMINAL TRIAL WENT FORWARD, I COULD

7    NOT TRAIL.  I WOULD HAVE TO RESET.

8          THE COURT:  OKAY.

9          MS. MILLER:  UNLESS MY OTHER CASE DISAPPEARS OR

10   SOMETHING ELSE HAPPENS TO IT.

11         THE COURT:  YEAH, THAT'S -- HOW MANY TIMES HAVE YOU

12   BEEN SET?

13         MS. MILLER:  RIGHT.  THAT'S WHY I'M -- RIGHT, BUT I

14   JUST FELT I NEEDED --

15         THE COURT:  NO, YOU SHOULD.  NO, THAT'S FINE.

16         MS. MILLER:  WHETHER IT ACTUALLY HAPPENS, I DON'T

17   KNOW.

18         THE COURT:  RIGHT.  WELL, WE'LL JUST HAVE TO WAIT

19   UNTIL THE TIME COMES, AND YOU CAN KEEP IN TOUCH WITH

20   MISS CAHILL, AND SHE CAN LET YOU KNOW WHAT HAPPENS WITH THE

21   CRIMINAL CASE.  IT'S A CASE CALLED U.S. V. GARZA, SO YOU CAN --

22         MR. LEBOWITZ:  ON THAT SAME NOTE, YOUR HONOR, I'M

23   SORRY.  I ALSO SET IN ALAMEDA I THINK ON THE 3RD -- WHATEVER

24   THAT FRIDAY IS, THE FIRST FRIDAY OF MAY.

25         THE COURT:  THE 4TH.

                                                        29

1          MR. LEBOWITZ:  THE 4TH.  I'M 80 PERCENT SURE THAT'S

2    GOING TO GO AWAY, BUT OF COURSE IT'S ALSO A FIRST SETTING.

3          THE COURT:  OKAY.  WELL, WE'LL JUST HAVE TO WORK

4    SOMETHING OUT.  IF YOU DON'T GO ON THE 16TH, WE'LL HAVE TO

5    FIGURE OUT WHAT WE CAN DO --

6          MS. MILLER:  OKAY.

7          THE COURT:  -- FOR TRIAL UNLESS YOU DO SETTLE IT IN

8    THE MEANTIME, WHICH I WOULD SUGGEST THAT YOU MAKE SOME EFFORTS

9    TO DO.

Summary Judgment Transcript.txt

10          OKAY.

11          MS. MILLER:   THANK YOU.

12          MR. LEBOWITZ:   THANK YOU VERY MUCH, YOUR HONOR.

13          MS. HAMASAKI:   THANK YOU, YOUR HONOR.

14          (PROCEEDINGS WERE CONCLUDED AT 10:43 A.M.)

15                          --oOo--

16

17

18

19

20

21

22

23

24

25

CERTIFICATE OF REPORTER

          I, RAYNEE H. MERCADO, OFFICIAL REPORTER FOR THE UNITED

STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY CERTIFY

THAT THE FOREGOING PROCEEDINGS IN C04-5107CW, PANDE V. CHEVRON,

ET AL., WERE REPORTED BY ME, A CERTIFIED SHORTHAND REPORTER,

AND WERE THEREAFTER TRANSCRIBED UNDER MY DIRECTION INTO

TYPEWRITING; THAT THE FOREGOING IS A FULL, COMPLETE AND TRUE

RECORD OF SAID PROCEEDINGS AS BOUND BY ME AT THE TIME OF

FILING.

          THE VALIDITY OF THE REPORTER'S CERTIFICATION OF SAID

TRANSCRIPT MAY BE VOID UPON DISASSEMBLY AND/OR REMOVAL FROM THE

COURT FILE.

Summary Judgment Transcript.txt

RAYNEE H. MERCADO, CSR, RMR, CRR, FCRR

FRIDAY, APRIL 27, 2007