Michele Ballard Miller (SBN 104198)
Janine S. Simerly (SBN 102361)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON
INTERNATIONAL EXPLORATION AND
PRODUCTION (formerly known as
CHEVRONTEXACO OVERSEAS PETROLEUM
and improperly sued as CHEVRONTEXACO
OVERSEAS PETROLEUM PACIFIC COMPANY)
AND CHEVRON CORPORATION (formerly
known as CHEVRONTEXACO CORPORATION)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE,<br><br>                    Plaintiff,<br><br>          v.<br><br>CHEVRON CORPORATION (f/k/a<br>CHEVRONTEXACO CORPORATION), a<br>Delaware corporation, CHEVRON<br>INTERNATIONAL EXPLORATION &<br>PRODUCTION (f/k/a<br>CHEVRONTEXACO OVERSEAS<br>PETROLEUM COMPANY), a division of<br>Chevron U.S.A., Inc.,<br><br>                    Defendants. | Case No. 04-5107 JCS<br><br>**DEFENDANTS' MEMORANDUM IN<br>OPPOSITION TO PLAINTIFF'S<br>MOTION FOR ATTORNEYS' FEES<br>AND EXPENSES**<br><br>Date:        December 14, 2007<br>Time:        9:30 a.m.<br>Judge:      Hon. Joseph C. Spero |

# TABLE OF CONTENTS

Page

INTRODUCTION ........................................................................................... 1

ARGUMENT .................................................................................................. 2

I.    PLAINTIFF HAS NOT MET HER BURDEN TO PROVE THE REQUESTED
      ATTORNEYS' FEES ARE REASONABLE. ......................................................... 2

      A.    Plaintiff Has Not Met Her Burden To Show Reasonable Rates. ..................... 2

      B.    The Requested Rates Are Not Reasonable. ............................................. 4

            1.    Susan Harriman ............................................................................ 4

            2.    Christa Anderson and Noah Lebowitz ............................................... 6

            3.    Audrey Walton-Hadlock .................................................................. 7

            4.    Jo Weingarten and Katherine Florey .................................................. 7

            5.    Nancy Dao .................................................................................. 7

            6.    Unidentified case assistants ............................................................ 8

      C.    The Requested Hours Are Not Reasonable. .............................................. 8

            1.    Jury instructions ............................................................................ 9

            2.    Substitution of counsel .................................................................... 10

            3.    Clerical time ................................................................................. 11

            4.    Trial preparation ............................................................................ 11

            5.    Time awaiting jury verdict and on post-verdict press releases ............... 11

      D.    Further reduction of the lodestar is warranted due to plaintiff's partial
            success. ....................................................................................... 12

II.   COMPUTERIZED LEGAL RESEARCH FEES ARE NOT ALLOWABLE
      COSTS. ........................................................................................... 14

CONCLUSION .............................................................................................. 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Abad v. Williams, Cohen & Gray, Inc.*, No. C 06-2550 SBA, 2007 WL 1839914 (N.D. Cal. June 26, 2007)................................................................................ 3, 5, 8

*Beaty v. BET Holdings, Inc.*, 222 F.3d 607 (9th Cir. 2000) ........................................ 5, 12

*Bucci v. Chromalloy Am. Corp.*, No. C 85-8768 TEH, 1989 WL 222441 (N.D. Cal. Sept. 15, 1989) ........................................................................................ 6

*Chaid v. Glickman*, No. C98-1004 WHO JCS, 1999 WL 33292940 (N.D. Cal. Nov. 17, 1999)......................................................................................................... 10

*Davis v. City and County of San Francisco*, 976 F.2d 1536 (9th Cir. 1992)......... 8, 11, 12

*Davis v. KGO-T.V., Inc.*, 17 Cal. 4th 436 (1998) ............................................... 14

*Defenbaugh v. JBC & Assoc.*, No. C-03-0651 JCS, 2004 WL 1874978 (N.D. Cal. Aug. 10, 2004) .................................................................................. 10, 11

*Gates v. Deukmejian*, 987 F.2d 1392 (9th Cir. 1992)...................................... 12

*Hensley v. Eckerhart*, 462 U.S. 424 (1983)................................................. 9, 12

*Jordan v. City of Cleveland*, 464 F.3d 584 (6th Cir. 2006) .............................. 11

*Ladas v. Cal. State Auto. Assn.*, 19 Cal. App. 4th 761 (1993)............................ 14

*Mannick v. Kaiser Found. Health Plan, Inc.*, No C03-5905 PJH, 2007 WL 2892647 (N.D. Cal. Sept. 28, 2007) ............................................................... 2

*Navarro v. Gen. Nutrition Corp.*, No. C 03-0603, 2005 WL 2333803 (N.D. Cal. Sep. 22, 2005)................................................................................ passim

*Petroleum Sales, Inc. v. Valero Ref. Co.*, C 05-3526, 2007 WL 2694207 (N.D. Cal. Sept. 11, 2007)......................................................................................... 8

*Serrano v. Unruh*, 32 Cal.3d 621 (1982) ...................................................... 1

*Sorenson v. Mink*, 239 F.3d 1140 (9th Cir. 2001) ...................................... 9, 11

*Welch v. Metro. Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007) ............................. 8

**Statutes**

Cal. Gov't Code § 12965(b) ................................................................... 2, 14

California Code of Civil Procedure section 1033.5........................................... 14

California Code of Civil Procedure section 1033.5(b)(2) ................................... 14

DEFS' OPP. TO PLTF'S MOT. FOR
ATTYS' FEES, Case No. 04-5107 JCS

1

## INTRODUCTION

2    Plaintiff seeks attorneys' fees and expenses greatly in excess of the "reasonable

3  fees and costs" allowable under the California Fair Employment and Housing Act

4  ("FEHA"). She seeks hourly attorney rates as high as $700 but introduces no evidence

5  that such rates are in line with those prevailing in the community for similar cases.

6  Indeed, she presents no evidence at all regarding rates customarily charged in this area,

7  in direct contradiction of decisions of this Court requiring such proof as a prerequisite to

8  seeking a fee award. In fact, a review of recent decisions shows that plaintiffs'

9  requested hourly rates far exceed those which the courts in this area have found

10  reasonable. For this reason alone, plaintiff's requested fee award must be rejected.

11    Plaintiff's request is excessive in other respects as well. Her requested hours

12  include significant duplicative time her new counsel spent getting up to speed after

13  plaintiff decided to switch counsel shortly before trial. She asks for compensation for

14  time her attorneys spent speaking to the press and issuing press releases after the

15  verdict. She seeks recovery of fees incurred in pursuing her claims under the FMLA and

16  CFRA, which the jury rejected. She seeks payment for the time of four different

17  attorneys who spent nearly 100 hours working on jury instructions. And she seeks

18  compensation for "case assistants" without providing any information about who they are

19  or what they did, except that they made copies of exhibits—clerical work for which no

20  recovery should be permitted.

21    The undocumented and excessive nature of plaintiffs' request would justify the

22  Court in denying plaintiffs' motion in its entirety. *Serrano v. Unruh*, 32 Cal.3d 621, 635

23  (1982) ("A fee request that appears unreasonably inflated is a special circumstance

24  permitting the trial court to reduce the award or deny one altogether."). At the very least,

25  the request must be substantially reduced, as discussed below.[1]

26    [1] Plaintiff's counsel asserts that she met and conferred with defendants' counsel in an
effort to determine if a motion was necessary. Harriman Decl. ¶ 15. This "effort" consisted of a

27  telephone call from Ms. Harriman asking defendants to stipulate to the amount of fees
requested. The only information provided was the total amount requested, Ms. Harriman's

28  hourly rate, and the breakdown of fees between Noah Lebowitz and Keker & Van Nest. Ms.
Harriman provided no back-up documentation supporting the requested amount. The next day,

1

2

## ARGUMENT

3

**I.    PLAINTIFF HAS NOT MET HER BURDEN TO PROVE THE REQUESTED
ATTORNEYS' FEES ARE REASONABLE.**

4

5        The FEHA provides that "the court, in its discretion, may award to the prevailing

6    party reasonable attorney's fees and costs."  Cal. Gov't Code § 12965(b).  According to

7    this Court, "[r]easonable attorneys' fees are calculated using the lodestar approach, in

8    which the court multiplies the number of hours billed by the party's attorneys by a

9    reasonable rate."  *Menlo Logistics, Inc. v. Western Express, Inc.*, No. C-04-4684 JCS,

10   2006 WL 436150, at *6 (N.D. Cal. Feb. 21, 2006).  The lodestar analysis applies to

11   cases in which the federal court exercises supplemental jurisdiction over a FEHA claim.

12   *See Miller v. Vicorp Restaurants, Inc.*, No. C-03-00777 RMW, 2006 WL 212021, at *1

13   (N.D.Cal. Jan. 11, 2006); *Mannick v. Kaiser Found. Health Plan, Inc.*, No C03-5905 PJH,

14   2007 WL 2892647, at *5 (N.D. Cal. Sept. 28, 2007).

15        **A.    Plaintiff Has Not Met Her Burden To Show Reasonable Rates.**

16        "The first step in the lodestar analysis is to establish a reasonable hourly rate for

17   Plaintiff's attorneys and paralegal staff."  *Navarro v. Gen. Nutrition Corp.*, No. C 03-0603,

18   2005 WL 2333803, at *7 (N.D. Cal. Sep. 22, 2005).  The court must consider the

19   "experience, skill and reputation of the applicant, and must look to the rate prevailing in

20   the community for similar work performed by attorneys of comparable skill, experience,

21   and reputation," but "may not merely refer to the rates actually charged to the prevailing

22   party."  *Id.*  "To inform and assist the court in the exercise of its discretion, '[t]he fee

23   applicant has the burden of producing satisfactory evidence, *in addition to* the affidavits

24   of its counsel, that the requested rates are in line with those prevailing in the community

25   for similar services of lawyers of reasonably comparable skill and reputation."  *Menlo*

26   *Logistics, Inc.*, 2006 WL 436150, at *6 (internal quotation marks and citations omitted)

27   _____
     (continued…)

28   when defendants' counsel refused to so stipulate, plaintiff's counsel filed the motion.

1    (emphasis added).  *See Miller*, 2006 WL 212021, at *1 (applying same standard to

2    FEHA case).  This burden is generally met by "provid[ing] affidavits of practitioners from

3    the same forum with similar experience" and "[d]ecisions by other courts regarding the

4    reasonableness of the rate sought."  *Menlo Logistics, Inc.*, 2006 WL 436150, at *6.  *See*

5    *Abad v. Williams, Cohen & Gray, Inc.*, No. C 06-2550 SBA, 2007 WL 1839914, at *2

6    (N.D. Cal. June 26, 2007) ("'Affidavits of the plaintiff's attorney and other attorneys

7    regarding prevailing fees in the community and rate determinations in other cases,

8    particularly those setting a rate for the plaintiff's attorney, are satisfactory evidence of the

9    prevailing market rate.'") (citation omitted).  "The burden does not shift to [the responding

10   party] to produce rebuttal evidence unless and until Plaintiff meets her initial burden."

11   *Navarro*, 2005 WL 2333803, at *8.

12       Plaintiff has not met her burden of demonstrating that her counsel's billing rates

13   are reasonable.  Plaintiff has provided no evidence in support of her requested fee

14   award other than the affidavits of her counsel.

15       Plaintiff requests $750,167.50 in attorneys' fees based on the following hourly

16   rates: $375 for attorney Noah Lebowitz (*see* Lebowitz Decl. ¶ 4) and, $700 (Susan

17   Harriman), $600 (Christa Anderson), $370-380 (various associates), $200 (paralegal

18   Nancy Dao) and $110 (various case assistants) for attorneys and staff from Keker & Van

19   Nest (*see* Harriman Decl. ¶¶ 4-8).  Plaintiff bases these rates solely on "counsel's

20   standard hourly rates."  Mot. at 4.  The declarations of her counsel state only that these

21   are the 2007 billing rates for each timekeeper but make no representation that these

22   rates are "in line with those prevailing in the community for similar services by lawyers of

23   reasonably comparable skill, experience and reputation."  *See Abad*, 2007 WL 1839914,

24   at *2.  Nor does plaintiff otherwise introduce any evidence of rates charged in similar

25   cases by attorneys of comparable skill and experience.  Plaintiff cites to no cases from

26   the Northern District awarding such rates to her counsel or to attorneys of similar

27   experience in cases with similar claims, nor does she provide affidavits from comparable

28   practitioners in the district stating that these rates are reasonable.

1    Even if no evidence other than affidavits from counsel could suffice in some

2    circumstances, the affidavits here are plainly insufficient.  *See Navarro*, 2005 WL

3    2333803, at *7 (affidavits from interested counsel stating only the dates of the attorney's

4    law school graduation and bar admission and a generic statement about the attorney's

5    practice area is not enough to show reasonableness).  For example, Susan Harriman's

6    declaration attaches the attorney profiles and years of experience for only three of the

7    five attorneys from Keker & Van Nest for which plaintiff seeks fees.  None of those three

8    attorneys claim special expertise in the field of employment retaliation or wrongful

9    termination, but instead claim to specialize in "complex business litigation."  Harriman

10   Decl. Exs. A-C.  Neither Harriman nor Lebowitz state that they charge all of their clients

11   (whether an individual or a corporation) the same rate or offer discounts or write-offs or

12   otherwise tailor their rates.  Indeed, they do not assert even that they charged plaintiff

13   their claimed billing rates with no discounts or write-offs. *See Miller*, 2006 WL 212021, at

14   *2 (observing a discrepancy between the "'actual fee customarily charged to fee paying

15   clients,' which often reflects discounts" and the applicant's counsel's claimed billing

16   rates).  And neither affidavit provides information about what plaintiff's attorneys' rates

17   were in fees awarded in other cases in which their other clients prevailed.

18             **B.    The Requested Rates Are Not Reasonable.**

19        Where the applicant provides insufficient evidence of the reasonableness of the

20   requested rates, "the Court must make its own determination regarding the appropriate

21   fee."  *Navarro*, 2005 WL 2333803, at *8.  Although the defendant need not provide

22   rebuttal evidence where the applicant does not meet its burden, below is a comparison

23   of the individually requested rates with reasonable rate determinations made in other

24   cases:

25             **1.    Susan Harriman**

26        Ms. Harriman's asserted billing rate is $700.  Harriman Decl. ¶ 4.  Her firm profile

27   states that she is a partner with Keker & Van Nest who graduated from law school in

28   1983, with a practice that "ranges widely over the field of complex business litigation."

1   *Id.* Ex. A. None of the examples of cases that she has tried or arbitrated that are listed in
2   her profile involve employment retaliation or wrongful termination claims.

3           Because plaintiff has provided no information about prevailing rates in the
4   Northern District of California for employment lawyers of Ms. Harriman's experience
5   level, the court should look to rates awarded by other courts in similar cases. *See, e.g.,*
6   *Abad*, 2007 WL 1839914, at \*\*2-3 (in Fair Debt Collection Practices Act ("FDCPA") case,
7   court looked to rates behind fees awarded in other recent FDCPA cases). In a recent
8   employment discrimination action under FEHA in the Northern District, the court found
9   that $450 per hour was a reasonable rate for Jack Lee, a partner with the firm of Minami
10  Tamaki LLP with over 30 years experience practicing in employment law. *Miller*, 2006
11  WL 212021, at \*3; *see* Jack Lee's profile at *http://www.mltsf.com/lawyer-attorney-*
12  *1067261.html.* In that case, Mr. Lee submitted a declaration stating that, "when he
13  works on an hourly basis, he typically charges between $375 to $495." *Miller*, 2006 WL
14  212021, at \*3, n.4. The plaintiff had also submitted declarations from other local
15  practitioners stating that the hourly rates sought in *Miller* were in line with rates charged
16  for comparable complex employment litigation for individuals, but the court lowered the
17  requested rates. *Id.* at \*2. Given that Ms. Harriman has seven years less experience
18  than Mr. Lee and does not specialize in employment litigation, it is not reasonable to
19  apply a rate for her services that is $250 more than that awarded to the plaintiff in *Miller*
20  for a more experienced attorney. Ms. Harriman's rate should not be higher than $450
21  per hour.

22          Indeed, Ms. Harriman's rate should not be higher than the $375 per hour charged
23  by plaintiff's original counsel, Noah Lebowitz. One of the purposes of fee awards in
24  FEHA actions is to "ensure that neither financial imperatives nor market considerations
25  raise an insurmountable barrier that prevents attorneys from litigating meritorious cases."
26  *Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 612 (9th Cir. 2000). Plaintiff was able to find
27  an attorney, Noah Lebowitz, who would litigate her case for $375. Later, plaintiff elected
28  to switch to more expensive counsel at Keker & Van Nest. Whatever her reasons for

1   making that switch, however (and she nowhere identifies what they were), plaintiff

2   cannot claim that anything more than the $375 per hour that was sufficient for Mr.

3   Lebowitz was necessary to incentivize an attorney to take her case.[2]

4                    **2.    Christa Anderson and Noah Lebowitz**

5          Ms. Anderson's asserted billing rate is $600. Harriman Decl. ¶ 4. Her firm profile

6   states that she is a partner with Keker & Van Nest who graduated from law school in

7   1994 and who "specializes in handling complex and high stakes business litigation." *Id.*

8   Ex. B. None of the "notable cases" listed in her profile involve employment retaliation or

9   wrongful termination claims, but instead focus on copyright infringement, antitrust, trade

10  secret and other business claims. *Id.*

11         Mr. Lebowitz's asserted billing rate is $375. Lebowitz Decl. ¶ 4. Mr. Lebowitz

12  states that he has practiced "exclusively in the area of employment law representing

13  plaintiffs." *Id.* ¶ 3. He graduated from law school in 1996 and has practiced with several

14  firms and now is a partner with his own firm. *Id.* ¶¶ 2-3.

15         Again, because plaintiff has not provided information about rates charged for

16  comparable services in the Northern District of California by attorneys of similar

17  experience levels, the court must look to similar recent cases. In *Miller*, the court

18  determined that $250 per hour was a reasonable rate for John Ota, an attorney with the

19  firm of Minami Tamaki LLP who graduated from law school in 1997 and focuses on

20  employment law litigation. *Miller*, 2006 WL 212021, at *3; *see* John Ota's profile at

21  *http://www.mltsf.com/lawyer-attorney-1067411.html*. Given that Mr. Lebowitz and Mr.

22  Ota have been practicing for nearly the same amount of time in the employment law

23  field, and that Ms. Anderson has more years of experience but without a focus on

24  employment law, $250 per hour is a reasonable rate to be applied to the services of Ms.

25  Anderson and Mr. Lebowitz in this case.

26         [2] Nor can plaintiff claim that Keker & Van Nest's higher rates were warranted due to the
    novel or complicated issues in the case, as this was a straightforward retaliation action. *See*
27  *Bucci v. Chromalloy Am. Corp.*, No. C 85-8768 TEH, 1989 WL 222441 (N.D. Cal. Sept. 15,
    1989) (finding reduction of award "appropriate in light of the lack of novelty or complexity of . . .
28  straightforward discrimination action").

### 3.    Audrey Walton-Hadlock

Ms. Walton-Hadlock's asserted billing rate is $370.  Harriman Decl. ¶ 5.  Her firm profile states that she is an associate with Keker & Van Nest who graduated from law school in 2004.  *Id.* Ex. C.  She has no particular experience in employment litigation. Given that she has only been practicing for three years, it is unreasonable that plaintiff seeks to apply the same billing rate to Ms. Walton-Hadlock's services that she seeks to apply to the services provided by her other attorney, Noah Lebowitz, who claims to have 11 years of specialized employment law experience.  Although defendants have not located a recent employment discrimination case in this district establishing a reasonable rate for services provided by an attorney of Ms. Walton-Hadlock's exact experience level, in a case involving FEHA and the FMLA, Judge Armstrong of the Northern District found that $150 per hour was a reasonable rate for an attorney with limited experience in discrimination and employment litigation.  *Navarro*, 2005 WL 2333803, at *10.

### 4.    Jo Weingarten and Katherine Florey

Plaintiff attempts to recover fees for two "associates" at Keker & Van Nest whose asserted billing rates are $380 and $370 per hour.  Harriman Decl. ¶ 7.  No information about these associates' education, litigation experience, skill or reputations is provided. With no evidence regarding the reasonableness of the rates for these attorneys, plaintiff should not recover any of their fees.  Presented with this very situation in *Navarro*, the court determined that a reasonable hourly rate would be $150.  2005 WL 2333803, at *10.

### 5.    Nancy Dao

Nancy Dao is a paralegal whom Ms. Harriman claims is one of Keker & Van Nest's "most experienced paralegals" and has assisted Harriman in other trials. Harriman Decl. ¶ 6.  Ms. Dao's asserted billing rate is $200 per hour.  *Id.*  Plaintiff provides no information about Ms. Dao's education or years of experience.  This evidence is insufficient to meet plaintiff's burden of proof.  *See Navarro*, 2005 WL 2333803, at *11.  Services provided by Ms. Dao should not be compensated at a rate

1   higher than the attorneys in the case. In *Navarro*, the court found that the paralegals
2   should be compensated at $65 per hour. 2005 WL 2333803, at *11 (although plaintiff
3   provided no evidence that this rate was reasonable, defendant did not challenge the
4   requested rate). In *Miller*, the court found that $115 per hour was reasonable for
5   paralegals who apparently did not have a law degree. 2006 WL 212021, at *3, n.5.

6   ## 6.   Unidentified case assistants

7   Plaintiff seeks compensation for the work performed by "case assistants" at a rate
8   of $110 per hour. Harriman Decl. ¶ 8. No names, experience or education are provided
9   for these staff. Nor does plaintiff reveal how many case assistants worked on the case.
10  Plaintiff does not contend that the case assistants are paralegals. The work performed
11  by the case assistants is described as "making copies of exhibits and witness binders."
12  *Id.* This is non-legal, clerical work which is not recoverable as attorneys' fees. *See*
13  *Davis v. City and County of San Francisco*, 976 F.2d 1536, 1543 (9th Cir. 1992) ("time
14  spent on clerical matters should not have been included in the attorneys' fees award").

15  ## C.   The Requested Hours Are Not Reasonable.

16  "The next step in calculating the lodestar is for the Court to determine the number
17  of hours reasonably expended in the litigation." *Navarro*, 2005 WL 2333803, at *11.
18  "The fee applicant bears the burden of documenting the appropriate hours expended on
19  the litigation. The Court may adjust the reported hours if it finds that they are
20  unreasonably excessive, redundant or otherwise unnecessary." *Abad*, 2007 WL
21  1839914, *2 (citations omitted).

22  Plaintiff's counsel's billing records show deficiencies and unreasonable hours in
23  several respects. One overall problem is that the timekeepers at Keker & Van Nest
24  engaged in block billing. A "fee award may be reduced when block billing—the lumping
25  together of multiple tasks in a single time entry—makes it impossible to determine the
26  reasonableness of the time spent on each task." *Petroleum Sales, Inc. v. Valero Ref.*
27  *Co.*, C 05-3526, 2007 WL 2694207, *7 (N.D. Cal. Sept. 11, 2007) (citing *Welch v. Metro.*
28  *Life Ins. Co.*, 480 F.3d 942 (9th Cir. 2007)). There are multiple instances of block billing

1  throughout the time records, the most egregious of which are the end of the month

2  entries for the "case assistants." Harriman Decl. Ex. D (example: "10/31/07 CA Review

3  and organize documents. (Oct. 1-31, 2007) 70.875" hours). All of the case assistant

4  time should be excluded because, in addition to the reasons listed above, it is impossible

5  to determine the reasonableness of the time billed. *See Sorenson v. Mink*, 239 F.3d

6  1140, 1146 (9th Cir. 2001) ("'Where the documentation of hours is inadequate, the

7  district court may reduce the award accordingly.'") (quoting *Hensley v. Eckerhart*, 462

8  U.S. 424, 433-34 (1983)).Furthermore, assessment of the specific categories of time

9  billed by legal personnel discussed below is difficult because tasks relating to different

10  categories are lumped into a single time entry.

11       Problems with specific time categories are as follows:

12                    **1.    Jury instructions**

13       Plaintiff seeks compensation for time charged by Jo Weingarten and Katherine

14  Florey who supposedly helped with motions in limine. Harriman Decl. ¶ 7. As discussed

15  above, time billed for these associates should be excluded because the reasonableness

16  of their billing rates cannot be substantiated based on the information provided by

17  plaintiff. But their time should be excluded for the additional reason that the hours spent

18  were unnecessary and duplicative. Upon review of the time entries for these associates,

19  both assisted with jury instructions, not motions in limine. *Id.* Ex. D. This work was likely

20  later duplicated by Christa Anderson and Audrey Walton-Hadlock. In addition to the

21  13.125 hours of associate time discussed above, plaintiff seeks approximately 44.875

22  hours of Ms. Anderson's time and 36.25 hours of Ms. Walton-Hadlock's time on jury

23  instructions.[3] This Court has held that 32.5 hours of attorney time on jury instructions in

24

25       [3] Due to block billing, it is not possible to determine the exact amount of time spent on jury instructions. For example, while Ms. Walton-Hadlock spent 14 hours on "Legal research re, & draft and edit jury instructions" on May 7, 2007, she spent 4.375 hours on "Legal research re jury instructions; legal research re opposition to MILs; conference with Harriman" on May 9, 2007. Since it is not known how much of this time went to jury instructions, the total time was included in the estimate. This inability to ascertain the reasonableness of the hours spent based on the time entries is the very reason block billing is frowned upon by the courts and requires reduction of the fee award.

1    an employment discrimination case was excessive, even in light of time spent analyzing

2    two recent Supreme Court decisions in the area that may have impacted the instructions.

3    *Chaid v. Glickman*, No. C98-1004 WHO JCS, 1999 WL 33292940, at *7 (N.D. Cal. Nov.

4    17, 1999).   There is no reason why the jury instructions in this employment action

5    required 94.25 hours of attorney time, nearly three times the amount of time found

6    unreasonable in *Chaid*.   Thus, the Court should exclude the time charged by Jo

7    Weingarten and Katherine Florey from any fee award and reduce the remaining time

8    spent on jury instructions by half to 40 hours—22 hours by Anderson and 18 hours by

9    Walton-Hadlock.

10                    **2.     Substitution of counsel**

11         Another category of time that should be excluded is the time the Keker & Van

12   Nest attorneys spent familiarizing themselves with the case after taking it over from

13   Noah Lebowitz.   "[C]ourts have reduced fee awards where plaintiffs have chosen to

14   substitute counsel, resulting in duplication of effort."  *Defenbaugh v. JBC & Assoc.*, No.

15   C-03-0651 JCS, 2004 WL 1874978, at *10 (N.D. Cal. Aug. 10, 2004).   After Noah

16   Lebowitz, who had represented the plaintiff from her initiation of the case in September

17   2004 through summary judgment and the close of fact discovery, left his former firm to

18   start his own practice, plaintiff decided to replace him with Keker & Van Nest.  Keker &

19   Van Nest necessarily had to spend time learning the facts and legal theories of the case

20   already developed by Lebowitz.  Although there is no time expressly billed for "getting up

21   to speed" in Keker & Van Nest's billing records, disguising this time under vague

22   descriptions does not prevent the court from reducing the fee award.   Clearly time

23   entries by Harriman, Anderson and Dao in the first month after taking the case using

24   such descriptions as "telephone call with Lebowitz," "review case materials, "review

25   complaint," "review deposition transcripts,"  and "uploading client case materials to KVN

26   system" reflect time that would not have been incurred had plaintiff stayed with her

27   previous counsel.   Approximately 22.5 hours of Harriman's time, 21.75 hours of

28   Anderson's time and 18.375 hours of Dao's time in March 2007 appear to have been

DEFS' OPP. TO PLTF'S MOT. FOR
ATTYS' FEES, Case No. 04-5107 JCS

1  spent on these types of tasks likely related to the substitution of counsel and should be
2  excluded.

### 3.    Clerical time

4  Much of paralegal Nancy Dao's time was spent retrieving, organizing, filing or
5  copying documents. Such "'purely clerical or secretarial tasks should not be billed at a
6  paralegal [or lawyer's] rate, regardless of who performs them.'" *Davis*, 976 F.2d at 1543
7  (citation omitted); *Defenbaugh*, 2004 WL 1874978, at * 11. Approximately 71.5 hours of
8  Ms. Dao's time, not adjusting for block billing, should be excluded for these tasks.

### 4.    Trial preparation

10  In September and October 2007, Nancy Dao billed 234.5 hours and Audrey
11  Walton-Hadlock billed 216.5 hours generically described as "trial preparation." As both
12  timekeepers were functioning as some sort of support personnel rather than taking the
13  lead during trial, this generic description makes it impossible to determine whether the
14  hours expended were reasonable. They should be excluded as inadequately
15  documented. *See Sorenson*, 239 F.3d at 1146.

### 5.    Time awaiting jury verdict and on post-verdict press releases

17  Ms. Anderson billed 16 hours and Ms. Harriman billed approximately 16.25 hours
18  (again, under block billing) to "await jury verdict." Harriman Decl. Ex. D. Time spent on
19  jury watch is not compensable in a fee award unless the court orders the parties to
20  remain at the courthouse during deliberations or to remain nearby where counsel's
21  offices are too far from the court to allow counsel to comply with the court's orders by
22  remaining at their offices. *See Jordan v. City of Cleveland*, 464 F.3d 584, 602 (6th Cir.
23  2006). That did not occur here. Instead, the court ordered the parties to be within ten
24  minutes of the courthouse, allowing Anderson and Harriman to work out of their offices in
25  downtown San Francisco until the court called them.

26  In the final bill, Harriman and Walton-Hadlock also billed time for correspondence
27  with the press regarding the verdict. While the giving of press conferences that are
28  "directly and intimately related to the successful representation of a client" may be

1  compensated, "public relations work which [does] not contribute, directly and

2  substantially, to the attainment of [the client's] litigation goals," such as television

3  appearances following a consent decree, should be disallowed. *Davis*, 976 F.2d at

4  1545. Because Harriman spent approximately 12.25 hours (again, block billed with other

5  tasks) and Walton-Hadlock spent 1.25 hours on press releases and correspondence

6  after the plaintiff's litigation goals had been attained, this time should be excluded from

7  any fee award.

8       **D.    Further reduction of the lodestar is warranted due to plaintiff's partial
            success.**

9

10       Once the court determines the reasonable rates for plaintiff's attorneys and

11  applies the rates to the reasonable hours expended on this litigation, this lodestar

12  amount should be further reduced because plaintiff prevailed on only some of her

13  asserted claims. "California law allows the trial court to reduce [a plaintiff's] attorneys'

14  fees award based on the results she obtained." *Beaty*, 222 F.3d at 610 (remanding

15  attorneys' fees award in FEHA lawsuit because it was unclear whether trial court

16  understood that it had discretion to reduce fees based on plaintiff's failure to prevail on

17  some of her claims). The principle that the fee award may be adjusted based on the

18  "results obtained" comes from *Hensley v. Eckerhart*, 462 U.S. 424, 434 (1983). "In

19  *Hensley* the Supreme Court noted that the 'results obtained' was one factor that might

20  lead the district court to adjust the presumptively reasonable lodestar calculation and

21  that this factor 'is particularly crucial where a plaintiff is deemed 'prevailing' even though

22  he succeeded only on some of his claims for relief." *Gates v. Deukmejian*, 987 F.2d

23  1392, 1404 (9th Cir. 1992) (quoting *Hensley*, 462 U.S. at 434). Under the *Hensley*

24  framework, the "district court first asks if the plaintiff did not prevail on claims that were

25  unrelated to those on which he succeeded and excludes any fees associated with those

26  unsuccessful claims." *Gates*, 987 F.3d at 1404.

27       Plaintiff sought relief for defendants' alleged interference with or denial of her right

28  to medical leave under the federal Family Medical Leave Act ("FMLA") and the California

1 Family Rights Act ("CFRA"), retaliation for complaining about discrimination under FEHA
2 and discharge in violation of public policy. Following trial, plaintiff prevailed only on the
3 latter two claims. The FEHA claim is unrelated factually and legally to the FMLA and
4 CFRA claims. The FEHA claim was based on retaliation by a supervisor that allegedly
5 took place beginning in 2002. The FMLA and CFRA claims were based on events
6 related to a medical leave plaintiff took while working for a different supervisor in late
7 2003. Plaintiff's FEHA claim was based on a different legal theory from its FMLA and
8 CFRA claims. *See Navarro*, 2005 WL 2333803, at \*17 (reducing fees for time spent
9 litigating unsuccessful FEHA claim because it was unrelated to plaintiff's success on her
10 FMLA claim). Accordingly, plaintiff's fee award should be reduced for time spent
11 litigating the FMLA and CFRA claims.

12 Unfortunately, plaintiff's counsel's billing records do not differentiate between time
13 spent on each specific claim except for one entry by Ms. Harriman on April 25, 2007 for
14 "legal research re FMLA for motions in limine opposition." *See* Harriman Decl. Ex. D. A
15 large portion of time on the motions in limine and trial briefing was spent arguing about
16 FMLA and CFRA damages, especially with regard to motions in limine numbers one and
17 six. The following fact witnesses testified solely about the facts underlying the
18 FMLA/CFRA claims: Robert Burkes, Tayo Feyijimi, Kathy Mabe, Guadalupe DeJong
19 and John ("Jack") Dunn. To the extent plaintiff's counsel spent time preparing to
20 examine or cross-examine those witnesses, examining the witnesses or working on pre-
21 trial and trial briefing regarding FMLA/CFRA issues, that time should be excluded.

22 Because specific hours cannot be identified here, the court should reduce the fee
23 award by a reasonable percentage estimating the time likely spent on the unsuccessful
24 claims. Considering that two of the six motions in limine (or 33%) were devoted to
25 FMLA/CFRA issues and five of the 22 witnesses (or 23%) testifying at trial for nearly two
26 of the eight trial days (or 25%), including a portion of plaintiff's testimony, presented
27 evidence solely on the FMLA/CFRA claims, a conservative and reasonable percentage
28 by which to reduce the total fee award would be 20%.

1  **II.    COMPUTERIZED LEGAL RESEARCH FEES ARE NOT ALLOWABLE COSTS.**

2         FEHA allows for the recovery of "reasonable attorneys fees and costs." Cal. Gov't

3  Code § 12965(b).  As plaintiff acknowledges, "costs" are not defined in FEHA and thus

4  courts look to costs allowable under California Code of Civil Procedure section 1033.5.

5  Mot. at 5; *Davis v. KGO-T.V., Inc.*, 17 Cal. 4th 436, 441 (1998).  Such fees have been

6  disallowed under section 1033.5(b)(2) as "investigation expenses." *Ladas v. Cal. State*

7  *Auto. Assn.*, 19 Cal. App. 4th 761, 776 (1993) ("Fees for legal research, computer or

8  otherwise, may not be recovered under section 1033.5.").  Accordingly, the court should

9  deny plaintiff's claim for $7,443.27 for legal research on Lexis and Westlaw.[4]

10                          **CONCLUSION**

11        For the foregoing reasons, plaintiff should not recover any attorneys' fees or

12  should only recover attorneys' fees and expenses in an amount significantly less than

13  plaintiff requested.  To the extent the Court awards plaintiff attorneys' fees, the amount

14  should be reduced to $230,180.00, using the reduced hourly rates and reduced hours

15  identified above and subtracting twenty percent from the total. *See* Exhibit A.  Plaintiff's

16  costs should be reduced to $33,595.84.

17

18  Dated:  November 21, 2007                    Respectfully submitted,

19

20                                                    By: _____/S/_____
                                                           Michele Ballard Miller
21

22                                                    Counsel for Defendants
                                                      CHEVRON CORPORATION, CHEVRON
23                                                    INTERNATIONAL EXPLORATION &
                                                      PRODUCTION

24

25

26        ───────────────────
            [4] Plaintiff contends that if any costs claimed in her separately submitted Bill of Costs are
27  disallowed, they are recoverable as costs under FEHA.  As discussed above, recoverable costs
     under FEHA are governed by California Code of Civil Procedure section 1033.5.  To the extent
28  any objections to cost items on plaintiff's Bill of Costs are sustained, those costs will also not be
     recoverable under section 1033.5.

**EXHIBIT A**

**EXHIBIT A**

| Timekeeper | Requested Rate | Requested Hours | Requested Amount | Adjusted Rate | Adjusted Hours | **Adjusted Amount** |
|---|---|---|---|---|---|---|
| Noah Lebowitz | $375 | 212.9 | $79,837.50 | $250 | 212.9 | $53,225.00 |
| Susan Harriman | $700 | 358.5 | $250,950.00 | $450 | 319[1] | $143,550.00 |
| Christa Anderson | $600 | 318.25 | $190,950.00 | $250 | 257.875[2] | $64,468.75 |
| Audrey Walton-Hadlock | $370 | 377.375 | $139,628.75 | $150 | 142.625[3] | $21,393.75 |
| Jo Weingarten | $380 | 4.375 | $1,662.50 | $150 | 0[4] | $0.00 |
| Katherine Florey | $370 | 8.75 | $3,237.50 | $150 | 0[5] | $0.00 |
| Nancy Dao | $200 | 356.875 | $71,375.00 | $100 | 50.875[6] | $5,087.50 |
| Case Assistants | $110 | 113.875 | $12,526.25 | $0 | 0[7] | $0.00 |
| Total | | | $750,167.50 | | | $287,725.00 |
| **Total less 20%** | | | | | | $230,180.00 |

[1] 39.5 hours were subtracted as follows:  22.5 hours for time getting up to speed after taking over the case from Lebowitz and 17 hours for awaiting the jury verdict and press correspondence.

[2] 60.625 hours were subtracted as follows:  22.875 hours for jury instructions; 21.75 hours for time getting up to speed after taking over the case from Lebowitz and 16 hours for awaiting the jury verdict.

[3] 234.75 hours were subtracted as follows: 18.25 hours for jury instructions and 216.5 for undocumented trial preparation.

[4] Hours were removed for duplicative and unnecessary work on jury instructions.

[5] Hours were removed for duplicative and unnecessary work on jury instructions.

[6] 306 hours were subtracted as follows:  71.5 hours on clerical work and for time getting up to speed after taking over the case from Lebowitz and 234.5 hours for undocumented trial preparation.

[7] Hours were removed as undocumented clerical work.