1  KEKER & VAN NEST, LLP
   SUSAN J. HARRIMAN - #111703
2  CHRISTA M. ANDERSON - #184325
   710 Sansome Street
3  San Francisco, CA 94111-1704
   Telephone: (415) 391-5400
4  Facsimile: (415) 397-7188

5  Attorneys for Plaintiff
   KIRAN PANDE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE, | Case No. 04-5107 JCS |
| Plaintiff, | **KIRAN PANDE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES** |
| v. | |
| CHEVRON CORPORATION (f/k/a CHEVRONTEXACO CORPORATION), a Delaware corporation, CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a CHEVRONTEXACO OVERSEAS PETROLEUM COMPANY), a division of Chevron U.S.A., Inc., | Date: December 14, 2007<br>Time: 9:30 a.m.<br>Judge: Hon. Joseph C. Spero<br>Date Comp. Filed: December 2, 2004 |
| Defendants. | Judgment Entered: October 29, 2007 |

406758.01

KIRAN PANDE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER
MOTION FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 04-5107 JCS

## I. INTRODUCTION

Kiran Pande ("Pande") requests attorneys' fees and expenses that are reasonable and recoverable under FEHA, and no extraordinary circumstances justify the reductions Chevron seeks. Pande's total victory in this litigation supports a complete fee award, for the full hours and hourly rates set forth in Pande's fee motion.

## II. ARGUMENT

The law makes a strong presumption that the "lodestar" figure—a reasonable hourly rate multiplied by the hours reasonably spent in litigation—represents a reasonable fee. Lopez v. San Francisco Unified Sch. Dist., 385 F. Supp. 2d 981, 986 (N.D. Cal. 2005); Beaty v. BET Holdings, Inc., 222 F.2d 607, 612 (2000). Despite all of Chevron's arguments to the contrary, counsel's rates and hours here are reasonable, and the lodestar sum requested is a reasonable fee award.

**A.    Counsel's requested hourly rates are reasonable.**

To determine counsel's reasonable hourly rates, the courts consider "fees that private attorneys of an ability and reputation comparable to that of prevailing counsel charge their paying clients for legal work of similar complexity." Lopez, 385 F. Supp. 2d at 988 (quoting Davis v. City and County of San Francisco, 976 F.2d 1536 (9th Cir. 1992)). Courts must also consider "the ability of counsel, the amount involved, customary charges for similar services, and the results obtained." Lopez, 385 F. Supp. 2d at 988 (citing Oberfelder v. City of Petaluma, 2002 WL 472308, *4 (N.D. Cal. 2002)); Bihun v. AT&T Information Sys., Inc., 13 Cal. App. 4th 976, 998 (1993) (finding court should consider counsel's own customary fees as well as other attorneys' fees; affirming award of $450 hourly fee for FEHA plaintiff's counsel).

In his declaration supporting Pande's fee request (filed herewith), Michael Rubin confirms that Pande's counsel's rates are "comparable to the rates charged in the Bay Area market by similarly experienced and highly skilled attorneys, including attorneys specializing in plaintiffs'-side employment litigation." Declaration of Michael Rubin in Support of Plaintiff's Motion for Attorneys' Fees and Costs ("Rubin Decl.") ¶ 8. Mr. Rubin is an expert in employment and attorneys' fees litigation, with thirty years of distinguished experience in the

1

KIRAN PANDE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER
MOTION FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 04-5107 JCS

406758.01

field both as a litigator and as an expert witness and lecturer. Id. ¶¶ 1-5. Based on his extensive experience, Mr. Rubin is familiar with the customary hourly rates of Bay Area attorneys with experience and skill comparable to that of Pande's counsel, and the rates courts have awarded to similar counsel. Id. ¶ 6. In addition, Mr. Rubin has litigated cases both with and against Keker & Van Nest attorneys, and he is familiar with Ms. Anderson's and Ms. Harriman's reputation and work product, and with counsel's work in this case. Id. ¶ 7. Mr. Rubin confirms that similarly skilled and experienced lawyers, including his partner James M. Finberg, currently charge rates in employment cases that match Ms. Harriman's and Ms. Anderson's rates here. Id. ¶ 8. Although not usually a plaintiff's lawyer, Ms. Harriman has significant experience defending employment cases that, in addition to her general experience in complex civil litigation, contributed substantially to Pande's success at trial and supports an award of her regularly hourly rate. Supplemental Declaration of Susan J. Harriman in Support of Motion for Attorneys' Fees and Expenses ("Supp. Harriman Decl.") ¶ 4.

Indeed, all of counsel's requested rates here are Keker & Van Nest's actual current hourly rates for clients paying on a straight hourly basis, further confirming that those rates are reasonable market rates. Rubin Decl. ¶ 9; Harriman Decl. ¶ 4-8 (stating hourly rates); Supp. Harriman Decl. Exh. A (retainer agreement). In retaining Keker & Van Nest, Ms. Pande acknowledged counsel's standard hourly rates and agreed to pay an additional, contingent bonus fee in order to obtain lower hourly rates for her regular non-contingent fees. Id. Ms. Pande has now paid $466,681.24 in fees and $83,094.94 in costs under that agreement, and still owes counsel the contingent portion of her $5.57 million recovery from Chevron. Supp. Harriman Decl. ¶ 5. With that contingent fee added, Ms. Pande's payments to counsel in this case will exceed the total fee award requested here.

Finally, the $5.57 million verdict that counsel obtained for Ms. Pande in this case confirms the value of counsel's skills, work product, and experience, further supporting counsel's requested hourly rates.

**B.    Counsel's hours spent on this litigation are reasonable.**

The lodestar sum in a FEHA case ordinarily includes "full compensation for every hour

2
KIRAN PANDE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 04-5107 JCS

406758.01

spent litigating a claim." Beaty, 222 F.2d 607, 612 (2000). To determine whether the hours counsel actually spent were reasonable, courts consider whether the hours were adequately documented and whether any of the hours claimed were unnecessary, duplicative or excessive. Chaid v. Glickman, No. C98-1004, 1999 WL 33292940, *3 (N.D. Cal. 1999) (Spero, J.) (citing Chalmers v. City of Los Angeles, 796 F. 2d 1205, 1210 (9th Cir. 1986)). However, the law does not require counsel to record in great detail how each minute of time is spent. Hensley v. Eckerhart, 461 U.S. 424, 437 n.12 (1983). To justify excluding time from the lodestar as excessive, a defendant must show that "the time claimed is obviously and convincingly excessive." Chaid, 1999 WL 33292940 at *7. Chevron has not done so.

Pande has submitted to the Court counsel's detailed records of the hours billed to Ms. Pande in this litigation. Lead counsel reviewed the bills for accuracy before sending them, and Ms. Pande has paid counsel $466,681.24 in fees and $83,094.94 in costs based on those same bills. Harriman Decl. ¶ 9; Supp. Harriman Decl. ¶ 5. Respecting professional ethics rules and Ms. Pande's financial interests, counsel spent on this matter only the time reasonably necessary to vindicate Ms. Pande's interests at trial and to defeat Chevron's various defensive maneuvers. Compare Docket No. 105 (joint proposed instructions, reflecting Pande's thorough responses to Chevron's numerous unreasonable proposals) with Docket No. 174 (final jury instructions). In addition, Counsel has chosen not to seek reimbursement for the work of some timekeepers who spent limited time on this matter. Harriman Decl. ¶ 9. Pande could offer no better proof that the hours requested here were reasonable than the fact that Ms. Pande paid for those hours as this litigation proceeded, based on the same documentation now before the Court.

Chevron challenges most of Ms. Dao's and Ms. Walton-Hadlock's hours spent on the trial in this case, claiming that their hours are unreasonable because they served as "some sort of support personnel" and not lead trial counsel. Chevron Opposition at 11. Both Ms. Dao's and Ms. Walton-Hadlock's time was valuable and necessary to Pande's success at trial. Ms. Harriman and Ms. Anderson also billed many of their hours during and immediately before trial simply as "trial preparation" (or similar variants), rather than detailing every task completed, but Chevron does not challenge those hours. See Harriman Decl. Exh. D at 28-30. The rest of Ms.

3
KIRAN PANDE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER
MOTION FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 04-5107 JCS

406758.01

Walton-Hadlock's and Ms. Dao's time records reflect the general nature of their work in this matter, and they performed similarly necessary work in preparing for trial. Supp. Harriman Decl. ¶ 6. Likewise, Ms. Dao's time spent organizing and retrieving documents in this case was not purely clerical or mechanical, but was substantive work drawing on her familiarity with the documents and issues in the case and providing essential support for the attorneys' tasks. See Powell v United States, 569 F. Supp. 1192, 1203 (N.D. Cal. 1983) (awarding fees for similar time).

### C.   No special circumstances justify reducing the lodestar.

Chevron asks the Court to reduce Pande's fee award by 20% for time that counsel supposedly spent on issues unrelated to the claims on which Pande prevailed, but Chevron mistakes both the nature of Pande's proof and the applicable law. FEHA permits reduction of the lodestar only if special circumstances exist that would make a full lodestar award unjust, and such reductions are disfavored. Beaty v. BET Holdings, Inc., 222 F.2d 607, 612 (2000). The law recognizes that many claims "involve a common core of facts" such that the "lawsuit cannot be viewed as a series of discrete claims." Hensley, 461 U.S. at 435. In such cases, the "district court should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." Id. Thus, "[w]here a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee," even if the "plaintiff failed to prevail on every contention raised." Id. "Plaintiff need not prevail on, or even pursue, all of her initial claims in order to be entitled to a fully compensatory fee award, so long as the Plaintiff obtained 'substantial relief.'" Chaid, 1999 WL 33292940 at *18. Rather, "the most critical factor is the degree of success achieved." Hensley, 461 U.S. at 436.

Pande won all the relief she sought in this litigation: more than $3 million in compensatory damages, and $2.5 million in punitive damages. Under the Hensley standard, which emphasizes the overall success of the litigation and the final result, that excellent result justifies all of counsel's efforts and precludes any reduction of the lodestar amount. Pande's claims at trial were factually intertwined, presenting alternative theories for overlapping harms, and requiring Pande to refute nearly identical defensive arguments by Chevron. Thus, counsel's

KIRAN PANDE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 04-5107 JCS

406758.01

efforts primarily directed to Pande's FMLA and CFRA claims were also critical to her success on her retaliation and wrongful termination claims.

For example, all of the claims at trial required Pande to prove that Chevron's unlawful behavior—not Chevron's alleged business decisions or Ms. Pande's own actions—caused her harm. Accordingly, all of the witnesses that Chevron challenges as supposedly supporting only Pande's FMLA and CFRA claims were in fact essential to all of her claims. Bob Burkes's testimony about his and others' continued employment in California despite the Houston move helped prove that Chevron's retaliation (not the move) caused Pande's termination. Jack Dunn's testimony helped prove (among other things) that Chevron's retaliation caused Pande's harm (by showing that Dunn offered Pande a job without speaking to Mitchell, where those who spoke to Mitchell did not), that even Chevron admitted Pande's performance was excellent during much of her career (and particularly the first half of 2003), and that Chevron never told Pande it would terminate her in June 2003 as it claimed at trial. Tayo Feyijimi, Kathy Mabe, and Guadalupe DeJong's testimony helped prove Pande's excellent attitude and performance at Chevron, helping defeat Chevron's argument that Pande was a problem employee and lost her job for that reason. Ms. Mabe's testimony also helped prove that Chevron's termination of Pande was not what Chevron claimed by revealing that Chevron needed (and still needs) workers with Pande's skills and qualifications when it fired her.[1]

Given Pande's overall success, and the overlapping issues among her claims, no lodestar reduction for "results obtained" is appropriate here.

**D.  Pande's legal research costs are recoverable.**

Chevron contends that Pande's reasonable legal research costs are not recoverable, relying on Ladas v. California State Automobile Ass'n, 19 Cal. App. 4th 761 (1993). Other courts have found that the Ladas decision does not bar recovery of essential legal research costs, however, rejecting the Ladas analysis as incomplete and illogical. See Moore v. IMCO Recycling of CA, Inc., No. CB 04-1307, 2005 U.S. Dist. LEXIS 45778, *9-10 (C.D. Cal. Sept.

---

[1] Pande's opposition to Chevron's motion for judgment as a matter of law (also filed today) also relies on and discusses much of this evidence, further demonstrating its importance to Pande's

5
KIRAN PANDE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 04-5107 JCS

406758.01

1  28, 2005). Ladas glibly dismissed legal research costs as "investigation" expenses, but Moore
2  explained the flaws in this approach: legal research costs are an essential part of effective legal
3  representation, and are not "investigation" expenses at least where (as here) they support the
4  legal analysis and argument underlying a party's successful legal claims. Id. Ladas thus bars
5  only research costs that are in fact "investigation" expenses, such as searches to identify
6  defendants or defendants' assets. Id. Here, as in Moore, "[n]umerous legal issues were raised
7  and motions were filed that obviously contained the results of the research." Id. at *10. Pande's
8  research costs were not "investigation" expenses, but an integral and recoverable part of her
9  successful legal representation.

### III.  CONCLUSION

For all the foregoing reasons, Pande respectfully asks that the Court award her the full value of her counsel's successful efforts in this litigation, as set forth in her fee motion.

Respectfully submitted,

Dated: November 30, 2007

KEKER & VAN NEST, LLP

By: /s/ Susan J. Harriman
SUSAN J. HARRIMAN
CHRISTA M. ANDERSON
Attorneys for Plaintiff
KIRAN PANDE

28  successful claims.

6

KIRAN PANDE'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER
MOTION FOR ATTORNEYS' FEES AND EXPENSES
CASE NO. 04-5107 JCS

406758.01