# EXHIBIT A




*5235310*

**ENDORSED**
**FILED**
ALAMEDA COUNTY

APR 1 7 2007

CLERK OF THE SUPERIOR COURT
By E. Opelski-Erickson, Deputy

SUPERIOR COURT OF THE STATE OF CALIFORNIA

IN AND FOR THE COUNTY OF ALAMEDA

ANTHONY MARIN, et al, on behalf of
themselves and all other similarly situated,

No. RG04-150447

Plaintiff,

ORDER GRANTING MOTION OF
PLAINTIFFS FOR ATTORNEYS' FEES
AND COSTS.

v.

COSTCO WHOLESALE CORPORATION,

Defendant.

Date:   March 21, 2006
Time:   2:00 p.m.
Dept.:  22

The motion of Plaintiffs for attorneys fees, costs, and service awards under the common

fund doctrine, Labor Code 1194(a), and C.C.P. 1021.5, came on for hearing on March 21, 2007,

in Department 22 of this Court, the Honorable Bonnie Sabraw presiding.  Counsel appeared on

behalf of Plaintiffs and on behalf of Defendant Costco.  After consideration of the points and

authorities and the evidence, as well as the oral argument of counsel, IT IS ORDERED:  The

motion of Plaintiffs for an award of attorneys' fees and costs under the common fund doctrine

and under Labor Code 1194(a) is GRANTED; the motion of Plaintiffs for an award of attorneys'

fees and costs under Civil Code 1021.5 is DENIED.

///

///

///

1

SUMMARY.

This is a class action that concerns whether Costco's bonus plan is a production or formula bonus or a flat-sum bonus and, if it is a flat-sum bonus, whether Costco has complied with the California's Labor Code and Wage Orders in calculating and paying overtime to its employees who received bonuses. The Court heard cross-motions for summary judgment, a motion for class certification, a second round of cross-motions for summary judgment, and then held a trial on damages. Plaintiffs prevailed on the merits and Costco will pay the 13,000 members of the class a total of $5,303,656 and change how it pays overtime on its bonus awards.

Plaintiff's counsel spent approximately 1,200 hours working on this case, including paralegal time, with a claimed lodestar of $461,523.16. Plaintiffs seek an award of fees and costs under the common fund doctrine, under Labor Code 1194(a), and under C.C.P. 1021.5. Plaintiffs seek $1,767,885.33 in fees, $30,861.52 in costs, and $50,000 in payments to the class representatives.

The Court awards fees in the amount of $1,560,000. The Court orders Costco to pay $600,000 in fees under Labor Code 1194(a) and orders the members of the prevailing class to pay counsel fees of $960,000 from the common fund. The Court will not award any fees under Code of Civil Procedure 1021.5. The Court awards additional fees under Labor Code 1194(a) in the amount of $65,000 for the time spent in this motion.

The Court orders that Costco pay costs of $9,075.54 under C.C.P. 1033.5. The Court orders the class to pay the remaining costs of $30,861.52 from the common fund.

The Court awards service payments to the named plaintiffs. These total $50,000 and are to be paid from the common fund.

2

OVERVIEW OF FEE AWARDS.

Because Plaintiffs are proposing an approach to fees that has not previously been applied in a class action context, the Court starts with a brief summary of how attorneys fees can be paid.

Fees paid by individual clients. Parties to litigation usually pay their own fees. C.C.P. 1021. If there is an attorney-client contract, then fees are determined based on the contract. In the absence of a written contract, attorney fees can be determined under a quantum meruit theory. *Los Angeles v. Los Angeles-Inyo Farms Co.* (1933) 134 Cal. App. 268, 276.

Fees paid by class members. In class actions and in other circumstances where attorneys have created a common fund for the benefit of a large number of persons with whom the attorneys have no contract, the Court can award fees under the common fund doctrine. *Lealao v. Beneficial California, Inc.* (2000) 82 Cal. App. 4th 19, 27-28; *Rider v. County of San Diego* (1992) 11 Cal. App. 4th 1410, 1422-1423.

Fees paid by opposing party – statutory fees. The Legislature has enacted fee-shifting statutes to encourage counsel to represent clients in the prosecution of claims and motions that serve public interests. *Flannery v. Prentice* (2001) 26 Cal. 4th 572, 584-585; *Ketchum v. Moses* (2001) 24 Cal. 4th 1122, 1131. Fees awarded under fee-shifting statutes are imposed on the losing party. The amount of fees under fee-shifting statutes is determined under the lodestar/multiplier approach. *Ketchum,* 24 Cal. 4th at 1131-1132; *In re Vitamin Cases* (2003) 110 Cal. App. 4th 1041, 1052.

Fees paid by opposing party – Fees paid under a contract. The parties to contracts can agree that the prevailing party in any dispute is entitled to recover fees from the losing party. Under Civil Code 1717, any such provision is reciprocal. The amount of fees under contractual

3

fee-shifting is determined under the lodestar/multiplier approach. *PLCM Group, Inc. v. Drexler* (2000) 22 Cal. 4th 1084, 1094-1095.

Fees paid in the context of class settlements.    In a class settlement, an award of fees can be structured so that they are paid by the class through a common fund or by the defendant under a fee-shifting statute.    Most appellate case law on the issue of fees in the context of settlements concerns fees paid by defendants under fee shifting statutes.    In contrast, several of the trial court decisions submitted to the Court by Plaintiffs are settlements where the fees were paid from a common fund and therefore by the members of the class.  (Pearl Dec., Ex F; Schneider Reply Dec. Ex F.)

NOVEL ISSUES PRESENTED.

Counsel for Plaintiffs seek an award of fees the amount of which is measured by the "percentage of recovery" approach and which is paid in part from Costco under a fee-shifting statute (amount determined under the lodestar/multiplier approach) and in part from the common fund (the balance due).  (Pltf Moving Brf, 3:13-4:16; Pltf Reply Brf., 1:3-2:19.)   Costco argues that counsel's sole basis for fees is under the statutory fee-shifting statute, that the amount must be determined under the lodestar/multiplier approach, and that no fees can be assessed against the common fund.  (Costco Oppo Brf., 7:22-10:24.)  Costco's arguments raise three issues: (1) can the "market rate" for counsel fees paid by the client be different from the "reasonable rate" paid by the losing party; (2) can the "market rate" for counsel fees paid by the client be a percentage of the recovery, and (3) does the presence of a fee-shifting statute makes an award of fees under that statute the exclusive source of fees.

4

THE "MARKET RATE" FOR FEES PAID BY CLIENTS CAN BE DIFFERENT FROM THE "REASONABLE RATE" PAID BY A LOSING PARTY.

The Court's goal is to provide counsel with fees roughly comparable to the "market rate." The "market rate" paid by a client under a fee agreement or by a prevailing class through fee-spreading can, however, be different from the "reasonable rate" imposed on a losing party through fee-shifting.  In *Flannery*, 26 Cal. 4th at 585, the California Supreme Court stated, "The "usual fee-shifting statute" is not "intended to replicate exactly the fee an attorney could earn through a private fee arrangement with his client." ...  In a particular case, an award of "reasonable" attorney fees under a fee-shifting statute might not match the actual amount a client has paid or agreed to pay, because such awards generally "are computed from their reasonable market value.""

The potential difference between the "market rate" and the "reasonable rate" has been noted in recent Court of Appeal decisions.  *Apple Computer, Inc. v. Superior Court* (2005) 126 Cal. App. 4th 1253, 1270, states, "attorney fees awarded under the common fund doctrine [payable by the prevailing party] are based on a "percentage-of-the-benefit" analysis, while those under a fee-shifting statute  [payable by the losing party] are determined using the lodestar method."  Similarly, *Lealao*, 82 Cal. App. 4th at 51, states, "the fee awarded in [the lodestar/multiplier approach] would be less than that which could be awarded as a pure percentage fee in a traditional common fund case, which may be calculated on the basis of the total fund made available rather than the actual payments made to the class."  Finally, *Hayward v. Ventura Volvo* (2003) 108 Cal. App. 4th 509, holds that a market rate fee agreed to by a plaintiff is not a cap on the reasonable fee that the Court can award under the CLRA.

Although arising in the context of a statutory eminent domain fee shifting provision, the analysis in *Salton Bay Marina, Inc. v. Imperial Irrigation Dist.* (1985) 172 Cal. App. 3d 914, 957, is directly on point. In *Salton Bay*, the losing party was a public entity that was required to pay attorneys fees under C.C.P. 1036. The prevailing party sought to recover fees based on the terms of its attorney-client agreement which provided for a fee equal to 40 percent of the total damages recovered if the case went to trial. The Court held that a reasonable fee paid by a client and a reasonable fee imposed on a losing party are different. The Court suggested that the reasonableness of fees paid by clients is viewed from the perspective of the clients and the circumstances that existed at the time of the fee agreement whereas the reasonableness of fees paid by the losing party is viewed from the perspective of the losing party and the circumstances at the end of the case when the extent of the attorney's services is known.

The distinction between the "market rate" paid by a client and the "reasonable rate" that can be imposed on a losing party through fee-shifting is due in large part to the differences in the underlying purposes of those two forms of compensation. See generally, Report of the Third Circuit Task Force on Court Awarded Attorney Fees, 108 F.R.D. 237, 250-251.

Based on *Flannery*, *Apple*, and *Salton Bay*, the Court concludes that there is no single proper rate for counsel fees and that the "market rate" paid by the client can be different from the "reasonable rate" imposed on the losing party.


THE RATE FOR COUNSEL FEES CAN BE A PERCENTAGE OF THE RECOVERY WHEN THE FEES ARE PAID BY THE CLIENT.

When private parties retain counsel to prosecute claims, the attorney and the client have the option to make payment of fees contingent on the recovery of money. Business and

Professions Code 6147.  Several California statutes expressly state that counsel representing

plaintiffs can be compensated as a percent of the recovery.  Business and Professions Code 6146

states that contingent fee contracts for representation of medical malpractice plaintiffs are limited

to specified percentages of the total recovery.  C.C.P. 1031 states that in certain actions for the

recovery of wages the court may increase the judgment by up to 20% to provide for attorneys

fees.  Probate Code 10811(c) permits estates to retain counsel under contingent fee contracts.

*Estate of Stevenson* (2006) 141 Cal. App. 4th 1074, 1084-1086.  Court rules also state that

counsel representing plaintiffs can be compensated by a percent of the recovery.   Regarding

minor's compromises, California Rule of Court 7.955 states, "The court may approve and allow

attorney fees under a contingency fee agreement made in accordance with law, provided that the

amount of fees is reasonable under all the facts and circumstances."   Also regarding minor's

compromises, Alameda County Local Rule 7.5(1)(B) states that for pre-trial settlements attorneys

fees of 25% of the recovery will be considered reasonable under normal circumstances.

California case law reveals that contingent fee agreements based on a percentage of

recovery are commonplace in the market for legal services.  See, e.g., *In re Silverton* (2005) 36

Cal. 4th 81, 84 (contract for "one-third of the gross recovery if the claims were settled before

filing suit or demand for arbitration and 40 percent thereafter"); *Cassim v. Allstate Ins. Co.*

(2004) 33 Cal. 4th 780, 807 (contract for "40 percent of all sums recovered"); *Huskinson &*

*Brown v. Wolf* (2004) 32 Cal. 4th 453, 461 (contract for "50 percent of any amount recovered");

*Berg v. Davi* (2005) 130 Cal. App. 4th 223, 226 (contract for "fee of one-third if the case settled

before trial-setting conference, and 40 percent if it settled thereafter"); *Ramirez v. Sturdevant*

(1994) 21 Cal. App. 4th 904, 911 (contract for "33 1/3% before commencement of jury selection,

or 40% of any amounts recovered thereafter"); *Franklin v. Appel* (1992) 8 Cal. App. 4th 875 (contract set fees at 25% of "economic profit").

Counsel who represent a class cannot, however, enter into a fee agreement (contingent or otherwise) at the inception of the case. *Flannery,* 26 Cal. 4th at 590 fn 17.  As a result, case law determines how the Court should set the amount of any fees to be paid by a class to counsel. This motion concerns whether the Court can hold that counsel and a class would have entered into a fee agreement with the amount of fees based on a percentage of recovery.

Before 1977, several appellate decisions approved awards of fees from common funds based on a percent of the fund created.  *Melendres v. Los Angeles* (1975) 45 Cal. App. 3d 267, 284 (enforcing contract between membership organization and attorneys that limited award of fees to a percentage of the class recovery); *Knoff v. San Francisco* (1969) 1 Cal. App. 3d 184, 203 (affirming Court order for fees equal to "20 percent of the first $1 million, 10 percent of the second and 5 percent of the third").

In 1977, the California Supreme Court issued *Serrano v. Priest* (1977) 20 Cal. 3d 25 (*Serrano III*), which held that it was not proper in that case to award fees under the common fund theory or the substantial benefit theory, but that the Court could award fees under the private attorney general theory.  The Court approved a lodestar/multiplier approach to fees and stated, "The starting point of every fee award, … , must be a calculation of the attorney's services in terms of the time he has expended on the case." 20 Cal. 3d at 48-49.  In 1982, the Court issued *Serrano v. Unruh* (1982) 32 Cal. 3d 621 (*Serrano IV*), which concerned whether the Court could award fees for the time spent preparing a fee motion.  In *Serrano IV*, the Defendants urged that the common-fund, substantial-benefit (or common-benefit), and private-attorney-general theories "should be deemed similar because, under each, lawyers seek fees from an involuntary

client where payment would reduce funds otherwise available to plaintiff or to defendant for use in plaintiffs' behalf." The Court stated "We have rejected that view." 32 Cal.3d at 631. The Court later states "Principles governing an award under the common-fund or substantial-benefit theory do not control when it is made under the private-attorney-general doctrine." 32 Cal.3d at 635. The Court then held that when fees are awarded under the private attorney general benefit doctrine counsel can recover compensation for preparing fee motions. *Serrano III* and *Serrano IV* both concerned the shifting of fees to a losing party under the private attorney general benefit doctrine. There is no indication in *Serrano III* or *Serrano IV* that the Court intended that the lodestar analysis would be the exclusive analysis when fees are paid by clients.

After 1977, both *Jutkowitz v. Bourns, Inc.* (1981) 118 Cal. App. 3d 102, and *Dunk v. Ford Motor Co.* (1996) 48 Cal. App. 4th 1794, 1809, read *Serrano III* and *IV* to suggest that the lodestar method is the exclusive means of compensating court awarded fees for counsel and that the court cannot use the percentage method in any circumstance. *Dunk* and *Jutkowitz* do not discuss the distinction between fee-shifting and fee-spreading or note that *Seranno* concerned the private attorney general benefit doctrine and not the payment of fees through a common fund.

Most recently, *Apple Computer,* 126 Cal. App. 4th at 1270, states that fees under the common fund theory can be determined based on a "percentage-of-the-benefit" analysis. *Lealao,* 82 Cal. App. 4th at 47-48, suggests that the market rate paid by a plaintiff class should "mimic the market" and should consider percentage of recovery as a basis for fees. The facts in *Lealao,* however, concerned a post-settlement fee-shifting motion rather than a fee-spreading motion. Federal law suggests that the fees paid by a client or a class can be determined based on the terms of a contingent fee contract that the class would have agreed to pay at the inception of the case.

1    *Gaskill v. Gordon* (7th Cir., 1998) 160 F.3d 361, 363; *In re First Fidelity Bancorporation Sec.*

2    *Litig.* (D.N.J. 1990) 750 F. Supp. 160, 163. See also

3        All of the above suggests that the Court can use a percentage of recovery approach to

4    determining the "market rate" for fees when the fees are paid by the client. Where fees are paid

5    from a common fund, the Court has the obligation to protect the class and ensure that the

6    percentage reflects factors such as the complexity of the case and the size of the potential

7    recovery. *Goldberger v. Integrated Resources, Inc.* (2nd Cir. 2000) 209 F.3d 43, 51-53.

8

9

10   AN AWARD OF FEES UNDER A FEE SHIFTING STATUTE IS NOT THE EXCLUSIVE

11   SOURCE OF FEES FOR COUNSEL.

12       Given that the "market rate" for counsel fees paid by a client can be different from the

13   "reasonable rate" paid by the losing party, the Court turns to whether the existence of a fee-

14   shifting statute precludes counsel from seeking fees from his or her client.

15

16       If a party has a contingent fee agreement with his or her attorney and the Court awards

17   statutory fees, then the attorney should be paid the greater of the amount set by the contingent fee

18   agreement or the amount ordered by the Court. *Horsford v. Board of Trustees* (2005) 132 Cal.

19   App. 4th 359, 401, states, "If the contingency fee is *larger* than the statutory fee award, counsel

20   is permitted to accept that fee, with a setoff for statutory fees received. If the contingency fee is

21   smaller than the statutory fee, counsel must reimburse the plaintiff from the statutory award for

22   any amounts already paid by the client pursuant to the contingency contract." This ensures that

23   reasonable fees are paid to counsel for the prevailing party as an incentive for prosecuting

24   meritorious but low monetary value cases that serve public interests. The fees awarded under

25   the fee-shifting statute (determined under the lodestar/multiplier approach) set a floor under the

26

fees payable to counsel.   If, however, a case has both high monetary value and public importance, then counsel for the prevailing party can be paid the market rate under an express or implied contingent fee agreement, with the amount paid by the client(s) set off by any fees awarded under a fee-shifting statute.  This prevents the fee shifting statute from acting as an artificially low ceiling on fees.

A similar analysis applies if a party has a contingent fee agreement with his or her attorney and the Court awards fees under a contractual fee-shifting provision.  A prevailing party who has entered into a contingent fee arrangement with an attorney may still seek to shift some or all fees to the losing party under the terms of the contract or Civil Code 1717. *Gonzales v. Pers. Storage* (1997) 56 Cal. App. 4th 464, 479-480.   The Court, however, has the discretion to impose fees on the losing party in an amount less than that which the prevailing party owes to his or her attorney.  *Vella v. Hudgins* (1984) 151 Cal. App. 3d 515, 520.   The net result is that the attorney might be paid in part by the losing party through contractual fee-shifting and paid in part by his or her client if the statutory fee award does not equal the fee agreed to between the attorney and his or her client.

*Horsford* and the Civil Code 1717 cases are consistent with other California cases holding that the Court may award fees made of components of the fee-shifting and fee-spreading to reflect any distinct public and private interests.  *Woodland Hills Residence Assn., Inc. v. City Counsel* (1979) 23 Cal.3d 917, 942; *Friends of "B" Street v. City of Hayward* (1980) 106 Cal.App.3d 988, 994-996.   The overlay of contingent market rate fees paid by clients and statutory reasonable fees paid by the losing party reflects the distinction between fees that are awarded for a public purpose (fee-shifting) and fees awarded for private purposes (any excess fees that a client would pay).

Although *Horsford* and the Civil Code 1717 cases do not involve class actions, the reasoning and holdings of those cases concerning the non-exclusivity of statutory fees should be applicable to class actions. A class action is a procedural mechanism and does not enlarge or diminish substantive rights or remedies. *Feitelberg v. Credit Suisse First Boston, LLC* (2005) 134 Cal. App. 4th 997, 1014. The use of the class mechanism similarly should not change the attorney's ability to seek fees from his or her client in addition to any fees that the Court may order the losing party to pay.

In the federal courts, the presence of statutory fees does not make those statutory fees the exclusive means of compensating counsel. This applies in both individual plaintiff cases and class actions. See *Venegas v. Mitchell* (1990) 495 U.S. 82, 89 (statutory fees are not cap on contingent fee agreement); *Blanchard v. Bergeron* (1989) 489 U.S. 87, 93-94 (contingent fee agreement is not cap on statutory fees); *Staton v. Boeing Co.* (9th Cir., 2003) 327 F.3d 938, 967-968 and fn 18 (existence of fee-shifting statute does not preclude class counsel from recovering attorneys' fees under the common fund doctrine).

The Court concludes under California law the presence of statutory fees does not make those fees the exclusive means of compensating counsel.


FEE AWARD – LABOR CODE 1194(a).

Plaintiffs are the prevailing party under Labor Code 1194(a) and the Court will award fees under that section. These fees will be shifted to Costco. The amount of a shifted fee award is determined under the lodestar/multiplier analysis. *Ketchum*, 24 Cal.4th at 1132.

Plaintiffs assert a lodestar of $461,523.16 based on their regular 2006 rates. The "regular rates" must be realistic and be either the actual hourly rates for paid hourly work by the person or

12

similar to the regular billing rates for the paid hourly work of persons with similar experience. The "regular rate" should reflect "the general local hourly rate for a *fee-bearing case*; it does *not* include any compensation for contingent risk, extraordinary skill, or any other factors." *Ketchum,* 24 Cal. 4th at 1138. Therefore, the Court is guided by the billing rates for paid hourly work by persons with similar experience in the San Francisco Area.

The concept of a "regular rate" can be problematic if counsel work principally, if not entirely, on contingent fee cases and there is little empirical basis for substantiating whether clients would actually pay them their "regular rate" if they billed by the hour. (Schneider Dec., para 31.) There is evidence of "regular rates" in the San Francisco Bay Area. Decl. of Richard Pearl, para 10(b) and Exh C; Decl. of Sanford Jay Rosen, Exh. B; Decl. of James Finberg at para 12. The Court does not give much weight to the exhibits of Court approved "regular rates" because they can be selective samples and can reflect rates that are not "the general local hourly rate for a fee-bearing case." *Ketchum,* 24 Cal. 4th at 1138. The Court is careful not to set the lodestar with rates that are already increased to reflect the contingent nature of the work and then consider the contingent nature of the work again in setting a multiplier. *Horsford,* 132 Cal. App. 4th at 399-401.

Plaintiffs' counsel initially set their lodestar based on their 2007 billing rates, but agreed to use their 2006 rates. (Plaintiffs' Reply at 6.) The Court will use the 2006 hourly rates, but add a 2.5% for inflation. *Washington Public Power Supply Systems Litigation* (9th Cir., 1994) 19 F.3d 1291, 1305. Schneider Supp. Dec., Ex. A. Schneider & Wallace's 2006 hourly rates are consistent with the general local hourly rate charged by attorneys with similar experience and expertise in fee-bearing cases.

Costco challenges some of the hours worked. The Court will not exclude the time spent by counsel deposing Costco's counsel on the issue of whether Costco conducted a good faith investigation.  This was relevant to whether Costco might be liable for waiting time penalties. The Court will not exclude the time spent on the waiting time claim just because it was ultimately unsuccessful. All the claims in this case were closely related and the result obtained reflects the work on all the claims. *Graciano v. Robinson Ford Sales, Inc.* (2006) 144 Cal. App. 4th 140, 157-159. The Court will not exclude the time spent by counsel on the writ proceedings in the Court of Appeal.  Reasonable counsel file oppositions when their opponents seek writ relief. The Court will not exclude the time spent by Richard Pearl.  Someone had to do the work of preparing the fee application, and counsel with expertise can often do a better job in fewer hours than less experienced counsel. Schneider Dec., para 51; Schneider Supp. Dec., para 7.

The adjusted lodestar based on 2006 billing rates is as follows:

| Counsel | Rate | Hours | Total |
|---------|------|-------|-------|
| Todd Schneider | $455 | 213.6 | 97,188.00 |
| Carolyn Cotrell | $425 | 5.3 | 2,252.50 |
| Joshua Konecky | $425 | 488.4 | 207,570.00 |
| Hank Willson | $235 | 221.1 | 51,958.50 |
| Sarah Colby | $350 | 13.1 | 4,585.00 |
| Elisa Laird | $350 | 238.5 | 83,475.00 |
| Nicole Torres | $125 | 25.9 | 3,237.50 |
| TOTAL at 2006 rates | | | $450.266.50 |
| TOTAL w/2.5% interest for delay 2006-2007 | | | $461,523.16 |

14

The Court considered four factors in determining whether to apply a multiplier. (1) This case involved novel issues concerning how to apply California law to Costco's bonus plan. (2) The record reflects that counsel were efficient in presenting the case to the Court. The Court is aware of the danger of "double counting" because the hourly rates of counsel presumably reflect their skill and the time recorded reflects their preparation. *Ketchum*, 24 Cal.4th at 1138-1139; *Flannery v. California Highway Patrol* (1998) 61 Cal. App. 4th 629, 647. (3) The nature of the litigation precluded some other employment by counsel for Plaintiff, but the case was not highly demanding in the commitment required. (4) Counsel assumed risk in undertaking this case on a contingent basis. That risk justifies some multiplier, but the contingent risk was the risk of proving liability. If Plaintiffs prevailed on liability, then the existence of the fee-shifting provision in Labor Code 1194(a) guaranteed that counsel would be paid a reasonable rate even if damages proved to be small. *Ketchum*, 24 Cal.4th at 1132 and 1138; *Horsford*, 132 Cal. App. 4th at 399-400.

The Court does not increase the multiplier based on the results obtained. Given that the Court would not decrease the fees if the statute was vindicated but the case affected only one person who recovered a modest amount of money, the Court will not increase the fees where a statute has been vindicated in a case that affects many people. Compare *Vo v. Las Virgenes Municipal Water Dist.* (2000) 79 Cal. App. 4th 440 (awarding $470,000 in fees based on judgment of $37,500).

The Court finds a multiplier of 1.3 appropriate for the work performed. This multiplier is based on the novelty of the legal issues involved, the skill of counsel, the time commitment, and the contingent nature of the case. This multiplier would be the same whether the class included 130 employees and had a recovery of $53,036 or, as is the case, the case included 13,000

15

employees and had a recovery of $5,303,656. In either situation the Legislative goal of encouraging statutory enforcement would be the same and counsel would presumably expend the same energy and effort to effect those goals.

The Court awards fees under Labor Code 1194(a) based on the lodestar of $461,523.16 as enhanced by a multiplier of 1.3, for a total of $600,000 in fees to be paid by Costco.

FEE AWARD – C.C.P. 1021.5.

The Court will not award fees under C.C.P. 1021.5. The Court has considered the C.C.P. 1021.5 factors. (1) The Labor laws of the State of California reflect an important public interest, but the primary effect of this case was the vindication of the personal rights and economic interests of the class members. (2) A significant benefit has been conferred on a large class of persons. (3) The Legislature has encouraged private enforcement by providing for fees in Labor Code 1194(a), so the necessity and financial burden of private enforcement does not make an award appropriate under C.C.P. 1021.5. (4) The interest of justice would not be offended if, in the absence of Labor Code 1194(a), the members of the class paid all the attorneys fees out of the recovery.

In addition to the statutory analysis, the Court relies on *Flannery v. California Highway Patrol* (1998) 61 Cal. App. 4th 629, 635-636, and *Weeks v. Baker & McKenzie* (1998) 63 Cal. App. 4th 1128, 1170-1171. In both *Flannery* and *Weeks* the plaintiffs prevailed on claims for unlawful harassment, there are statutes and public policies against harassment, there was a fee shifting statute that specifically applied to the claims, and the Court of Appeal held that fees should be awarded under the specific fee shifting statute and not under C.C.P. 1021.5. Although

this case concerns more plaintiffs due to the use of the class mechanism, it is otherwise indistinguishable from *Flannery* and *Weeks*.

FEE AWARD – COMMON FUND.

The common fund approach rests on the principle of avoiding unjust enrichment of the persons who benefit from the litigation and spreading the cost of litigation among those who have benefited from it. *Lealao*, 82 Cal. App. 4th at 27-28; *Rider*, 11 Cal. App. 4th at 1422-1423. Because fees are paid by the members of the class from the common fund, Costco has no standing to object to common fund fees. *Sanders v. Los Angeles* (1970) 3 Cal. 3d 252, 263; *Melendres v. Los Angeles* (1975) 45 Cal. App. 3d 267, 273. The Court, however, assumes a fiduciary role to protect the interests of the absent class members to ensure that the class pays their counsel a fair but not excessive amount of fees.

The Court will consider the fees to be paid by the class from the perspective of the class at the inception of the litigation. The obligation of the class members to pay fees was contingent on the success of the litigation, which suggests that fees should be expressed as a percentage of the recovery. In non-class litigation contingent fees range from the sliding sale in the medical malpractice cases that starts at 40% and ends at 15%, Business and Professions Code 6146, to the rate of "50 percent of any amount recovered" in *Huskinson & Brown v. Wolf* (2004) 32 Cal. 4th 453, 461. Where fees are awarded from a common fund and are paid by the clients, the fee awards are usually in the range of 20-35% of the recovery. *Lealao*, 82 Cal.App.4th at 31 fn 5. Plaintiffs have suggested the common benchmark is 30% of recovery whereas Costco has suggested a benchmark of 25% of recovery. See Pltfs' Opening at 18-19; Costco Oppo at 11-12.

The percentage of recovery is usually higher where a case is prosecuted through trial. Addressing the importance of trial in the context of a fee-shifting case, the Court in *In re Vitamin Cases* (2003) 110 Cal. App. 4th 1041, 1056, noted that a large multiplier may not be justified where a case is "resolved without the risks of trial." Similarly, in *In re Auction Houses Antitrust Litig.* (S.D.N.Y. 2000) 197 F.R.D. 71, 76, the Court noted that counsel compensated by the lodestar method has an incentive to settle a case before it reaches the trial stage and suggested that "in determining the lodestar post-trial, the court may apply a multiplier to reflect the added risk to counsel of proceeding to trial. This permits counsel to share in plaintiffs' upside reward and might affect to some extent counsel's decision to go to trial or not."

The percentage of recovery is usually lower than the usual range in cases involving substantial amounts of money. *Vizcaino v. Microsoft Corporation* (9th Cir. 2002) 290 F.3d 1043, 1050 fn 4. Courts sometimes use an actual or de facto sliding scale approach because the monetary incentive and effort to prosecute a $50 million case is not materially different from the incentive and effort to prosecute a $150 million case. *Lealao*, 82 Cal.App.4th at 48 fn 16. See, e.g. *In re Synthroid Mktg. Litig.* (7th Cir. 2003) 325 F.3d 974 (in $88 million settlement the Court set fees at 30% of the first $10 million, 25% of the next $10 million, 22% of the next $22 million, and 15% of all amounts over $42 million); *In re NASDAQ Market-Makers Antitrust Litig.* (S.D. N.Y. 1998) 187 F.R.D. 465, 487-488 (suggesting use of sliding scale in large cases). The California Legislature mandates use of sliding scale in medical malpractice cases. Business and Professions Code 6146.

The Court finds that the market fee would probably be based on a percentage of the recovery. The percentage of the recovery would in turn be based on the perceived strength of the claims at inception, the perceived time commitment to prosecute the case at inception, whether

the case was tried or settled, and a sliding scale linked to the amount of recovery. At inception, the perceived strength of the claims was probably in the middle range. The claims were based on how California law applied to the undisputed terms of Costco's bonus plan. Although there are no California statutes or case law that address bonus plans, counsel could consider the DLSE guidance in evaluating the merit of the claims. At inception, the perceived time commitment to prosecute the case was probably not particularly large given that the claims concerned the application of law to the undisputed terms of the bonus plan. Following the pattern in many contingent fee contracts, fees would be lower if the case were resolved through settlement and higher if the case were resolve on the merits. Taking the above into consideration, a reasonable sliding scale fee on the facts of this case would be 40% of the first $1 million, 35% of the next $1 million, 30% of the next $1 million, 25% of the next $1 million and 20% of all amounts over $4 million. If the case had been settled, the sliding scale would have been lower, such as 30% of the first $1 million, 25% of the next $1 million, 20% of the next $2 million, and 15% of all amounts over $3 million. Applying the above market rate to the facts of this case, the Court fees would be $400,000 (40% of the first $1 million) plus $350,000 (35% of the next $1 million) plus $300,000 (30% of the next $1 million) plus $250,000 (25% of the next $1 million) plus $260,000 (20% of the remaining $1.3 million), for a total of $1,560,000.

In addition, the Court considers the result if the market fee were based on counsel's hourly rate and what multiplier the class might have agreed to pay counsel if the class were to prevail at trial. This is a highly speculative endeavor because there is no data in the record, in statutes, or in case law that suggests that contingent fee agreements are based on the lodestar/multiplier approach. In addition, when fees are paid from a common fund the amount of fees is usually determined as a percentage of the recovery and the Court then derives the

19

multiplier as a cross-check, so it is somewhat backwards to speculate about what multiplier a class or client might agree to at the inception of a case.  That said, given the size of the potential recovery, the risk of pursuing the case in light of the uncertain law, and the possibility that some or all fees would be shifted to Costco, the class might have reasonably agreed to pay counsel at 2 times their regular rates if the case was settled to the satisfaction of the class and 3 times their regular rates if the case was pursued through trial and the class prevailed.  These multipliers are consistent with the multipliers in other trial court decisions where fees are paid from common funds.  Applying a multiplier of 3 to the lodestar of $461,523.16 would result in fees of approximately $1,400,000.

AMOUNT OF FEE – C.C.P. 1031.

Plaintiffs do not seek fees under C.C.P. 1031, but Costco argues that this section limits the amount of fees to 20% of the damages.  The section states, "In actions for the recovery of wages for labor performed, where the amount of the demand, exclusive of interest, does not exceed three hundred dollars ($300), the court shall add, as part of the cost, in any judgment recovered by the plaintiff or cross-complainant, an attorney's fee not exceeding 20 percent of the amount recovered."

The Court will not use C.C.P. 1031 to limit fees to 20% of damages.  C.C.P. 1031 appears to be is inconsistent with Labor Code 1194(a), which permits a prevailing wage claimant to recover "reasonable attorney's fees."  There is no reason to suspect that C.C.P. 1031 is an exclusive remedy.  In addition, the Court cannot determine on this record whether any, or how many, of the class members will recover wages that do not exceed $300.

20

Assuming, hypothetically, that C.C.P. 1031 applied to this case, the Court would consider whether the fee award against Costco is within the parameters of the statute. The fees awarded against Costco under Labor Code 1194(a) are less than the maximum fees permitted under C.C.P. 1031. Pre-interest damages of $4,100,000 would permit C.C.P. 1031 fees of $1,025,000. (Kadue Dec., para 6.)

CROSS-CHECKING.

The Court has tried the cross-checking suggested in *Lealo*, 82 Cal.App.4th at 45, by comparing the fee award with two statutes that provide for percentage of recovery fees. If the Court awarded fees exclusively under C.C.P. 1031, then the Court would order Costco to pay fees of $1,025,000. If the Court awarded fees under the MICRA statute, Business and Professions 6146, then the Court would order the common fund to pay fees of approximately $892,000. The results of the cross-checking highlight the variations what might be acceptable fees: the lodestar/multiplier approach suggests shifted fees of $600,000; the MICRA statute suggests client paid fees of $892,000; C.C.P. 1031 suggests shifted fees of $1,025,000; and percentage of recovery "market rate" suggests client paid fees of $1,560,000.

The Court considered reconciling these variations by changing the Court's findings until the numbers cross-checked. The Court could adjust the lodestar/multiplier upwards by using counsel's lodestar based on 2007 billing rates ($490,827) and a multiplier of 2.0 to reach a figure of $981,654 and nudge the percentage of recovery downwards to 20% to reach a figure of $1,060,731. The resulting fee of approximately $1,000,000 would be similar to the MICRA and C.C.P. 1031 numbers but it would be the product of a result driven approach. A fee of approximately $1,000,000 might be reassuring in its consistency, but it would ignore the

21

distinction between fees paid by the client (common fund and MICRA) and fees paid by the losing party (Labor Code 1194(a) and C.C.P. 1031). Ignoring that distinction ignores the language in *Flannery* that "fees under a fee-shifting statute might not match the actual amount a client has paid or agreed to pay." 26 Cal. 4th at 585. In addition, a fee of $1,000,000 payable by Costco is too high under the lodestar/multiplier approach. To shift fees of $1,000,000 to Costco, the Court would need to increase the lodestar of $461,523.16 (based on 2006 billing rates) by an overly generous multiplier of 2.16.

Rather than strain the common fund jurisprudence and the fee-shifting jurisprudence in an effort to reach a common "correct fee," the better course appears to be to acknowledge that there are differences in purposes and means of calculating fees and then devise a composite approach that serves the ends of the class, Costco, counsel, and the Legislative scheme.

FEES – CONCLUSION.

The Court sets the amount of fees based on the market rate that would have been negotiated in private bargaining between counsel and the class at the commencement of the case. This is an amount to be determined under a sliding scale that results in market rate of $1,560,000. The Court then sets the amount of reasonable fees that Costco must pay under Labor Code 1194(a) at the lodestar of $461,523.16 as enhanced by a multiplier of 1.3, for a total of $600,000. The class will pay the balance of $960,000 from the common fund. This ensures that Costco pays reasonable fees, the class pays only the market rate fees that exceed the reasonable shifted fees, and counsel is compensated at the market rate.

///

NOTICE TO CLASS.

The Court has reviewed the class notice to determine whether it made any representations to the class about whether fees would be paid by the class or would shifted entirely to Costco. The notice has no representations about the payment of fees. Therefore, the Court will not order notice to the absent class members to provide them with an opportunity to object to the fee award. The Court can protect the interests of the class adequately.

FEES ON MOTION FOR FEES.

The Court awards counsel fees related to this motion for fees under Labor Code 1194(a). As of the filing of the reply brief, the lodestar fees on this motion based on the 2007 billing rates was $58,093.50. Schneider Supp. Dec., Ex A. The Court will not apply a multiplier. Mr. Pearl's expertise is reflected in his rate. Allowing for time spent on the fees hearing, the Court awards fees in the amount of $65,000.

COST BILL.

Plaintiffs filed a bill of costs on February 2, 2007, seeking costs under C.C.P. 1033.5 in the amount of $9,075.54. Costco has not filed a motion to strike or tax the bill of costs. The Court awards $9,075.54 in costs under C.C.P. 1033.5.

Plaintiffs also seek costs under the common fund theory in the amount of $30,861.52. These costs would ordinarily be paid by the client, so they should be spread among the class by assessing them against the common fund.

///

INCENTIVE AWARDS TO NAMED PLAINTIFFS.

Plaintiffs request incentive awards totally $50,000 for their work on behalf of the class. The Court cannot award an incentive payment as an attorney's fee under Labor Code 1194(a) because the plaintiffs are not attorneys. Fee splitting between lawyers and non-lawyers is not permitted. *McIntosh v. Mills* (2004) 121 Cal. App. 4th 333. The Court cannot award an incentive payment as a cost because payments to clients are not among the statutorily permitted costs and are not expenses ordinarily billed to a client. The only way to award incentive fees is from the common fund. The Court could require the parties who benefited from a lawsuit to pay incentive compensation to a named plaintiff as a way of thanking him or her for his or her efforts on behalf of the persons who received the benefit. This is the apparent legal underpinning of incentive awards. The Court finds that the requested incentive awards are reasonable and awards the named plaintiffs a total of $50,000 as incentive awards from the common fund.

Dated: April 17 2007

Judge Bonnie Sabraw

24

**EXHIBIT B**

1 LINDA M. DARDARIAN (SBN 131001)
  JINNY KIM (SBN 208953)
2 GOLDSTEIN, DEMCHAK, BALLER,
      BORGEN & DARDARIAN
3 300 Lakeside Drive, Suite 1000
  Oakland, CA 94612
4 (510) 763-9800
  (510) 835-1417 (fax)
5 Email: ldardarian@gdblegal.com
  Email: jkim@gdblegal.com
6
  DONNA M. RYU (SBN 124923)
7 HASTINGS CIVIL JUSTICE CLINIC
  100 McAllister Street, Suite 300
8 San Francisco, CA 94102
  (415) 557-7887
9 (415) 557-7895 (fax)
  Email: ryud@uchastings.edu
10
  Attorneys for Plaintiff/Respondent
11

12
              IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
13
                        COUNTY OF SAN FRANCISCO
14

15 JOHN PAUL MURPHY,                        Case No.: CGC 03-423260

16           Plaintiff/Respondent,          [PROPOSED] AMENDED ORDER
                                            GRANTING PLAINTIFF'S MOTION FOR
17 vs.                                      APPELLATE FEES AND COSTS

18 KENNETH COLE PRODUCTIONS, INC., a        Date Action Filed: August 7, 2003
   New York corporation,
19
             Defendant/Appellant.
20

21

22

23

24

25

26

27

28

13612-1

FILED
San Francisco County Superior Court

DEC 7 - 2007

GORDON PARK-LI, Clerk
BY:
              Deputy Clerk

Plaintiff John Paul Murphy's motion for an award of appellate fees and costs came on regularly for hearing on October 3, 2007, before this Court in Department 624, the Honorable Anne Bouliane presiding.  Linda M. Dardarian and Donna Ryu appeared as attorneys for Plaintiff John Paul Murphy ("Plaintiff") and Catherine M. Dacre and Eric Hill appeared as attorneys for Defendant Kenneth Cole Productions, Inc. ("KCP").

The Court having reviewed the pleadings and papers on file in connection with this motion and having heard the arguments of counsel, and good cause appearing therefor,

IT IS HEREBY ORDERED that Plaintiff's Motion for Appellate Fees and Costs is GRANTED as follows:

1.    Plaintiff is entitled to attorneys' fees under multiple theories.  Plaintiff meets the statutory bases for an award of attorneys' fees under California Labor Code sections 98.2(c) and 218.5 (for all work on the appeals), 226(e) (for work on the trial *de novo* issue) and 1194(a) (for work through February 2, 2006).  Plaintiff also meets the statutory basis for attorneys' fees under Code of Civil Procedure section 1021.5 because Plaintiff enforced important rights affecting the public interest, because the case conferred significant benefits on the general public or a large class of persons, and because of the necessity and financial burden of private enforcement.  The Court therefore finds that Plaintiff is entitled to an award of attorneys' fees under C.C.P. section 1021.5.  However, the Court follows the instruction in *Flannery v. California Highway Patrol,* 61 Cal. App. 4th 629, 637-38 (1998) that where there are other clear statutory bases for an award of attorneys' fees, resort to C.C.P. section 1021.5 is unnecessary.  As such, the Court orders KCP to compensate Plaintiff for reasonable attorneys' fees, calculated on the lodestar/multiplier basis, under Labor Code sections 98.2(c), 218.5, 226(e) and 1194(a), and not under C.C.P. section 1021.5.

2.    Plaintiff's hours on the appeals in this case were reasonable and necessarily incurred.  KCP shall compensate Plaintiff for all hours incurred.

3.    The Court finds that a multiplier of 1.8 is reasonable to account for contingent risk, the novelty, difficulty and complexity of the issues, the quality and skill of Plaintiff's counsel, and the exceptional result obtained.

4.    For the work on appeals, KCP shall compensate Plaintiff in the amount of $973,906.20, which represents Plaintiff's lodestar attorneys' fees incurred by the Hastings Civil Justice Clinic on the appeals in the amount of $541,059.00, enhanced by a multiplier of 1.8. The hourly rates reflect what the Court considers to be in line with comparable rates for similar services in the community, and have been determined in a manner to avoid the perils of double counting the multiplier factors, as described in *Ketchum v. Moses*, 24 Cal. 4th 1122, 1138-39 (2001), particularly as to the exceptional quality and skill of Plaintiff's counsel. The lodestar breakdown by timekeeper for Plaintiff's work on the appeals is:

| Hastings Civil Justice Clinic | Years of Experience | Total No. of Hours | 2007 Hourly Rate | Lodestar Fee |
| --- | --- | --- | --- | --- |
| Donna Ryu | 21 | 939.7 | $425.00 | $399,372.50 |
| Miye Goishi | 26 | 19.10 | $425.00 | $8,117.50 |
| Nancy Stuart | 13 | 273.60 | $375.00 | $102,600.00 |
| Rachel Rubin | Law Student | 39.20 | $90.00 | $3,528.00 |
| Suzanne Delgin | Law Student | 20.40 | $90.00 | $1,836.00 |
| Sarah Beard | Law Student | 122.80 | $90.00 | $11,052.00 |
| Michael Russell | Law Student | 161.70 | $90.00 | $14,553.00 |

5.    For the post-appellate work on obtaining a recovery of attorneys' fees and costs, the Court finds that there was some duplication and thus adjusts the fees sought as follows:  KCP shall reimburse Plaintiff in the amount of $82,805.50, which represents the sum of: (a) Plaintiff's lodestar attorneys' fees incurred by Goldstein, Demchak, Baller, Borgen and Dardarian in post-appellate work, in the amount of $68,993.00; and (b) Plaintiff's lodestar attorneys' fees incurred by the Hastings Civil Justice Clinic in post-appellate work, in the amount of $13,812.50.  The breakdown by timekeeper for Plaintiff's post-appellate work is as follows:

| Goldstein, Demchak, Bailer, Borgen & Dardarian | Years of Experience | Total No. of Hours | 2007 Hourly Rate | Lodestar Fee |
| --- | --- | --- | --- | --- |
| Linda M. Dardarian | 20 | 77.6 | $425.00 | $32,980.00 |
| Jinny Kim | 8 | 92.3 | $350.00 | $32,305.00 |
| Wendy Whitt | Paralegal | 30.9 | $120.00 | $3,708.00 |
| **Hastings Civil Justice Clinic** | **Years of Experience** | **Total No. of Hours** | **2007 Hourly Rate** | **Lodestar Fee** |
| Donna Ryu | 21 | 32.5 | $425.00 | $13,812.50 |

6.    Pursuant to California Labor Code sections 98.2, 218.5, 226(e), 1194(a) and California Code of Civil Procedure section 1033.5, KCP shall compensate Plaintiff for necessary and reasonable costs and expenses incurred by the Hastings Civil Justice Clinic on the appeals, in the amount of $4,556.62.

7.    Pursuant to California Labor Code sections 98.2, 218.5, 226(e), and 1194(a), KCP shall compensate Plaintiff for necessary and reasonable costs and expenses incurred by Goldstein, Demchak, Baller, Borgen & Dardarian on the attorneys' fees litigation, in the amount of $4,262.81.

8.    In the event that payment in full of the above amounts is not made by KCP within ten (10) days of the date of this Amended Order Granting Plaintiff's Motion for Appellate Fees and Costs, the unpaid balance shall accrue interest at the applicable California statutory rate pursuant to Code of Civil Procedure section 685.010.

IT IS SO ORDERED this 7 day of December 2007.

The Honorable Anne Bouliane
Judge of the Superior Court

Approved as to form:

Catherine Dacre
Seyfarth Shaw, LLP
Attorneys for Defendant Kenneth Cole Productions, Inc.