Michele Ballard Miller (SBN 104198)
Janine S. Simerly (SBN 102361)
Lisa C. Hamasaki (SBN 197628)
MILLER LAW GROUP
A Professional Corporation
60 E. Sir Francis Drake Blvd., Ste. 302
Larkspur, CA 94939
Tel. (415) 464-4300
Fax (415) 464-4336

Attorneys for Defendants CHEVRON
CORPORATION (f/k/a ChevronTexaco
Corporation) and CHEVRON INTERNATIONAL
EXPLORATION & PRODUCTION
(f/k/a ChevronTexaco Overseas Petroleum),
a division of Chevron U.S.A. Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KIRAN PANDE,<br><br>             Plaintiff,<br><br>v.<br><br>CHEVRON CORPORATION (f/k/a ChevronTexaco Corporation) and CHEVRON INTERNATIONAL EXPLORATION & PRODUCTION (f/k/a ChevronTexaco Overseas Petroleum), a division of Chevron U.S.A. Inc.<br><br>             Defendants. | Case No. C 04-5107 JCS<br><br>**DECLARATION OF JAMES P. SCHRATZ IN OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES** |

I, JAMES P. SCHRATZ, hereby declare:

1.  I am an attorney at law licensed to practice in the State of California, and have been so licensed since 1976. I received my law degree from the University of San

---

1
**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' RESPONSE TO NEW EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**
Case No. C 04-5107 JCS

Francisco School of Law in June 1976, where I was the Editor-in-Chief of *The Law Review*. I joined the law firm of Heller, Ehrman, White & McAuliffe in September 1976 as an associate, where I worked in its litigation department.

2. In March 1978 I left Heller, Ehrman, White & McAuliffe and joined a smaller firm until August 1980 when I joined Fireman's Fund Insurance Company located in San Francisco, California, in its General Counsel's Office. My responsibilities included representing Fireman's Fund as attorney of record in various litigation matters throughout the country. In addition, I supervised outside counsel throughout the country on various types of cases, including many complex civil litigation cases.

3. In 1984 I left the General Counsel's Office and transferred to the Claims Department where I established the Major Litigation Unit, which was responsible for managing complex litigation throughout the country, including the $65 million bankruptcy of The Woodson Company. In this role, I was responsible for approximately 1,000 cases and a staff of ten people, and became very familiar with the rates charged not only by Fireman's Fund "panel counsel," but also rates charged by solo practitioners, small, medium and large law firms throughout California.

4. In July 1990 I was promoted to Vice President Major Claims, where my duties were expanded to include responsibility for any case throughout the world that had potential exposure of $3 million or more, and responsibility for supervising approximately 100 adjusters. Again, I continued my involvement in supervising cases throughout California and stayed abreast of what solo practitioners, small, medium and large law firms charged their respective clients.

/ / /

/ / /

2

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' RESPONSE TO NEW EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**
Case No. C 04-5107 JCS

5. On January 1, 1994, I left Fireman's Fund to establish my own litigation management and consulting firm. I am the principal of Jim Schratz and Associates, a firm that conducts legal fee audits of various law firms throughout the country. Over the past 14 years, while at Fireman's Fund and as an independent legal auditor, I have personally supervised or conducted approximately 1,000 legal fee audits throughout the country on behalf of both clients and law firms, including governmental agencies, insurance companies, corporations, and private individuals.

Many of these audits have involved plaintiffs' fee requests in fee-shifting cases. In that role, I have performed legal fee audits of various law firms on behalf of the California Department of Justice, the City and County of San Francisco, the City of Huntington Beach, the Sonoma County Sheriff's Office, the State of Wisconsin, United Airlines, and Avis Rent-A-Car, among others. The amount of the fee requests audited ranges from a low of a few hundred thousand dollars to $42 million.

In 1999, I was appointed by the District Court for the Northern Mariana Islands to audit approximately $22 million in legal fees *In re the Estate of Larry Lee Hillblom*, one of the founders of DHL Express, whose estate was valued at approximately $1 billion. I was also retained by the United States Department of Justice to conduct an audit of a fee request in a nationwide class action lawsuit against the Immigration and Naturalization Service. I have served as an arbitrator for the Sonoma County Bar Association and the State Bar of California in their mandatory fee arbitration programs.

6. I have qualified as an expert witness in numerous state courts and in federal district court in Philadelphia and Pittsburgh, Pennsylvania, Detroit, Michigan, and Tulsa, Oklahoma. Numerous courts have accepted my audit findings and recommendations.

In the case of *Madrid v. Gomez*, No. C-90-3094, United States District Court for the Northern District of California, I was retained by the California Department of Justice to audit a fee request of $8.3 million in connection with a prisoners' civil rights case at Pelican

3

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' RESPONSE TO NEW EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**
Case No. C 04-5107 JCS

Bay State Prison. The audit disclosed a number of billing concerns, and the case resulted in a negotiated settlement of $4.25 million, or a reduction of approximately 50 percent. A copy of an article from *The Recorder* dated September 26, 1995, describing the settlement is attached as Exhibit A.

In *Rios v. Rowland*, No. 330211, Superior Court of California, County of Sacramento, I was retained to audit a fee request of $1.5 million. The audit disallowed a significant amount of the fees requested. The court upheld the audit results, and reduced the fee request to approximately $227,000.

In *CVB Corporation v. John Cavallucci*, No. 156505, Superior Court of California, County of Marin, I was retained to audit a fee request of approximately $2 million pursuant to a contractual provision. The audit uncovered a number of billing abuses, and the court disallowed approximately 50 percent of the fee request.

In *Aquilar v. Avis Rent-A-Car System*, No. 948597, Superior Court of California, County of San Francisco, I was retained to audit a fee request of approximately $1.3 million. The audit disclosed a number of problem areas and disallowed a significant amount. The court followed the audit findings and reduced the request by approximately 50 percent, to $650,000.

In *McCauley v. BFC Direct Mailing*, No. 5711562, Superior Court of California, County of Orange, the plaintiff alleged violations of campaign election laws and sought attorneys' fees of $1.1 million. The defendant, Howard Jarvis Tax Reform Movement, hired this office to conduct a legal fee audit, and we disallowed approximately 50 percent of the fees. The court followed the audit findings and awarded approximately $525,000 of the $1 million requested.

In *Florida Asset Financing Corp. v. Borton, Petrini & Conron*, United States District Court, Central District of California, Southern Division (Santa Ana), Case No. 8:96cv01144 AHS-MLG, we were retained by a private client to audit a fee request of $600,000. Based on the audit report, the court awarded $80,000.

4

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' RESPONSE TO NEW EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**
Case No. C 04-5107 JCS

1    I conducted an audit of plaintiff's motion for attorneys fees in *Adam v. Norton,* United States District Court, Northern District of California, Case No. C-98-2094 CW, a case in which plaintiff sought total fees in the sum of $1,726,312.92. The Special Master appointed by Judge Claudia Wilken to adjudicate the fee petition cited my declaration and recommended a total award of only $434,581.95 in attorneys fees, less than 25 percent of the amount originally sought. The Special Master stated, "I believe Mr. Schratz' expert testimony meets the standard. Schratz's testimony is relevant, in that Schratz has provided a useful breakdown of the time spent by Plaintiff's attorneys, and reliable, in that Schratz has accurately summarized the time and expenses claimed by Plaintiffs' attorneys." It must be stated the Special Master did not follow all of the audit recommendations. However, the Special Master did recommend reducing the fee request by approximately 75 percent from $1,726,312.92 to $434,581.95, a result that Judge Claudia Wilken adopted in total in July 2005.

In January 2004, in *Frieders v. City of Glendale,* No. BC263271, Los Angeles County Superior Court Judge David A. Workman adopted our findings with respect to an audit of plaintiffs' fee request. As a result, plaintiffs' request of $4.1 million in fees was reduced to $1.1 million. The court specifically referred to our audit and reduced the fee request by approximately 75 percent. A copy of that order is attached as Exhibit B.

In August 2005 in *Rose v. Lancaster School District,* No. BC 303843, Superior Court of California, County of Los Angeles, the court adopted the methodology, analysis and recommendations contained in our audit, and reduced plaintiff's request for fees by 58 percent from $498,000 to $209,000.

In *North Pacifica, LLC v. City of Pacifica,* United States District Court, Northern District of California, Case No. C-01-4823 EMC, plaintiff sought damages at trial of approximately $16 million. I was retained by the defendant to audit plaintiff's request for $2,046,759.16 in fees and costs. In awarding plaintiffs only $453,810.75 in fees, Magistrate Judge Edward M. Chen cited my audit with approval with respect to various billing issues.

5

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' RESPONSE TO NEW EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**
Case No. C 04-5107 JCS

The Order, dated December 16, 2005, states, in pertinent part:

> [B]ased on the information provided in the declaration, Mr. Schratz has demonstrated that he is qualified to opine about fee awards and that his methodology in evaluating the billing records of NP's attorneys in this case is reasonable and sufficiently reliable. For example, Mr. Schratz's approach to categorizing the nature of the work of the attorneys is reasonable and sufficiently reliable as is, overall, his approach to unblocking the block-billed time entries.

Of course, not all courts have accepted the audit findings: see for example, *Oberfelder v. City of Petaluma,* United States District Court, Northern District of California, Case No. 3.98-cv-98-01470-MHP; *Estrada v. FedEx,* Superior Court of California, County of Los Angeles, Case No. BC210130; *Millar v. BART,* Superior Court of California, County of Alameda, Case No. C830013-9; *Lopez v. San Francisco Unified School District,* United States District Court, Northern District of California, Case No. CV-96-3585 SI; *Gober v. Ralphs Grocery Company,* Superior Court of California, County of San Diego, North County Judicial District, Case No. N72142*; Miller v. Vicorp*, United States District Court, Northern District of California, San Jose Division, Case No. CV-03-00777-RMW.

However, even in these cases in which the Court has not accepted all of the audit findings, the court has often reduced the fee application by a significant amount: see, e.g. *Lopez v. San Francisco Unified School District,* United States District Court, Northern District of California, Case No. CV-96-3585 SI or *Miller v. Vicorp*, United States District Court, Northern District of California, San Jose Division, Case No. CV-03-00777-RMW.

7.    An audit does not always uncover overbilling.  On numerous occasions, I have been retained by a client to audit a legal bill and have informed the client that there is little, if any, overbilling and that the client should pay most, if not all, of the invoice.

For example, previously I have been retained by the California Department of Insurance to audit a number of law firms in connection with numerous matters, including the insolvency of Golden Eagle Insurance Company, which was located in San Diego, California

(and was declared insolvent by the California Insurance Commissioner). On a number of these audits, I found that most, if not all, of the fees involved were reasonable and necessary, and recommended to the client that it pay most, if not all, of the fees audited.

8.  As a standard practice, I make an offer to all clients to review the bills free of charge and arrive at a preliminary opinion as to whether an audit would uncover any overbilling, so as to make an audit cost efficient. I estimate that in approximately 10 to 15 percent of the possible requests I receive, I suggest to the client that an audit is not cost justified.

9.  On numerous occasions, I have been retained by a law firm engaged in litigation with a client to conduct an audit, and if the audit discloses no overbilling I testify as an expert witness on behalf of the law firm. The following is a partial list of the law firms that I have audited on behalf of a client seeking fees:

Sidley & Austin
Manatt, Phelps & Phillips
Mower, Koeller, Nebeker, Carlson & Halluck
Lanahan & Reilley
Lurie & Zepeda
Banning, Micklow, Bull & Lopez
Robles & Castles
Thelen Reid & Priest
Stoel Rives
Robinson & Cole
LeBoeuf, Lamb, Greene & MacRae
Husch & Eppenberger
Parson, Behle & Latimer
Christiansen Miller Fink Jacobs Glaser Weil & Shapiro, LLP
Berding & Weil
Lanahan & Reilley
Meredith Weinstein & Numbers
Spector Law Offices

In conducting these audits I have observed what solo practitioners, small, medium and large law firms are charging their clients.

7
**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' RESPONSE TO NEW EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**
Case No. C 04-5107 JCS

10. I have published approximately 35 articles, many of which involve the control of legal fees and the abuses in billing practices of attorneys. Over the past several years, I have given numerous presentations on legal auditing and controlling legal costs throughout the United States, Canada and England. I have made a number of presentations to various Bar Associations, insurance industry groups and other organizations, including the American Bar Association, on how to assist the court in analyzing fee requests. I wrote an article on employing legal fee auditors in fee-shifting cases, which was published in *Trial Diplomacy Journal.* Most recently I wrote an article, "How to Win a Fee Petition," which was published in a number of publications including *The Rhode Island Bar Journal*, *The Practical Litigator*, *The Federal Lawyer* and Business Laws, Inc.'s *Law Department Management Adviser*. Among other points, this article listed various "red flags" or questionable billing practices that should be avoided in submitting a fee application.

11. Attached hereto as Exhibit C is a true and correct copy of my Curriculum Vitae, which lists my work history, my publications, and my general experience.

12. Based on my experience as an attorney and expert witness having conducted and/or personally supervised over 1,000 legal fee audits, many of which were in fee-shifting cases such as the instant matter, and many of which were employment matters, it is my opinion that the rates sought by the plaintiff's law firm are excessive. I have never seen a single-plaintiff employment case in California in which a court has awarded anything close to the $700/hour sought by Susan Harriman, even for attorneys with more years of experience and more extensive substantive employment law expertise than Susan Harriman. The rates sought for associates are in my opinion even more inflated, especially in light of their limited experience.

/ / /

/ / /

8

**DECLARATION OF JAMES P. SCHRATZ IN SUPPORT OF DEFENDANTS' RESPONSE TO NEW EVIDENCE SUBMITTED IN SUPPORT OF PLAINTIFF'S MOTION FOR ATTORNEYS' FEES AND EXPENSES**
Case No. C 04-5107 JCS

13. **Analysis of Prior Fee Applications and the Requested Hourly Rates:** In *Gober v. Ralphs Grocery,* California Superior Court, San Diego County, Case No. N72142, we were retained to audit a fee request by numerous attorneys, including the well-known plaintiff's attorney Phil Kay, who is located in San Francisco. Mr. Kay obtained a $30 million verdict against Ralphs Grocery and the fees requested included work for the year 2007. Mr. Kay was admitted in 1981, two years before Ms. Harriman, who is seeking $700 per hour, and 15 years before Ms. Anderson, who is seeking $600 per hour. In *Gober* Mr. Kay sought $560 per hour. Mr. Lawrence Organ, who was admitted in 1994, two years before Ms. Anderson, sought $350 per hour. See Exhibit D attached, which is computer print-out of the hourly rates.

Also in *Gober*, Charles Bird from Luce Forward, who was admitted in 1973, ten years before Ms. Harriman, sought $450 per hour, while Karen Clemes, who was admitted in 1998, several years before any of the associates who are seeking fees of approximately $370-$380 per hour, was seeking $295, and Tracey Angelopoulos, who was admitted in 2002, was seeking fees of $265 per hour, or approximately $100 an hour less than the associates Walton-Haddock, Weingarten and Florey, who were admitted several years later.

It should also be noted that the paralegal at Luce Forward, Kimberly Tyler-Cloanninger's hourly rate was $65, much less than what plaintiff's law firm is seeking in this case.

In *Lopez v. San Francisco Unified School District*, 385 F.Supp 2d 981 (N.D. Cal. 2005), which plaintiff cites to in her brief, we were retained to audit the plaintiff's fee request. In that fee request, Mr. Wallace and Mr. Schneider, two experienced and well-respected members of the plaintiff's employment bar, sought – and were awarded – an hourly rate of $435. The rates approved for less experienced attorneys in that firm ranged from $350/hour for Clint Brayton (who was admitted in 1997, almost ten years before the associates in this matter who are seeking $370-380 per hour) and $225/hour for Elisa Laird,

1  who was admitted in 2003. The firm was awarded an hourly rate of $100 for the work done
2  by paralegals. See Exhibit E.
3      Skadden Arps also sought fees in the *Lopez* case. Jose Allen, who was
4  admitted in 1986, sought an hourly rate of $675, which was reduced to $460/hour. Less
5  experienced attorneys with Skadden Arps were awarded $350/hour (for Benjamin Ostapuk,
6  who was admitted in 1998), $260/hour (for Carita Shanklin who was admitted in 2000) and
7  $225/hour (for Scott Birkey, who was admitted in 2000, six years before the associates in the
8  instant matter). The firm was awarded $110/hour for work done by legal assistants.
9      Finally, in *Hernandez v. City of Southgate*, California Superior Court, Los
10 Angeles County, Case No. BC342104, we were retained by the plaintiff law firm of Goldberg
11 & Gage to audit their fee request before it was submitted to the court in 2007. The law firm
12 had obtained a $3 million verdict in an employment case. Mr. Gage, who was admitted in
13 1985 and had obtained numerous multi-million-dollar verdicts in employment matters, was
14 seeking $500 per hour, as was his partner, Terry Goldberg, who was admitted in 1973.
15
16     I declare under penalty of perjury under the laws of the United States and the
17 State of California that the foregoing is true and correct. Executed this 28th day of March
18 2008 at San Francisco, California.

*/s/ James P. Schratz*
JAMES P. SCHRATZ