UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

KIRAN PANDE,                                          Case No. C-04-05107 JCS

        Plaintiff(s),

    v.                                              **ORDER GRANTING IN PART AND
DENYING IN PART PLAINTIFF'S
MOTION FOR ATTORNEYS' FEES
AND EXPENSES [Docket No. 198]**

CHEVRONTEXACO CORPORATION.,
ET AL.,

        Defendant(s).

_____/

## I.    INTRODUCTION

Plaintiff, Kiran Pande, brings a Motion for Attorneys' Fees and Expenses (the "Motion")
following a jury trial in which she was awarded $5.57 million in damages.  Pande now seeks an
award of $791,506.61 in attorneys' fees and expenses under California's Fair Employment and
Housing Act ("FEHA").  Defendant does not dispute that Pande is entitled to an award of reasonable
attorneys' fees but challenges the amounts sought by Pande.  The Court finds that the Motion is
suitable for determination without oral argument, pursuant to Civ. L.R. 7-1(b).  For the reasons
stated below, the Motion is GRANTED in part and DENIED in part.  Plaintiff is awarded
$506,276.61 in fees and expenses.

## II.   BACKGROUND

The case went to trial before a jury on October 9, 2007.  Three claims were tried:
(1) violation of the Family Medical Leave Act ("FMLA"), 29 U.S.C. §§ 2601 *et seq.,* and the
California Family Rights Act ("CFRA"), Cal. Gov. Code §§ 12945.2 *et seq.* (Claim One);
(2) retaliation for making claims of discrimination, in violation of California's Fair Employment and
Housing Act ("FEHA"), Cal. Gov. Code §§ 12900 *et seq.* (Claim Two); and (3) termination in

**United States District Court**
For the Northern District of California

1   violation of public policy under California law (Claim Three).  The jury found for Defendant on

2   Claim One and for Plaintiff on Claims Two and Three.  The jury awarded Plaintiff $836,048.50 in

3   past damages and $2,235,387.00 in future damages.  The jury also awarded Plaintiff $2,500,000.00

4   in punitive damages.

5          Plaintiff filed a Bill of Costs with the Clerk's Office on November 5, 2007, seeking

6   $65,255.43 in costs.  In addition, in the instant motion, Plaintiff requests the following amounts:

7   1) $670,330.00 for attorneys' fees incurred by current counsel; 2) $79,837.50 for attorneys' fees

8   incurred by former counsel Noah Lebowitz; 3) $29,357.16 in expert witness fees; 4) $738.68 in

9   travel expenses to attend depositions; 5) $7,743.27[1] for legal research; and 6) $3,500.00 for

10  mediation.  Plaintiff also requests in the Motion that any amounts denied by the Clerk's Office on

11  the Bill of Costs be awarded by the Court as part of the fee award.[2]

12         In its Opposition, Defendant asserts that the fees sought are unreasonable for the following

13  reasons: 1) Plaintiff has not presented any evidence in support of the rates sought for her trial

14  counsel, which are excessive; 2) excessive time was billed for work on jury instructions; 3) Plaintiff

15  seeks to recover time that was duplicative because trial counsel was simply "getting up to speed"

16  after substituting in for Plaintiff's prior counsel; 4) Plaintiff seeks to recover fees for clerical work,

17  which are not allowable; 5) Plaintiff seeks excessive fees for trial preparation; 6) Plaintiff is not

18  entitled to fees for time spent waiting for the jury to return a verdict; 7) Plaintiff is not entitled to

19  fees for time spent on post-verdict press releases; 8) the lodestar should be reduced because Plaintiff

20

21         [1] Although Plaintiff states in the Motion that she is seeking $7,443.27 for legal research, *see*
    Motion at 5, it is apparent from the attached exhibits, as well as from the total amount referred to in the
22  caption of the section, that this is a typographical error and that in fact, Plaintiff seeks $7,743.27 for
    legal research.
23

24         [2] On March 12, 2008, the Clerks Office taxed costs in the amount of $35,077.32.  The Clerk's
    Office reduced the amount requested for "exemplification and copies" by $30,179.07, sustaining
25  Defendant's objection to Plaintiff's Bill of Costs that Plaintiff was not entitled to $1,504.10 in
    consulting, project management, administrative and parking fees charged by FTI Consulting and
26  $28,674.01 in project management, consulting, equipment rental, logistics and parking fees charged by
    Advanced Courtroom Technologies.  The Court subsequently issued an order informing Plaintiff that
27  it would not consider Plaintiff's request in its fee motion for costs denied by the Clerk. Rather, the Court
    notified Plaintiff that if she wished to challenge the Clerk's denial of certain costs, she would be
28  required to file a timely objection, as required under the local rules.  Because Plaintiff failed to object
    to the taxation of costs by the Clerk's Office, the amount awarded by the Clerk's Office is final.

2

1   only prevailed on two out of three claims; and 9) Plaintiff is not entitled to recover the costs of legal

2   research.  Plaintiff filed an additional declaration in support of her Reply brief addressing the

3   reasonableness of trial counsel's rates, in particular, the rates of Susan Harriman.

4          Defendant, in turn, was permitted to file a response to this new evidence.  Defendant filed

5   additional declarations by experts and attorneys containing evidence that the rate sought by Ms.

6   Harriman is out of line with the rates awarded other attorneys in the Bay Area with similar skills and

7   experience in comparable cases.

8   **III.   LEGAL STANDARD**

9          Under FEHA, a court "in its discretion, may award to the prevailing party reasonable

10  attorney's fees and costs, including expert witness fees . . . ."  Cal. Gov't Code § 12965(b).

11  California courts have held that in order to accomplish the legislative purpose of "assuring the

12  availability of counsel to bring meritorious actions under FEHA, the goal of an award of attorney's

13  fees is to fix a fee at the fair market value for a particular action."  *Horsford v. Bd. of Trustees of*

14  *Cal. State Univ.*, 132 Cal. App. 4th 359, 394 (2005) (quotations omitted).  Further, "absent

15  circumstances rendering the award unjust, an attorney fee award should ordinarily include

16  compensation for *all* the hours *reasonably spent*.").  *Id.* (quotation omitted) (emphasis in original).

17         Reasonable attorney fees are calculated using the lodestar approach.  *See Jordan v.*

18  *Multnomah County*, 815 F.2d 1258, 1264 n.11 (9th Cir. 1987).  In calculating the lodestar amount,

19  the Court considers any of the factors listed in *Kerr v. Screen Extras Guild, Inc.,* 526 F.2d 67 (9th

20  Cir. 1975), cert. denied 425 U.S. 951 (1976), that are relevant.[3]  To the extent that the *Kerr* factors

21  are not addressed in the calculation of the lodestar, they may be considered in determining whether

22  _____

23         [3] In *Kerr*, which was decided before the lodestar approach was adopted by the Supreme Court
    as the starting point for determining reasonable fees in *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983),
24  the Ninth Circuit adopted the 12-factor test articulated in *Johnson v. Georgia Highway Express, Inc.*,
    488 F.2d 714 (5th Cir. 1974).  This analysis looked to the following factors for determining reasonable
25  fees:  (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the
    skill requisite to perform the legal service properly, (4) the preclusion of other employment by the
26  attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent,
    (7) time limitations imposed by the client or the circumstances, (8) the amount involved and the results
27  obtained, (9) the experience, reputation, and ability of the attorneys, (10) the 'undesirability' of the case,
    (11) the nature and length of the professional relationship with the client, and (12) awards in similar
28  cases.  526 F.2d at 70.

United States District Court
For the Northern District of California

**United States District Court**
For the Northern District of California

1    the fee award should be adjusted upward or downward, once the lodestar has been calculated.

2    *Chalmers*, 796 F.2d at 1212.  However, there is a strong presumption that the lodestar figure

3    represents a reasonable fee.  *Jordan*, 815 F.2d at 1262.

4              "To inform and assist the court in the exercise of its discretion, '[t]he fee applicant has the

5    burden of producing satisfactory evidence, in addition to the affidavits of its counsel, that the

6    requested rates are in line with those prevailing in the community for similar services of lawyers of

7    reasonably comparable skill and reputation.'"  *Schwarz v. Sec'y of Health & Human Servs.*, 73 F.3d

8    895, 908 (9th Cir. 1995) (quoting *Jordan*, 815 F.2d at 1263 (9th Cir.1987)).  Generally, parties

9    seeking fees provide affidavits of practitioners from the same forum with similar experience to

10   establish the reasonableness of the hourly rate sought.  *See, e.g., Mendenhall v. Nat'l Transp. Safety

11   Bd.*, 213 F.3d 464, 471 (9th Cir. 2000) (holding that affidavits of four practitioners in the community

12   were sufficient to establish reasonable rate of $250.00 per hour even though attorney had only billed

13   $150.00 per hour).  Decisions by other courts regarding the reasonableness of the rate sought may

14   also provide evidence to support a finding of reasonableness.  *See Widrig v. Apfel*, 140 F.3d 1207,

15   1210 (9th Cir. 1998) (holding that rate set by district court based, in part, on rate awarded to same

16   attorney in another case, was reasonable).

17   **III.    ANALYSIS**

18          **A.    Fees Sought**

19          Plaintiff seeks fees for her former attorney, Noah Lebowitz, who represented her in this

20   action through summary judgment, as well as for her current counsel, who represented her during

21   trial (hereinafter, "Trial Counsel").  Plaintiff requests $79,837.50 in fees for Lebowitz, based on a

22   rate of $375.00/hour for a total of 212.9 hours.  *See* Declaration of Noah D. Lebowitz in Support of

23   Plaintiff Kiran Pande's Motion for Attorneys' FeesWith ("Lebowitz Decl.").  With respect to Trial

24   Counsel, Plaintiff seeks the following amounts in fees: 1) $250,950.00 for Susan Harriman

25   (attorney), based on a rate of $700.00/hour for a total of 358.5 hours; 2) $190,950.00 for Crista

26   Anderson (attorney), based on a rate of $600.00/hour for a total of 318.25 hours; 3) $1,662.50 for Jo

27   Weingarten (attorney), based on a rate of $380.00/hour for a total of 4.375 hours; 4) $3,237.50 for

28   Katherine Florey (attorney), based on a rate of $370.00/hour for a total of 8.75 hours; 5)

$139,628.75 for Audrey Walton-Hadlock (attorney), based on a rate of $370.00/hour for a total of 377.375 hours; 6) $71,375.00 for Nancy Dao (paralegal), based on a rate of $200.00/hour for a total of 356.875 hours; and 6) $12,526.25 for unidentified "case assistants," based on a rate of $110.00/hour for a total of 113.875 hours.  Declaration of Susan J. Harriman in Support of Plaintiff Kiran Pande's Motion for Attorneys' Fees ("Harriman Decl.") & Ex. E.

> **B.**     **Reasonableness of Rates Sought**

> > **1.**     **Noah Lebowitz**

Noah Lebowitz graduated from the University of San Francisco in 1996.  Lebowitz Decl., ¶ 3.  Since returning to California after a judicial clerkship, he has practiced exclusively in the area of employment law.  *Id*.  Between April 2001 and February 2007, Lebowitz was an associate with the firm of McGuinn, Hillsman & Palefsky ("MHP") and in that capacity acted as primary counsel in this action through summary judgment and the close of fact discovery.  *Id*., ¶ 2.  He is currently a partner with the firm of Duckworth - Peters - Lebowitz, where his billing rate is $375.00/ hour.  This is also the billing rate that Plaintiff requests be used in calculating Lebowitz's fees in this action.

Defendant asserts that a reasonable rate for Lebowitz is $250.00/hour, pointing out that Plaintiff did not offer any evidence in support of the rate sought for Lebowitz in her Motion other than Lebowitz's own declaration, and citing to the court's award of $250.00/hour for an attorney with similar experience in *Miller v. Vicorp Restaurants, Inc.*, 2006 WL 212021 (N.D. Cal. January 11, 2006) (awarding attorney John Ota fees for work on an employment discrimination action at a rate of $250.00/hour); *see also Chaid v. Glickman*, 1999 WL 33292940 (N.D. Cal. November 17, 1999) (awarding Ota fees in an employment discrimination action at a rate of $165.00/hour).  Plaintiff did not respond to this argument in her Reply brief or offer any additional

5

1  evidence in support of the rate sought for Lebowitz.[4]  Accordingly, the Court adopts the

2  $250.00/hour rate for Lebowitz, which the Court finds to be reasonable.

3                    **2.    Susan Harriman**

4        Susan Harriman graduated from Hastings College of the Law in 1983.  Harriman Decl., Ex.

5  A.  She has been a partner at the firm of Keker & Van Nest, specializing in complex business

6  litigation since 1989.  *Id.*  Harriman's regular billing rate in 2007 was $700.00/hour and Plaintiff

7  seeks to recover fees for Ms. Harriman at that rate in this action.  *Id.*, ¶ 4; *see also* Supplemental

8  Declaration of Susan J. Harriman in Support of Motion for Attorneys' Fees and Expenses

9  ("Harriman Supp. Decl."), ¶ 5 & Ex. A (reflecting that Pande has paid Keker $466,681.24 in fees

10 pursuant to a retainer agreement that states that Harriman's current billing rate is $700.00/hour).

11 Harriman's extensive experience is set forth in her supplemental declaration.  Harriman Supp. Decl.,

12 ¶ 4.  Further, Plaintiff has provided a declaration by Michael Rubin, who has practiced law in the

13 Bay Area for nearly thirty years and is a highly respected litigator.  *See* Declaration of Michael

14 Rubin in Support of Plaintiff's Motion for Attorneys' Fees and Costs ("Rubin Decl.").  Rubin states

15 that he is familiar with Ms. Harriman's reputation in the legal community and with her work in this

16 action, and that the rate of $700.00 is in line with the rates sought by attorneys who practice in the

17 Bay Area who have similar experience and skills.  Rubin Decl., ¶¶ 7, 8.

18        Defendant argues that Ms. Harriman should not charge more than $375.00/hour – the rate

19 that Plaintiff was charged by Noah Lebowitz – as this rate was apparently adequate to ensure that

20 Plaintiff could find counsel willing to take the case.  Defendant notes that Mr. Rubin did not include

21 any specific examples of attorneys who have been awarded fees at a rate as high as the one sought

22 by Ms. Harriman in comparable cases and cites a number of cases in which attorneys with

23 comparable experience have been awarded fees at rates between $435.00 and $455.00/hour.

24        ⁴ Plaintiff makes a general statement that "all of counsel's rates here are Keker & Van Nest's
25 actual current hourly rates for clients paying on a straight, hourly basis, further confirming that those
   rates are reasonable market rates."  Reply at 2.  It is clear from the context of that statement, however,
26 that it does not refer to Lebowitz, who is not an attorney at Keker & Van Nest.  Nor is there any other
   reference in the Reply to the rate sought for Lebowitz.  Further, the declaration of Michael Rubin that
27 Plaintiff submitted with her Reply makes no mention of Lebowitz's rates, but instead only addresses the
   reasonableness of the rates sought by the Keker & Van Nest attorneys who represented Plaintiff in this
28 action.

**United States District Court**
For the Northern District of California

1   Defendant asserts that Ms. Harriman's rates should be commensurate with those of Jack Lee, a

2   litigator who has over thirty years of experience in employment law.  *See Miller*, 2006 WL 212021

3   at * 3.  Lee was awarded fees at a rate of $450.00/hour in *Miller*.

4         Having considered the arguments and evidence of the parties, and taking into account Ms.

5   Harriman's excellent reputation in the legal community, as well as the quality of Ms. Harriman's

6   representation of Plaintiff during the trial in this case, the Court concludes that a reasonable hourly

7   rate for Ms. Harriman is $575.00/hour.

8         **3.**      **Crista Anderson**

9         Crista Anderson graduated from Harvard Law School in 1994.  Harriman Decl., Ex. B.  She

10   has been an attorney with Keker & Van Nest since 1996 and is currently a partner. She specializes in

11   business litigation.  *Id*.  Her actual billing rate in 2007 was $600.00/hour and that rate is sought for

12   Anderson's fees in this action.  Harriman Decl., ¶ 4; *see also* Harriman Supp. Decl., Ex. A (retainer

13   agreement with Pande stating that Anderson's current billing rate was $600.00/hour).  According to

14   Michael Rubin, this rate is consistent with the rates sought by attorneys who practice in the Bay

15   Area who have similar experience and skills.  Rubin Decl., ¶¶ 7, 8.

16         Defendant argues, however, that Ms. Anderson has practiced just slightly longer than Noah

17   Lebowitz and that her experience and skills are commensurate with those of John Ota, who was

18   awarded $250.00/hour in *Miller*.

19         Having considered the evidence and arguments of the parties, the Court concludes that a

20   reasonable rate for Ms. Anderson is $400.00/hour.

21         **4.**      **Audrey Walton-Hadlock**

22         Audrey Walton-Hadlock graduated from Boalt Hall School of Law in 2004.  Harriman Decl.,

23   Ex. C.  She joined Keker & Van Nest as an associate in 2006 after completing two federal judicial

24   clerkships.  *Id*.  Her billing rate for 2007 was $370.00/hour.  Mr. Rubin does not mention Audrey

25   Walton-Hadlock in his declaration or address the reasonableness of the rate sought by Plaintiff for

26   her work.

27         Defendant argues that this rate is excessive and assert that a rate of $150.00/hour is

28   reasonable in light of Walton-Hadlock's inexperience, citing *Navarro v. General Nutrition Corp*.,

1   2005 WL 2333803 (N.D. Cal. September 22, 2005).  In *Navarro*, the court awarded fees at a rate of

2   $150.00/hour for an attorney who graduated from law school in 1997 where the prevailing party

3   failed to provide any evidence regarding the lawyer's qualifications or the reasonableness of the rate

4   sought.  *Id*. at * 10.

5          The Court does not find *Navarro* to be on point.  Plaintiff has provided a profile of Walton-

6   Hadlock as well as evidence that her actual billing rate is $370.00, which constitutes at least *some*

7   evidence that the rate sought is reasonable.  On the other hand, Plaintiff has not provided any

8   declarations by practitioners or other evidence indicating that $370.00 is the prevailing rate in the

9   Bay Area for an attorney who is just out of law school and has very little experience in employment

10  law.  Based on the experience of the Court, and considering the very limited evidence before the

11  Court, the Court finds that $200.00/hour is a reasonable rate for Ms. Walton-Hadlock.

12              **5.      Jo Weingarten and Katherine Florey**

13         According to Ms. Harriman, Jo Weingarten and Katherine Florey were associates at Keker &

14  Van Nest who assisted "in a time crunch."  Harriman Decl., ¶ 7.  Weingarten's rate in 2007 – and

15  the rate sought on this Motion – was $380.00/hour; Florey's was $370.00/hour.  *Id*.  Plaintiff

16  provides no evidence regarding Weingarten's and Florey's qualifications; nor does she provide any

17  evidence that their rates are commensurate with that of others with similar qualifications and skill

18  who practice in the Bay Area.

19         In light of the meager evidence provided by Plaintiff, Defendant asserts that these attorneys

20  should be awarded fees at the rate of $150.00/hour, like the attorney in *Navarro*, discussed above.

21  The Court agrees.  The Court notes that although Defendant raised this issue in its Opposition,

22  Plaintiff failed to provide any additional evidence in support of her Reply showing that the rates of

23  these individuals are reasonable.

24              **6.      Nancy Dao**

25         According to Susan Harriman, Nancy Dao is one of Keker & Van Nest's most experienced

26  paralegals.  Harriman Decl., ¶ 6.  She has assisted Harriman in several previous trials.  *Id*.  Plaintiff

27  seeks fees at a rate of $200.00/hour for Dao, which is her actual billing rate.  *Id*.  Defendant asserts

28

United States District Court

For the Northern District of California

1  that Dao should be awarded fees at a rate of $65.00/hour, citing *Navarro*.  Defendant also notes that

2  in *Miller*, the rate awarded for paralegals was $115.00/hour.

3       The Court's review of the case law indicates that the standard rate for paralegal support in

4  the Bay Area is around $120.00/hour.  *See Petroleum Sales, Inc. v. Valero Refining Co.*, 2007 WL

5  2694207 (N.D. Cal. September 11, 2007) (reviewing rates awarded for paralegal work in the Bay

6  Area).  Based on Harriman's statement that Dao is one of the most experienced paralegals at Keker

7  & Van Nest, as well as the Court's own observation of Dao's work during the trial, which was a

8  significant factor in the smooth conduct of the trial, the Court concludes that a slightly higher rate is

9  justified.  The Court finds that a reasonable rate for Dao is $140.00/hour.

10                **7.     Case Assistants**

11       Plaintiff seeks fees, at a rate of $110.00/hour, for "[v]arious case assistants" who assisted

12  Ms. Dao "in making copies of exhibits and witness binders."  Harriman Decl., ¶ 8.  This work is

13  purely clerical and, therefore, not recoverable.  *See King v. Cigna Corp.*, 2007 WL 4365504 * 6

14  (N.D.Cal. December 13, 2007) (holding that time spent by paralegal photocopying legal authorities

15  was purely clerical and, therefore, not recoverable).

16       **C.     Time Billed**

17       Defendant argues that the time billed by Plaintiff's counsel is excessive for a number of

18  reasons, which are addressed below.

19                **1.     Jury Instructions**

20       Defendant asserts that Plaintiff's counsel billed excessive time for jury instructions.  First,

21  Defendant points to 13.125 hours of time spent by Florey and Weingarten on jury instructions,

22  asserting that this time was "likely" later duplicated by Crista Anderson and Audrey Walton-

23  Hadlock.  Opposition at 9.  Second, Defendant argues that the amount of time billed by Anderson

24  and Walton-Hadlock was excessive: counting the total time billed for entries that were block billed,

25  Defendant concludes that Ms. Anderson billed 44.875 hours for preparation of jury instructions and

26  Ms. Walton-Hadlock billed 36.25 hours for preparation of jury instructions.  Defendant points out

27  that this Court, in a previous employment discrimination case, *Chaid v. Glickman*, found that 32.5

28  hours spent drafting jury instructions was excessive.

United States District Court

For the Northern District of California

1    The assertion that the time billed for Florey and Weingarten is duplicative is entirely

2    speculative and the Court, therefore, declines to reduce Plaintiff's award on that basis. The more

3    difficult question is whether the total hours billed for preparation of jury instructions is excessive.

4    The Court concludes that although a reduction in the time spent on jury instructions is warranted,

5    Plaintiff is, nonetheless, entitled to a substantial portion of the time billed for work on jury

6    instructions. Fee awards must be determined based on the circumstances of the particular case.

7    Thus, a determination in one case that a certain amount of time spent on jury instructions was

8    excessive does not necessarily carry over to another case. Here, both parties litigated very

9    aggressively, and Plaintiff was required to address numerous issues raised by Defendant with respect

10   to the jury instructions. Taking into account the specific circumstances of this case, the Court

11   concludes that it is appropriate to reduce the time spent on jury instructions by ten hours each for

12   Ms. Anderson and Ms. Walton-Hadlock.

13                    **2.    Substitution of Counsel**

14   In its Opposition, Defendant asserts that vague time entries on the part of Trial Counsel such

15   as "review case materials" and "review complaint" reflect time that was spent "getting up to speed"

16   after Trial Counsel substituted in for Plaintiff's prior counsel, Noah Lebowitz. Opposition at 10-11.

17   In particular, Defendant asserts that such entries make up 22.5 hours of Harriman's time, 21.75

18   hours of Anderson's time and 18.375 of Dao's time in March 2000, when Trial Counsel took over

19   the case. *Id.* In her Reply brief, Plaintiff does not challenge Defendant's contention or offer any

20   explanation of these time entries. Accordingly, the Court excludes the time listed above.

21                    **3.    Clerical Work**

22   Defendant asserts that approximately 71.5 hours of Ms. Dao's time was spent on purely

23   clerical or secretarial work, namely, "retrieving, organizing, filing, or copying documents."

24   Opposition at 11. Plaintiff, on the other hand, counters that these tasks were not purely clerical

25   because they required familiarity with the documents and issues in the case. Reply at 4; *see also*

26   Harriman Supp. Decl., ¶ 6 (stating that Dao's work "depended on evidence and issues in the case").

27   Defendant has not identified the specific time entries that it asserts are "purely clerical." However,

28   based on its own review of the time sheets submitted by Plaintiff, as well as the evidence submitted

10

United States District Court

For the Northern District of California

1   by Plaintiff regarding the nature of Dao's work, the Court declines to reduce Plaintiff's fee award on

2   this basis.

3             **4.**     **Trial Preparation Work**

4         Defendant points to 234.5 hours billed by Dao and 216.5 hours billed by Walton-Hadlock in

5   September and October 2007 under the general description "trial preparation."  Opposition at 11.

6   Defendant asserts that this description is inadequate and, further, that it suggests that both

7   individuals were "some sort of support personnel."  *Id.*  Therefore, Defendant argues, this time

8   should be excluded, citing *Sorenson v. Mink*, 239 F.3d 1140, 1146 (9th Cir. 2001) (holding that

9   where district court found that some hours had not been adequately documented or were not

10  reasonably expended, it erred by awarding fees for that time).  *Id.*  In response, Plaintiff asserts that

11  both Dao and Walton-Hadlock were engaged in valuable and necessary tasks, even if they were not

12  specifically described in their time sheets.  Reply at 3-4.  The Court finds that this time is adequately

13  documented.

14        "Plaintiff's counsel . . . is not required to record in great detail how each minute of his time

15  was expended."  *Hensley v. Eckerhart*, 461 U.S. 424, 437 n.12 (1983).  "But at least counsel should

16  identify the general subject matter of his time expenditures."  *Id.*  Plaintiff has met that standard,

17  though perhaps barely.  Although Plaintiff has not detailed the specific tasks Dao and Walton-

18  Hadlock performed, the Court is familiar with the sorts of tasks that trial preparation encompasses,

19  both in general and in this particular case.  Notably, Defendant does not argue – and the Court does

20  not find – that the time devoted to trial preparation by Plaintiff's counsel was excessive.  Therefore,

21  the Court declines to reduce Plaintiff's fee award on this basis.

22            **5.**     **Time Spent Waiting for Verdict**

23        Defendant asserts that Plaintiff should not be awarded fees for time that was spent by Ms.

24  Harriman and Ms. Anderson waiting for the jury verdict.  Opposition at 11.  Counting the full time

25  of entries that were block-billed, Defendant asserts that this time accounts for 16.25 hours of Ms.

26  Harriman's time and 16 hours of Ms. Anderson's time.  *Id.*  Defendant cites *Jordan v. City of*

27  *Cleveland*, in which the court held that time spent on jury watch was not compensable because the

28  attorneys' office was in the same city as the courthouse and counsel had not been ordered to remain

United States District Court

For the Northern District of California

at the courthouse. 464 F.3d 584, 602 (6th Cir. 2006). In *Jordan*, the court distinguished a case decided by a district court in Oregon in which the court held that time spent waiting for the jury verdict was compensable because counsel was required to be within 15 minutes of the courthouse and her office was in another city. *Id*. (*citing Robinson v. Interstate Distrib. Co.*, 242 F. Supp. 2d 850 (D. Or. 2002).

Here, Plaintiff's counsel were not required to remain at the courthouse but rather, were asked to be within ten minutes of the courthouse. Further, counsel's office is in downtown San Francisco, in close proximity to the courthouse. Moreover, although Defendant raised this issue in its Opposition, Plaintiff offered no response in her Reply, thereby conceding that she is not entitled to this time. Accordingly, the time described above is excluded.[5]

### D.    Lodestar Adjustment Based on Partial Success

Defendant argues that because Plaintiff prevailed on only two out of three of her claims, her fee award should be reduced. The Court disagrees.

California law permits the district court to reduce the lodestar amount based on the results obtained but does not require it to do so. *Beaty v. BET Holdings, Inc.*, 222 F.3d 607, 610 (9th Cir. 2000). In *Hensley*, the Supreme Court explained that where a plaintiff presents in one lawsuit "distinctly different claims for relief that are based on different facts and legal theories," a reduction in the lodestar may be appropriate if the plaintiff prevailed on only some of the claims. 461 U.S. 424, 434-35 (1983). The reason for such a reduction is that time spent on the unrelated claim cannot be considered to have been expended upon the ultimate result achieved. *Id*. The court noted, however, that such cases involving unrelated claims were not likely to arise with great frequency. *Id*. Most civil rights cases, the Court stated, would involve only a single claim or a set of claims with a common core of facts or based on related legal theories. *Id*. "Such a lawsuit cannot be viewed as a series of discrete claims." *Id*. In that case, the court should consider "the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the

---

[5]    Although it is evident from the time entries that Ms. Harriman and Ms. Anderson also performed other tasks while awaiting the verdict, the block billing that was used makes it impossible to determine how much of the time was spent waiting for the jury verdict and how much was spent on other tasks. Therefore, the Court excludes the entire time for these block-billed entries.

**United States District Court**
For the Northern District of California

1    litigation." *Id*.

2          In this case, Plaintiff's FMLA /CFRA claim – on which she did not prevail – was closely

3    related to the claims on which she did prevail.  All of her claims arose from a core set of facts and

4    related legal theories.  Therefore, the Court cannot identify any work on Claim One that was

5    unrelated to the other claims and that would warrant a reduction in the lodestar.  Further,

6    consideration of "the overall relief obtained by the plaintiff in relation to the hours reasonably

7    expended on the litigation" persuades the Court that it should not reduce the lodestar.  *See id*.

8    Clearly, Plaintiff obtained excellent results overall, receiving an award of compensatory damages

9    that was almost exactly the amount she had requested, as well as a substantial punitive damages

10   award.  The Court declines to reduce the lodestar on the basis that Plaintiff only obtained partial

11   success.

12          **E.     Other Expenses**

13          In addition to the attorneys' fees discussed above, Plaintiff seeks to recover the following

14   expenses under FEHA: 1) $29,357.16 in expert witness fees; 2) $738.68 in travel expenses to attend

15   depositions; 3) $3,500.00 for mediation expenses; and 4) $7,743.27 for legal research.  Defendant

16   does not dispute that Plaintiff is entitled to the first three items.  However it asserts that "legal

17   research" is not an allowable cost under FEHA, citing *Ladas v. California State Automobile Ass'n*,

18   19 Cal. App. 4th 761 (1993).  In *Ladas*, the court held that legal research expenses were not

19   recoverable because they fell under the exclusion for "investigation expenses" contained in Cal. Civ.

20   Proc. Code § 1033.5(b)(2).  *Id*. at 776.  However, at least one court has questioned the holding of

21   *Ladas*.  In particular, in *Moore v. IMCO Recycling of California, Inc.*, 2005 U.S. Dist. LEXIS

22   45778  (September 28, 2005), the court explained that while computerized searches might fall in the

23   category of "investigation" expenses in limited situations, for example, where a search is used to

24   identify a defendant's assets, they are not an investigation expense when they are used to research

25   legal issues in the case.  *Id*. at *10.  Moreover, the court held, such research is reasonably necessary

26   to the conduct of the litigation and, therefore, allowable under Cal. Code Civ. Proc. § 1033.5(c)(2).

27   *Id*.  The Court finds the reasoning of *Moore* to be persuasive and, therefore, allows the costs sought

28   by Plaintiff for legal research.

**United States District Court**
For the Northern District of California

## IV.    CONCLUSION

For the reasons stated above, the Court awards the following fees:

|  | Hourly Rate/Hour | Allowable Hours | Total Fees |
|---|---|---|---|
| S. Harriman | $575.00 | 309.75 | $178,106.25 |
| C. Anderson | $400.00 | 270.5 | $108,200.00 |
| A. Walton-Hadlock | $200.00 | 367.375 | $73,475.00 |
| K. Florey | $150.00 | 8.75 | $1,312.50 |
| J. Weingarten | $150.00 | 4.375 | $656.25 |
| N. Lebowitz | $250.00 | 212.9 | $53,225.00 |
| N. Dao | $140.00 | $356.875 | $49,962.50 |

**TOTAL FEES:** $464,937.50

In addition, the Court awards the following expenses:

| Expert Witness Fees | $29,357.16 |
|---|---|
| Travel to Depositions | $738.68 |
| Mediation | $3,500.00 |
| Legal Research | $7,743.27 |

**TOTAL EXPENSES:** $41,339.11

    IT IS SO ORDERED.


Dated: March 31, 2008

_____
JOSEPH C. SPERO
United States Magistrate Judge